Richard B. Specter, SBN 114090
Diane L. Ellis, SBN 130628
CORBETT, STEELMAN & SPECTER
A Professional Law Corporation
18200 Von Karman Avenue, Suite 900
Irvine, California 92612-1023
Telephone:  (949) 553-9266
Facsimile:  (949) 553-8454
rspecter@corbsteel.com

Attorneys for Plaintiffs
LOS ANGELES TURF CLUB, INCORPORATED,
LOS ANGELES TURF CLUB II, INC.,
PACIFIC RACING ASSOCIATION, PACIFIC RACING
ASSOCIATION II, GULFSTREAM PARK RACING
ASSOCIATION, INC., OREGON RACING, INC.,
MARYLAND JOCKEY CLUB OF BALTIMORE CITY, INC.,
and LAUREL RACING ASSOCIATION, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES TURF CLUB, INCORPORATED, a California Corporation, LOS ANGELES TURF CLUB II, INC., a California Corporation, PACIFIC RACING ASSOCIATION, a California Corporation, PACIFIC RACING ASSOCIATION II, a California Corporation, GULFSTREAM PARK RACING ASSOCIATION, INC., a Florida Corporation, OREGON RACING, INC., a Delaware Corporation, MARYLAND JOCKEY CLUB OF BALTIMORE CITY, INC., a Maryland Corporation, and LAUREL RACING ASSOCIATION, INC., a Maryland Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>HORSE RACING LABS, LLC, a Delaware Limited Liability Company, | Case No.:  2:15-cv-9332<br><br>**COMPLAINT FOR**<br><br>**1. Violation of the** *Interstate Horseracing Act*;<br>**2. Violation of the** *Racketeering Influence and Corruption Act*;<br>**3. Violation of California** *Business & Professions Code* **Sections 17200,** *et seq.*; **and**<br>**4. Intentional Interference With Prospective Economic Advantage**<br><br>**DEMAND FOR JURY TRIAL** |

-1-

(also known as IMMERSE, LLC), doing )
business as DERBYWARS, and DOES 1 )
through 10, inclusive, )
                                                              )
                    Defendants.          )
                                                              )
                                                              )
_____)

Plaintiffs Los Angeles Turf Club, Incorporated, Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing, Inc., Maryland Jockey Club Of Baltimore City, Inc., and Laurel Racing Association, Inc., (collectively, "PLAINTIFFS"), allege as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1331, because the claims herein arise under federal law, including the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. §1965, and the *Interstate Horseracing Act,* 15 U.S.C. § 3007, and the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

2. Venue is proper in this Central District because a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this District.

## THE PARTIES

3. Plaintiff Los Angeles Turf Club, Incorporated ("LATC") is, and at all times mentioned herein was, a corporation, organized and existing under the laws of the State of California, and maintaining its principal place of business in Los Angeles County, California. LATC operates a horse racing meet at Santa Anita Park race track in said county.

4. Plaintiff Los Angeles Turf Club II, Inc. ("LATC II") is, and at all times mentioned herein was, a California corporation, organized and existing under the laws of the State of California, and maintaining its principal place of business in Los

Angeles County, California. LATC II also operates a horse racing meet at the Santa Anita Park race track in said county.

5. Plaintiff Pacific Racing Association ("PRA") is, and at all times herein mentioned was, a California corporation, with its principal place of business in Alameda County, California. PRA operates a horse racing meet at the Golden Gate Fields race track in said county.

6. Plaintiff Pacific Racing Association II ("PRA") is, and at all times herein mentioned was, a California corporation, with its principal place of business in Alameda County, California. PRA operates a horse racing meet at the Golden Gate Fields race track in said county.

7. Plaintiff Gulfstream Park Racing Association, Inc. ("GPRA") is, and at all times herein mentioned was, a Florida corporation, with its principal place of business in Broward County, Florida. GPRA operates a horse racing meet at the Gulfstream Park race track in said county, and also operates a horse racing meet at Calder Race Course in that same county for a portion of each year, under the name "Gulfstream Park West."

8. Plaintiff Oregon Racing, Inc. ("ORI") is, and at all times herein mentioned was, a Delaware corporation, with its principal place of business in Multnomah County, Oregon. ORI operates a horse racing meet at the Portland Meadows race track in said county.

9. Plaintiff Maryland Jockey Club of Baltimore City, Inc. ("MJC") is, and at all times herein mentioned was, a Maryland corporation with its principal place of business in Baltimore County, Maryland. MJC operates a horse racing meet at the Pimlico Race Course in said county.

10. Plaintiff Laurel Racing Association, Inc. ("LRA") is, and at all times herein mentioned was, a Maryland corporation with its principal place of business in Prince George's County, Maryland. LRA operates a horse racing meet at the Laurel Park race track in said county.

11. Defendant Horse Racing Labs, LLC, (also known as Immerse, LLC), doing business as DerbyWars, is, and at all times mentioned herein was, a Delaware limited liability company with its principal place of business in Louisville, Kentucky. Said Defendant is operated by five or more persons, and has been or remains in substantially continuous operation for a period in excess of thirty days, and has had gross revenue of $2,000 in any single day.

12. PLAINTIFFS do not presently know the true names and capacities of the Defendants sued herein as Does 1 – 10, inclusive. PLAINTIFFS will seek leave of court to amend this Complaint to allege said Defendants' true names and capacities as soon as PLAINTIFFS ascertain them. Defendant Horse Racing Labs, LLC, (also known as Immerse, LLC), doing business as DerbyWars, and Does 1 – 10, are collectively referred to herein as "DerbyWars."

## FACTS COMMON TO ALL CLAIMS FOR RELIEF
## REGULATION OF HORSE RACING

13. Horse racing is a heavily regulated industry in the United States, on both the federal and state level.

14. The Federal Wire Act, 18 U.S.C. § 1084, prohibits the transmission of wagering information across state lines:

> "Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined under this title or imprisoned not more than two years, or both."

15. The *Interstate Horseracing Act of 1978* (15 U.S.C. § 3001 *et seq.*) (the "IHA"), creates an exception to the prohibition of the Wire Act for wagering on horse

racing, but limits that exception to wagering that is in strict compliance with the IHA:

> "No person may accept an interstate off-track wager except as provided in this Act." 15 U.S.C. § 3003.

16. The IHA defines an "interstate off-track wager" as:

> "a legal wager placed or accepted in one State with respect to the outcome of a horserace taking place in another State and includes pari-mutuel wagers, where lawful in each State involved, placed or transmitted by an individual in one State via telephone or other electronic media and accepted by an off-track betting system in the same or another State, as well as the combination of any pari-mutuel wagering pools;" 15 U.S.C. § 3002(3).

17. In order to accept an interstate off-track wager on horse racing, Section 3004 of the IHA requires the consent of: 1) the host racing association (and its respective horsemen's group), 2) the host racing commission, and 3) the off-track racing commission. 15 U.S.C. § 3004.

18. Parimutuel wagering on horse racing was legalized in California in 1933, and has been specifically exempted from California *Penal Code* § 337a, which criminalizes bookmaking. As set forth in California *Business & Professions Code* § 19411: "'Parimutuel wagering' is a form of wagering in which bettors either purchase tickets of various denominations, or issue wagering instructions leading to the placement of wagers, on the outcome of one or more horse races. The association distributes the total wagers comprising each pool, less the amounts retained for purposes specified in this chapter, to winning bettors based on the official race results."

19. California *Business & Professions Code* § 19590 provides that, "Parimutuel wagering shall be conducted only by a person or persons licensed under

this chapter to conduct a horse racing meeting or authorized by the board to conduct advance deposit wagering."

20. California *Business & Professions Code* § 19595 provides that: "[a]ny form of wagering or betting on the result of a horse race other than that permitted by this chapter is illegal." Thus, under California law, only licensed racing associations and licensed advance deposit wagering companies are authorized to accept wagers from the State of California on horse racing.

21. The States of Florida, Maryland and Oregon all similarly restrict wagering on horse racing to licensed entities. *See Fla. Stat. Chapter* 550 *Pari-Mutuel Wagering*; *Md. BUSINESS REGULATION Code Ann*. § 11-801, 804; and *ORS* § 462.140.

22. DerbyWars does not hold, nor has it ever held, a license to conduct wagering on horse racing in California, Florida, Maryland, or Oregon.

## PLAINTIFF RACING ASSOCIATIONS

23. Plaintiff racing associations operate horse racing meets in California, Oregon, Florida and Maryland, at various times of year.

24. All wagering by PLAINTIFFS and by wagering entities that have a contractual or statutory relationship with PLAINTIFFS on the horse races run at PLAINTIFFS' tracks is conducted in compliance with all applicable laws, including the receipt of consents under the IHA when required. When consents are granted under the IHA to other entities to accept wagers on horse races at PLAINTIFFS' tracks, PLAINTIFFS and their horsemen condition such consents upon the receipt of compensation from those entities.

25. The compensation paid to PLAINTIFFS and their horsemen by other entities is typically a "host fee", which is a percentage of the "handle" or amount of wagers placed on a race or races.

26. When unauthorized, i.e. illegal, betting on horse races occurs, the racing association where the race was run is deprived of the host fees it otherwise would receive.

## "FANTASY" SPORTS BETTING AND THE UIGEA

27. Fantasy sports have been popular for some time, particularly fantasy football. Generally, in fantasy football, a player "drafts" football players from different teams throughout the National Football League, and competes against other players and their "teams." Each week, a player accumulates points based upon the output of the players in the starting line-up that he has selected for the week. The contest can be conducted on a daily basis, or can continue over the course of the NFL season.

28. In 2006, Congress enacted the *Unlawful Internet Gambling Enforcement Act of 2006* (the "UIGEA") to restrict internet gambling. By its language, the UIGEA made only two changes in the law of internet gambling: (1) it created a new federal crime of receiving money by an operator of an illegal gambling website; and (2) it ordered federal regulators to enact regulations to identify and block money transfers by bettors in the United States to those outlaw gambling sites. 31 U.S.C. §5361.

29. While the UIGEA does not prohibit fantasy sports betting, it also does not legalize it, if it is otherwise illegal under another anti-gambling law. By its express language, the UIGEA was not intended to change any other anti-gambling law:

> "(b) Rule of construction. No provision of this subchapter shall be construed as altering, limiting, or extending any Federal or State law or Tribal-State compact prohibiting, permitting, or regulating gambling within the United States." 31 U.S.C. § 5361(b).

30. The "carve-out" for fantasy sports betting is found in Section 5362 (ix), of the UIGEA, wherein excluded from the definition of "Bet" or "Wager" is participation in a fantasy game or contest, so long as the player's "team" is not based on an actual team, and (1) the prizes and awards are known in advance and the value is not based on the number of participants or the amount of the fees; (2) winning outcomes reflect the skill of the participants and are determined by statistical results of the performance of individuals in multiple games; and (3*) the winning outcome is not based on the "score, point-spread, or any performance or performances of any single real-world team or any combination of such teams, or solely on any single performance of an individual athlete in any single real-world sporting or other event*." (Emphasis added). Thus, it does not permit a wager on the outcome of a sporting event, or a combination of outcomes of multiple sporting events, such as a "parlay" bet.

31. Section 5362 (D) of the UIGEA also specifically addresses horse racing, and expressly states that it is not the intent of the UIGEA to legalize betting on horse racing that would otherwise be illegal under the IHA. The plain language also preserves any state prohibition against gambling on horse races that existed at the time of the UIGEA's enactment (31 U.S.C. § 5362 (D)).

**DERBYWARS**

32. DerbyWars is an internet website for fantasy sports betting on horse races, including races run at race meets operated by PLAINTIFFS. DerbyWars has been in business since 2011, and offers online wagering opportunities throughout the United States, including on races run at race meets operated by PLAINTIFFS. According to DerbyWars:

> "DerbyWars is a skill based fantasy league competition based on professional horse racing, where winners are awarded based on their abilities to skillfully pick horses and compete against other players over a series of races.

In each contest, you pick horses which serve as fantasy bets and you move up and down a leaderboard depending on how skillfully you pick those races. It also takes skill to understand the dynamics of the contest and the leaderboard. We currently offer contests several days each week and players can win real money."[1]

"Each contest (collectively the "Contests") is a skill-based competition in which players ("Players") can demonstrate their knowledge of pari-mutuel horse racing information and rules in several Contest formats. ***Prizes will be awarded to Players who are most successful in selecting winning horses in actual horse races at actual licensed tracks***, under the Tournament Structures described more fully below. Players will choose to participate in one or more Contests from a menu of Contests available. Each Contest will have a fixed entry fee, a fixed prize pool and a maximum number of entries. Some contests may also have a minimum of number of entries which will be published in advance on the Website."[2] (Emphasis added).

33.     The format used by DerbyWars is simple: players select a horse to win in each race of the tournament, and each winning selection adds to their point total. Players can go head-to-head, or play against larger numbers of bettors. At the end of the tournament, the player with the most points wins a cash prize. DerbyWars keeps a percentage of the tournament "pool" for itself, and none of the money goes to the race meets where the races used in the contest were run.

---

[1] http://blog.derbywars.com/about-us/
[2] http://blog.derbywars.com/official-rules-1/

34. This is indisputably a form of wagering on the results of horse races, which is not in compliance with federal or state laws because the consents required under the IHA have not been given and DerbyWars does not hold a license permitting it to accept wagers from California, Florida, Maryland, or Oregon.

35. It also does not come within the fantasy sport carve out set forth in the UIGEA, because the winning contestant is determined by being the player who is "*most successful in selecting winning horses in actual horse races at actual licensed tracks*" which takes the player out of the fantasy sports carve out found in the UIGEA which does not apply if the winning outcome is based on "*any performance or performances of any single real-world team or any combination of such teams, or solely on any single performance of an individual athlete in any single real-world sporting or other event*."

36. The only reasonable interpretation of the term "team" as used in the UIGEA as applied to horseracing is that a "team" is defined as a horse or a horse and its jockey. Thus, DerbyWars' handicapping tournaments (which are essentially parlays) fall outside of the exceptions set forth in Section 5362 (ix), in that the winning outcome is based on the performances of a combination of teams (horses). In the same manner that the fantasy carve-out does not include selecting six winning teams from six football games, it cannot include selecting six winning horses from six races.

37. As currently conducted, DerbyWars is in violation of the IHA, California *Business & Professions Code* § 19595, and the *Illegal Gambling Business Act of 1970*, 18 U.S.C. § 1955 which criminalizes an "illegal gambling business," which is a gambling business in violation of State law.

**FIRST CLAIM FOR RELIEF – AGAINST ALL DEFENDANTS**

(Violation of the *Interstate Horse Racing Act*, 15 U.S.C. §3001, *et seq.*)

38. PLAINTIFFS incorporate paragraphs 1 – 37 above, as if set forth in full herein.

39. The IHA permits only interstate wagering on horse racing that has

-10-

received the authorizations required under the IHA. Section 3003 of the IHA provides that: "No person may accept an interstate off-track wager except as provided in this Act."

40. Section 3004 of the IHA requires interstate wagering to receive authorization from: 1) the host racing association (and its respective horsemen's group), 2) the host racing commission, and 3) the off-track racing commission. 15 U.S.C. § 3004.

41. The states of California, Florida, Maryland and Oregon allow only wagering on horse racing by licensed entities.

42. DerbyWars accepts interstate off-track wagers that do not comply with the IHA or applicable state law on race meets at the horse tracks operated by PLAINTIFFS in California, Florida, Maryland and Oregon.

43. PLAINTIFFS do not receive any compensation from the amounts bet at DerbyWars, even though the bettors are wagering on the races run at PLAINTIFFS' race meets. Therefore, the actions and omissions of DerbyWars have (and continue to) directly cause damages to PLAINTIFFS by depriving them of the compensation to which they are entitled under state and Federal law.

44. 15 U.S.C. §3005 sets forth the damages recoverable by PLAINTIFFS for these violations of the IHA by DerbyWars. Section 3005 provides that:

> "Any person accepting any interstate off-track wager in violation of this Act shall be civilly liable for damages to the host State, the host racing association and the horsemen's group. Damages for each violation shall be based on the total of off-track wagers as follows:
>
> . . . .
>
>   (2) If such interstate off-track wager was of a type not accepted at the host racing association, the amount of damages shall be determined at the rate of takeout prevailing at the off-track betting system for that type of wager and shall be distributed according to the same formulas as in

-11-

COMPLAINT, DEMAND FOR JURY TRIAL

paragraph (1) above."

45.  15 U.S.C. §3006 further provides that host racing associations, like PLAINTIFFS, may commence a civil action against any person in violation of the IHA, for both injunctive relief and damages.

46.  As a direct and proximate result of the acts and omissions of DerbyWars PLAINTIFFS are entitled to injunctive relief and an award of damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF – AGAINST ALL DEFENDANTS
### (Violation of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. §§ 1961, *et seq.*)

47.  PLAINTIFFS incorporate paragraphs 1 – 37 above, as if set forth in full herein.

48.  The *Racketeer Influenced and Corrupt Organizations Act,* provides that: "As used in this chapter

   (1) **'racketeering activity' means (A) any act or threat involving** . . . **gambling**, which is chargeable under State law and punishable by imprisonment for more than one year; (B) **any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1955 (relating to the prohibition of illegal gambling businesses)**, . .

   . . .

   (3) 'person' includes any individual or entity capable of holding a legal or beneficial interest in property;

   (4) 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

   (5) 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this

chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961 (emphasis added).

49. PLAINTIFFS are "persons" as defined in 18 U.S.C. § 1961, because each is an entity capable of holding a legal or beneficial interest in property.

50. DerbyWars is a "person" as defined in 18 U.S.C. § 1961, because it is an entity capable of holding a legal or beneficial interest in property, and it is an "enterprise" as defined in 18 U.S.C. § 1961, because it is a legal entity.

51. DerbyWars' has engaged in a pattern of racketeering activity that takes place across state lines, affecting interstate commerce, in that DerbyWars has accepted multiple bets from individuals in multiple states that qualify as "racketeering activity" as defined in 18 U.S.C. § 1961, because the actions are indictable under 18 U.S.C. Section 1955. These acts are related and continuous.

52. 18 U.S.C. § 1961(a) states that: "(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

53. DerbyWars used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise.

54. 18 U.S.C. § 1961(b) states that: "(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

55. DerbyWars acquired and has maintained interests in and control of the enterprise through a pattern of racketeering activity.

56. DerbyWars' numerous and ongoing predicate acts are a pattern of activity

that involves gambling; specifically, gambling that is in violation of the *Illegal Gambling Business Act of 1970*, 18 U.S.C. § 1955 which provides that: "(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both." An "illegal gambling business" means a gambling business which: (i) is a violation of the law of a State or political subdivision in which it is conducted; (ii) "involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day."

57. DerbyWars violates California *Business & Professions Code* § 19595, and therefore, also violates 18 U.S.C. § 1955, inasmuch as it is not licensed by the State of California to accept wagers on horse racing, and it has been operating for more than 30 days, and it has conducted business that made more than $2,000.

58. 18 U.S.C. § 1964 provides that: " (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

59. As a direct and proximate result of the racketeering activities of DerbyWars, and its violations of 18 U.S.C. § 1962 (a) and (b), PLAINTIFFS have been injured in their business and property in that DerbyWars has deprived PLAINTIFFS of the compensation to which they are entitled for bets placed on races run at the race meets that they operate, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF – AGAINST ALL DEFENDANTS
**(Violation of California *Business & Professions Code* §§ 17200, *et. seq.*)**

60. PLAINTIFFS incorporate paragraphs 1 – 37 above, as if set forth in full herein.

61. California *Business & Professions Code* § 17200 provides that:

"As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

62. DerbyWars' wrongful acts as alleged in this Complaint, constitute unfair business practices both under the common law of the State of California, within which these acts have occurred, and California *Business & Professions Code* §§ 17200, *et seq.*

63. DerbyWars' acts of unfair business practices have caused and continue to cause damage and injury to PLAINTIFFS, while earning profits for DerbyWars.

64. As a direct and proximate result of the acts and omissions of DerbyWars as alleged in this Complaint, PLAINTIFFS have suffered damages and incurred additional expenses, the precise amount of which has not been ascertained.

65. PLAINTIFFS have suffered, and continue to suffer, irreparable harm by DerbyWars' unfair business practices, have no adequate remedy at law and cannot be adequately compensated for the damages and injuries they have has sustained and will sustain if DerbyWars is permitted to continue to operate its gambling operation. PLAINTIFFS seek a permanent injunction, as expressly permitted by California *Business & Professions Code* § 17200, enjoining and restraining DerbyWars.

66. As a direct and proximate result of the acts and omissions of DerbyWars in violation of common law and California *Business & Professions Code* § 17200, *et seq.*, PLAINTIFFS are entitled to restitution of profits wrongfully earned by DerbyWars, and attorney's fees and costs, in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF – AGAINST ALL DEFENDANTS**
**(Intentional Interference With Prospective Economic Advantage)**

67. PLAINTIFFS incorporate paragraphs 1 – 37 above, as if set forth in full herein.

68. There exists a non-contractual, economic relationship between PLAINTIFFS and prospective bettors on the horse races run at the race meets operated by PLAINTIFFS containing a probability of future economic benefits accruing to PLAINTIFFS in the form of compensation PLAINTIFFS receive from legal bets placed on those races.

69. DerbyWars knew of this economic relationship because the individuals associated with DerbyWars have experience in the horse racing industry.

70. DerbyWars intentionally disrupted these beneficial relationships when it offered bettors a means to place bets on horse races that violated the IHA, and California *Business & Professions Code* §§ 17200 *et seq*, California *Business & Professions Code* § 19595, *RICO* and 18 U.S.C. § 1955.

71. The above actions of DerbyWars has caused a disruption of the above described economic relationship in that many prospective bettors have placed bets through DerbyWars website, rather than placing bets through proper channels, thereby depriving PLAINTIFFS of their compensation.

72. As a direct result, PLAINTIFFS have suffered damages as a proximate result of the actions of DerbyWars in a sum to be determined at trial.

73. The aforementioned acts of DerbyWars were willful, fraudulent and malicious, and PLAINTIFFS are therefore entitled to an award of punitive and exemplary damages in an amount to punish and set an example of DerbyWars.

**WHEREFORE**, PLAINTIFFS pray for Judgment against DerbyWars, as follows:

**First Claim for Relief – Violation of the IHA:**

1. For monetary damages as set forth in 31 U.S.C. § 3005, in an amount to be proven at trial;

2. For injunctive relief as provided in 15 U.S.C. §3006;

**Second Claim for Relief – RICO Violations:**

1. For treble damages as provided in 18 U.S.C. § 1964;

2. For their attorneys' fees as provided 18 U.S.C. § 1964, and costs to the extent allowed by law;

**Third Claim for Relief – Violation of** *Business & Professions Code* **§17200,** *et seq.*:

1. For monetary damages in an amount to be determined at trial;
2. For restitution of profits;
3. For injunctive relief;
4. For their attorney's fees and costs;

**Fourth Claim for Relief – Interference with Prospective Economic Advantage:**

1. For monetary damages in an amount to be determined at trial;
2. For punitive and exemplary damages;

**All Claims for Relief:**

1. For such other, further and different relief as this Court deems just and proper.

# DEMAND FOR JURY TRIAL

PLAINTIFFS hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: December 2, 2015

CORBETT, STEELMAN & SPECTER
A Professional Law Corporation


By: /s/ Richard B. Specter
Richard B. Specter
Attorneys for PLAINTIFFS