1  MATTHEW P. KANNY (State Bar No. 167118)
2  E-mail: mkanny@manatt.com
   MAURA K. GIERL (State Bar No. 287430)
3  E-mail: mgierl@manatt.com
   MANATT, PHELPS & PHILLIPS, LLP
4  11355 West Olympic Boulevard
   Los Angeles, California 90064-1614
5  Tel.:  (310) 312-4000; Fax:  (310) 312-4224

6  *Attorneys for Defendant*
7  HORSE RACING LABS, LLC

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11

12

13  LOS ANGELES TURF CLUB,            No. 2:15-cv-09332-SJO (JEMx)
    INCORPORATED, a California
14  Corporation, *et al.*,            Honorable S. James Otero
                                      Courtroom No. 1
15          Plaintiffs,
                                      **DEFENDANT'S NOTICE OF MOTION**
16      vs.                           **AND MOTION TO DISMISS SECOND**
                                      **AND FOURTH CAUSES OF ACTION**
17  HORSE RACING LABS, LLC, a         **IN PLAINTIFFS' COMPLAINT**
    Delaware Limited Liability        **PURSUANT TO FED. R. CIV. P.**
18  Company (a/k/a IMMERSE, LLC),     **12(b)(6) AND MOTION TO STRIKE**
    d/b/a DERBYWARS, and DOES 1       **PORTIONS OF COMPLAINT**
19  through 10, inclusive,            **PURSUANT TO FED. R. CIV. P. 12(f);**
                                      **MEMORANDUM OF POINTS AND**
20          Defendants.               **AUTHORITIES IN SUPPORT**
                                      **THEREOF**
21
                                      Hearing Date:     April 25, 2016
22                                    Hearing Time:     10:00 a.m.
23
                                      Complaint Served:  December 3, 2015
24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTE THAT** on April 25, 2016 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom No. 1 of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California 90012, Defendant Horse Racing Labs, LLC, doing business as Derby Wars ("Derby Wars"), by and through its undersigned attorneys, will and hereby does move:  (1) under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the second and fourth claims set forth in Plaintiffs Los Angeles Turf Club, Inc., Los Angeles Turf Club II, Inc., Pacific Racing Association,  Pacific Racing Association II,  Gulfstream Park Racing Association, Inc., Oregon Racing Inc., Maryland Jockey Club of Baltimore City, Inc., and Laurel Racing Association, Inc.'s (collectively, "Plaintiffs") Complaint; and (2) under Rule 12(f) of the Federal Rules of Civil Procedure, to strike the word "damages" from paragraph 63 of the Complaint, found at 15:11, and paragraphs 64 and 66 of the Complaint and paragraphs 1, 2 and 4 of the Third Claim for Relief in the Complaint in their entirety, found at 15:12-14, 15:21-24, 17:5, 17:6 and 17:8, respectively.

The grounds for Derby Wars's motion to dismiss are that Plaintiffs have failed to state valid claims upon which relief can be granted against Derby Wars for an alleged violation of the Racketeering Influence and Corruption Act, 18 U.S.C. § 1961, *et seq*., and for intentional interference with a prospective economic advantage.  The grounds for Derby Wars's motion to strike are that Plaintiffs improperly seek disgorgement of Derby Wars's profits as well as monetary damages and attorney's fees, which are not available remedies under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

This motion is based on this notice of motion, the accompanying memorandum of points and authorities, the concurrently filed proposed order, all

other pleadings and papers on file in this action, and such argument or evidence that the Court may consider at or before the hearing on this motion.

Pursuant to Local Rule 7-3, this motion is made following the in-person conference of counsel, which took place on January 15, 2016.  During the conference, counsel for the parties thoroughly discussed the substance of the arguments set forth herein, as well as potential resolution of the disagreements, in an attempt to eliminate the need for this motion.  The parties were unable to reach an agreement, necessitating this motion.

Dated:  February 22, 2016

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP
Matthew P. Kanny
Maura K. Gierl

By:  /s/ Matthew P. Kanny
Matthew P. Kanny
*Attorneys for Defendant*
HORSE RACING LABS, LLC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................... 1

II. PLAINTIFFS' ALLEGATIONS ............................................... 4

III. LEGAL STANDARD ............................................................ 6

    A. Rule 12(b)(6) Motion to Dismiss ....................................... 6

    B. Rule 12(f) Motion to Strike .............................................. 7

IV. ARGUMENT ...................................................................... 8

    A. Plaintiffs' RICO Claim Is Fatally Defective and Should Be Dismissed ................................................................ 8

        1. Plaintiffs' RICO Claim Fails Because They Allege Only a Single Violation of 18 U.S.C. § 1955, and Therefore Do Not Allege a "Pattern" of Racketeering Activity ...................... 8

        2. Plaintiffs' RICO Claim Fails Because Plaintiffs' Alleged Injury is Too Speculative to Meet RICO's Standing Requirements ......................................................... 10

        3. Plaintiffs' RICO Claim Fails Because Plaintiffs Have Not Alleged a "Separate and Distinct Injury" As Required Under RICO Sections 1962(a) and 1962(b) ........................... 14

        4. Plaintiffs Fail to State a Claim Under Section 1962(b) Because They Do Not Allege that Derby Wars Acquired or Maintained an Interest or Control Over an Enterprise Through Any Racketeering Activity ................................ 16

    B. Plaintiffs Fail to State a Claim for Intentional Interference with a Prospective Economic Advantage ................................... 17

        1. Plaintiffs Fail to Plead an Existing Economic Relationship Between Them and a Third Party .................................... 18

        2. Plaintiffs Fail to Allege that Derby Wars's Conduct Was the Proximate Cause of the Harm to Plaintiffs (If Any) ......... 20

    C. The Court Should Strike Plaintiffs' Requests for "Restitution of Profits," Monetary Damages and Attorney's Fees Under Their California UCL Claim ..................................................... 21

        1. Plaintiffs' Request for "Restitution of Profits" Is An Improper Request for Nonrestitutionary Disgorgement Which Is Not Recoverable Under the UCL ......................... 21

        2. "Damages" Are Also Not Recoverable Under The UCL ......... 22

        3. Plaintiffs' Request for Attorneys' Fees Should Also Be Stricken .............................................................. 23

V. CONCLUSION ................................................................. 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) .................................................... 2, 12, 13, 14

*Architectural Mailboxes, LLC v. Epoch Design, LLC*,
Case No. 10-CV-974-DMS (CAB), 2011 WL 1630809 (S.D. Cal.
Apr. 28, 2011)................................................................................. 19

*Asghari v. Volkswagen Grp. of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013)............................................. 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................... 7

*Balistreri v. Pacifica Police Dep't.*,
901 F.2d 696 (9th Cir. 1990) ............................................................ 7

*Beasley v. Wells Fargo Bank*,
235 Cal. App. 3d 1407 (1991)........................................................ 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................... 7

*Boyle v. United States*,
556 U.S. 938 (2009) ........................................................................ 10

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) .......................................................... 10

*Cedar Swamp Holdings, Inc. v. Zaman*,
487 F. Supp. 2d 444 (S.D.N.Y. 2007) ............................................... 2

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Telephone, Co.*,
20 Cal. 4th 163 (1999).................................................................... 23

*Chi Pham v. Capital Holdings, Inc.*,
Case No. 10CV0971-LAB, 2011 WL 3490297 (S.D. Cal. Aug. 9,
2011)......................................................................................... 15, 16

*Craighead v. E.F. Hutton & Co.*,
899 F.2d 485 (6th Cir. 1990) .......................................................... 14

*Damabeh v. 7-Eleven, Inc.*,
Case No. 12-CV-1739, 2013 WL 1915867 (N.D. Cal. May 8, 2013) ............... 19

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*DDR Constr. Servs. v. Siemens Indus.*,
   770 F. Supp. 2d 627 (S.D.N.Y. 2011) ................................................. 11

*Dean Witter Reynolds, Inc. v. Superior Court*,
   211 Cal. App. 3d 758 (1989), *reh'g denied and opinion modified*
   (1989).......................................................................................... 23

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) .......................................................... 11

*Doan v. Singh*,
   Case No. 1:13-cv-00531, 2013 WL 4648554 (E.D. Cal. Aug. 29,
   2013) .............................................................................................. 8

*Ernie Ball, Inc. v. Earvana, LLC*,
   Case No. CV 06-0384 FMC, 2006 WL 4941831 (C.D. Cal. July 21,
   2006) .............................................................................................. 8

*F.M. Tarbell Co. v. A & L Partners*,
   Case No. 10-CV-1589 PSG (Ex), 2011 WL 1153539 (C.D. Cal.
   Mar. 23, 2011) .............................................................................. 19

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S.
   517 (1994)...................................................................................... 7

*Figueroa Ruiz v. Alegria*,
   896 F.2d 645 (1st Cir. 1990) ............................................................ 8

*Hemi Group, LLC v. City of New York*,
   559 U.S. 1 (2010) ................................................................. 2, 11, 14

*Hibbs-Rines v. Seagate Techs., LLC*,
   Case No. C 08-05430 SI, 2009 WL 513496 (N.D. Cal. Mar. 2,
   2009)............................................................................................. 21

*Holmes High Rustler, LLC v. Gomez*,
   Case No. 15-CV-02086-JSC, 2015 WL 9258080 (N.D. Cal. Dec.
   18, 2015)....................................................................................... 12

*In re Honey Transshipping Litig.*,
   87 F. Supp. 3d 855 (N.D. Ill. 2015).................................................. 12

*Jablon v. Dean Witter & Co.*,
   614 F.2d 677 (9th Cir. 1980) ............................................................ 7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Jalili v. Far East Nat'l Bank*,
Case No. C 12-5962 SBA, 2013 WL 5312716 (N.D. Cal. Sept. 23, 2013) ................................................................................... 16, 17

*James Cape & Sons Co. v. PCC Const. Co.*,
453 F.3d 396 (7th Cir. 2006) ................................................................. 13

*Jungers v. Benton Rural Elec. Ass'n*,
Case No. CV-07-208-RHW, 2008 WL 819029 (E.D. Wash. Mar. 25, 2008) ................................................................................... 13, 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ............................................................... passim

*Lazar v. Trans Union LLC*,
195 F.R.D. 665 (C.D. Cal. 2000) ........................................................... 7

*Lectrodryer v. SeoulBank*,
77 Cal. App. 4th 723 (2000) ................................................................ 22

*Lee v. Gen. Nutrition Cos.*,
Case No. CV 00-13550 LGB, 2001 WL 34032651 (C.D. Cal. Nov. 26, 2001) ................................................................................. 7

*Lightning Lube v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993) ........................................................... 16, 17

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
431 F.3d 353 (9th Cir. 2005) ............................................................... 10

*Mattel, Inc. v. MGA Entm't, Inc.*,
782 F. Supp. 2d 911 (C.D. Cal. 2010) ................................................... 8

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ............................................................... 6

*Miletak v. Allstate Ins. Co.*,
Case No. C 06-03778 JW, 2009 WL 1371412 (N.D. Cal. Mar. 5, 2009) ............................................................................. 15, 16, 17

*Moss v. United States Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ............................................................... 7

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
981 F.2d 429 (9th Cir. 1992) ............................................................... 14

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Olson v. Auto. Club of So. Cal.*,
    42 Cal. 4th 1142 (2008) .......................................................................... 23

*Pratap v. Wells Fargo Bank, N.A.*,
    63 F. Supp. 3d 1101 (N.D. Cal. 2014) ...................................................... 8

*Prime Partners IPA of Temecula, Inc. v. Chaudhuri*,
    Case No. 11-cv-1860-ODW, 2012 WL 1669726 (C.D. Cal. May 14,
    2012) ......................................................................................................... 11

*RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*,
    661 F. Supp. 2d 218 (E.D.N.Y. 2010) ..................................................... 12

*Sanabria v. United States*,
    437 U.S. 54 (1978) ........................................................................... 2, 9, 10

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ..................................................................... 9

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ................................................................. 17

*Sedima v. Imrex Co.*,
    473 U.S. 479 (1985) ................................................................................. 10

*Shabaz v. Polo Ralph Lauren Corp.*,
    586 F. Supp. 2d 1205 (C.D. Cal. 2008) ..................................................... 7

*Stewart v. Am. Ass'n of Physician Specialists*,
    Case No. 13-cv-1670-ODW, 2014 WL 2197795 (C.D. Cal. May 27,
    2014) ................................................................................................... 18, 19

*Swiss Am. Trading Corp. v. Regal Assets, LLC*,
    Case No. 14-CV-4960 DDP, 2015 WL 631569 (C.D. Cal. Feb. 13,
    2015) ......................................................................................................... 19

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .......................................................... passim

*Tele Atlas N.V. v. Navteq Corp.*,
    397 F. Supp. 2d 1184 (N.D. Cal. 2005) .............................................. 18, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................... 7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

v

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

# TABLE OF AUTHORITIES
### (continued)

Page

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*,
911 F. Supp. 2d 1118 (E.D. Wash. 2012) ..................................................... 14, 16

*United States v. Bennett*,
623 F.2d 52 (8th Cir. 1980) ........................................................................... 9, 10

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002) ................................................................................. 7

*Wagh v. Metris Direct Servs., Inc.*,
348 F.3d 1102 (9th Cir. 2003) ......................................................................... 8, 15

*Walter v. Drayson*,
538 F.3d 1244 (9th Cir. 2008) ............................................................................... 7

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
42 Cal. App. 4th 507 (1996) ............................................................... 17, 18, 19, 20

*Westways World Travel Corp. v. AMR Corp.*,
182 F. Supp. 2d 952 (C.D. Cal. 2001) .................................................................. 15

## STATUTES

15 U.S.C. § 3001 ...................................................................................................... 1

18 U.S.C. § 1955 ......................................................................................... 2, 5, 9, 10

18 U.S.C. § 1955(a) .................................................................................................. 9

18 U.S.C. § 1961, *et seq.* ......................................................................................... 1

18 U.S.C. § 1961(1) ................................................................................................ 10

18 U.S.C. § 1961(5) .................................................................................................. 9

18 U.S.C. § 1962(a) ................................................................................ 3, 14, 15, 16

18 U.S.C. § 1962(b) ................................................................................ 3, 14, 16, 17

18 U.S.C. § 1962(c) ........................................................................................... 14, 15

18 U.S.C. § 1962(a)-(c) ............................................................................................ 9

Cal. Bus. & Prof. Code § 17200 ............................................................................. 1

Cal. Bus. & Prof. Code § 19595 ........................................................................... 10

Cal. Bus. & Prof. Code § 19661 ........................................................................... 10

Cal. Code Civ. Proc. § 1021 ................................................................................. 23

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

vi

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

**TABLE OF AUTHORITIES**
**(continued)**

                                                                    **Page**
Cal. Penal Code § 19 ................................................................ 10

**RULES**

Fed. R. Civ. P. 12(b)(6) ....................................................... 1, 6, 7

Fed. R. Civ. P. 12(f)............................................................. 1, 7

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

vii

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Horse Racing Labs, LLC ("Derby Wars") hereby respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss, under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Second Claim for Relief under the Racketeering Influence and Corruption Act, 18 U.S.C. § 1961, *et seq.*, and Fourth Claim for Relief for Intentional Interference with Prospective Economic Advantage; and its Motion to Strike, under Federal Rule of Civil Procedure 12(f), the word "damages" from paragraph 63 of the Complaint, paragraphs 64 and 66 of the Complaint in their entirety, and paragraphs 1, 2 and 4 of the Third Claim for Relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

## I.  INTRODUCTION

Fantasy contests are incredibly popular games, in which millions of sports enthusiasts participate.  Derby Wars is one among several operators in the horse racing industry that run online horse racing fantasy contests wherein participants are awarded points based on how their team of horses collectively performs over a series of different races.

Apparently believing that these participants would wager at their tracks but for Derby Wars's online contests, Plaintiffs bring this lawsuit seeking to obtain a share of Derby Wars's revenue.  Specifically, Plaintiffs contend that the entry fees to participate in Derby Wars's fantasy contests constitute "wagering" on horse races (which Derby Wars disputes), and allege claims under the Interstate Horseracing Act, 15 U.S.C. § 3001 ("IHA"), the Racketeering Influence and Corruption Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and for Intentional Interference with Prospective Economic Advantage ("Intentional Interference").  Plaintiffs' RICO and Intentional

Interference claims fail, as does Plaintiffs' requested relief for money damages, restitution of profits and attorney's fees under their UCL claim.[1]

Plaintiffs fail in their half-hearted attempt to state a claim under RICO – the "thermonuclear device" of civil litigation.  *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 449 (S.D.N.Y. 2007).

*First*, Plaintiffs have not alleged a "pattern" of racketeering acts – here, the alleged violation of 18 U.S.C. § 1955 – because they only allege a single purported illegal gambling business, the Derby Wars website.  Although Plaintiffs allege that Derby Wars has accepted "multiple bets" in the form of entry fees, the Supreme Court has made clear that in passing Section 1955, "Congress did not . . . define discrete acts of gambling as independent federal offenses."  *Sanabria v. United States*, 437 U.S. 54, 70 (1978).  Rather, "[i]t is participation in the gambling *business*" that violates Section 1955.  *Id.* (emphasis added).  Because Plaintiffs only allege a single gambling business, they only allege a single violation of Section 1955, and thus do not allege a "pattern" of racketeering activity.

*Second*, Plaintiffs' purported injury – the loss of potential business and fees – is insufficient to establish an injury under RICO.  Plaintiffs allege that they were injured because consumers who participate in Derby Wars's contests *might have* instead used Plaintiffs' services.  But in *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010), the Supreme Court made clear that such speculative injuries, based on the independent conduct of third-parties, are insufficient to sustain a claim under RICO.  Moreover, both the Supreme Court and the Ninth Circuit have held that loss of potential business is insufficient to sustain a claim under RICO.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008).

---

[1] In addition, Derby Wars's fantasy contests do not constitute illegal wagering under the IHA.  Although Derby Wars does not move to dismiss Plaintiffs' IHA claim through this motion, it in no way waives its arguments regarding the validity or merit of the IHA claim (there is none) or more generally whether Derby Wars's contests constitute illegal gambling (they do not).

1    *Third*, under RICO Sections 1962(a) and 1962(b) – the only RICO sections at

2    issue here – Plaintiffs are required to allege an injury separate and distinct from the

3    injury flowing from the predicate act of purporting to operate a gambling business.

4    Plaintiffs' alleged injury – the alleged loss of business – results from the alleged

5    predicate act of operating an illegal gambling business that "lures" customers away

6    from Plaintiffs' tracks.  Plaintiffs fail to plead a separate and distinct injury, as

7    required under RICO Sections 1962(a) and 1962(b).

8    *Finally*, Plaintiffs' Section 1962(b) claim also fails because Plaintiffs have

9    not alleged that Derby Wars acquired or gained control of the enterprise – Derby

10   Wars itself – through a pattern of racketeering activity.  Instead, they allege that

11   Derby Wars has an "otherwise legitimate" interest in itself.  This is insufficient

12   under RICO Section 1962(b).

13   Plaintiffs' threadbare and conclusory Intentional Interference claim is equally

14   doomed for at least two reasons.  *First*, Plaintiffs have not alleged, as they must, an

15   economic relationship between Plaintiffs and any third party, with the probability of

16   a future benefit to them.  Instead, Plaintiffs allege only that they have an economic

17   relationship with vague and broad class of "prospective bettors" with whom they

18   have a *potential* for a relationship.  This is insufficient.  And, *second*, because of

19   Plaintiffs' vague and conclusory pleading, they have certainly not plausibly pleaded

20   that the harm they suffered (if any) was caused by anyone, let alone Derby Wars.

21   Finally, Plaintiffs cannot, through their UCL claim, recover disgorgement of

22   profits, money damages or attorney's fees.  Because these remedies are not

23   available to UCL claimants as a matter of law, their references to and requests for

24   this relief should be stricken from the Complaint.

25   In short, Plaintiffs have not, and cannot, plead a RICO or Intentional

26   Interference claim; nor can they demand restitution of profits, money damages or

27   attorney's fees under the UCL.  The Court should grant Derby Wars's motion to

28   dismiss and motion to strike without leave to amend.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

3

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

## II.   **PLAINTIFFS' ALLEGATIONS**

Plaintiffs allege that Horse Racing Labs is the owner and operator of the Internet website Derby Wars, an online horse racing contest business. (*See* Complaint ("Compl.") (Docket No. 1) ¶ 11.) Plaintiffs are horse racing associations that operate horse racing meets in California, Florida, Oregon, and Maryland. (*Id.* ¶¶ 3-10, 23.) Plaintiffs – and other wagering entities with contractual relationships with Plaintiffs – conduct wagers at Plaintiffs' race meets, both online and at the meets. (*Id.* ¶ 24.)

According to Plaintiffs, Derby Wars operates fantasy contests that purport to offer "online wagering opportunities" to people from across the country. (*Id.* ¶ 32.) Plaintiffs cite to Derby Wars's website, which states that "Derby Wars is a skill based fantasy competition," the winners are "awarded [prizes] based on their abilities to skillfully pick horses and compete against other players over a series of races," and "[e]ach contest . . . is a skill-based competition." (*Id.*) Plaintiffs assert that players in Derby Wars's contests participate in tournaments in which they are awarded points based on their selection of a team of horses to win horse races. (*Id.* ¶¶ 32-33.) When players select winning horses, a certain number of points are added to their point total. (*Id.* ¶ 33.) At the end of each contest, the players with the most points win cash prizes.[2] (*Id.* ¶ 33.)

Derby Wars's contests have a fixed entry fee and a fixed prize pool. (*Id.* ¶ 32.) Plaintiffs allege that Derby Wars keeps a portion of the entry fees for itself, and does not distribute its earnings to Plaintiffs. (*Id.* ¶ 33.) Plaintiffs further claim that they have not authorized Derby Wars to operate online tournaments involving their race meets. (*Id.* ¶ 32.)

---

[2] Plaintiffs acknowledge that they run – and allow others to run – similar online contests and tournaments at their own tracks. (Compl. ¶ 24; *see also The Stronach Group Ultimate Betting Challenge*, SantaAnita.com, http://www.santaanita.com/events/the-stronach-group-ultimate-betting-challenge/#.VspFbBiRJP (last visited Feb. 22, 2016).)

1   Plaintiffs argue, in the most conclusory fashion, that Derby Wars's contests

2   are "indisputably a form of wagering" (*Id.* ¶ 34), and that Derby Wars is thus

3   operating an illegal gambling business.  Plaintiffs assert claims for (1) violations of

4   the IHA; (2) violations of RICO; (3) violation of California's UCL; and

5   (4) intentional interference with Plaintiffs' prospective economic advantage.

6   With respect to the RICO claim, Plaintiffs allege that Derby Wars is an

7   "enterprise" under RICO.  (*See* Statement of Compliance with RICO Order ("RICO

8   Statement" or "RICO Stmt.") (Docket No. 20) ¶ 6(e).)  Plaintiffs contend that

9   Derby Wars is engaged in a pattern of racketeering activity by "accept[ing] multiple

10   bets from individuals in multiple states."  (Compl. ¶ 51; RICO Stmt. ¶ 7.)  Plaintiffs

11   allege that Derby Wars's "actions in accepting interstate bets is racketeering

12   activity . . . in violation of [18 U.S.C. § 1955]."  (Compl. ¶ 56; RICO Stmt. ¶ 16.)

13   This is the only RICO predicate alleged in the Complaint or in the RICO Statement.

14   Plaintiffs further allege that after Derby Wars generates income through its

15   online tournaments, it then invests that money back into itself to "entice more

16   bettors" to spend money on its fantasy contests, where they would otherwise spend

17   money Plaintiffs' own betting and contests.  (RICO Stmt. ¶ 4.)  As a result,

18   Plaintiffs argue, Derby Wars has "lure[d] away" bettors from Plaintiffs' tracks, and

19   to contest play on the Derby Wars website.  (*Id.* ¶ 11(b).)  Plaintiffs argue that one

20   way Derby Wars has achieved this is by offering better take-out rates, or the money

21   retained by the host from entry fees, than Plaintiffs offer.  (*Id.* ¶ 4.)

22   Plaintiffs allege that they have suffered injury because they have been

23   "deprived from income derived from wagers on races run at race meets operated by

24   Plaintiffs" and "decreased business as a result of the actions of [Derby Wars]."

25   (RICO Stmt. ¶ 15; *see also* Compl. ¶ 59.)  Plaintiffs further allege that, according to

26   Derby Wars, Derby Wars's customers state that they "split their available bankrolls

27   80/20 in favor of parimutuel versus contest play."  (RICO Stmt. ¶ 4.)

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

With respect to Plaintiffs' Intentional Interference claim, Plaintiffs allege that they had "non-contractual, economic relationship[s]" with "***prospective*** bettors on the horse races run at the race meets" Plaintiffs operate. (*Id.* ¶ 68 (emphasis added).) According to Plaintiffs, Derby Wars knew of these economic relationships because they have "experience in the horse racing industry." (*Id.* ¶ 69.) Plaintiffs claim that Derby Wars "intentionally disrupted these beneficial relationships when it offered bettors a means to place bets on horse races" that violated various laws, and that Derby Wars's actions actually disrupted Plaintiffs' relationships because "many prospective bettors have placed bets through Derby Wars website (sic), rather than placing bets through proper channels." (*Id.* ¶¶ 70-71.) Plaintiffs allege that as a result of Derby Wars's conduct, they have "suffered damages" and have been deprived of compensation. (*Id.* ¶¶ 71-72.) Plaintiffs do not identify any specific prospective bettor that did not place bets at Plaintiffs' tracks because of Derby Wars's online contests.

Finally, with respect to Plaintiffs' UCL claim, Plaintiffs allege that Derby Wars is violating the California UCL, based upon its alleged violation of the IHA and RICO. (Compl. ¶ 62.) As a result, Plaintiffs claim that they are "entitled to restitution of profits wrongfully earned by Derby Wars," as well as monetary damages and attorney's fees. (*Id.* ¶ 66.)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims and allegations asserted in the complaint. Dismissal is required if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Dismissal is also required if the complaint alleges facts which demonstrate that the complaint is barred as a matter of law. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682

(9th Cir. 1980).  Although the court must accept all factual allegations pleaded in the complaint as true, it may not accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (to survive a motion to dismiss, plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face); *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court may review the face of the complaint, documents attached to the complaint or incorporated therein, and documents subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  In addition, a court may review a party's RICO Compliance Statement, where one has been requested by the court.  *See, e.g.*, *Walter v. Drayson*, 538 F.3d 1244, 1246-47 (9th Cir. 2008) (considering RICO Compliance Statement in ruling on motion to dismiss RICO claims); *Lee v. Gen. Nutrition Cos.*, Case No. CV 00-13550 LGB, 2001 WL 34032651, at *12-15 (C.D. Cal. Nov. 26, 2001) (analyzing factual allegations in plaintiff's RICO Compliance Case Statement in deciding – and granting in part – defendant's motion to dismiss plaintiff's civil RICO claims).

### B.   Rule 12(f) Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A motion to strike may be appropriate where it will streamline the ultimate resolution of the action.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  A court may "strik[e] parts of the prayer for relief when the relief sought is not recoverable as a matter of law.'"  *Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1208 (C.D. Cal. 2008) (quoting *Lazar v. Trans Union LLC*, 195 F.R.D.

665, 668 (C.D. Cal. 2000)); *see also Ernie Ball, Inc. v. Earvana, LLC*, Case No. CV 06-0384 FMC, 2006 WL 4941831, at *2 (C.D. Cal. July 21, 2006) (motions to strike claims for relief are "generally granted if such relief is not recoverable under the applicable law" (quotations omitted).).

## IV.   ARGUMENT

### A.   Plaintiffs' RICO Claim Is Fatally Defective and Should Be Dismissed

To state a claim for damages under RICO, a plaintiff must allege "(1) that the defendant, (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity, (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Doan v. Singh*, Case No. 1:13-cv-00531, 2013 WL 4648554, at *6 (E.D. Cal. Aug. 29, 2013) (internal quotations and citations omitted).  Plaintiffs must further allege that the purported RICO violation "caused injury to his business or property." *Id.*

Plaintiffs must meet a "heavy burden" to establish a RICO claim. *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1023 (C.D. Cal. 2010).  This is because the "mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants." *Id.* (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)).  Thus, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1114 (N.D. Cal. 2014) (quoting *Wagh v. Metris Direct Servs., Inc.*, 348 F.3d 1102, 1108-09 (9th Cir. 2003)).

1.   Plaintiffs' RICO Claim Fails Because They Allege Only a Single Violation of 18 U.S.C. § 1955, and Therefore Do Not Allege a "Pattern" of Racketeering Activity.

Plaintiffs fail to state a claim under RICO because Plaintiffs only alleged a single predicate act:  operation of an alleged single illegal gambling business in violation 18 U.S.C. § 1955.

To state a claim under RICO, a plaintiff must allege a "pattern of racketeering activity," requiring "at least two acts of racketeering activity." 18 U.S.C. §§ 1961(5), 1962(a)-(c). *See also Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) ("A pattern . . . requires at least two acts of racketeering activity.") (internal quotations omitted).

As a RICO predicate, Plaintiffs allege that Derby Wars is violating 18 U.S.C. § 1955.  Section 1955 makes it unlawful to "conduct[], finance[], manage[], supervise[], direct[], or own[] all or part of an illegal gambling business."  18 U.S.C. § 1955(a) (emphasis added).  As the Supreme Court has noted,  "[i]t is participation in the gambling business" that violates Section 1955.  *Sanabria v. United States*, 437 U.S. 54, 70 (1978).  Thus, "[t]he allowable unit of prosecution under § 1955 is defined as participation in a single 'illegal gambling business.'"  *Id.* Thus, even where repeated gambling acts occur over time, where "there is no contention here that more than one business existed," a defendant's conduct constitutes only a single violation of Section 1955.  *United States v. Bennett*, 623 F.2d 52, 54 (8th Cir. 1980).

Here, putting aside the merits of whether Derby Wars is violating Section 1955 (it is not), Plaintiffs only allege a purported single gambling operation: the operation of "an internet website for fantasy sports betting on horse races." (Compl. ¶ 32 (emphasis added).)  In their RICO Statement, Plaintiffs confirm that they are alleging that Derby Wars is operating "an internet gambling operation in the form of an internet website for fantasy sport betting on horses."  (RICO Stmt. ¶ 2 (emphasis added).)  Plaintiffs thus only allege a purported single gambling business – the Derby Wars website – and only a single violation of Section 1955. *See Bennett*, 623 F.2d at 54 (defendant only committed one violation of Section 1955, where "there [was] no contention [that] more than one business existed.").

Nor can Plaintiffs rely on their allegation that Derby Wars purportedly has accepted "multiple bets" in violation of Section 1955, and that these acts are

"related and continuous." (Compl. ¶ 51.)  In enacting Section 1955, Congress did not "define discrete acts of gambling as independent federal offenses." *Sanabria*, 437 U.S. at 70; *see also Bennett*, 623 F.2d at 53 (noting that Congress did not establish a separate offense for each day that $2,000 of gambling business is done).

Put simply, Plaintiffs allege a purported "single gambling business," the Derby Wars website, which "is but a single offense." *Sanabria*, 437 U.S. at 71. Because plaintiffs allege only a single violation of Section 1955, they do not allege a "pattern of racketeering activity," and thus their RICO claim fails as a matter of law. *See Boyle v. United States*, 556 U.S. 938, 949-50 (2009) (noting that a single violation of Section 1955 would not constitute a violation of RICO; to establish a RICO violation, the government would need to prove a "pattern" of violations of Section 1955 or state law[3] gambling crimes that constitute RICO predicates).

### 2.   Plaintiffs' RICO Claim Fails Because Plaintiffs' Alleged Injury is Too Speculative to Meet RICO's Standing Requirements.

Plaintiffs' alleged injury is also too speculative to sustain a RICO claim.  A civil RICO "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985).

But the proximate causation requirements for standing under RICO are more rigorous than standing under Article III.  *See Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975, n.7 (9th Cir. 2008) (proximate causation required for civil RICO standing not met, even though "less rigorous" Article III standing requirements were met).  Thus, "[f]inancial losses, in and of themselves, are insufficient to confer standing under RICO." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir. 2005).  "RICO does not provide a cause of action for all

---

[3] Plaintiffs do not allege any state law gambling crimes as RICO predicates.  While Plaintiffs reference underlying violations of California state law to establish their alleged violation of Section 1955, (RICO Stmt. ¶ 2), they do not allege any of these violations as RICO predicates.  (*See* Compl. ¶¶ 56-57; RICO Stmt. ¶ 2.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

types of injury to property interests, but only for injuries resulting in 'concrete financial loss.'" *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005).

Here, Plaintiffs allege that they suffered injury because consumers who use Derby Wars's purportedly unlawful product *might have* instead used Plaintiffs' services. Such speculation is insufficient under RICO.

*First*, courts have consistently held that an injury resulting from the independent acts of a third-parties are insufficient under RICO. The Supreme Court's decision in *Hemi Group, LLC v. City of New York* is directly on point. 559 U.S. 1 (2010). There, New York City alleged loss of tax revenue due to allegedly unlawful online sales of cigarettes. *Id.* at 4. The Supreme Court held that the City failed to meet RICO's standing requirements because, among other things, the injury was not directly caused by the alleged racketeering activity. *Id.* at 16. Rather, the City's taxpayers had to make their own affirmative decision to not pay legally-required taxes and "the City's harm was directly caused by the customers, not [defendant]." *Id.* at 11.

Here, like in *Hemi Group*, Plaintiffs allege loss of revenue because third-parties – their potential customers – chose to use Derby Wars's services, not Plaintiffs' services. Plaintiffs' harm was thus "directly caused by the customers, not [Derby Wars]." *See id.* Because the direct cause of Plaintiffs' injury is the alleged independent acts of third-parties, Plaintiffs' alleged injury is insufficient under RICO. *See Prime Partners IPA of Temecula, Inc. v. Chaudhuri*, Case No. 11-cv-1860-ODW (FMOx), 2012 WL 1669726, *10 (C.D. Cal. May 14, 2012) (no RICO standing where alleged injury was caused by "the independent decision" of third-parties to terminate their relationships with plaintiff); *DDR Constr. Servs. v. Siemens Indus.*, 770 F. Supp. 2d 627, 653 (S.D.N.Y. 2011) (no RICO standing where "the cause of [plaintiff's] harm was a set of actions . . . entirely distinct from the alleged RICO violation.").

*Second*, courts have consistently held that speculative injuries resulting from the purported loss of potential business is insufficient under RICO.  The Supreme Court's decision in *Anza v. Ideal Steel Supply Corp.* is directly on point.  547 U.S. 451 (2006).  There, plaintiff alleged that defendant failed to charge sales taxes to its customers, allowing defendant to undercut the plaintiff's prices.  *Id.* at 454.  The Supreme Court held that the plaintiff's loss of business was insufficient to meet the requirements of RICO because "[b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [plaintiff's] lost sales were the product of [defendant's conduct]."  *Id.* at 459.

The Ninth Circuit's opinion in *Sybersound Records, Inc. v. UAV Corp.* is also directly on point.  517 F.3d 1137 (9th Cir. 2008).  There, the plaintiff alleged loss of business due the defendant competitor's purported mail fraud, wire fraud, and copyright infringement.  *Id.* at 1141-42, 1147.  The Ninth Circuit held that the plaintiff's RICO allegations were insufficient because a court would have to "engage in a speculative and complicated analysis to determine what percentage of [plaintiff's] decreased sales, if any, were attributable to the" defendant's conduct as opposed to a "[c]ustomer's preference for a competitor's products over [plaintiff's]."  *Id*. at 1148.

Indeed, courts around the country have consistently held that such loss of potential business as a result of alleged racketeering is insufficient to sustain a RICO claim.  *See*, *e.g., Holmes High Rustler, LLC v. Gomez*, Case No. 15-CV-02086-JSC, 2015 WL 9258080, at *5-7 (N.D. Cal. Dec. 18, 2015) (plaintiff's alleged loss of value in property resulting from defendant's hiring of undocumented workers insufficient to sustain a claim under RICO); *In re Honey Transshipping Litig.*, 87 F. Supp. 3d 855 (N.D. Ill. 2015) (loss of business due to defendant gaining a "competitive edge by fraudulently avoiding customs duties and passing on the cost savings to customers" insufficient to sustain a claim under RICO); *RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218, 247 (E.D.N.Y.

2010) (allegation that racketeering acts suppressed plaintiffs as a competitor in the market place insufficient to sustain a claim under RICO); *Jungers v. Benton Rural Elec. Ass'n*, Case No. CV-07-208-RHW, 2008 WL 819029, at *4-5 (E.D. Wash. Mar. 25, 2008) (loss of business to competitor internet service provider insufficient to sustain a claim under RICO); *James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 403 (7th Cir. 2006) (loss of market share due to competitor's bid rigging scheme insufficient to sustain a claim under RICO).

Here, Plaintiffs allege loss of revenue based on speculation that Derby Wars's customers might have used Plaintiffs' services but for the existence of the Derby Wars online fantasy site.  Indeed, Plaintiffs explicitly state that their injury is the result of Derby Wars "entic[ing] more bettors to spend their available bank rolls on fantasy contests, instead of legal pari-mutuel betting," and that, as a result, Derby Wars "is able to promote and maintain its fantasy contests and grow its business by an estimated one hundred percent per year, to the detriment of Plaintiffs."  (RICO Stmt. ¶ 2.)  Plaintiffs further complain that Derby Wars "promotes Derby Wars as a way for bettors to avoid the higher take our rates of parimutuel betting."  (RICO Stmt. ¶ 4.)

Put simply, Plaintiffs' RICO claim is based on speculation that Derby Wars's customers might bet at their tracks if not for the fantasy league option offered by Derby Wars.  Just as in *Anza Steel* and *Sybersound*, Plaintiffs' claims require this court to "engage in a speculative and complicated analysis to determine what percentage of [plaintiff's] decreased sales, if any, were attributable to the" Derby Wars's conduct.  *See Sybersound*, 517 F.3d at 1148.[4]  Moreover, to the extent

---

[4] Both *Anza Steel* and this portion of *Sybersound* were decided under RICO Section 1962(c) (not alleged by Plaintiffs in this case), but both cases are equally applicable here.  In *Anza Steel*, the Supreme Court declined to decide whether the plaintiff's loss of business was cognizable under Section 1962(a) because it had not been analyzed by the Court of Appeals, or sufficiently briefed by the parties.  547 U.S. at 462.  Nevertheless, regardless of whether a claim is brought under Section 1962(a), (b), or (c), a plaintiff must show injury and proximate cause under Section 1962(c).  Since *Anza Steel* and *Sybersound*, at least one Court in the Ninth Circuit has concluded that *Anza Steel's* standing analysis applies equally to claims under

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

1    Plaintiffs were injured (and they were not), their injury was directly caused "by the

2    customers, not [Derby Wars]." *Hemi Group*,  559 U.S. at 11.  Under binding

3    precedent from the Supreme Court and the Ninth Circuit, Plaintiffs fail to state an

4    injury cognizable under RICO.

5               3.    <u>Plaintiffs' RICO Claim Fails Because Plaintiffs Have Not
             Alleged a "Separate and Distinct Injury" As Required Under
6            RICO Sections 1962(a) and 1962(b)</u>.

7         Plaintiffs also fail to allege an injury that is separate and distinct from the

8    injury flowing from the alleged predicate act, as required for a RICO claim brought

9    under Sections 1962(a) and 1962(b).

10        *First*, a plaintiff asserting a violation under Section 1962(a) violation must

11   allege facts showing he was injured by the use of racketeering income.  *Nugget*

12   *Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992).

13   This "investment injury" must be "separate and distinct from the injury flowing

14   from the predicate act." *Sybersound Records, Inc.*, 517 F.3d at 1149; *see also*

15   *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990) (Section

16   1962(a) requires a plaintiff to identify "a separate and traceable injury" from any

17   harm occasioned by the predicate acts).

18        Plaintiffs fail to plead any distinct investment injury.  Again, the Ninth

19   Circuit's decision in *Sybersound* is directly on point, and dispositive here.  There,

20   the plaintiff alleged that the defendant competitor "used the proceeds from their

21   copyright infringements and mail fraud to undercut [plaintiff's] prices," thereby

22   causing loss of business to plaintiff.  517 F.3d at 1150.  The Ninth Circuit held that

23   this alleged loss of business was insufficient to sustain a claim under Section

24   1962(a) because it flowed from the predicate act of copyright infringement.  *Id.*

25   Here, Plaintiffs allege that Derby Wars operates an illegal gambling business.

26   Plaintiffs further allege injury because Derby Wars's business "lure[s]" customers

27

28   Sections 1962(a) and 1962(b).  *See United Bhd. of Carpenters & Joiners of Am. v.
     Bldg. & Constr. Trades Dep't*, 911 F. Supp. 2d 1118, 1125-26 (E.D. Wash. 2012).

away from Plaintiffs.  (RICO Stmt. ¶ 11(b).)  Indeed, Plaintiffs explicitly state that "every bet placed through Derby Wars (instead of through Plaintiffs or an authorized operator) on a race meet run by Plaintiffs results in monetary damages to Plaintiffs, and ill-gotten gains to [Derby Wars]."  (RICO Stmt. ¶ 4).  Like plaintiff in *Sybersound*, Plaintiffs here fail to allege an "injury separate and distinct from the injuries incurred from the predicate act itself."  *See* 517 F.3d at 1150.

Nor can Plaintiffs rely on their allegation that Derby Wars "invests the income that it derives from this racketeering activity in Derby Wars, to entice more bettors to spend their available bank rolls on fantasy contests, instead of legal pari-mutuel betting."  (RICO Stmt. ¶ 2.)  In *Sybersound*, the Ninth Circuit explicitly rejected this argument, stating that "[r]einvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation."  517 F.3d at 1149.  Otherwise, "almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and the distinction between § 1962(a) and § 1962(c) would be meaningless."  *Westways World Travel Corp. v. AMR Corp.*, 182 F. Supp. 2d 952, 960 (C.D. Cal. 2001).  Accordingly, Plaintiffs fail to allege a "separate and distinct" investment injury under Section 1962(a).  *See Chi Pham v. Capital Holdings, Inc.*, Case No. 10CV0971-LAB, 2011 WL 3490297, at *3-4 (S.D. Cal. Aug. 9, 2011) (allegation that plaintiff was injured by defendant's money laundering operation insufficient under Section 1962(a) because injury was caused by the predicate act of money laundering); *Miletak v. Allstate Ins. Co.*, Case No. C 06-03778 JW, 2009 WL 1371412, at *6 (N.D. Cal. Mar. 5, 2009) (rejecting Section 1962(a) claim where "[t]here [were] no allegations of injury other than due to reinvestment that allegedly helped further the initial racketeering activity.").

*Second*, and similarly, a plaintiff alleging a claim under Section 1962(b) must allege an injury "proximately caused by the defendant's control over a RICO enterprise."  *See Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1111 (9th Cir. 2003),

15

1   overruled on other grounds, *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007)

2   (en banc).  Thus, Section 1962(b) "requires the assertion of an injury independent

3   from that caused by the pattern of racketeering." *Lightning Lube v. Witco Corp.*,

4   4 F.3d 1153, 1191 (3d Cir. 1993).  A plaintiff cannot plead a claim under Section

5   1962(b) by simply alleging injury "by the predicate racketeering acts, not by the

6   control or acquisition of an enterprise to which those acts gave rise." *Chi Pham*,

7   2011 WL 3490297, at *4.

8        Here, again, Plaintiffs allege that Derby Wars "lure[s]" customers away from

9   Plaintiffs and that "every bet placed through Derby Wars (instead of through

10   Plaintiffs or an authorized operator) on a race meet run by Plaintiffs results in

11   monetary damages to Plaintiffs, and ill-gotten gains to [Derby Wars]."  (RICO

12   Stmt. ¶¶ 4, 11(b)).  "These allegations are simply another way of stating that

13   [plaintiffs'] injury is attributable to the predicate act . . . which does not give rise to

14   an action under § 1962(b)." *Miletak*, 2009 WL 1371412, at *6.  Because Plaintiffs

15   fail to allege a "separate and distinct" injury proximately caused by Derby Wars's

16   control over the enterprise, they fail to allege a claim under Section 1962(b). *See*

17   *United Bhd. of Carpenters & Joinders of Am.*, 911 F. Supp. 2d at 1126 (dismissing

18   Section 1962(b) claim where "failed to allege a separate and distinct injury from the

19   injuries incurred from the predicate acts performed during the conduct of the

20   enterprise.");  *Jungers*, 2008 WL 819029 (same).

21             4.   <u>Plaintiffs Fail to State a Claim Under Section 1962(b) Because</u>

22                   <u>They Do Not Allege that Derby Wars Acquired or Maintained</u>
<u>an Interest or Control Over an Enterprise Through Any</u>

23                   <u>Racketeering Activity</u>.

24        Finally, Section 1962(b) "makes it unlawful to acquire an interest in or

25   control of an enterprise through a pattern of racketeering activity." *Schreiber*

26   *Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986).  To state a

27   claim under Section 1962(b), a plaintiff must allege that "the defendant's activity

28   led to its control or acquisition over a RICO enterprise." *Jalili v. Far East Nat'l*

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

16

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

1  *Bank*, Case No. C 12-5962 SBA, 2013 WL 5312716, at *6 (N.D. Cal. Sept. 23,

2  2013).  Thus, a plaintiff "must establish that the interest or control of the RICO

3  enterprise by the [defendant] is as a result of racketeering."  *Lightning Lube*, 4 F.3d

4  at 1190.  "It is not enough for the plaintiff merely to show that a person engaged in

5  racketeering has an otherwise legitimate interest in an enterprise."  *Id.*

6      Here, the defendant RICO person is Derby Wars.  (Compl. ¶ 50.)  The RICO

7  enterprise is also Derby Wars.  (*Id.*)  Plaintiffs do not allege that Derby Wars

8  obtained an interest or control over Derby Wars through a pattern of racketeering.

9  Rather, at best, plaintiffs merely allege that Derby Wars is itself engaged in

10  racketeering, and "has an otherwise legitimate interest in" itself.  These allegations

11  are insufficient to sustain a claim under Section 1962(b).  *See Jalili*, 2013 WL

12  5312716, at *6; *Lightning Lube*, 4 F.3d at 1191; *Miletak*, 2009 WL 1371412, at *6.

13  **B.    Plaintiffs Fail to State a Claim for Intentional Interference with a
       Prospective Economic Advantage**

14

15      Plaintiffs also allege that Derby Wars intentionally interfered with Plaintiffs'

16  prospective economic advantage.  (Compl. ¶¶ 67-73.)  Under California law, to

17  state a claim for intentional interference, Plaintiffs must allege:  (1) an economic

18  relationship between the Plaintiffs and some third party, with the probability of

19  future economic benefit to Plaintiffs; (2) Derby Wars's knowledge of the

20  relationship; (3) Derby Wars's intentional acts designed to disrupt the relationship;

21  (4) actual disruption of the relationship; and (5) economic harm to Plaintiffs

22  proximately caused by Derby Wars's acts.  *Korea Supply Co. v. Lockheed Martin

23  Corp.*, 29 Cal. 4th 1134, 1153 (2003) (quoting *Westside Ctr. Assocs. v. Safeway

24  Stores 23, Inc.*, 42 Cal. App. 4th 507, 521-22 (1996)).  Plaintiffs' Intentional

25  Interference claim fails for at least these reasons.

26

27

28

17

1. <u>Plaintiffs Fail to Plead an Existing Economic Relationship Between Them and a Third Party</u>.

Plaintiffs have failed to allege – and cannot allege – the first required element of an intentional interference claim:  that an economic relationship actually exists between them and some third party, with the probability of future economic benefit to them.

A "speculative expectation that a potentially beneficial relationship will eventually arise" is not sufficient to satisfy the first element. *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 524 (affirming dismissal of intentional interference claim and rejecting plaintiff's "expansive view of the tort which protects [plaintiff's] economic relationship with the ***entire market of all possible but as yet unidentified buyers***" (emphasis added)).  In other words, a "lost opportunity" based on a "hypothetical relationship" is insufficient to establish the first element of an intentional interference claim. *Id.* at 522-23.  And this is for good reason:  the lost opportunity approach "assumes what normally must be proved, i.e., that it is reasonably probable the plaintiff would have received the expected benefit had it not been for the defendant's interference." *Id.* at 522.

Thus, the "California Supreme Court limits the tort of intentional interference with prospective economic advantage to 'protect[ing] the expectation that the relationship eventually will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will arise.'" *Stewart v. Am. Ass'n of Physician Specialists*, Case No. 13-cv-1670-ODW (DTBx), 2014 WL 2197795, *9 (C.D. Cal. May 27, 2014) (quoting *Korea Supply Co.*, 29 Cal. 4th at 1153) (dismissing intentional interference claim where plaintiff alleged only a "lost opportunity" for economic relationships).  As a result, "[c]ourts often require a plaintiff to identify at least one such 'third party' to state a[n] [intentional interference] claim." *Tele Atlas N.V. v. Navteq Corp.*, 397 F. Supp. 2d 1184, 1194 (N.D. Cal. 2005) (dismissing intentional interference claim where plaintiff failed to

identify third parties with which it had economic relationships); *see also Damabeh v. 7-Eleven, Inc.*, Case No. 12-CV-1739, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) ("Courts have held that, in order to state a claim for intentional interference with prospective business advantage, it is essential that the Plaintiff allege facts showing that Defendant interfered with Plaintiff's relationship with a particular individual.").

In *Architectural Mailboxes, LLC v. Epoch Design, LLC*, Case No. 10-CV-974-DMS (CAB), 2011 WL 1630809, at *6 (S.D. Cal. Apr. 28, 2011), the court rejected the plaintiff's argument that it had adequately pleaded its economic relationship with unnamed "interested customers," specifically highlighting that plaintiff had described those "individuals as 'prospective customers' in the Complaint." *Id.* The court continued, "while [p]laintiff may have a 'speculative expectation that a potentially beneficial relationship with eventually arise,' that expectation is insufficient to state a claim for intentional interference with prospective economic advantage." *Id.* (quoting *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 524); *see also Swiss Am. Trading Corp. v. Regal Assets, LLC*, Case No. 14-CV-4960 DDP (ASx), 2015 WL 631569 (C.D. Cal. Feb. 13, 2015) (dismissing intentional interference claim where loss of market share allegation did not satisfy the economic relationship element); *Stewart*, 2014 WL 2197795 at *10 (dismissing intentional interference claim because "broad allegations of an expectancy relationship with networks and patients yet unknown merely allege a hope for an economic relationship and desire for future benefit" does not satisfy the economic relationship element); *F.M. Tarbell Co. v. A & L Partners*, Case No. 10-CV-1589 PSG (Ex), 2011 WL 1153539, * 4 (C.D. Cal. Mar. 23, 2011) (dismissing intentional interference claim and finding defendant's allegations that it had "existing business relationships or prospective business relationships which had probability of future economic benefit and/or advantage" conclusory and insufficient to survive motion).

Here, Plaintiffs do not name a single existing customer that chose to participate in the Derby Wars contests in lieu of placing wagers at Plaintiffs' tracks. *See Tele Atlas*, 397 F. Supp. 2d at 1194.  Rather, Plaintiffs allege that only a "non-contractual, economic relationship between Plaintiffs and *prospective bettors*." (Compl. ¶ 68 (emphasis added).)  This is precisely the type of "hypothetical relationship" that courts have consistently rejected.  *See, e.g.*, *Westside Ctr. Assocs.*, 42 Cal. App. 4th at 524.

Further, Plaintiffs' allegation in their RICO statement that Derby Wars's customers "split their available bankrolls 80/20" does not change this analysis.  (*See* RICO Stmt. ¶ 4.)  Tellingly, Plaintiffs make no allegation whatsoever about how *their* customers split their bankrolls, if at all, instead focusing improperly on the conduct of Derby Wars's customers (*i.e.*, individuals with whom *Derby Wars* has an economic relationship, not with whom Plaintiffs have an economic relationship). (*See id.*)  Further, this argument discounts the possibility that Derby Wars is actually expanding the market, bringing new customers into play altogether.

Accordingly, Plaintiffs have failed to plead the first element of the intentional interference claim.

2.   <u>Plaintiffs Fail to Allege that Derby Wars's Conduct Was the Proximate Cause of the Harm to Plaintiffs (If Any).</u>

The final element of intentional interference "requires a plaintiff to show that the economic harm it suffered was proximately caused by the acts of the defendant." *Korea Supply Co.*, 29 Cal. 4th at 1165.  Causation "becomes less certain as the time frame expands, *the identity of potential victims becomes more vague*, the causal sequence becomes more attenuated, and the assumption of easy preventability becomes less plausible." *Id.* (emphasis added).  In the event "the interference is not certain or substantially certain to occur as a result of the defendant's acts, then a plaintiff will not be able to state a claim for intentional interference with prospective economic advantage." *Id.*

For the reasons stated already, Plaintiffs' allegations are too tenuous and conclusory to satisfy any pleading requirement regarding proximate cause. Plaintiffs allege only that unnamed "prospective bettors have placed bets through Derby Wars website (sic), rather than placing bets through proper channels, thereby depriving Plaintiffs of their compensation," but they fail to identify who – if anyone – has done this. (*See* Compl. ¶¶ 70-71.) And, again, although Plaintiffs assert in their RICO statement that Derby Wars's customers "split their available bankrolls 80/20 in favor of parimutuel versus contest play," Plaintiffs have *not* alleged that their own customers now split their own bankrolls, and they ignore the possibility that Derby Wars's contests may actually increase the interest in the sport, which would result in more customers visiting horse racing tracks around the country. (*See* RICO Stmt. ¶ 4.) As a result, Plaintiffs have not adequately alleged that Derby Wars caused any harm to Plaintiffs.

**C.**   **The Court Should Strike Plaintiffs' Requests for "Restitution of Profits," Monetary Damages and Attorney's Fees Under Their California UCL Claim**

Plaintiffs also assert an unfair competition claim under the California UCL, seeking, among other things, "restitution of profits wrongfully earned by Derby Wars," "monetary damages" and attorneys' fees and costs. (Compl. ¶¶ 63, 64 and 66; and Third Claim for Relief, ¶¶ 1, 2 and 4.) But UCL actions are not substitutes for tort actions. *Korea Supply Co.*, 29 Cal. 4th at 1150. The word "damages" from paragraph 63 of the Complaints, as well as the entirety of paragraphs 64 and 66 of the Complaint and paragraphs 1, 2 and 4 of the Third Claim for Relief of the Complaint, should be stricken.

1.   Plaintiffs' Request for "Restitution of Profits" Is An Improper Request for Nonrestitutionary Disgorgement Which Is Not Recoverable Under the UCL.

Plaintiffs' request for "restitution of profits" is an improper request for nonrestitutionary disgorgement of profits and should be stricken. *See Hibbs-Rines v. Seagate Techs., LLC*, Case No. C 08-05430 SI, 2009 WL 513496, at *6 (N.D.

1   Cal. Mar. 2, 2009) (striking disgorgement from complaint because nonrestitutionary
2   "disgorgement is not a proper remedy for violations of [the California UCL].").

3        The UCL provides for restitution, but not for nonrestitutionary disgorgement.
4   *Korea Supply Co.*, 29 Cal. 4th at 1144.  To prove entitlement to restitution, a
5   plaintiff must show that the defendant received and unjustly retained a benefit at the
6   plaintiff's expense.  *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).
7   California "has never approved of nonrestitutionary disgorgement of profits as a
8   remedy under the UCL."  *Korea Supply Co.*, 29 Cal. 4th at 1148.  Rather, to obtain
9   restitution under the UCL, the plaintiff must seek to "return money obtained
10  through an unfair business practice to those persons in interest from whom the
11  property was taken, that is, *to persons who had an ownership interest in the
12  property or those claiming through that person.*"  *Id.* at 1144-45 (emphasis added).
13  Thus, "a plaintiff must demonstrate that the defendant is in possession of money or
14  property taken from her."  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d
15  1306, 1324 (C.D. Cal. 2013).

16       Here, Plaintiffs' request for "restitution" of profits is fatally flawed.
17  Plaintiffs fail to allege a single fact establishing that Derby Wars is in possession of
18  money taken *from Plaintiffs*.  Nor do they allege that they have an ownership
19  interest in Derby Wars's profits.  To the contrary, Plaintiffs allege that Derby
20  Wars's customers <u>might</u> <u>have</u> otherwise bet at their tracks, and thus Derby Wars's
21  profits should be surrendered to Plaintiffs.  (*See* Compl. ¶ 66.)  This is precisely the
22  type of nonrestitutionary disgorgement of profits rejected by California courts.  *See
23  Korea Supply Co.*, 29 Cal. 4th at 1145.  Accordingly, all references to Plaintiffs'
24  request for "restitution of profits" should be stricken.

25            2.    <u>"Damages" Are Also Not Recoverable Under The UCL.</u>
26       In addition to seeking disgorgement of profits, Plaintiffs also improperly seek
27  "monetary damages" under their UCL claim.  Because "a UCL action is equitable
28  in nature; damages cannot be recovered."  *Korea Supply Co.*, 29 Cal. 4th at 1144.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

22

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

1   To hold otherwise and "permit individual claims for compensatory damages to be

2   pursued as part of such a procedure would tend to thwart" the objective of the UCL.

3   *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 774 (1989),

4   *reh'g denied and opinion modified* (1989).  Thus, Plaintiffs' references to the

5   "damages" they suffered as a result of Derby Wars's alleged UCL violation, as well

6   as their demand for "monetary damages," should be stricken as a matter of law.

7          3.      Plaintiffs' Request for Attorneys' Fees Should Also Be Stricken.

8          Plaintiffs also seek attorney's fees and costs related to their UCL claim.  In

9   California, attorney's fees are not recoverable unless expressly authorized by statute

10  or agreement.  Cal. Code Civ. Proc. § 1021.  Attorney's fees are not expressly

11  authorized by the UCL, and thus not recoverable by private plaintiffs bringing UCL

12  claims.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Telephone, Co.*, 20 Cal. 4th 163,

13  179 (1999) ("Plaintiffs may not receive damages, much less *treble* damages, or

14  attorney fees." (emphasis in original)).  Although there is a limited exception where

15  a private party is acting as a private attorney general, Plaintiffs do not – and cannot

16  – meet the requirements to qualify as private attorneys general.[5]  Thus, Plaintiffs'

17  requests for "attorney's fees" with respect to their UCL claim should be stricken.

18

19

20

21

22

23

---

24  [5] To qualify as a private attorney general, a plaintiff must satisfy each of the
following four elements:  "(1) the action 'has resulted in the enforcement of an
25  important right affecting the public interest,' (2) 'a significant benefit' has been
'conferred on the general public or a large class of persons,' (3) 'the necessity and
26  financial burden of private enforcement are such as to make the award appropriate,'
and (4) the fees 'should not in the interest of justice be paid out of the recovery, if
27  any.'"  *Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1413 (1991),
*disapproved on other grounds by Olson v. Auto. Club of So. Cal.*, 42 Cal. 4th 1142
28  (2008).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

23

DEFENDANT'S MOTION TO DISMISS
AND MOTION TO STRIKE

## V.    __CONCLUSION__

For all of the foregoing reasons, Derby Wars respectfully requests that the Court grant its motion in its entirety and dismiss Plaintiffs' second and fourth claims, and strike the word "damages" from paragraph 63 and to strike paragraphs 64 and 66 in their entirety, and paragraphs 1, 2 and 4 of the Third Claim for Relief in the Complaint, without leave to amend.


Dated:  February 22, 2016              Respectfully submitted,

                                       MANATT, PHELPS & PHILLIPS, LLP
                                       Matthew P. Kanny
                                       Maura K. Gierl

                                       By:  /s/ Matthew P. Kanny
                                            Matthew P. Kanny
                                            *Attorneys for Defendant*
                                            HORSE RACING LABS, LLC

316323142.1

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES