UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

============================================================================

**CASE NO.:** <u>CV 15-09332 SJO (JEMx)</u>   **DATE:** <u>May 2, 2016</u>

**TITLE:**   <u>Los Angeles Turf Club, Inc., et al. v. Horse Racing Labs, LLC, et al.</u>

============================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                             Not Present
Courtroom Clerk                              Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**          **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                  Not Present

============================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AND FOURTH CAUSES OF ACTION** [Docket No. 28] **AND DENYING DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT** [Docket No. 29]

This matter is before the Court on Defendant Horse Racing Labs, LLC's ("Defendant" or "Horse Racing Labs") Motion to Dismiss the Second and Fourth Causes of Action ("Motion To Dismiss") in Plaintiffs' Los Angeles Turf Club, Inc., Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing Inc., Maryland and Jockey Club of Baltimore City, Inc., and Laurel Racing Association, Inc.'s (collectively, "Plaintiffs") Complaint and Motion to Strike Portions of Complaint ("Motion To Strike"), filed on February 22, 2016.[1]  Plaintiffs filed an Opposition to the Motions on April 4, 2016, to which Defendants filed a Reply on April 11, 2016.  The Court found this matter suitable for disposition without oral argument and vacated the hearing set for April 25, 2016.  *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Defendant's Motion to Dismiss **with leave to amend** and **DENIES** Defendant's Motion to Strike.

I.      FACTUAL AND PROCEDURAL BACKGROUND

        A.      The Parties

Each of the Plaintiffs are businesses that oversee horse racing events in different parts of the country.  Plaintiffs Los Angeles Turf Club, Inc. and Los Angeles Turf Club II, Inc. are California corporations that maintain and operate horse racing meets at the Santa Anita Park race track in Los Angeles County, California.  (Complaint ("Compl.") ¶¶ 3-4, ECF No. 1.)  Plaintiffs Pacific Racing Association and Pacific Racing Association II are California corporations that operate

---

[1] Defendant's Motion exceeded the twenty-page limit by four pages.  (*See* Initial Standing Order ¶ 21, ECF No. 15.)  In the interest of ruling on the merits of the case, the Court will consider the entirety of the Motions; however, the Court instructs Defendant to comply with the Local Rules and the Initial Standing Order in all future proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:  <u>CV 15-09332 SJO (JEMx)</u>           DATE:  <u>May 2, 2016</u>

horse racing meets at the Golden Gate Fields race track in Alameda County, California. (Compl. ¶¶ 5-6.) Plaintiffs Gulfstream Park Racing Association, Inc. is a Florida corporation that operates a horse racing meet at the Gulfstream Park race track at Calder Race Course in Broward County, Florida. (Compl. ¶ 7.) Plaintiff Oregon Racing, Inc. is a Delaware corporation that operates a horse racing meet at Portland Meadows race track in Multnomah County, Oregon. (Compl. ¶ 8.) Plaintiff Maryland Jockey Club of Baltimore City, Inc. is a Maryland corporation that operates a horse racing meet at the Pimlico Race Course in Baltimore County, Maryland. (Compl. ¶ 9.) Plaintiff Laurel Racing Association, Inc. is a Maryland corporation that operates a horse racing meet at the Laurel Park race track in Prince George's County, Maryland. (Compl. ¶ 10.)

Plaintiffs' compensation typically comes in the form of a "host fee," which is a percentage of the "handle," or the amount of wages placed on a race or races. (Compl. ¶ 25.)

Defendant Horse Racing Labs, LLC, also known as Immerse, LLC and doing business as DerbyWars, is a Delaware limited liability company with its principal place of business in Louisville, Kentucky. (Compl. ¶ 11.) In 2011, Defendant started DerbyWars, "an internet website for fantasy sports betting on horse races" that "offers online wagering opportunities throughout the United States." (Compl. ¶ 32.) DerbyWars uses a simple format to facilitate the contests:

> "[P]layers select a horse to win in each race of the tournament, and each winning selection adds to their point total. Players can go head-to-head, or play against larger number of bettors. At the end of the tournament, the player with the most points wins a cash prize. DerbyWars keeps a percentage of the tournament "pool" for itself . . . ."

(Compl. ¶ 33.)

      B.    <u>Central Allegations in Complaint</u>

Plaintiffs' Complaint alleges as follows. Plaintiffs contend that "[e]very bet placed through DerbyWars (instead of through Plaintiffs or an authorized operator) on a race meet run by Plaintiffs" results in monetary damages because Plaintiffs are "not receiving any compensation from the betting taking place on the DerbyWars website . . . ." (*See* Pls.' Statement of Compliance with RICO Order ("RICO Stmt.") ¶ 4, ECF No. 20.)[2] Furthermore, Horse Racing Labs promotes

---

[2] The Court considers the RICO Statement in conjunction with the Complaint. *See, e.g.*, *Walter v. Drayson*, 538 F.3d 1244, 1467 (9th Cir. 2008) (considering RICO Compliance Statement in adjudicating a motion to dismiss); *Lee v. Gen. Nutrition Cos.*, Case No. CV 07-0013550 LGB, 2001 WL 34032651, at *12-15 (C.D. Cal. Nov. 26, 2001) (analyzing factual allegations in plaintiff's RICO Compliance Case Statement in deciding a defendant's motion to dismiss a plaintiff's civil RICO claims).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 15-09332 SJO (JEMx)</u>   **DATE:** <u>May 2, 2016</u>

DerbyWars as a way for bettors "to avoid the higher take out rates of parimutuel betting."[3] (RICO Stmt. ¶ 4.)

Plaintiffs filed the instant lawsuit against Horse Racing Labs on December 2, 2015, asserting four causes of action: (1) violation of the Interstate Horseracing Act pursuant to 15 U.S.C. § 3001, *et seq.*; (2) violation of the Racketeering Influence and Corruption Act ("RICO") pursuant to 18 U.S.C. §§ 1962(a), (b); (3) violation of California Business and Professions Code Sections 17200, *et seq.*; and (4) intentional interference with prospective economic advantage. (*See generally* Compl.)

    C.    <u>Prior Proceedings</u>

On December 4, 2015, the Court ordered Plaintiffs to file a full and complete Rico Statement pursuant to the Court's current standing order. (*See* RICO Order, ECF. No. 16.) Plaintiffs filed a Response to the RICO Order on December 28, 2015. (*See* ECF No. 20.)

On February 22, 2016, Horse Racing Labs filed the instant Motion To Dismiss and Motion To Strike. (*See generally* Defs.' Mot. to Dismiss Second and Fourth Causes of Action Pls.' Complaint and Mot. to Strike Portions of Complaint (collectively, ("Mots."), ECF No. 23.) Plaintiffs filed an Opposition to the Motions on April 4, 2016. (Pls.' Opp'n to Defs.' Mot. to Dismiss and to Strike, ECF No. 27.) Defendants filed a Reply on April 11, 2016. (Defs. Resp. In Support of Mots., ECF No. 28.)

II.    <u>DISCUSSION</u>

    A.    <u>Legal Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). In evaluating a motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see*

---

[3] "'Parimutuel wagering' is a form of wagering in which bettors either purchase tickets of various denominations, or issue wagering instructions leading to the placement of wagers, on the outcome of one or more horse races." (Compl. ¶ 18.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 15-09332 SJO (JEMx)</u>   **DATE:** <u>May 2, 2016</u>

*Ileto*, 349 F.3d at 1200.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  To plead sufficiently, Plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

    B.    <u>Civil RICO Claim</u>

        1.    <u>Statutory Standing</u>

As a threshold matter, the Court analyzes whether Plaintiffs have statutory standing to bring a civil RICO claim.  The Court **GRANTS** Defendant's Motion To Dismiss **with leave to amend** because Plaintiffs have not established that Defendant's actions caused the losses suffered by Plaintiff.

"To have standing under civil RICO, [plaintiff] is required to show that the racketeering activity was both a but-for cause and a proximate cause of his injury."  *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).  "Proximate causation for RICO purposes requires some direct relation between the injury asserted and the injurious conduct alleged."  *Holmes* 503 U.S. at 268.  "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010).

In *Anza v. Ideal Steel Supply Corporation*, the Supreme Court addressed the meaning of proximate causation in the context of a RICO claim.  In that case, Ideal Steel Supply Company alleged that its competitor, the defendant, had violated RICO by defrauding the State of New York of sales tax payments.  547 U.S. 451, 457-58 (1991).  Ideal Steel asserted that because the defendant was able to undercut Ideal Steel by not charging a sales tax on purchases, Ideal Steel was deprived of sales it would have otherwise made.  *Id.* at 458.  The Supreme Court rejected Ideal Steel's theory and held that the defendant's alleged violations could not have proximately caused Ideal Steel's injury because "[t]he cause of Ideal's harms . . . is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)."  *Id.*

The Supreme Court offered three justifications for the proximate causation requirement in RICO cases.  First, it analyzed "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action."  *Id.*  The Supreme Court emphasized that the plaintiff's lost sales could have been caused for any number of reasons and that "[b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices."  *Id.* at 459.  Second, the Supreme Court discussed "the speculative nature of the proceedings that would follow if Ideal were permitted to maintain its claim."  *Id.*  A court would have to go through a complex analysis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:   CV 15-09332 SJO (JEMx)          DATE: May 2, 2016

of apportioning the fault from various causes to determine what portion of Ideal's damages resulted from the RICO violation.  *Id.*  "The element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation."  *Id.*  Third, the Supreme Court considered whether "the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims."  *Id.*

*Ideal Steel* strongly resembles the instant case and controls this Court's analysis of proximate causation.  Here, Plaintiffs allege the following:

> (1) Plaintiffs receive a "host fee", a percentage of the "handle" or amount of wagers placed on a race or races, whenever it hosts horse races;
>
> (2) Plaintiffs are not receiving any compensation from the betting that takes place on DerbyWars' website, although Horse Racing Labs is taking a percentage for itself;
>
> (3) Every bet placed through DerbyWars (instead of through Plaintiffs) on a race meet run by Plaintiffs result in monetary damages to Plaintiffs, and ill-gotten gains to Horse Racing Labs;
>
> (4) Horse Racing Labs promotes DerbyWars as a way for bettors to avoid the higher take out rates of parimutuel betting;
>
> (5) DerbyWars customers indicate in DerbyWars' surveys that they split their available bankroll 80/20 in favor of parimutuel versus contest play.

(RICO Stmt. ¶ 4.)

As in *Ideal Steel*, Horse Racing Labs' alleged violations did not proximately cause Plaintiffs' injury, given the information currently in the Complaint.[4]  Plaintiffs allege monetary losses because

---

[4]  The Court notes that the cause of Plaintiffs' harm is a set of actions, customers choosing where they place bets, distinct from the alleged RICO violation, operating an illegal gambling business in violation of 18 U.S.C. § 1955.  *See Ideal Steel Supply Co.*, 547 U.S. at 485.  Specifically, Plaintiffs assume that DerbyWars, "an internet website for fantasy sports betting on horse races," is a gambling business.  However, the issue of whether fantasy sports betting should be considered gambling has not been settled.  The Ninth Circuit is silent as to whether fantasy sports betting constitutes gambling.  Indeed, Congress has enacted the Unlawful Internet Gambling Enforcement Act (the "UIGEA") in 2006, which provided a "carve-out" exception for fantasy sports betting under the definitions of "bet" and "wager."  *See* 31 U.S.C. § 5362(1)(E)(ix).  The UIGEA does not explicitly define

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | |
|---|---|
| CASE NO.: <u>CV 15-09332 SJO (JEMx)</u> | DATE: <u>May 2, 2016</u> |

customers are placing bets with DerbyWars rather than with Plaintiffs. Plaintiffs, however, fail to account for the other reasons why customers may place wagers somewhere other than at a race track. Customers might not want to be physically present at a race track when they make these wagers, preferring the ease of using an online alternative. Customers could also find it inconvenient to contact each of Plaintiffs' authorized operators to place bets if they wanted to wager multiple races. Plaintiffs essentially assume, without adequate support, that customers who place bets on DerbyWars, or participate in fantasy sports betting in general, are the same customers who, but for the existence of fantasy sports betting websites, would have otherwise engaged in legal parimutuel gambling. This is not necessarily true.

Moreover, in their own RICO statement, Plaintiffs contend that fantasy sports have become popular in recent years and note that Horse Racing Labs "estimates that the online horse racing contest market will be around $25 million annually, and that its site, DerbyWars, can gain 40% of that." (RICO Stmt. ¶ 4.) These statistics suggest that Horse Racing Labs is targeting a different customer base, those who participate in horse race betting online, rather than those who traditionally place bets at the race tracks. In amending their Complaint, Plaintiffs must allege facts that show that at least some of those who play fantasy horse race betting online are those that would otherwise place bets at the race tracks. Without more information in the Complaint, it is even possible that fantasy sports betting expands the horse racing betting consumer base, by promoting interest in the sport. This, in turn, would benefit Plaintiffs.

Ultimately, Plaintiffs' alleged monetary injuries are, at best, caused indirectly by the popularity of this new form of "gambling." *See, e.g., Hemi Group*, 559 U.S. at 11 (adopting *Ideal Steel* and finding no proximate causation where residents of the City chose to buy illegal cigarettes from defendant instead of cigarettes sold legally in-state). The Court **GRANTS** Defendant's Motion to Dismiss as to the RICO claim on standing grounds **with leave to amend**. Plaintiffs do not allege sufficient facts establishing that Defendant's actions proximately caused losses suffered by Plaintiffs.

        2.      <u>18 U.S.C. § 1962(a) Claim</u>

The Court next addresses the merits of the RICO causes of action. The Court dismisses Plaintiffs' Complaint because Plaintiffs have failed to establish proximate causation, which goes to both Plaintiffs' statutory standing as well as the merits of their RICO claims. However, there are a few other deficiencies in the Complaint, which the Court analyzes below in case Plaintiffs decide to amend the Complaint.

---

whether fantasy sports betting can be considered "gambling." Because the issue has not been briefed, for the purposes of ruling on this Motion, the Court will assume, *arguendo*, that fantasy sports betting is gambling.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: <u>CV 15-09332 SJO (JEMx)</u>              DATE: <u>May 2, 2016</u>

Section 1962(a) provides, in pertinent part, that "it shall be unlawful for any person who has received any income derived . . . from a pattern racketeering activity or through collection of an unlawful debt . . . to use or invest . . . any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of" an enterprise. 18 U.S.C. § 1962(a). A "plaintiff seeking civil damages for violation of § 1962(a) must allege facts tending to show that he or she was injured by use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Electric Co.*, 981 F.2d 429, 437 (9th Cir. 1992). Plaintiffs "must allege that the investment of racketeering income was the proximate cause of its injury." *Sybersound Records, Inc.*, 517 F.3d at 1149. "Alleging that a defendant reinvested 'proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation.'" *In re Toyota Motor Corp.*, 785 F.Supp.2d at 920 (citing *Sybersound Records Inc.*, 517 F.3d at 1149); *Westway World Travel v. AMR Corp.*, 182 F.Supp.2d 952, 960-61 (C.D. Cal. 2001) (explaining that almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a) if alleging reinvestment was enough because corporations generally reinvest their profits). Thus, Plaintiffs must allege an injury that is "separate and distinct from the injury flowing from the predicate act" in order to plead a violation of § 1962(a). *Sybersound Records Inc.*, 517 F.3d at 1149.

Here, Plaintiffs allege that Horse Racing Labs receives income through retaining a portion of each bet "ranging from 7% - 17% of the amount wagered." (RICO Stmt. ¶ 11.) Plaintiffs further allege that DerbyWars uses and invests that income to "lure away parimutuel bettors from Plaintiffs." (RICO Stmt. ¶ 11.) Plaintiffs also assert that DerbyWars "estimates that its customers now split their available bankrolls 80/20 in favor of parimutuel wagering [versus] contest play . . . as a result of the money it has spent on 'fan education, product exposure, and cross-promotional marketing." (RICO Stmt. ¶ 11.)

The Court holds that Plaintiffs have not adequately stated a claim under § 1962(a) for two reasons. First, as noted previously, Plaintiffs fail to adequately allege facts to show proximate causation. Plaintiffs' contention that DerbyWars uses and invests the income from bets to lure away parimutuel bettors from Plaintiffs is vague and conclusory. As above, Plaintiffs need to show that Defendant's actions in operating a fantasy betting website deprive Plaintiffs of customers that would otherwise place bets at race tracks. Second, as a result of the lack of proximate cause, Plaintiffs have not alleged an injury that is "separate and distinct" from the operation of DerbyWars. As such, Plaintiffs have failed to properly plead a violation of § 1962(a). The Court **DISMISSES** Plaintiffs' cause of action under 18 U.S.C. § 1962(a) **with leave to amend**.

      3.     <u>18 U.S.C. § 1962(b) Claim</u>

To state a claim for violation of § 1962(b), "a plaintiff must allege (1) the defendant's activity led to its control or acquisition over a RICO enterprise, and (2) an injury to plaintiff resulting from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Priority | _____ |
| Send | _____ |
| Enter | _____ |
| Closed | _____ |
| JS-5/JS-6 | _____ |
| Scan Only | _____ |

CASE NO.: **CV 15-09332 SJO (JEMx)**          DATE: **May 2, 2016**

defendant's control or acquisition of an RICO enterprise." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003), *overruled on other grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc). As with § 1962(a), "[p]laintiffs seeking civil damages in violation of § 1962(b) must allege proximate causation." *In re Toyota Corp.*, 785 F.Supp.2d at 921; *Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 773 (9th Cir. 2002). "To adequately allege proximate causation under § 1962(b), a plaintiff must allege an injury from the defendant's acquisition or control of an interest in a RICO enterprise separate from an injury flowing from the racketeering activity itself." *See id.* (citing *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F.Supp. 1053, 1060 (N.D. Cal. 1991) (internal quotations omitted).

Here, Plaintiffs contend that "[i]n 2011, Horse Racing Labs expanded its operations from operating the Horse Racing Nation website[5], to operating DerbyWars," which "Horse Racing Labs acquired and maintains its interest in, and control over, DerbyWars, through the income it generates by operating . . . [DerbyWars]." (RICO Stmt. ¶ 12.)

Plaintiffs' contention in support of its claim under 18 U.S.C. § 1962(b) is circular. Defendant allegedly acquired or maintained an interest in DerbyWars by generating income from DerbyWars. Defendant could not have acquired or maintained an interest in DerbyWars, through the income generated by DerbyWars, if DerbyWars was founded after the fact. Moreover, as with the § 1962(a) claim, Plaintiffs fail to establish the causal link between Defendant's purported RICO violations and the injury suffered by Plaintiffs.

Accordingly, the Court **DISMISSES** Plaintiffs' 1962(b) cause of action **with leave to amend**.

      C.      <u>Intentional Interference with Prospective Business Advantage</u>

To state a claim for intentional interference with prospective business advantage, "a plaintiff must allege (1) a specific relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant's acts." *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F.Supp.3d 1092, 1116 (C.D. Cal. 2015) (citing *Panavision Int'l, L.P. v. Toeppen*, 945 F.Supp. 1296, 1305 (C.D. Cal. 1996)) (internal quotation marks omitted). "Allegations that a defendant interfered with a relationship with an 'as yet identified' customer will not suffice." *Id.* at 1117; *see, e.g., Westside*

---

[5] Horse Racing Labs developed Horse Racing Nation in 2009 "as a free, wiki community focused on racing information, insights and discussion for passionate horse racing fans." (RICO Stmt. ¶ 8.) Horse Racing Nation "gets more than 7 million hits a year" and generates income through advertising. (RICO Stmt. ¶ 8.)

Case 2:15-cv-09332-SJO-JEM Document 30 Filed 05/02/16 Page 9 of 10 Page ID #:181

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

**CASE NO.:** CV 15-09332 SJO (JEMx)    **DATE:** May 2, 2016

*Ctr. Associates v. Safeway Stores 23, Inc.*, 42 Cal.App.4th 507, 527 (1996) ("Without an existing relationship with an identifiable buyer, [plaintiff's] expectation of a future sale was 'at most a hope for economic relationship and a desire for future benefit'").

Plaintiffs' Complaint is deficient on the first prong of this test, which prevents Plaintiffs from meeting the other requirements as well. Specifically, Plaintiffs allege that they and prospective bettors share a "non-contractual, economic relationship." (Compl. ¶ 68.) However, the alleged third persons are merely prospective bettors and not identifiable customers; therefore, Plaintiffs have failed to establish the central element of this claim–a specific relationship between Plaintiffs and some third person. *See UMG Recordings, Inc.*, 117 F.Supp.3d at 1116.

Accordingly, the Court **DISMISSES** Plaintiffs' fourth cause of action for intentional interference with prospective business advantage **with leave to amend**.

        D.      Motion to Strike Plaintiffs' Requests for Damages

Defendant finally moves for the Court to strike Plaintiffs' requests for restitution, monetary damages, and attorney's fees under Plaintiffs' California UCL claim because the damages are precluded as a matter of law. (Mot. 21-23.)

Under Federal Rules of Civil Procedure 12(f), a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation marks, citation, and first alteration omitted), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). The Ninth Circuit clearly held in *Whittlestone, Inc. v. Handi-Craft Co.* that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." 618 F.3d 970, 974 (9th Cir. 2010). Such a request should be advanced on a motion to dismiss or motion for summary judgment. *Id.* Pursuant to the holding in *Whittlestone*, the Court **DENIES** Defendant's Motion to Strike Plaintiffs' requests for damages.

Plaintiffs' UCL claims are premised on the underlying unlawful actions discussed *supra*, including Defendant's purported violations of RICO. (*See* Compl. ¶¶ 60-66.) Because the Court dismisses the other causes of action, the Court **DISMISSES** Plaintiffs' UCL claims **with leave to amend**.

III.      <u>RULING</u>

For the foregoing reasons, the Court **DISMISSES** Plaintiffs' second, third and fourth causes of action and **GRANTS** Defendant's Motion to Dismiss **with leave to amend**. Additionally, the Court

MINUTES FORM 11
CIVIL GEN                                    Page 9 of 10                      ___ : ___
                                                                        Initials of Preparer _____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

CASE NO.: <u>CV 15-09332 SJO (JEMx)</u>     DATE: <u>May 2, 2016</u>

**DENIES** Defendant's Motion to Strike. Plaintiffs shall file a First Amended Complaint within fourteen (14) days of the issuance of this Order.

IT IS SO ORDERED.