MATTHEW P. KANNY (State Bar No. 167118)
E-mail: mkanny@manatt.com
MAURA K. GIERL (State Bar No. 287430)
E-mail: mgierl@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Tel.:  (310) 312-4000; Fax:  (310) 312-4224

ARUNABHA BHOUMIK (*pro hac vice*)
E-mail: abhoumik@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
Tel.:  (212) 790-4500; Fax: (212) 790-7575

*Attorneys for Defendant*
HORSE RACING LABS, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES TURF CLUB, INCORPORATED, a California Corporation, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>HORSE RACING LABS, LLC, a Delaware Limited Liability Company (a/k/a IMMERSE, LLC), d/b/a DERBYWARS, and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:15-cv-09332-SJO (JEMx)<br><br>Honorable S. James Otero<br>Courtroom No. 1<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:      August 1, 2016<br>Hearing Time:      10:00 a.m.<br><br>Complaint Served:      December 3, 2015<br>Am. Complaint Served:  May 16, 2016 |

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 1, 2016 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom No. 1 of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California 90012, Defendant Horse Racing Labs, LLC, doing business as Derby Wars ("Derby Wars"), by and through its undersigned attorneys, will and hereby does move under Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings in its favor on Plaintiffs Los Angeles Turf Club, Inc., Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing Inc., Maryland Jockey Club of Baltimore City, Inc., and Laurel Racing Association, Inc.'s (collectively, "Plaintiffs") First Amended Complaint ("FAC").

The grounds for Derby Wars's motion are that:  Plaintiffs may not seek relief under the Interstate Horseracing Act, 15 U.S.C. § 3001, *et seq.* because that statute does not create a private right of action to recover proceeds from purportedly unlawful gambling.  Further, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' claim under California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").  Additionally, Plaintiffs lack standing under the UCL.  Finally, Plaintiffs may not seek nonrestitutionary disgorgement under the UCL.

This motion is based on this notice of motion, the accompanying memorandum of points and authorities, the concurrently filed proposed order, all other pleadings and papers on file in this action, and such argument or evidence that the Court may consider at or before the hearing on this motion.

Pursuant to Local Rule 7-3, this motion is made following the in-person conference of counsel, which took place on June 20, 2016.  During the conference, counsel for the parties thoroughly discussed the substance of the arguments set forth herein, as well as potential resolution of the disagreements, in an attempt to

eliminate the need for this motion.  The parties were unable to reach an agreement, necessitating this motion.

Dated:  June 29, 2016

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP
Matthew P. Kanny
Arunabha Bhoumik
Maura K. Gierl

By: /s/ Matthew P. Kanny
        Matthew P. Kanny
        *Attorneys for Defendant*
        HORSE RACING LABS, LLC

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   PLAINTIFFS' ALLEGATIONS.................................................... 2

III.  LEGAL STANDARD .................................................................. 4

IV.   ARGUMENT ............................................................................... 5

      A.    The IHA Does Not Create A Private Right Of Action To
            Recover Proceeds Of Allegedly Unlawful Gambling .......... 5

      B.    The Court Should Decline To Exercise Supplemental
            Jurisdiction Over Plaintiffs' UCL Claim ............................. 9

      C.    Plaintiffs Lack Standing To Assert A Claim Under the UCL ........... 11

      D.    Even If Plaintiffs Have Standing To Assert A UCL Claim, Their
            Demand For Restitution Of Monies Is Improper As A Matter Of
            Law ................................................................................... 14

V.    CONCLUSION ......................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allison Engine Co. v. United States ex rel. Sanders*,
   553 U.S. 662 (2008) ................................................................. 6

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) ................................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................ 4, 5

*Cafasso, United States ex rel. v. Gen. Dynamic C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ............................................ 4, 5

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) .......................................................... 9, 10

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ............................................................... 9

*Clayworth v. Pfizer, Inc.*,
   49 Cal. 4th 758 (2010) ......................................................... 11

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) ............................................... 13

*Dworkin v. Hustler Magazine Inc.*,
   867 F.2d 1188 (9th Cir. 1989) ............................................... 4

*Garcia v. Orion Plastics Corp.*,
   Case No. CV 15-07514, 2016 WL 2904853 (C.D. Cal. May 18,
   2006) ................................................................................... 10

*Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc.*,
   294 F. Supp. 2d 1291 (M.D. Fla. 2003) ................................. 8

*Harris v. Cnty. of Orange*,
   682 F.3d 1126 (9th Cir. 2012) ............................................... 5

*Johnson v. Microsoft Corp.*,
   Case No. C06-0900RSM, 2007 WL 2404844 (W.D. Wash. Aug.
   17, 2007) .............................................................................. 15

*Karahalios v. Nat'l Fed'n of Fed. Emps., Local 1263*,
   489 U.S. 527 (1989) ............................................................... 5

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

i

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

**TABLE OF AUTHORITIES**
(continued)

Page

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003)................................................................... 15

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011)............................................................. 11, 14

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000)........................................................... 15

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
    453 U.S. 1 (1981) ....................................................................... 5, 8

*Milne ex rel. Coyne v. Stephen Slesinger, Inc.*,
    430 F.3d 1036 (9th Cir. 2005).......................................................... 4

*New Suffolk Downs Corp. v. Rockingham Venture, Inc.*,
    656 F. Supp. 1190 (D.N.H. 1987) ................................................... 5, 8

*Owens v. Kaiser Found. Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001) .......................................................... 4

*Schultz v. Sundberg*,
    759 F.2d 714 (9th Cir. 1985) ......................................................... 10

*Shame on You Prods., Inc. v. Banks*,
    120 F. Supp. 3d 1123 (C.D. Cal. 2015)............................................ 4, 5

*Sharnese v. California*,
    547 Fed. App'x 820 (9th Cir. 2013) ................................................... 9

*Spy Optic, Inc. v. Alibaba.Com, Inc.*,
    Case No. CV 15-00659, 2015 WL 7303763 (C.D. Cal. Sept. 28,
    2015)..................................................................................... 12

*Sterling Suffolk Racecourse Ltd. P'ship v. Burrillville Racing Ass'n*,
    802 F. Supp. 662 (D.R.I. 1992) ..................................................... 8, 9

*Sterling Suffolk Racecourse Ltd. P'ship v. Burrillville Racing Ass'n*,
    989 F.2d 1266 (1st Cir. 1993) .......................................................... 8

*Suarez v. Beard*,
    Case No. 15-cv-5756, 2016 U.S. Dist. LEXIS 73555 (N.D. Cal.
    June 6, 2016).............................................................................. 9

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ................................................................. 9, 10

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**STATUTES**

15 U.S.C. § 3001 .................................................................................................... 1, 6

15 U.S.C. § 3001(a)(1) ............................................................................................ 8

15 U.S.C. § 3002(3) ................................................................................................ 6

15 U.S.C. § 3004(a)(1)-(3) ..................................................................................... 6

15 U.S.C. § 3004(a)(1)(B) ...................................................................................... 6

15 U.S.C. § 3004(b) ................................................................................................ 6

15 U.S.C. § 3005 ................................................................................................. 4, 6

18 U.S.C. § 1955 ............................................................................................. 3, 4, 5

18 U.S.C. § 2259 ..................................................................................................... 9

28 U.S.C. § 1367 ................................................................................................... 10

28 U.S.C. § 1367(c)(3) ........................................................................................... 9

31 U.S.C. § 5362 ..................................................................................................... 2

Cal. Bus. & Prof. Code § 17200 ............................................................................ 1

Cal. Bus. & Prof. Code § 17204 .......................................................................... 11

Cal. Bus. & Prof. Code § 19595 ............................................................................ 4

Cal. Bus. & Prof. Code § 19604 ............................................................................ 4

Cal. Penal Code § 1202.4 ....................................................................................... 9

**OTHER AUTHORITIES**

122 Cong. Rec. E1219-20 (daily ed. Mar. 11, 1976) ............................................ 7

122 Cong. Rec. S17998-18000 (daily ed. Oct. 1, 1976) ........................................ 8

124 Cong. Rec. H11929-33 (daily ed. Oct. 10, 1978) ........................................... 8

H.R. Rep. No. 94-1366 (July 26, 1976) .............................................................. 6, 7

H.R. Rep. No. 95-1733 (Oct. 6, 1978) ............................................................ 6, 7, 8

S. Rep. No. 95-554 (Oct. 27 (legislative day, Oct. 21), 1977) .............................. 7

**RULES**

Fed. R. Civ. P. 12(b) .............................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 4, 5

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Fed. R. Civ. P. 12(c) ............................................................................. 4, 15

Fed. R. Civ. P. 16.................................................................................. 10

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

iv

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

1

## I.   **INTRODUCTION**

Defendant Horse Racing Labs, LLC ("Derby Wars") operates a website which allows customers to participate in skill-based online horse racing fantasy contests.  All of Derby Wars's contests have a fixed entry fee, a fixed prize, and a maximum number of participant entries.  Participants in these contests are awarded points based on how horses collectively perform over a series of different races.  At the end of each contest, the participant with the most points wins the fixed prize.  No prize is awarded based on the outcome of any single race.  Derby Wars contends that its fantasy contests do not constitute "bets" or "wagers" under federal or state gambling laws, and are thus not illegal under these laws.

In their Amended Complaint,[1] Plaintiffs accuse Derby Wars of operating an illegal gambling business, and argue that they should be entitled to a cut of the purportedly unlawful proceeds.  Plaintiffs assert claims under the Interstate Horseracing Act, 15 U.S.C. § 3001 *et seq.* (the "IHA"), and under the California UCL.  Both of these claims are fatally flawed.

First, Plaintiffs cannot recover under the IHA because that statute does not provide a private right of action to recover proceeds derived from purportedly unlawful gambling.  The express terms of the IHA, and its legislative history, are explicit that the statute only allows for recovery of the proceeds of otherwise lawful wagers.  To be clear, Derby Wars maintains that its contests are lawful because they are not "wagering" at all under the IHA and/or the Unlawful Internet Gambling

---

[1] The Court previously granted Derby Wars's motion to dismiss Plaintiffs' RICO, intentional interference with a prospective economic advantage, and unfair competition under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") claims, as alleged in the original complaint.  (Docket No. 30 ("Order").)  In so ruling, the Court specifically noted that Plaintiffs' alleged monetary losses were speculative because they failed to account for other reasons a consumer may choose to participate in Derby Wars's fantasy contests, rather than wagering in person at a race track.  (Order at 6.)  The Court further noted that it is "even possible that fantasy sports betting expands the horse racing betting consumer base, by promoting interest in the sport" which "would benefit Plaintiffs."  (*Id.*)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

Enforcement Act.  *See* 31 U.S.C. § 5362.  But because Plaintiffs allege that all of Derby Wars's fantasy contests constitute <u>unlawful</u> wagering, they cannot recover under the IHA.  In short, Plaintiffs cannot have it both ways – they cannot allege that Derby Wars is engaging in illegal conduct (which is not regulated by the IHA), and then ask this Court for a cut of those purportedly unlawful proceeds.

<u>Second</u>, if this Court dismisses Plaintiffs' IHA claim, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law UCL claim, since Plaintiffs assert only federal question jurisdiction, and because this case is still in its initial stages.  Thus, retaining jurisdiction in this Court "would not meaningfully advance the values of economy, convenience, or fairness."

<u>Third</u>, should this Court elect to exercise supplemental jurisdiction over Plaintiffs' UCL claim, that claim fails because Plaintiffs do not (and cannot) allege that Derby Wars caused them to lose any actual money or property – a threshold requirement of the UCL.  Rather, Plaintiffs merely speculate that participants in Derby Wars's fantasy contests would otherwise place wagers at their tracks.  Such speculation is insufficient to establish standing under the UCL.

<u>Fourth</u>, even if Plaintiffs do have standing to assert a violation of the California UCL (and they do not), their demand for "restitution of monies" is improper and fails as a matter of law.

In sum, Plaintiffs have not, and cannot, plead an IHA claim; nor do they have standing to bring their UCL claim.  The Court should grant Derby Wars's motion for judgment on the pleadings and enter judgment in Derby Wars's favor.

## II.   <u>PLAINTIFFS' ALLEGATIONS</u>

Plaintiffs allege that Horse Racing Labs is the owner and operator of the Internet website Derby Wars, an online horse racing contest business.  (*See* Amended Complaint ("Am. Compl.") (Docket No. 31) ¶ 11.)  Plaintiffs are horse racing associations that operate horse racing meets in California, Florida, Oregon and Maryland.  (*Id.* ¶¶ 3-10.)

Plaintiffs allege that "Derby Wars is operating an illegal gambling website." (*Id.* ¶ 13.)  Specifically, Plaintiffs allege that in Derby Wars's contests, "players select a horse to win in each race of the tournament, and each winning selection adds to their point total. Players can go head-to-head, or play against larger numbers of bettors" and that  "[a]t the end of the tournament, the player with the most points wins a cash prize."  (*Id.* ¶ 44.)  Plaintiffs allege that Derby Wars's contests have a fixed entry fee and a fixed prize pool.  (*Id.* ¶ 43.)  Plaintiffs allege that Derby Wars keeps a portion of the entry fees for itself, and does not distribute its earnings to Plaintiffs.  (*Id.* ¶ 44.)

Plaintiffs allege in a conclusory fashion that these contests are "indisputably a form of wagering on the results of horse races, which is not in compliance with federal or state laws."  (*Id.* ¶ 45.)  Plaintiffs allege that Derby Wars is thus operating in violation of state gambling laws in California, Florida, Maryland and Oregon.  (*Id.* ¶¶ 27-33.)  Plaintiffs also allege that Derby Wars is operating its website in violation of the Illegal Gambling Business Act of 1970, 18 U.S.C. § 1955.  (Am. Compl. ¶ 64.)

Plaintiffs further allege that Derby Wars promotes itself as a way for bettors to "avoid the higher take out rates of parimutuel betting."  (*Id.* ¶ 49.)  Plaintiffs allege that these lower take out rates are "significant to bettors," citing a participant in a horse racing industry event who purportedly stated that "his total parimutuel handle has dropped about 25% because he would rather play in contests with a better return on investment."  (*Id.* ¶ 51.)  Plaintiffs further allege that "Derby Wars' surveys indicate that its own customers now split their available bankrolls 80/20 in favor of parimutuel versus contest play."  (*Id.* ¶ 52.)

Plaintiffs therefore purport to state claims under the IHA and California's UCL.  In their IHA claim, Plaintiffs allege that "Derby Wars accepts 'interstate off-track wagers' that do not comply with the IHA or applicable state law on race meets at the horse tracks operated by [Plaintiffs] in California, Florida, Maryland and

1    Oregon." (Am. Compl. ¶ 57.) Plaintiffs therefore purport to allege a cause of

2    action under 15 U.S.C. § 3005, which provide liability for any person who accepts

3    an "interstate off-track wager" in violation of the IHA.

4        In their UCL claim, Plaintiffs allege that Derby Wars is operating its website

5    in violation of federal and state laws, including the IHA, California Business &

6    Professions Code §§ 19595 and 19604 and the Illegal Gambling Business Act of

7    1970, 18 U.S.C. § 1955. (Am. Compl. ¶ 64.) Plaintiffs allege that as a result of

8    these violations, they are entitled to recover under the California UCL.

9    **III.   LEGAL STANDARD**

10       Pursuant to "Rule 12(c) of the Federal Rules of Civil Procedure, "a party may

11   move for judgment on the pleadings at any time after the pleadings are closed, so

12   long as the motion is filed in sufficient time that it will not delay trial." *Shame on*

13   *You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1143 (C.D. Cal. 2015). A Rule

14   12(c) motion to dismiss tests the legal sufficiency of the claims and allegations

15   asserted in the pleadings. In deciding a Rule 12(c) motion for judgment on the

16   pleadings, the court applies the same standards applicable to Rule 12(b)(6) motions

17   to dismiss. *Cafasso, United States ex rel. v. Gen. Dynamic C4 Sys., Inc.*, 637 F.3d

18   1047, 1054 n.4 (9th Cir. 2011) (applying Rule 12(b)(6) standards set forth in

19   *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *Dworkin v. Hustler Magazine Inc.*, 867

20   F.2d 1188, 1192 (9th Cir. 1989) ("Because the [Rule 12(b) and Rule 12(c)] motions

21   are functionally identical, the same standard of review applicable to a Rule 12(b)

22   motion applies to its Rule 12(c) analog.").

23       Judgment on the pleadings is proper where "taking all the allegations in the

24   pleadings as true, the moving party is entitled to judgment as a matter of law."

25   *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005)

26   (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir.

27   2001)). In so analyzing, the court "inquires whether the complaint at issue contains

28   'sufficient factual matter, accepted as true, to state a claim of relief that is plausible

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

on its face.'"  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012)
(quoting *Ashcroft*, 556 U.S. at 678)); *see also Cafasso*, 637 F.3d at 1053.  In
deciding a Rule 12(c) motion, a court may review the face of the pleadings,
documents attached to the complaint or incorporated therein, and documents subject
to judicial notice.  *Shame on You Prods.*, 120 F. Supp. 3d at 1144.

## IV.   ARGUMENT

### A.   The IHA Does Not Create A Private Right Of Action To Recover Proceeds Of Allegedly Unlawful Gambling

Plaintiffs cannot recover under the IHA because that statute creates a private
right of action only to recover proceeds of <u>lawful</u> wagering on horse races.  Because
Plaintiffs allege that Derby Wars is taking <u>illegal</u> wagers, the IHA does not apply.

In determining whether a statute provides a particular remedy, "the key to the
inquiry is the intent of the legislature."  *New Suffolk Downs Corp. v. Rockingham
Venture, Inc.*, 656 F. Supp. 1190, 1993 (D.N.H. 1987) (analyzing the IHA and
citing cases).  Courts "look[] first to the statutory language, <u>with particular
emphasis on the provisions made therein for enforcement and relief</u>, and then
reviews the legislative history and other traditional aids of statutory interpretation in
seeking to determine congressional intent."  *Id.* (emphasis added) (citing *Middlesex
Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 13 (1981)).  Where,
as here, "a statute expressly provides a remedy, courts must be especially reluctant
to provide additional remedies."  *Karahalios v. Nat'l Fed'n of Fed. Emps., Local
1263*, 489 U.S. 527, 533 (1989).

Here, Plaintiffs do not merely allege that Derby Wars is violating the IHA.
Rather, Plaintiffs repeatedly allege that Derby Wars's fantasy contests constitute
unlawful gambling in violation of the laws of California, Florida, Maryland and
Oregon.  (Am. Compl. ¶¶ 27-33, 57)  Plaintiffs further allege that Derby Wars is
operating an illegal gambling business in violation of 18 U.S.C. § 1955.  (*Id.* ¶ 64.)
The language and structure of the IHA, and its legislative history, all make clear

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

1    that the statute does not allow Plaintiffs to recover the proceeds of purported

2    unlawful gambling activity.

3         <u>First</u>, the IHA explicitly states that it only allows for recovery of proceeds of

4    lawful wagering.  *See Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S.

5    662, 668 (2008) ("[W]e start, as always, with the language of the statute.").

6         Specifically, the IHA prohibits an "off-track betting system" from accepting

7    "interstate off-track wagers" without consent from various parties, including the

8    relevant horse racing association, host racing commission, and off-track racing

9    commission.  15 U.S.C. § 3004(a)(1)-(3).  The statute creates detailed exceptions to

10   these requirements.  15 U.S.C. §§ 3004(a)(1)(B), 3004(b).

11        Most critically, the IHA establishes civil liability for "[a]ny person accepting

12   any <u>interstate off-track wager</u> in violation of [the IHA]."  15 U.S.C. § 3005

13   (emphasis added).  "Interstate off-track wager" is a defined term, which means "a

14   <u>legal</u> wager placed or accepted in one State with respect to the outcome of a

15   horserace taking place in another State . . ."  15 U.S.C. §3002(3) (emphasis added).

16   Thus, the IHA creates civil liability where a person accepts an otherwise <u>legal</u>

17   interstate bet without obtaining consents of relevant parties specified in the statute.[2]

18        The statute thus specifically limits recovery to proceeds of <u>lawful</u> wagers.

19   Further, the IHA has a section on "Congressional  findings and policy" which

20   explicitly states that the statute was passed because "there [was] a need for Federal

21   action to ensure States will continue to cooperate with one another in the

22   acceptance of <u>legal</u> interstate wagers."  15 U.S.C. § 3001 (emphasis added).  The

23   Court should enter judgment in favor of Derby Wars on this basis alone.

24   ───────────────

25   [2]  For example, the IHA creates liability for a wager accepted by a "licensed
     parimutuel wagering operation" of one state, on the outcome of a race in another

26   state.  *See* H.R. Rep. No. 94-1366, at 5 (July 26, 1976) (noting limitation on
     definition of "interstate off-track parimutuel wager"); H.R. Rep. No. 95-1733, at 1-2

27   (Oct. 6, 1978) (noting that "interstate off-track wager" applies to "legal wagers"
     accepted "in one State with respect to the outcome of a horse-racing in another

28   State" without "consent of certain parties with an interest in the applicable
     horserace" in the other state).

6                                        DEFENDANT'S MOTION FOR JUDGMENT
                                              ON THE PLEADINGS

1    <u>Second</u>, the legislative history of the IHA also makes clear that it was

2    intended to allow for recovery of proceeds of <u>legal</u> wagering only, leaving

3    regulation of unlawful wagering to the States and law enforcement.

4        Specifically, upon introduction of the bill on the House floor in 1976, the bill

5    included a definition for the term "wager" which was limited to wagers that were

6    "<u>otherwise permitted under State law</u>."   122 Cong. Rec. E1219-20, at E1219 (daily

7    ed. Mar. 11, 1976) (emphasis added).  A corresponding Section-by-Section

8    Analysis of the bill noted that the term "wager" "<u>does not include illegal wagers</u>

9    since those types of wagers are prohibited by other federal statutes." *Id.* at E1220

10   (emphasis added).

11       A later report on the bill by the House Committee on Interstate and Foreign

12   Commerce again noted that the IHA would not reach illegal gambling operations,

13   "since there are existing criminal laws which prohibit these operations."  H.R. Rep.

14   No. 94-1366, at 5 (July 26, 1976).  This committee report further noted that "the

15   reported bill <u>does not pertain to illegal wagering</u>, as there are existing criminal laws

16   governing these activities . . . ." *Id.* at 9 (emphasis added).

17       A later 1977 report by the Senate Committee on Commerce, Science and

18   Transportation stated that the definition of "interstate off-track parimutuel wager"

19   was "limited to a wager accepted by a licensed parimutuel wagering operation" and

20   would not apply to "illegal handbook operations which are already covered by

21   existing criminal statutes."  S. Rep. No. 95-554, at 1 (Oct. 27 (legislative day, Oct.

22   21), 1977).

23       Similarly, a 1978 report from the House Committee on Interstate and Foreign

24   Commerce stated that the term "interstate off-track wager" – the term adopted in

25   the final statute" – was defined as "a <u>legal</u> wager placed or accepted in one State

26   with respect to the outcome of a horserace taking place in another State."  H.R.

27   Rep. No. 95-1733, at 1 (Oct. 6, 1978) (emphasis added).  Thus, "the regulations and

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

7

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

1   exceptions in the bill <u>would not apply to illegal handbook or parimutuel operations</u>

2   <u>which are already covered by existing criminal statutes</u>."  *Id.* (emphasis added).[3]

3       Moreover, Congressional intent is particularly important here because it was

4   animated by concerns of federalism: Congress explicitly intended to avoid the

5   regulation of unlawful gambling, which was traditionally an area of State concern.

6   *See* 15 U.S.C. § 3001(a)(1); *see Sterling Suffolk Racecourse Ltd. P'ship v.*

7   *Burrillville Racing Ass'n*, 802 F. Supp. 662, 669 (D.R.I. 1992) ("*Sterling Suffolk*")

8   (noting that in passing the IHA, "the federal government was intruding into an area

9   generally left to the states").

10      <u>Third</u>, in light of the "elaborate enforcement provisions" in the IHA, this

11  Court should not read additional remedies into the statute.  *See Middlesex Cnty.*

12  *Sewerage Auth.*, 453 U.S. at 14; *see also Sterling Suffolk*, 802 F. Supp. at 667

13  ("[T]he Court is greatly influenced by the explicit language of the IHA's

14  enforcement and relief sections, provisions on which the Court should place

15  <u>particular emphasis</u>." (emphasis added)).  As result, courts have consistently

16  rejected efforts to expand the scope of the IHA beyond its explicit provisions.  *See,*

17  *e.g.*, *Sterling Suffolk Racecourse Ltd. P'ship v. Burrillville Racing Ass'n*, 989 F.2d

18  1266 (1st Cir. 1993) (noting the "bold-faced evidence of congressional intent

19  intricately interwoven into the IHA's language and structure"); *see also New Suffolk*

20  *Downs Corp.*, 656 F. Supp. at 1193-94; *Gulfstream Park Racing Ass'n v. Tampa*

21  *Bay Downs, Inc.*, 294 F. Supp. 2d 1291, 1303 (M.D. Fla. 2003).

22      <u>Fourth</u>, allowing Plaintiffs to recover proceeds for purportedly unlawful

23  wagering would create a private right of action arising out of criminal statutes.  But

24  courts have long recognized that "[a] private right of action under a criminal statute

---

25

26  [3] Indeed, some members of Congress lamented the fact that the bill provided a "very generous civil remedy procedure against an offtrack betting system authorized by a State, but it offers no remedy against the illegal bookmaker."  122 Cong. Rec. S17998-18000, at 17999 (daily ed. Oct. 1, 1976) (statement of Sen. Stevenson); *see also* 124 Cong. Rec. H11929-33 (daily ed. Oct. 10, 1978).  The bill nevertheless passed with this limitation in place.

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

8                    DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

has rarely been implied." *Suarez v. Beard*, Case No. 15-cv-5756, 2016 U.S. Dist. LEXIS 73555, at *11 (N.D. Cal. June 6, 2016) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979)).

Notably, federal and state laws contain detailed provisions for identifying and providing restitution to victims of unlawful activity. *See, e.g.*, 18 U.S.C. § 2259; Cal. Penal Code § 1202.4. If Congress intended to layer an additional means of recovery to horse racing associations on top of these mechanisms, it would have done so explicitly. *See Sterling Suffolk*, 802 F. Supp. at 669 ("Acknowledging that the federal government was intruding into an area generally left to the states, Congress intended to do so with the least interruption possible. Granting an implied private remedy would unnecessarily and inappropriately transfer partial control over betting on horseracing from the states to private third parties.") It did the opposite: Congress explicitly stated that the IHA only provided for recovery of proceeds of "<u>legal</u>" wagering. Because Plaintiffs seek to recover proceeds of purportedly illegal gambling, they cannot recover under the IHA.

### B.  The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiffs' UCL Claim

A district court "may decline to exercise supplemental jurisdiction" over a related state law claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Sharnese v. California*, 547 Fed. App'x 820, 823 (9th Cir. 2013) ("Once all federal actions were dismissed from the action, the district court acted within its discretion in declining to hear remaining state law claims.").

In deciding whether to exercise supplemental jurisdiction over state law claims after all federal claims are dismissed, courts consider the interests of "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The Supreme Court has noted that state law

1   claims "should" be dismissed if federal claims are dismissed before trial.  *United*

2   *Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).[4]  Thus, "in the usual case

3   in which all federal-law claims are eliminated before trial, the balance of factors to

4   be considered . . . will point toward declining to exercise jurisdiction over the

5   remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7; *see also*

6   *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) ("Generally, dismissal of

7   federal claims before trial dictates that the pendent state claims should also be

8   dismissed.").

9        Further, when all federal claims in a case are dismissed early in a litigation,

10   "the District Court ha[s] a powerful reason to choose not to continue to exercise

11   jurisdiction." *Garcia v. Orion Plastics Corp.*, Case No. CV 15-07514, 2016 WL

12   2904853, at *4 (C.D. Cal. May 18, 2006) (quoting *Carnegie-Mellon Univ.*, 484

13   U.S. at 351).  This is because where a matter is "still at an early stage", "neither the

14   parties nor the Court has expended significant resources in the litigation," and thus

15   "retaining [the matter] in federal court would not meaningfully advance the values

16   of economy, convenience, or fairness." *Id.*

17        Here, if the Court grants Derby Wars's motion for judgment on the pleadings

18   as to Plaintiffs' IHA claim, it should decline to exercise supplemental jurisdiction

19   over Plaintiffs' UCL claim, the sole remaining state law claim in this matter.[5]  This

20   litigation is in its early stages.  The parties have undertaken limited briefing

21   regarding Plaintiffs' Complaint and, now, Amended Complaint.  (*See* Docket Nos.

22   23, 27-30.)  The parties have not yet appeared for an initial Rule 16 conference (*see*

23   Docket No. 35), let alone commenced discovery.  Thus, retaining Plaintiffs' UCL

24   claim "in federal court would not meaningfully advance the values of economy,

25   convenience, or fairness." *See Garcia*,  2016 WL 2904853, at *4.  Thus, the Court

26

27

28

---

[4] Although *United Mine Workers* was decided before enactment of Section 1367, it applies the same jurisdictional doctrines that were later codified by the statute.

[5] Plaintiffs do not allege diversity jurisdiction in their Amended Complaint.  (*See* Am. Compl. ¶ 1.)

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

10

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

should therefore decline to exercise supplemental jurisdiction over Plaintiffs'
California UCL claim.

### C.   Plaintiffs Lack Standing To Assert A Claim Under the UCL

Even if the Court exercises supplemental jurisdiction, Plaintiffs lack standing
to pursue their UCL claim because they have not adequately alleged that they lost
money or property as a result of Derby Wars's conduct.

Before 2004, "any person acting for the interests of itself, its members or the
general public" had standing to assert a UCL claim. *Clayworth v. Pfizer, Inc.*, 49
Cal. 4th 758, 788 (2010). But in 2004, California voters approved Proposition 64,
which "materially curtailed the universe of those who may enforce" the UCL.
*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2011).[6] The purpose of this
change was to "eliminate standing for those who have not engaged in any business
dealings with would-be defendants." *Id*. at 317.

Under the heighted standing requirement adopted by the California
electorate, a private party must (1) establish a loss or deprivation of money or
property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show
that that economic injury was the result of, i.e., *caused by*, the unfair business
practice." *Id.* (emphasis in original); Cal. Bus. & Prof. Code § 17204. Economic
injury may be shown where, among other things, plaintiffs:  (i) surrender more or
acquire less in a transaction than they otherwise would have; (ii) "have a present or
future property interest diminished;" (iii) are "deprived of money or property to
which [they have] cognizable claim;" or (iv) are "required to enter into a
transaction, costing money or property, that would otherwise have been
unnecessary." *Kwikset*, 51 Cal. 4th at 323.

---

[6] Though not a requirement to establish standing, the purpose of Proposition 64 was
"to curtail the prior practice of filing suits on behalf of clients who have not used
the defendant's  product or service, viewed the defendant's advertising, or had any
other business dealing with the defendant." *Clayworth*, 49 Cal. 4th at 788 (internal
quotations omitted) (emphasis added).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS

Plaintiffs do not allege any actual economic injury.  Rather, Plaintiffs allege that they have been deprived of the "take out" rate on wagers that Plaintiffs speculate customers <u>might</u> have made had at Plaintiffs' tracks if they had not been participating in Derby Wars's online fantasy contests.  (Am. Compl. ¶ 50.)  In support of this allegation, Plaintiffs allege that Derby Wars has diverted customers from Plaintiffs' tracks because Derby Wars's customers – not Plaintiffs' customers – split their bankrolls between "parimutuel versus contest play."  (*Id.* ¶ 52.)  Plaintiffs also purport to quote one person, Brett Wiener, who purportedly "now splits his bankroll between Derby Wars and legal parimutuel betting."  (*Id.* ¶ 51.)  These allegations are insufficient to meet the UCL's standing requirements.

<u>First</u>, Plaintiffs allege that Derby Wars has deprived them of fees and compensation to which they are entitled under the IHA  (*Id.* ¶¶ 18, 58-59.)  But as discussed above, Plaintiffs are not entitled to recover under the IHA.  (*See* Section IV(A), *supra*.)

<u>Second</u>, while Plaintiffs claim that Derby Wars has diverted customers away from Plaintiffs' tracks, such "conclusory allegations without more are insufficient to defeat a motion for judgment on the pleadings"  *See Spy Optic, Inc. v. Alibaba.Com, Inc.*, Case No. CV 15-00659, 2015 WL 7303763, at *4 (C.D. Cal. Sept. 28, 2015) (internal quotations omitted)).  Plaintiffs' claim that <u>Derby Wars's</u> customers "split their available bankrolls 80/20 in favor of parimutuel versus contest play" is inapposite.  (Am. Compl. ¶ 52)  Tellingly, Plaintiffs make no allegation whatsoever about how their own customers split their bankrolls, if at all.  Nor do they allege whether they have actually lost customers as a result of Derby Wars's conduct.

As the Court correctly identified in ruling on Derby Wars's motion to dismiss Plaintiffs' RICO claim, Plaintiffs do not "show that [Derby Wars's] actions in operating a fantasy . . . website deprive Plaintiffs of customers that would otherwise place bets at race tracks."  (Order at 7.)  The Court continued:

> Plaintiffs essentially assume, without adequate support, that customers who place bets on Derby Wars, or participate in fantasy sports betting in general, are the same customers who, but for the existence of fantasy sports betting websites, would have otherwise engaged in legal parimutuel gambling.  This is not necessarily true.

(*Id.* at 6.)[7]

In other words, the mere allegation that <u>Derby Wars's</u> customers may split their bankrolls is insufficient to establish that <u>Plaintiffs</u> have lost money to which they are entitled.  Derby Wars's customers may not otherwise engage in wagering on horses.  Or they may wager at tracks operated by parties other than Plaintiffs.  As the Court previously noted:

> In amending their Complaint, Plaintiffs must allege facts that show that at least some of those who play fantasy horse race betting online are those that would otherwise place bets at the race tracks.  Without more information in the Complaint, it is even possible that fantasy sports betting expands the horse racing betting consumer base, by promoting interest in the sport.  This, in turn, would benefit Plaintiffs.

(*Id.*)

Plaintiffs attempt to skirt this issue by alleging that one individual, Brett Wiener, "now splits his bankroll between Derby Wars and legal parimutuel betting."  (Am. Compl. ¶ 51.)  But in the article Plaintiffs cite (*see id.* ¶ 51 n.3),[8]

---

[7] Though the Court undertook this analysis within the framework of deciding Derby Wars's motion to dismiss Plaintiffs' RICO claim, the same reasoning applies here. Just as the Court found that Plaintiffs' RICO allegations of economic injury were too speculative, so too should the Court hold here.  *See Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005) ("RICO does not provide a cause of action for all types of injury to property interests, but only for injuries resulting in 'concrete financial loss.'").

[8] Plaintiffs cited www.bloodhorse.com/horse-racing/articles/197528/innovation-in-racing-not-without-obstacles in support of Paragraph 51 of the FAC.  That is an improper link.  Derby Wars believes Plaintiffs inverted numbers in the website address, and intended to cite www.bloodhorse.com/horse-racing/articles/197258/innovation-in-racing-not-without-obstacles.

Wiener is not quoted as making any mention of Derby Wars or Plaintiffs, nor does the article state whether he resides in a state where one of Plaintiffs' tracks is located. Moreover, Wiener states that online gaming may prove <u>a more convenient forum</u> than physically going to race tracks because customers may "live a great distance from racetracks and off-track betting parlors."[9] The Court envisioned this very scenario when it contemplated that there may be "other reasons why customers may place wagers somewhere other than at a race track." (Order at 6 ("Customers might not want to be physically present at a race track when they make these wagers, preferring the ease of using an online alternative.").) Plaintiffs' allegations that they were deprived of customers are contradicted by the very evidence they incorporate into the Amended Complaint.

In short, just as the Court found with respect to the original Complaint, Plaintiffs do not allege an actual economic injury. Plaintiffs are not entitled to "fees" under the IHA, for reasons discussed above. In addition, Plaintiffs do not allege that they lost any actual customers as a result of Derby Wars's conduct. *See Kwikset*, 51 Cal. 4th at 321 Plaintiffs merely speculate that participants in Derby Wars's fantasy contests would otherwise be wagering at their tracks. Such conjecture is wholly insufficient to establish standing under the UCL.

### D. <u>Even If Plaintiffs Have Standing To Assert A UCL Claim, Their Demand For Restitution Of Monies Is Improper As A Matter Of Law</u>

Assuming Plaintiffs have standing to assert a UCL claim against Derby Wars, their request for "restitution of monies wrongfully obtained and retained by Derby Wars" should be dismissed. *See Johnson v. Microsoft Corp.*, Case No. C06-0900RSM, 2007 WL 2404844, at *1 (W.D. Wash. Aug. 17, 2007) ("[C]ourts in the

---

[9] *See Innovation in Racing Not Without Obstacles*, Blood-Horse, http://www.bloodhorse.com/horse-racing/articles/197258/innovation-in-racing-not-without-obstacles (last visited June 29, 2016).

1   Ninth Circuit have reviewed and dismissed claims for various damage awards, such
2   as liquidated damages claims, on Rule 12(c) motions." (collecting cases)).

3          The UCL does not provide for nonrestitutionary disgorgement.  *Korea*
4   *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144, 1148 (2003).  Thus,
5   to prove entitlement to restitution, a plaintiff must show that the defendant received
6   and unjustly retained a benefit at the plaintiff's expense.  *Lectrodryer v. SeoulBank*,
7   77 Cal. App. 4th 723, 726 (2000).  That is, the plaintiff must seek to "return money
8   obtained through an unfair business practice to those persons in interest from whom
9   the property was taken, that is, to persons who had an ownership interest in the
10  property or those claiming through that person."  *Korea Supply Co.*, 29 Cal. 4th at
11  1144-45 (emphasis added).  Thus, Plaintiffs "must demonstrate that [Derby Wars]
12  is in possession of money or property taken from [Plaintiffs]."  *Asghari v.*
13  *Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013).

14         Here, Plaintiffs fail to allege a single fact establishing that Derby Wars is in
15  possession of money taken from Plaintiffs.  To the extent Plaintiffs' request for
16  "fees" is a veiled attempt at obtaining Derby Wars's profits (or a portion thereof),
17  they allege no current ownership right therein.  To the contrary, Plaintiffs allege
18  that Derby Wars's customers might have otherwise bet at their tracks.  This is
19  precisely the type of nonrestitutionary disgorgement of profits rejected by
20  California courts.  *See Korea Supply Co.*, 29 Cal. 4th at 1145.  Accordingly,
21  Plaintiffs' demand for "restitution of monies" fails and should be dismissed.
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

1 **V.** <u>**CONCLUSION**</u>

2       For all of the foregoing reasons, Derby Wars respectfully requests that the

3 Court grant its motion in its entirety and enter judgment in its favor.

4

5 Dated: June 29, 2016            Respectfully submitted,

6                        MANATT, PHELPS & PHILLIPS, LLP

7                        Matthew P. Kanny
                       Arunabha Bhoumik

8                        Maura K. Gierl

9                        By:  /s/ Matthew P. Kanny

10                          Matthew P. Kanny
                         *Attorneys for Defendant*
                         HORSE RACING LABS, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

16

DEFENDANT'S MOTION FOR JUDGMENT
ON THE PLEADINGS