Richard B. Specter, SBN 114090
Diane L. Ellis, SBN 130628
CORBETT, STEELMAN & SPECTER
A Professional Law Corporation
18200 Von Karman Avenue, Suite 900
Irvine, California 92612-1023
Telephone:  (949) 553-9266
Facsimile:  (949) 553-8454
rspecter@corbsteel.com

Attorneys for Plaintiffs
LOS ANGELES TURF CLUB, INCORPORATED,
LOS ANGELES TURF CLUB II, INC.,
PACIFIC RACING ASSOCIATION, PACIFIC RACING
ASSOCIATION II, GULFSTREAM PARK RACING
ASSOCIATION, INC., OREGON RACING, INC.,
MARYLAND JOCKEY CLUB OF BALTIMORE CITY, INC.,
and LAUREL RACING ASSOCIATION, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES TURF CLUB, INCORPORATED, a  California Corporation, LOS ANGELES TURF CLUB II, INC., a California Corporation, PACIFIC RACING ASSOCIATION, a California Corporation, PACIFIC RACING ASSOCIATION II, a California Corporation, GULFSTREAM PARK RACING ASSOCIATION, INC., a Florida Corporation, OREGON RACING, INC., a Delaware Corporation, MARYLAND JOCKEY CLUB OF BALTIMORE CITY, INC., a Maryland Corporation, LAUREL RACING ASSOCIATION, INC., a Maryland Corporation, and DOES 1 through 10, inclusive,<br><br>                  Plaintiffs,<br><br>        vs.<br><br>HORSE RACING LABS, LLC, a Delaware Limited Liability Company, | Case No.: 2:15-cv-9332 SJO (JEMx)<br><br>Hon. S. James Otero<br>Courtroom No. 1<br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Hearing Date:  August 1, 2016<br>Hearing Time: 10:00 a.m.<br>Ctrm.: 1 |

-1-

also known as, IMMERSE, LLC, doing )
business as DERBYWARS, and Does 1 )
through 10, )
                                    )
          Defendants. )
_____ )

Plaintiffs LOS ANGELES TURF CLUB, INCORPORATED, LOS ANGELES TURF CLUB II, INC., PACIFIC RACING ASSOCIATION, PACIFIC RACING ASSOCIATION II, GULFSTREAM PARK RACING ASSOCIATION, INC., OREGON RACING, INC., MARYLAND JOCKEY CLUB OF BALTIMORE CITY, INC., and LAUREL RACING ASSOCIATION, INC.  ("Plaintiffs"), hereby submit their Opposition to Defendant HORSE RACING LABS, LLC's ("Defendant" or "DerbyWars") Motion for Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure 12(c) (the "Motion").

Respectfully submitted,

DATED:  July 11, 2016               CORBETT, STEELMAN & SPECTER
                                  A Professional Law Corporation

                              By:   */s/ Richard B. Specter*
                                    Richard B. Specter
                                    Attorneys for PLAINTIFFS

PLAINTIFFS' OPP TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND BACKGROUND…………………………………...1

    A.    Introduction…………………………………………………………..1

    B.    The First Amended Complaint……………………………………5

II.    DEFENDANT'S MOTION MUST BE DENIED……………………………8

III.   PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF

    UNDER THE *IHA*. …………………………………………………………10

IV.   PLAINTIFFS HAVE ADEQUATELY PLEAD A CLAIM

    FOR UNFAIR TRADE PRACTICES…………………………………………12

    A. Plaintiffs Have Standing Under the UCL…………………………...13

    B. Plaintiffs Have Adequately Pleaded A Right To Restitution and

       Disgorgement. …………………………………………………………17

V.    CONCLUSION……………………………………………………………18

PLAINTIFFS' OPP TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allison v. California Adult Authority,*
    419 F.2d 822 (9th Cir. 1969) …………………………………………………..9, 15

*Asghari v. Volkswagen Grp. Of Am., Inc.,*
    42 F.Supp.3d 1306 (C.D. Cal. 2013)……………………………..………….. 17

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir 1988)………………………………………………......9

*Brown v. Board of Police Comm'rs,*
    58 Cal.App. 2d 473 (1943)…………………………………..………….3

*Carmen v. San Francisco Unified Sch. Dist.,*
    982 F. Supp. 1396 (N.D. Cal. 1997)……………………………………….5

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
    896 F.2d 1542(9th Cir 1989)……………………………………………….8

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005)……………………………………………….8

*Lonberg v. City of Riverside,*
    300 F. Supp. 2d 942(C.D. Cal. 2004)……………………………………..5

*Clayworth v. Pfizer, Inc.,*
    49 Cal. 4th 758 (2010)…………………………………………………….16

*Colgan v. Leatherman Tool Group, Inc.,*
    135 Cal. App. 4th 663 (2006)…………………………….………..17

*Coto Settlement v. Eisenberg,*
    593 F.3d 1031 (9th Cir. 2010)…………………………………………….9

*Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc.,*
    294 F. Supp. 2d 1291 (M.D. Fla. 2003)…………………………………….12

PLAINTIFFS' OPP TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011)……………………………………………………14

*Lectrodryer v. Seoulbank*,
  77 Cal. App. 4th 723 (2000)………………………………………………17

*Meister v. Mensinger*,
  230 Cal. App. 4th 381 (2014)……………………………………………...18

*Nami v. Fauver*,
  82 F.3d 63 (3rd Cir. 1996)………………………………………………9, 15

*New Suffolk Downs Corp. v. Rockingham Venture, Inc.*,
  656 F. Supp. 1190 (D.N.H. 1987)……………………………...…3, 12, 18

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
  2015 U.S. App. LEXIS 7027  (9th Cir. Cal. Apr. 28, 2015)……………..……8

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
  2016 U.S. Dist. LEXIS 24028 (S.D. Cal. Feb. 25, 2016)……………………14

*People v. Lomento*,
  155 Cal.App.2d 740 (1957)………………………………………………..3

*Peralta Cmty. Coll. Dist.*,
  825 F. Supp. 891 (N.D. Cal. 1993)…………………………………………5

*Peterson v. Grisham*,
  594 F.3d 723 (10th Cir. 2010)……………………………………………9, 15

*Rescuecom Corp. v. Google Inc.*,
  562 F.3d 123 (2nd Cir. 2009)………..………………………………………9

*Shersher v. Superior Court*,
  154 Cal. App. 4th 1491 (2007)……………………………………………17

*Spy Optic, Inc. v. Alibaba.com, Inc.*,
  2015 U.S. Dist. LEXIS 158600 (C.D. Cal. Sept. 28, 2015)………………....8

*Sterling Suffolk Racecourse Ltd. Partnership v. Burrillville Racing Ass'n*,
  802 F. Supp. 662 (D.R.I. 1992)……………………………………………11

*Sterling Suffolk Racecourse Ltd. Partnership v. Burrillville Racing Ass'n*,
   989 F.2d 1266 (1st Cir. 1993)…………..………………………………11

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal.4th 553(1998)……………….…………………………………..16

*Suarez v. Beard*,
   2016 U.S. Dist. LEXIS 73555  (N.D. Cal. June 6, 2016)…………………...12

*Sybersound Records, Inc*. v. UAV Corp.,
   517 F.3d 1137 (9th Cir. 2008)…………………………………………13

*Torbet v. United Airlines, Inc.*,
   298 F.3d 1087 (9th Cir. 2002)………………………………………..8

*United States v. Real Prop*.,
   234 F.Supp.2d 1136  (C.D. Cal. 2002) …………………………………9

*Watson Labs., Inc. v. Rhone-PouleneRorer, Inc.*,
   178 F.Supp.2d 1099 (C.D. Cal. 2001)……………………………………12

STATUTES

15 U.S.C. § 3001…………………………………………………1

15 U.S.C. § 3002…………………………………………………...1

15 U.S.C. § 3003…………………………………………………...1

15 U.S.C. § 3004…………………………………………………...1, 6, 10

15 U.S.C. § 3005…………………………………………………...1

15 U.S.C. § 3006…………………………………………………...1

18 U.S.C. § 1084…………………………………………………4, 10

31 U.S.C. § 5362 (ix) …………………………………………...…………4

California *Business & Professions Code* §17200……………………………*passim*

California *Business & Professions Code* § 17203……………………...13

California *Business & Professions Code* § 17204…………………………14

California *Business & Professions Code* § 19411………………………6

California *Business & Professions Code* § 19590………………………7

California *Business & Professions Code* § 19595…………………………….*passim*

California *Business & Professions Code* §19604…………………….....……*passim*

California *Penal Code* § 337a…………………………………………………*passim*

## RULES

*Federal Rules of Civil Procedure* Rule, Rule 8…………………………………9

*Federal Rules of Civil Procedure* Rule, Rule 12(b)(6)……………………….8

*Federal Rules of Civil Procedure* Rule, Rule 12(c)………………………….8

## OTHER AUTHORITIES

S. Rep. No. 95-554 (Oct. 27 (legislative day, Oct. 21), 1977)…………………1, 4, 11

PLAINTIFFS' OPP TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

# I.    INTRODUCTION AND BACKGROUND.

## A.    Introduction.

The stated purpose of the *Interstate Horseracing Act of 1978* (the "*IHA*") is to protect the stakeholders in horse racing - the host State, the host racing association (such as Plaintiffs), and the horsemen's group - from persons (such as DerbyWars), who accept interstate wagers on horse racing without obtaining the state required consents, and without paying to the stakeholders the required fees.  See, 15 *U.S.C.* §§ 3001 – 3006.   "It is the policy of the Congress in this Act to regulate interstate commerce with respect to wagering on horse racing, in order to further the horse racing and legal off-track betting industries in the United States."  15 *U.S.C.* § 3001(b).

Congress found that there was a need for such regulation, and to insure that the stakeholders continued to receive the fees to which they are entitled, because "the horse racing industry in the United States is a significant industry which provides employment opportunities for thousands of individuals, provides substantial revenue to the States. . . . The reported bill is designed to assure the continued flow of revenue from parimutuel wagering in those States which conduct horse racing and further, the horse racing industry in the United States," by providing for a private right of action to recover "damages to the State hosting the race, to the host racing association, and to any horse owner whose horse participated in the horserace on which interstate off-track parimutuel horse racing was accepted."  *Report on the Interstate Horseracing Act of 1977*, S. Rep. No. 95-554 (Oct. 27 (legislative day, Oct. 21), 1977).

DerbyWars alleges that the First Amended Complaint (the "FAC") fails to state a claim for violation of the *IHA* because Plaintiffs allege that DerbyWars' conduct is unlawful; however, Plaintiffs have not plead that DerbyWars is conducting a criminal bookmaking operation.  Any incidental allegation of criminality in the pleadings (see, footnote 2, *infra),* or proof of criminality at trial, is neither a required element of this civil lawsuit nor even necessarily relevant.   Thus, even if DerbyWars' claim is

correct, it can easily be rectified in an amended pleading, omitting any such allegation of criminal illegality, without affecting the viability of the claim.  Moreover, DerbyWars is conflating criminal unlawfulness with civil unlawfulness, and asks the Court to do the same: to find that DerbyWars' actions are criminal, and that this criminality means that DerbyWars gets freedom from any civil liability.  But that is not what Plaintiffs assert.

Rather, Plaintiffs allege that DerbyWars is conducting a form of legal wagering that is in violation of various civil laws, such as *Business & Professions Code* §§ 19550, 19595 and 19604, which require DerbyWars to obtain the necessary licenses and consents, and to pay to Plaintiffs the mandatory Fees:

> "DerbyWars does not comply with either state or federal regulations:  it does not have the required consents and licenses, and it is not paying the required Fees.  This failure has caused, and continues to cause, direct injury to PLAINTIFFS by depriving them of, *inter alia,* the Fees to which they are legally entitled for any legal bet placed on a horse running in a race at their tracks, or for any legal bet placed by a resident of their home states on a race run in their home state or in another state."  <u>FAC</u>, ¶ 36.

This comes well within the purview of the *IHA,* which is acknowledged by DerbyWars:  "***Thus, the IHA creates civil liability where a person accepts an otherwise legal interstate bet without obtaining consents of the relevant parties specified in the statute***."  <u>Motion</u>, 6:16-17.

As observed in one case cited by DerbyWars, if DerbyWars had indeed obtained the necessary consents, there would be no need to rely on the *IHA* in order to obtain redress and collect the fees to which they are entitled from DerbyWars; Plaintiffs could simply sue for a breach of contract:

> "Suffolk correctly argues that once a host state, the host racing association, and its horsemen's group have entered into a contract (providing suitable compensation) to permit off-track simulcasts and betting on its races, it has no further interest in litigating to enforce the Act. **This is because the statute was created for the 'especial benefit' of those groups to insure that states which desire to run off-track**

**betting operations do not pirate the races of the host state without providing adequate compensation therefor.**"

*New Suffolk Downs Corp. v. Rockingham Venture, Inc*., 656 F. Supp. 1190, 1192-1193 (D.N.H. 1987) (emphasis added) (Plaintiff sought to sue under the *IHA* although it is neither a host state, a host racing association nor a horsemen's group, as defined in the *IHA).*

Of course, DerbyWars does not admit that its contests are in violation of any law, criminal or civil.  Such an admission would be the death knell of its own business.  Rather, DerbyWars contends that it is not subject to the civil laws regulating gambling on horse racing, (such as the *IHA* and the *Unlawful Internet Gambling Enforcement Act of 2006*("*UIGEA*")), because its contests are not "bets" or "wagers":  "DerbyWars contends that its fantasy contests do not constitute 'bets' or 'wagers' under federal or state gambling laws, and thus are not illegal under those laws." Motion, 1:8-10.  "To be clear, Derby Wars maintains that its contests are lawful because they are not 'wagering' at all under the IHA and/or Unlawful Internet Gambling Enforcement Act." Motion, 1:20 – 2:1.  Yet DerbyWars otherwise fails to address this key issue.

A bet is a wager or agreement between two or more persons that a sum of money or other valuable thing, contributed by those taking part, shall become property of one or other of them, depending on happening of some future event, at present uncertain. *People v. Lomento,* 155 Cal .App. 2d 740, 742 (1957). A bet or wager involves gain or loss, between known participants, of money or property staked upon a happening in the future of an event at the time uncertain. *Brown v. Board of Police Comm'rs*, 58 Cal. App. 2d 473, 475 (1943).

In the FAC, Plaintiffs' claim that DerbyWars' fantasy contests are indeed "bets" or "wagers" under federal and state gambling laws, but that DerbyWars is not in compliance with the *IHA* and other laws requiring payment of compensation to racetracks for, *inter alia,* bets or wagers on races run at Plaintiffs' tracks.  It is significant that DerbyWars has now filed two motions to dispose of this case, neither

PLAINTIFFS' OPP TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

of which addresses this central issue.  The reason for this is that DerbyWars is well-aware that the law does not support its position.  A multitude of states have already determined that Daily Fantasy Sports constitute bets or wagers, including Alabama, Georgia, Hawaii, Idaho, Illinois, Nevada, New York, South Dakota, Texas and Vermont.[1]

But regardless, as DerbyWars concedes in the Motion, when the *IHA* references legality, it refers to criminal statutes, such as California *Penal Code* § 337a, which criminalizes bookmaking:  "the bill would not apply to . . . illegal handbook operations which are already covered by existing criminal statutes."  *Report on the Interstate Horseracing Act of 1977*, S. Rep. No. 95-554 (Oct. 27 (legislative day, Oct. 21), 1977).  In contrast, Plaintiffs assert that DerbyWars' actions are unlawful because they violate civil laws.  It is not necessary for Plaintiffs to establish that DerbyWars is engaged in criminal conduct for Plaintiffs to prevail.[2]  And if, as DerbyWars claims, it is not subject to the *IHA*, then it is admitting to violating the *Federal Wire Act*, 18 U.S.C. § 1084, which prohibits the transmission of wagering information related to horse racing across state lines, unless it is done in compliance with the *IHA*.  In other words, DerbyWars asks this Court to expressly find that it is engaged in criminal conduct, so that it can escape civil liability.  If the Court so finds, then Plaintiffs respectfully submit that the Court should then notify the Attorney General of

---

[1] While these states have addressed Daily Fantasy Sports in the context of football and other sports, the argument that DerbyWars' contests constitute bets or wagers is even stronger when one looks at the language of the *UIGEA,* 31 U.S.C. § 5362 (ix).

[2] At paragraph 48 of the FAC, Plaintiffs do reference the *Illegal Gambling Business Act of 1970*, 18 U.S.C. § 1955 which criminalizes an "illegal gambling business," which is a gambling business in violation of state law.  But as noted by DerbyWars, under the *IHA,* it is the States who "have the primary responsibility for determining what forms of gambling may legally take place within their borders."  15 U.S.C. §3001(a)(1).  And all violations of state gambling laws also violate Section 1955, so if violating Section 1955 removed a dispute from the purview of the *IHA,* it would be meaningless.  Plaintiffs also include a reference in paragraph 64 to Section 1955 in the second claim for relief (the §17200 claim), but that is not incorporated into the claim for damages under the *IHA*.  *And* DerbyWars specifically denies these allegations that it violates 18 U.S.C. § 1955.

-4-

DerbyWars' illegal operation.

Finally, Plaintiffs have also adequately pleaded a claim for violation of *Business & Professions Code* §§17200, *et seq.* The Motion should be denied.  However, should the Court decide to grant the Motion, Plaintiffs respectfully request leave to file a Second Amended Complaint.   See, *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) ("although Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend, see *Carmen v. San Francisco Unified Sch. Dist*., 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), and to simply grant dismissal of the action instead of entry of judgment. See *Moran v. Peralta Cmty. Coll. Dist*., 825 F. Supp. 891, 893 (N.D. Cal. 1993)").

**B.     The First Amended Complaint.**

Plaintiffs allege that DerbyWars' "contests" are "bets" or "wagers," and are unlawful, *unless* DerbyWars complies with the strict requirements imposed by state and the federal governments for **legal** betting on horse racing which, *inter alia*, require DerbyWars to obtain the required licenses and consents, which it has not done. FAC, ¶ 15.  In order to offer off-track wagering on horse races (that is, wagers placed at a location other than at the race track where the race is actually being run), including on-line via an account wagering platform, one must obtain the proper consents and licenses from numerous groups, including host racing associations such as Plaintiffs, as well as licensing agencies such as the California Horse Racing Board.  FAC, ¶ 17.  One of the requirements to obtaining the required consents and licenses, is an agreement to pay the legally required fees, including certain fees due to Plaintiffs: the Host Fee (a percentage of the "handle" or amount of wagers placed on a race or races); and the Source Market Fee (a fee required for any legal bet placed by a resident of the racing association's home state on a race run in any state) (the Host Fee and Source Market Fee are collectively referred to herein as the "Fees").  Without the proper consents and licenses, DerbyWars cannot legally accept wagers on horse races. FAC, ¶

PLAINTIFFS' OPP TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

18.

Thus, any wager made within California on any horse race (whether run in California or outside of California) requires the payment of compensation to the racetracks, regardless of whether the wager is made at a race track, OTB or online. <u>FAC</u>, ¶ 21.

The "take out rate" for legal wagering on horse racing is set by law (the amount of wagers which are not returned to the bettors), which provides not only the requisite percentage, but also the recipients of the take out.  The parties who receive the take out include the racing association, the horsemen, state and local government, and charitable organizations that provide for the health and welfare of the horses, as well as the jockeys and other behind the scenes race track workers.  DerbyWars' failure to pay the required Fees is depriving not only Plaintiffs of these monies, but the horsemen, state and local governments, and many benevolent organizations that depend upon the monies received from the take out.  <u>FAC</u>, ¶ 50.

The *IHA* creates an exception to the prohibition of the *Federal Wire Act* for wagering on horse racing, *but limits that exception to wagering that is in strict compliance with the IHA*:  "No person may accept an interstate off-track wager except as provided in this Act."  15 U.S.C. § 3003.  <u>FAC</u>, ¶ 24.  In order to accept an interstate off-track wager on horse racing, Section 3004 of the IHA requires the consent of:  (1) the host racing association (and its respective horsemen's group), (2) the host racing commission, and (3) the off-track racing commission. 15 U.S.C. § 3004.  DerbyWars has neither any such consents nor any such licenses.  <u>FAC</u>, ¶ 23.  Defendant does not hold, nor has it ever held, a license to conduct wagering on horse racing in California, Florida, Maryland, or Oregon, or in any other state.  <u>FAC</u>, ¶  33.

Parimutuel wagering on horse racing was legalized in California in 1933, and has been specifically exempted from California *Penal Code* § 337a, which criminalizes bookmaking.  As set forth in California *Business & Professions Code* § 19411: "'Parimutuel wagering' is a form of wagering in which bettors either purchase

tickets of various denominations, or issue wagering instructions leading to the placement of wagers, on the outcome of one or more horse races. The association distributes the total wagers comprising each pool, less the amounts retained for purposes specified in this chapter, to winning bettors based on the official race results."[3] FAC, ¶ 28.  California *Business & Professions Code* § 19590 provides that, "Parimutuel wagering shall be conducted only by a person or persons licensed under this chapter to conduct a horse racing meeting or authorized by the board to conduct advance deposit wagering."  FAC, ¶ 28.

California *Business & Professions Code* § 19595 provides that: "[a]ny form of wagering or betting on the result of a horse race other than that permitted by this chapter is illegal."  Thus, under California law, only licensed racing associations and licensed advance deposit wagering companies are authorized to accept wagers from the State of California on horse racing.  FAC 29.  California *Business & Professions Code* § 19604 sets forth the requirements for advanced deposit wagering in California (online wagering through an account), including that a provider like DerbyWars be licensed by the California Horse Racing Board, and that it have a valid contract with racing associations, like Plaintiffs. *Business & Professions Code* §§ 19604 (b) (1) & (2).  FAC, ¶ 30.

The States of Florida, Maryland and Oregon all similarly restrict wagering on horse racing to licensed entities.  FAC, ¶ 31.  DerbyWars does not presently hold, nor has it ever held, a license to conduct wagering on horse racing in the States of California, Florida, Maryland, or Oregon, or in any other state.  FAC, ¶ 32. DerbyWars does not comply with either state or federal regulations:  it does not have the required consents and licenses, and it is not paying the required Fees.  FAC, ¶ 36.

---

[3] DerbyWars does the same in its contests – distributing the total wagers comprising the pool, less the amount that it retains as its take-out.  FAC, ¶ 43, fn. 1 and 2. DerbyWars does not claim in the Motion that these statutes do not apply to it, or that it is not engaged in parimutuel wagering.

DerbyWars is an internet website for betting on horse races, including races run at race meets operated by Plaintiffs. DerbyWars offers various contests, including "head to head" and "high stakes" contests. As an example, in a $400 head to head contest, two participants bet $218 each, with the winner claiming $400 and the remaining $36 going to DerbyWars.[4] The participants select real horse races; the results depend upon the outcome of actual races and payouts at Plaintiffs' tracks; and at the end of the contest, the participant who "won" the most money, wins the $400 pool. As set forth on the DerbyWars website, "[t]he scores are calculated according to the actual payouts at actual race tracks. FAC, ¶ 43, fn. 1. For an $8,000 high stakes contest, 24 players bet $375, and make selections of horse from 13 actual races. The winner receives $8,000, and DerbyWars' take-out is $1,000. FAC, ¶ 43. These contests constitute "bets" or "wagers." FAC, ¶ 41.

## II.   **DEFENDANT'S MOTION MUST BE DENIED**.

The standard governing a motion for judgment on the pleadings under *Federal Rules of Civil Procedure* ("FRCP") Rule 12(c) is essentially the same as that governing a motion to dismiss for failure to state a claim under 12(b)(6). For a motion for judgment on the pleadings, the Court must accept as true the allegations of the nonmoving party, while the allegations of the moving party that have been denied must be assumed false . *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir 1989). A motion for judgment on the pleadings will be granted only if, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *Torbet v.*

---

[4] https://www.derbywars.com/tournaments. The Court may consider documents, including websites, "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 2015 U.S. App. LEXIS 7027, 14-15 (9th Cir. Cal. Apr. 28, 2015); *Spy Optic, Inc. v. Alibaba.com, Inc.*, 2015 U.S. Dist. LEXIS 158600 (C.D. Cal. Sept. 28, 2015).

1   *United Airlines, Inc.*, 298 F.3d 1087, 1089 (9th Cir 2002).

2          In addition, FRCP 12(c) must be read in conjunction with FRCP 8(a), which

3   requires only a short and plain statement of the claim showing that the pleader is

4   entitled to relief.  Dismissal under Rule 12(c) is proper only if there is either a lack of a

5   cognizable legal theory or the absence of sufficient facts alleged under a cognizable

6   legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir 1988);

7   *United States v. Real Prop*., 234 F. Supp.2d 1136, 1137 (C.D. Cal 2002) .

8          In considering the Motion, the Court must "accept as true all of the factual

9   allegations set out in the complaint, draw inferences from those allegations in the light

10  most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v.*

11  *Google Inc.,* 562 F.3d 123, 127(2nd Cir. 2009).  When a complaint's allegations are

12  capable of more than one inference, the court must adopt whatever plausible inference

13  supports a valid claim.  *Starr v. Baca,* 652 F.3d 1202, 1216(9th Cir. 2011).

14         A plaintiff's ability to prove his or her allegations, or possible difficulties in

15  making such proof, is generally of no concern in ruling on the motion:  "We do not

16  inquire whether the plaintiff will ultimately prevail, only whether they are entitled to

17  offer evidence to support their claims." *Nami v. Fauver,* 82 F.3d 63, 65(3rd Cir. 1996);

18  *Allison v. California Adult Authority,* 419 F.2d 822, 823(9th Cir. 1969); *Peterson v.*

19  *Grisham,* 594 F.3d 723, 727 (10th Cir. 2010) (court does not weigh potential evidence

20  that the parties may present at trial).  The Court may also consider materials

21  incorporated into the complaint or matters of public record.  *Coto Settlement v.*

22  *Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010).

23         Applying these standards, the Court should deny Defendant's Motion to

24  Dismiss.  And should the Court grant the Motion in whole or in part, Plaintiffs must be

25  given leave to amend.

26

27  //

28  //

### III.   PLAINTIFFS HAVE STATED A CLAIM FOR RELIEF UNDER THE *IHA*.

Plaintiffs have not pleaded that DerbyWars is conducting an illegal bookmaking operation in violation of state criminal statutes, such as *Penal Code* § 337a; rather, Plaintiffs allege that DerbyWars is conducting a form of legal wagering that is in violation of various *Business & Professions Code* sections (civil laws) which require DerbyWars to obtain the necessary licenses and consents, and to pay Plaintiffs the mandatory Fees:

> "DerbyWars does not comply with either state or federal regulations: it does not have the required consents and licenses, and it is not paying the required Fees. This failure has caused, and continues to cause, direct injury to PLAINTIFFS by depriving them of, *inter alia,* the Fees to which they are legally entitled for any legal bet placed on a horse running in a race at their tracks, or for any legal bet placed by a resident of their home states on a race run in their home state or in another state." <u>FAC</u>, ¶36.

DerbyWars admits that this states a claim under the *IHA*: "***Thus, the IHA creates civil liability where a person accepts an otherwise <u>legal</u> interstate bet without obtaining consents of the relevant parties specified in the statute.***" Motion, 6:16-17. Plaintiffs do not seek to expand the application of the *IHA* as DerbyWars alleges; Plaintiffs seek to have it apply to the exact situation for which it was contemplated.

The *IHA* provides that: "No person may accept an interstate off-track wager except as provided in this Act." 15 U.S.C. § 3003.[5]  In order to accept an interstate off-track wager on horse racing, Section 3004 of the IHA requires the consent of: (1) the host racing association (and its respective horsemen's group), (2) the host racing commission, and (3) the off-track racing commission. 15 U.S.C. § 3004.  In order to obtain such consents and licenses, DerbyWars must agree to pay the statutory fees. DerbyWars admits that it has neither any such consents nor any such licenses. Its

---

[5] If, as DerbyWars claims, it is not subject to the *IHA*, then it would in fact be in violation of the *Federal Wire Act*, 18 U.S.C. § 1084, which prohibits the transmission of wagering information across state lines.

failure to pay these fees is the source of Plaintiffs' damages.  The *IHA* provides that the damages to which Plaintiffs are entitled to for DerbyWars' violation of the *IHA* is the payment of the Fees to which they are entitled under state law.  15 U.S.C. §3005.  As quoted by DerbyWars (<u>Motion</u>, 5:19-22), "Whereas here, 'a statue expressly provides a remedy, courts must be reluctant to provide additional remedies.' *Karahalios v. Nat'l Fed'n of Fed. Emps., Local 1263*, 389 U.S. 527, 533 (1989)."   All Plaintiffs are seeking is the remedy provided in the *IHA*, the payment of the Fees to which they are entitled; they are not seeking additional remedies

And if DerbyWars' interpretation of the *IHA* was correct, then the statute would become meaningless.  The *IHA* requires that in order to accept an interstate bet, one must have the required licenses and consents, as determined by state law.  If one does not, then one is liable to, *inter alia,* the host racing association, for the Fees to which it is entitled under state law.  According to DerbyWars, because it does not have the required licenses and consents, it is offering "illegal" gambling, the *IHA* does not apply, and it cannot be liable to Plaintiffs for the Fees provided for under the *IHA*.  But "illegal" under the *IHA* means in violation of *criminal* statutes, such as *Penal  Code* §337a, not civil statutes;  "the bill would not apply to  . . . illegal handbook operations which are already covered by existing criminal statutes." *Report on the Interstate Horseracing Act of 1977*, S. Rep. No. 95-554 (Oct. 27 (legislative day, Oct. 21), 1977).

In reviewing the cases cited by DerbyWars in support its interpretation of the *IHA,* (<u>Motion</u>, p. 8), it quickly becomes clear why DerbyWars fails in each instance to discuss the facts or holdings of the cases, instead simply selecting a one sentence quote.  Each of the cases deals with the same issue:  whether standing to assert a claim under the *IHA* is limited to "the host State, the host racing association, or the horsemen's group" as set forth in 15 U.S.C. §3006.  In each case, the Court answered that question in the affirmative.  See, *Sterling Suffolk Racecourse Ltd. Partnership v. Burrillville Racing Ass'n,* 802 F. Supp. 662, 664-665 (D.R.I. 1992); *Sterling Suffolk*

PLAINTIFFS' OPP TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Racecourse Ltd. Partnership v. Burrillville Racing Ass'n*, 989 F.2d 1266, 1267 (1st Cir. R.I. 1993); *Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc*., 294 F. Supp. 2d 1291, 1302 (M.D. Fla. 2003); *New Suffolk Downs Corp. v. Rockingham Venture, Inc*., 656 F. Supp. 1190, 1192-1193 (D.N.H. 1987).  None of the cases can be read as limiting the application of the *IHA* to the claims asserted in the FAC (as DerbyWars asserts they do), beyond the inapplicable holdings declining to expand the provisions of  Section 3006 to include plaintiffs not specified therein.  Certainly, DerbyWars does not contest that Plaintiffs meet the standing requirements of Section 3006.

Moreover, DerbyWars' citation *of Suarez v. Beard*, 2016 U.S. Dist. LEXIS 73555, 11-12 (N.D. Cal. June 6, 2016) (prisoner's suit alleges that the security/welfare checks constitute cruel and unusual punishment, in violation of, *inter alia,* section 2652 of the California *Penal Code*), is inapposite.  In that case, the Court found that there was no private right of action under that section. *Id.*   But Plaintiffs do not seek damages pursuant to a criminal statute, such as *Penal Code* §337a.  Rather, Plaintiffs seek damages under the *IHA*, and they have sufficiently pleaded such a claim.  The Motion must be denied.

## IV.     PLAINTIFFS HAVE ADEQUATELY PLEAD A CLAIM FOR UNFAIR TRADE PRACTICES.

Whether a business act or practice constitutes unfair competition within California *Business & Professions Code* § 17200 is a question of fact.  *Watson Labs., Inc. v. Rhone-PouleneRorer, Inc.,* 178 F.Supp.2d 1099 (C.D. Cal. 2001). Section 17200  broadly proscribes unlawful business practices. The unlawful practices prohibited by Section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. It is not necessary that the predicate law provide for private civil enforcement.  *Id.*

DerbyWars' wrongful acts as alleged in the FAC constitute unfair competition and unfair business practices both under the common law of the State of California

and statutory law.  DerbyWars' wrongful acts violate the *IHA*, California *Business & Professions Code* §§ 19595 and 19604, and the *Illegal Gambling Business Act of 1970*, 18 U.S.C. § 1955, as well as California *Business & Professions Code* §§ 17200, *et seq.* These violations make DerbyWars' actions unlawful for purposes of liability under the UCL.  <u>FAC</u>, ¶ 64.

California *Business & Professions Code* § 17203 expressly provides that "[t]he court may make such orders or judgments . . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."  DerbyWars' acts of unfair business practices have resulted in DerbyWars receiving and retaining Fees that rightfully belong to Plaintiffs, and which are being unjustly and inequitably retained by DerbyWars.  <u>FAC</u>, ¶ 65.

California *Business & Professions Code* § 17203 also expressly provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."  Plaintiffs seek a permanent injunction, as expressly permitted by such law, enjoining and restraining DerbyWars. <u>FAC</u>, ¶ 66.  As a direct and proximate result of the acts and omissions of DerbyWars in violation of common law and California *Business & Professions Code* § 17200, *et seq.,* Plaintiffs are entitled to restitution of monies wrongfully obtained and retained by DerbyWars, and a permanent injunction.  <u>FAC</u>, ¶ 67.

These allegations state a claim for relief under the standards of FRCP Rules 12(c) and 8(a).

**A. Plaintiffs Have Standing Under the UCL.**[6]

_____

[6] In footnote 7 of the Motion, DerbyWars improperly attempts to conflate the standing requirements for the UCL with the unique requirements to state a RICO claim under Section 1987 (a) and (b). (<u>Motion</u>, 12:25 – 14:11.)  But under RICO, a plaintiff must allege "an investment injury separate and distinct from the injury flowing from the predicate act, as required for a RICO claim brought under § 1962(a)," which is a very tough standard to meet.  *Sybersound Records, Inc.* v. UAV Corp., 517 F.3d 1137,

-13-

A private person may bring an action under *Business & Professions Code* § 17200, *et seq.*, only if the person has suffered injury in fact and has lost money or property as a result of unfair competition.  *Business & Professions Code* § 17204.

> "***The requirement that a plaintiff lost money or property to have standing to sue requires a showing of some form of economic injury***. To meet this requirement, a plaintiff might show, among other possibilities, that he or she surrendered more or acquired less in a transaction than plaintiff might otherwise have, that a present or future property interest was diminished, that plaintiff was deprived of money or property to which he or she had a cognizable claim, or that plaintiff was required to enter into a transaction costing money or property that would otherwise have been unnecessary. "

*Kwikset Corp. v. Superior Court* (2011) 51 Cal. 4th 310, 323 (plaintiff who alleged that he purchased lock falsely advertised as "Made in the U.S.A." alleged sufficient economic harm when alleging that he would not have purchased lock had he known that lock was not so made); *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 2016 U.S. Dist. LEXIS 24028, 12-14 (S.D. Cal. Feb. 25, 2016).  ***Plaintiffs have sufficiently pleaded an economic injury.***

In arguing that Plaintiffs lack standing, DerbyWars disingenuously ignores the allegations of the FAC, and the basis for Plaintiffs' claim for damages.  Plaintiffs do not allege that their damages stem from DerbyWars' diversion of customers (Motion, 12:1-10).  Rather, Plaintiffs claim that they have been, and continue to be, damaged by DerbyWars' failure to pay them the Host Fees and Source Market Fees to which they are entitled under various state statutes, including *Business & Professions Code* §§ 19595 and 19604, whenever DerbyWars accepts a bet that involves either a horse running in a race at one of Plaintiffs' tracks, or a bettor located in a state where one of

1149 (9th Cir. Cal. 2008).  The *Sybersound* Court went on to contrast that heightened standard with the easier to meet standing requirements of Section 17200, *et seq. Sybersound,* 517 F.3d at 1152.  (Analyzing post-Proposition 64 law).

Plaintiffs' tracks is located.  This is because any wager made within California on any horse race (whether run in California or outside of California), must pay compensation to the race tracks, regardless of whether the wager is made at a race track, OTB or online.  FAC, ¶ 21.

Plaintiffs allege that they have been injured as follows:

"DerbyWars does not comply with either state or federal regulations:  it does not have the required consents and licenses, and it is not paying the required Fees.  This failure has caused, and continues to cause, direct injury to PLAINTIFFS by depriving them of, *inter alia,* the Fees to which they are legally entitled for any legal bet placed on a horse running in a race at their tracks, or for any legal bet placed by a resident of their home states on a race run in their home state or in another state."  FAC, ¶ 36.

"Every bet placed through DerbyWars (instead of through PLAINTIFFS or an operator that has received PLAINTIFFS' consent) on a race run by PLAINTIFFS, and every bet from a resident of California, Florida, Maryland, or Oregon on a race run in any state, results in monetary damages to PLAINTIFFS, and ill-gotten gains to Defendant, because DerbyWars fails to pay the required Fees due and owing to PLAINTIFFS."  FAC, ¶ 49.

These allegations are sufficient to establish Plaintiffs' standing.

DerbyWars also complains that the allegations of paragraphs 51 and 52 of the FAC, regarding a possible loss of customers are speculative; however, these allegations are clearly sufficient to meet the standards of FRCP 8(a), and Plaintiffs' ability to prove their allegations, or possible difficulties in making such proof, is generally of no concern in ruling on a motion for judgment on the pleadings:  "We do not inquire whether the plaintiff will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  *Nami,* 82 F.3d at 65; *Allison,* 419 F.2d at 823; *Peterson,* 594 F.3d at 727 (court does not weigh potential evidence that the parties may present at trial).  Indeed, Plaintiffs have not been given the opportunity to proffer evidence in support of this claim, as this is merely at the pleading stage.  Moreover, these are superfluous to that part of Plaintiffs' claim for damages which is

PLAINTIFFS' OPP TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

based upon DerbyWars' failure to pay Plaintiffs the statutory fees to which they are entitled.

In addition, DerbyWars cites to Proposition 64, implying that it has relevance to the facts and allegations before this Court. But it does not. Prior to Proposition 64, a private person or entity *could sue on behalf of the general public without having suffered actual injury*. See, e.g., *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal. 4th 553, 561. Proposition 64 changed that, and was designed to discourage frivolous lawsuits designed to extort monies from third parties; it does not affect Plaintiffs' standing in this lawsuit:

> "Neither the text of Proposition 64 nor the ballot arguments in support of it purport to define or limit the concept of "lost money or property," nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm. It suffices to say that, in sharp contrast to the state of the law before passage of Proposition 64, a private plaintiff filing suit now must establish that he or she has personally suffered such harm. Notably, lost money or property—economic injury—is itself a classic form of injury in fact. 'While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms.'"

*Kwikset,* 51 Cal. at 323. "*While the voters clearly intended to restrict UCL standing, they just as plainly preserved standing for those who had had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices.*" *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 789 (2010) (emphasis added.)

Defendant misstates the basis for the injury claimed by Plaintiffs, and instead, repeats the argument that it made in its Motion to Dismiss the Plaintiffs' RICO claim, which was based upon statutory sections no longer at issue: 18 U.S.C. §§ 1962 (a) and (b). Plaintiffs do not allege that they are being damaged because DerbyWars is diverting customers away from their race tracks. Plaintiffs allege that they have been, and continue to be, damaged, because DerbyWars is failing to pay them the legally

PLAINTIFFS' OPP TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

required Host Fees and Source Market Fees.

## B. Plaintiffs Have Adequately Pleaded A Right To Restitution and Disgorgement.

Plaintiffs have properly pleaded a right to restitution and disgorgement:

"The unfair competition law (UCL) authorizes a court to "make such orders … as may be necessary to prevent the use or employment  by any person of any practice which constitutes unfair competition, … or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." (*Bus. & Prof. Code*, § 17203.)  ***Nothing in Korea Supply conditions the recovery of restitution on the plaintiff having made direct payments to a defendant who is alleged to have engaged in false advertising or unlawful practices under the UCL. The only requirements the UCL and the false advertising law impose on such recovery are that the plaintiff must be a "person in interest" (that is, the plaintiff must have had an ownership interest in the money or property sought to be recovered), and the defendant must have acquired the plaintiff's money or property "by means of … unfair competition" or some other act prohibited by the UCL or the false advertising law***.

*Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1494 (2007) (emphasis added) ("In appropriate circumstances, the plaintiff in a UCL action may obtain restitution from a defendant with whom the plaintiff did not deal directly.")[7]

"Whether restitution is in the form of an equitable remedy or legal remedy, the relief is based on a specific amount found owing.  . . . when in equity, the plaintiff can seek in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."  *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal. App. 4th 663, 699.  See, also *Lectrodryer v. Seoulbank* (2000) 77 Cal. App. 4th 723, 726, cited by Defendant ("Evidence also

---

[7] *Asghari v. Volkswagen Grp. Of Am., Inc.,* 42 F.Supp.3d 1306, 1324 (C.D. Cal. 2013), relied upon by DerbyWars is not on point. In *Asghari,* Plaintiff paid money to a third party from who she purchased the used vehicle.  Unlike in the instant case, she did not allege that defendant was in possession of funds to which it was not entitled.

supported the conclusion that Lectrodryer satisfied the elements for a claim of unjust

enrichment: receipt of a benefit and unjust retention of the benefit at the expense of

another.)

> "An individual is required to make restitution if he or she is unjustly
> enriched at the expense of another. A person is enriched if the person
> receives a benefit at another's expense. Benefit means any type of
> advantage. . . . The person receiving the benefit is required to make
> restitution only if the circumstances are such that, as between the two
> individuals, it is unjust for the person to retain it." "The object of
> restitution … is to eliminate profit …" of the "conscious wrongdoer, or
> … defaulting fiduciary without regard to notice or fault … .") Indeed,
> "[t]he object of the disgorgement remedy—to eliminate the possibility of
> profit from conscious wrongdoing—is one of the cornerstones of the law
> of restitution and unjust enrichment."

*Meister v. Mensinger*, 230 Cal. App. 4th 381, 398-399 (2014) (citations omitted)).

DerbyWars uses the races run at Plaintiffs' meets for its contests.  As set forth

on the DerbyWars website, "[t]he scores are calculated according to the actual payouts

at actual race tracks."  FAC, ¶ 43, fn. 2.  The *IHA* "was created for the 'especial

benefit' of those groups *to insure that states which desire to run off-track betting*

*operations do not pirate the races of the host state without providing adequate*

*compensation therefor.*"  *New Suffolk Downs,* 656 F. Supp.  at 1193.  DerbyWars is

obligated to pay to Plaintiffs the Fees required under statutory law for the bets placed

on races run at their tracks, or by bettors living in the states where they operate.  The

amount owing to Plaintiffs for wagers placed on horse races run at their tracks, or by

residents of the states where they operate, can easily be determined.  Pursuant to

statute, that money belongs to Plaintiffs, not DerbyWars, and Plaintiffs are entitled to

disgorgement and restitution.

## V.   **CONCLUSION.**

For the foregoing reasons, Plaintiffs respectfully request that the Motion for

Judgment on the Pleadings be denied, or in the alternative, that Plaintiffs be granted

leave to amend, or that a dismissal of the claims be without prejudice.

DATED:  July 11, 2016                          Respectfully submitted,


                                               CORBETT, STEELMAN & SPECTER
                                               A Professional Law Corporation


                                               By:    */s/ Richard B. Specter*
                                                      Richard B. Specter
                                                      Attorneys for PLAINTIFFS

PLAINTIFFS' OPP TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS