Richard B. Specter, SBN 114090
Diane L. Ellis, SBN 130628
CORBETT, STEELMAN & SPECTER
A Professional Law Corporation
18200 Von Karman Avenue, Suite 900
Irvine, California 92612-1023
Telephone: (949) 553-9266
Facsimile: (949) 553-8454
rspecter@corbsteel.com

Attorneys for Plaintiffs
LOS ANGELES TURF CLUB, INCORPORATED, LOS ANGELES TURF CLUB II, INC., PACIFIC RACING ASSOCIATION, PACIFIC RACING ASSOCIATION II, GULFSTREAM PARK RACING ASSOCIATION, INC., OREGON RACING, INC., MARYLAND JOCKEY CLUB OF BALTIMORE CITY, INC., and LAUREL RACING ASSOCIATION, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES TURF CLUB, INCORPORATED, a California Corporation, LOS ANGELES TURF CLUB II, INC., a California Corporation, PACIFIC RACING ASSOCIATION, a California Corporation, PACIFIC RACING ASSOCIATION II, a California Corporation, GULFSTREAM PARK RACING ASSOCIATION, INC., a Florida Corporation, OREGON RACING, INC., a Delaware Corporation, MARYLAND JOCKEY CLUB OF BALTIMORE CITY, INC., a Maryland Corporation, and LAUREL RACING ASSOCIATION, INC., a Maryland Corporation,

Plaintiffs,

vs.

HORSE RACING LABS, LLC, a Delaware Limited Liability Company, (also known as IMMERSE, LLC), doing

No.: 2:15-cv-9332 SJO (JEMx)

**PLAINTIFFS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND CONTENTIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

[Filed concurrently with Notice of Motion and Motion for Partial Summary Judgment and Declarations in Support Thereof]

Date Filed: December 3, 2015
Discovery Cutoff: March 27, 2017
Final Pretrial Conf.: June 19, 2017
Trial Date: June 27, 2017

**DATE: April 24, 2017**
**TIME: 10:00 a.m.**
**CTRM: 10C**

business as DERBYWARS, and DOES 1 through 10, inclusive, )
)
Defendants. )
)
)
)

Plaintiffs Los Angeles Turf Club, Incorporated, Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing, Inc., Maryland Jockey Club Of Baltimore City, Inc., and Laurel Racing Association, Inc. (collectively, "Plaintiffs"), respectfully submit the following Separate Statement of Undisputed Facts in support of their Motion for Partial Summary Judgment:

## I. UNCONTROVERTED MATERIAL FACTS

**ISSUE 1: The contests offered by Defendant Horse Racing Labs, LLC, on its Derby Wars website are wagers under the *Interstate Horseracing Act of 1978*, 15 U.S.C. §§ 3001, *et seq.* (the "IHA").**

| UNCONTROVERTED FACTS | EVIDENCE |
|---|---|
| 1. Horse Racing Labs, LLC ("HRL") is a Delaware limited liability company, doing business in Louisville, Kentucky. | Deposition of Mark Midland, attached to the Declaration of Richard B. Specter, as Exhibit "A," ("Midland Depo."), 16:19-17:11; Answer to First Amended Complaint, (Docket No. 34), ¶ 11. |
| 2. Since 2009, HRL has operated HorseRacingNation.com. | Midland Depo., 44:7-10; 45:11-14. |
| 3. HorseRacingNation.com is a website for horseracing. | Midland Depo., 45:15-19. |
| 4. In October, 2011, HRL launched the DerbyWars.com website. | Midland Depo., 72:3-5. |
| 5. Defendant operates out of an office building in Kentucky. | Midland Depo., 16:19-17:11; 161:7-12. |

| | |
|---|---|
| 6. Defendant offers contests in which players from across the country (including players in California, Florida, Maryland and Oregon), pay entry fees interstate (to Kentucky) in order to wager on races run at race tracks, including those operated by Plaintiffs. | Midland Depo., 166:9-167:4; 180:12-181:24. |
| 7. The first page of Defendant's Derby Wars' website (www.derbywars.com) proclaims: **"Horse Racing Handicapping Contests"** **"Play for free or real money"** **"Pick a horse in each race"** **"Over $20-million paid out in winnings!"** | Declaration of Diane L. Ellis ("Ellis Dec."), ¶ 4. |
| 8. To participate in the contests, a player must first create an account with Defendant and deposit funds to the account. | Midland Depo., 168:4-19. |
| 9. Defendant maintains players' funds in a bank account consisting only of players' funds, and when the player enters a contest, his account is deducted by the amount of the wager (the "entry fee"). | Deposition of Michael R. Shutty, attached to the Declaration of Richard B. Specter as Exhibit "B," ("Shutty Depo."), 112:16-113:24; Midland Depo., 168:17-23; 327:15-23. |
| 10. If the player eventually wins his wager (the "prize"), his Derby Wars account is credited with his winnings. The player can thereafter request a withdrawal from his account, in which case a check is sent to him from the Derby Wars account. | Midland Depo., 330:10-331:21. |
| 11. Defendant does not hold a license to conduct wagering on horse racing in California, Florida, Maryland or Oregon. | Midland Depo., 229:9-24; 406:21-23. |
| 12. Defendant touts its contests as allowing players to "win real money," and the players do win real money. | Ellis Dec., ¶ 4; and Midland Depo., 181:22-24. |
| 13. Defendant primarily offers | Ellis Dec., ¶ 6. |

| | |
|---|---|
| contests that are “head-to-head”. | |
| 14. In these contests, two players pay an entry fee for a fixed prize. | Midland Depo., 129:11-13. |
| 15. As an example, for a $40 prize, two players each pay a $22 entry fee to compete with each other. | Ellis Dec., ¶ 6. |
| 16. The remaining $4 is the “take out” or “rake” retained by Defendant. | Midland Depo., 220:13-22; 233:6-10. |
| 17. Defendant offers head-to-head contests with the prize up to $1,500, with $799 entry fees. | Ellis Dec., ¶ 5. |
| 18. Depending upon the contest, the players must select horses in 6 to 10 different races running at various race tracks, including Plaintiffs’ tracks. | Ellis Dec., ¶ 5. |
| 19. In the contests, “the scores are calculated according to the actual payouts at actual race tracks”, and are based upon the actual payoff amounts on real horse races at real race tracks, including Plaintiffs’ tracks. | Ellis Dec., ¶ 8; and Midland Depo., 180:16-181:21. |
| 20. The scores are calculated in dollars. | Midland Depo., 136:9-10; 156:4-6. |
| 21. The player with the biggest bankroll (the most winnings) at the end of the contest, wins the “prize.” | Midland Depo., 180:12-22. |
| 22. In a “lockdown” contest, all selections must be made before the post time of the first race. | Midland Depo., 132:20-25; 211:1-4; Ellis Dec., ¶ 9. |
| 23. In an “open” contest, called a “bullet” contest on the Derby Wars Website, the players must select a horse in each race no later than one minute before post time of that race. | Midland Depo., 133:1-8.; Ellis Dec., ¶ |
| 24. Defendant also offers “high stakes” contests for up to $300,000, with a $2,200 entry fee. | Ellis Dec., ¶ 7. |
| 25. Derby Wars offers about 150 contests per day on average. | Midland Depo., 131:17-22. |
| 26. In agreements with third parties, Defendant even refers to its players as | Ellis Dec., ¶ 10; Exhibit 6, p. 2, “Exhibit 5;” Ellis Dec., ¶ 11, Exhibit 7, p. 2, |

| | |
|---|---|
| "bettors." | "Exhibit 5;", Ellis Dec., ¶ 12, Exhibit 8, p. 2, "Exhibit 5." |
| 27. A player is awarded points on the same basis as if he had placed a $2 bet at the racetrack, subject to adjustment for maximum payouts. | Midland Depo., 134:6-135:5. |
| 28. For instance, if a horse would pay $6.40, the player is awarded 6.40 points. | Midland Depo., 135:18-136:10. |
| 29. Derby Wars uses "points or dollars interchangeably." | Midland Depo., 136:6-10. |
| 30. The player has no influence over the actual results of the horse race; at the time when the player enters a contest, it is uncertain as to which horse will win the race. | Midland Depo., 177:21-178:8. |
| 31. The winner of the contest will be determined by future events. | Midland Depo., 178:9-13. |
| 32. Many of the races used in the contests take place at Plaintiffs' race tracks in California, Florida, Maryland and Oregon. | Midland Depo., 180:12-181:21. |
| 33. On March 16, 2017, in head-to-head contests alone, Defendant offered 24 contests using only races being run that same day at Plaintiff's Gulfstream Park. | Ellis Dec., ¶ 5. |
| 34. The entry fees ranged from $11 to $799 per player, and the prizes ranged from $20 to $1500. | Ellis Dec., ¶ 5. |
| 35. That same day, Defendant offered 26 head-to-head contests using only races being run that day at Plaintiff's Santa Anita Park Track. | Ellis Dec., ¶ 5. |
| 36. The entry fees ranged from $11 to $799 per player, and the prizes ranged from $20 to $1500. | Ellis Dec., ¶ 5. |
| 37. On March 16, 2017, Defendant also offered 11 head-to-head contests using races run at two of Plaintiffs' race tracks – Santa Anita Park and Golden Gate Fields. | Ellis Dec., ¶ 5. |

| | |
|---|---|
| 38. For these races, the entry fees ranged from $11 to $430 per player, and the prizes ranged from $20 to $800. | Ellis Dec., ¶ 5. |
| 39. The determination of the winner of Derby Wars' contests is based upon the outcome of future events (the races), and the player is not a participant in, and has no control over, this outcome. | Midland Depo., 211:5-17; Shutty Depo., 66:4-11. |
| 40. Unlike other sports, horseracing is almost exclusively funded by wagering. | Declaration of Scott J. Daruty ("Daruty Dec."), ¶¶ 8, 10 |
| 41. The total amount wagered is the "handle." | Daruty Dec., ¶ 10. |
| 42. By law, approximately eighty percent of the handle is returned to the patrons who placed winning wagers. | Daruty Dec., ¶ 10. |
| 43. The remaining approximately twenty percent is known as the "takeout," the amount initially retained by the race track. | Daruty Dec., ¶ 10. |
| 44. The takeout is then divided, pursuant to contract and law, among the stakeholders in the form of commissions paid to the racetracks; purses paid to the owners, trainers and jockeys of the horses in the race; taxes paid to the state; and funds dedicated to equine research, workers' compensation funds, worker health and welfare, etc., that benefit the backstretch workers. | Daruty Dec., ¶ 10. |
| 45. The type of wagering available on horseracing includes "Win" (picking a horse to finish first in the race), "Place" (picking a horse to finish first or second in the race) and "Show" (picking a horse to finish first, second or third in the race). | Daruty Dec., ¶ 11. |
| 46. Any type of wager other than Win, Place or Show is called an exotic wager. | Daruty Dec., ¶ 11. |
| 47. Exotic wagers include the "Daily Double" (picking the winning horse in two consecutive races), "Exacta" (picking the first two horses to finish in a | Daruty Dec., ¶ 11. |

| | |
|---|---|
| single race in the exact order), "Trifecta" (picking the first three horses to finish in a single race in the exact order), "Pick Three" (picking the winning horse in three consecutive races), "Pick Four" (picking the winning horse in four consecutive races), and a "Pick Six" (picking the winning horse in six consecutive races.) | |
| 48. Defendant concedes that all of these (Win, Place, Show and exotic wagers) are indeed ***wagers*** when placed at the racetrack. | Midland Depo., 201:23-203:18; Shutty Depo., 91:2-7; 99:23-100:3; 102:17-19. |

**ISSUE 2: Defendant is operating an off-track betting system under Section 3002(7) of the IHA.**

Plaintiffs hereby incorporate Uncontroverted Material Facts Nos. 1 - 48, above, and assert the following additional Uncontroverted Material Facts.

| | |
|---|---|
| 49. Historically, wagering on horses only took place live (at the actual track where the race was being run), such that bettors had to attend the race to place a wager. | Daruty Dec., ¶ 12. |
| 50. Eventually, off-track betting facilities opened, which accepted wagers at locations other than the track where the race was being run. | Daruty Dec., ¶ 12. |
| 51. In 1978, Congress enacted the IHA, which was explicitly intended to "regulate interstate commerce with respect to wagering on horseracing." As provided therein, no one "may accept an interstate off-track wager except as provided in" the IHA. | Daruty Dec., ¶ 13. |
| 52. Defendant does not comply with the IHA. | Midland Depo., Page 190, lines 16-24; Shutty Depo., 92:9-14. |
| 53. From the late 1990's through today, the industry has experienced much growth in the area of Advanced Deposit Wagering ("ADW"). | Daruty Dec., ¶ 14. |
| 54. In ADW, a customer deposits funds with a licensed, regulated online/telephone wagering operator, and then issues wagering instructions (via telephone or internet) to that operator to place a wager on a specific race using funds in the account. | Daruty Dec., ¶ 14. |
| 55. If the wager is successful, the winning funds are deposited directly into | Daruty Dec., ¶ 14. |

| | |
|---|---|
| the customer's account. | |
| 56. The IHA only permits acceptance of interstate wagers on horseraces by an entity (including an ADW operator), which has obtained consent from, *inter alia*, the host racing association on whose races such wagers are placed, such as Plaintiffs. | Daruty Dec., ¶ 16. |
| 57. It is customary in the industry for a host racing association to grant the required consent only if it receives a payment of money or other value from the entity accepting the wagers. | Daruty Dec., ¶ 17. |
| 58. Defendant has never been licensed as an ADW. | Midland Depo., 406:21-23. |

**ISSUE 3: That Defendant is required to obtain the consent of Plaintiffs prior to accepting wagers on Plaintiffs' horseraces.**

Plaintiffs hereby incorporate Uncontroverted Material Facts Nos. 1 - 58, above, and assert the following additional Uncontroverted Material Facts.

| | |
|---|---|
| 59. Plaintiffs operate horse racing meets at race tracks in California (Santa Anita Park and Golden Gate Fields), Florida (Gulfstream Park and Gulfstream Park West), Maryland (Pimlico and Laurel Park), and Oregon (Portland Meadows). | Daruty Dec., ¶ 7. |
| 60. Each Plaintiff is a Host Racing Association within the meaning of the IHA. | Daruty Dec., ¶ 18. |
| 61. Each Plaintiff has the approval of its host State to conduct racing. | Daruty Dec., ¶ 19. |
| 62. Each Plaintiff has a written agreement with its Horsemen's Group, as required by the IHA. | Daruty Dec., ¶ 20. |

**ISSUE 4: That Defendant is in violation of Section 3004(a) of the IHA, because it is accepting wagers on Plaintiff host racing associations' horseraces, without the consent of Plaintiffs.**

Plaintiffs hereby incorporate Uncontroverted Material Facts Nos. 1 - 62, above, and assert the following additional Uncontroverted Material Facts:

| | |
|---|---|
| 63. No Plaintiff has ever provided consent to Defendant to accept a wager on a race run at any of Plaintiffs' race tracks. | Daruty Dec., ¶ 22. |
| 64. No Plaintiff has ever provided consent to Defendant to accept a wager from a resident of the States of California, Florida, Maryland or Oregon. | Daruty Dec., ¶ 23. |
| 65. No Plaintiff has ever received any money from Defendant with respect to wagers (or entry fees) accepted by Defendant | Daruty Dec., ¶ 24. |
| 66. Defendant does not have any agreements with any of the Plaintiffs. | Daruty Dec., ¶ 25. |
| 67. Defendant has never received consent from any racetrack to conduct these contests. | Midland Depo., 185:13-17. |
| 68. Defendant has never requested nor received consent from any Plaintiff to accept wagers on races run at the Plaintiffs' race tracks. | Daruty Dec., ¶ 21. |
| 69. Defendant has never requested nor received consent of any host racing commission to accept wagers on Plaintiffs' races. | Midland Depo., 211:24-212:7. |
| 70. Defendant has never requested nor received consent from any off-track racing association to conduct its contests. | Midland Depo., 212:8-11; 213:2-5. |

**ISSUE 5: That Defendant is liable to Plaintiffs for damages under Section 3005 of the IHA.**

Plaintiffs hereby incorporate Uncontroverted Material Facts Nos. 1 - 70, above.

-12-
PLAINTIFFS' SEPARATE STATEMENT OF UNCONTROVERTED MATERIAL FACTS

**ISSUE 6: Defendant is in violation of California *Business & Professions Code* Section 17200, *et seq.***

Plaintiffs hereby incorporate Uncontroverted Material Facts Nos. 1 - 70, above.

**II. CONTENTIONS OF LAW.**

1. Upon a showing that there is no genuine issue of material fact as to a particular "claim" or "defense," the *Federal Rules of Civil Procedure* state that the court may also grant summary judgment in the party's favor on any part of a claim or defense. *Fed. R. Civ. Proc.* 56(a).
2. Pursuant to Rule 56 (g), the Court may also "enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."
3. Rule 56 motions can relate to the summary adjudication of specific issues within a claim. *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1441-1442 (9th Cir. 1990); *FMC Corp. v. Vendo Co.,* 196 F. Supp.2d 1023, 1029-1030 (E.D. Cal. 2002).
4. Summary judgment may be granted when it is demonstrated that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Federal Rule of Civil Procedure 56(c).
5. The interpretation of a statute presents a question of law. *Schlothan v. Alaska*, 276 F.2d 806, 815 (9th Cir. 1960).
6. Questions of statutory construction and legislative history present legal questions which are properly resolved by summary judgment. *Coyote Valley Band of Pomo Indians v. United States*, 639 F. Supp. 165, 167 (E.D. Cal. 1986).
7. "Once the moving party meets its initial burden, Rule 56(e) shifts the burden to the nonmoving party and requires it to "set out specific facts showing a genuine issue for trial" beyond those alleged in its pleading. Fed. R. Civ. P. 56(e). *Hill v. Boeing Co*., 765 F. Supp. 2d 1208, 1212 (C.D. Cal. 2011).
8. The stated purpose of the IHA is to protect the stakeholders in horseracing - the host State, the host racing association, and the

horsemen's group - from persons who accept interstate wagers on horseracing without obtaining the state required consents, and without obtaining the consent of the host racing association. See, 15 *U.S.C.* §§ 3001 – 3006. "It is the policy of the Congress in this Act to regulate interstate commerce *with respect to wagering on horseracing*, in order to further the horseracing and legal off-track betting industries in the United States." 15 *U.S.C.* § 3001(b). Congress also noted that: *"the States should have the primary responsibility for determining what forms of gambling may legally take place within their borders*." 15 *U.S.C.* § 3001(a).

9. Plaintiffs have standing under the IHA. *Sterling Suffolk Racecourse Ltd. Partnership v. Burrilville Racing Ass'n, Inc.*, 802 F. Supp; 662, 664 (D. R.I. 1992), aff'd. 989 F. 2d 1266 (1st Cir. 1993); *New Suffolk Downs Corp. v. Rockingham Venture, Inc.*, 656 F. Supp. 1190, 1191 (D.N.H. 1987); Order, (Docket No. 43).

10. A wager is an agreement between two or more persons that a sum of money or other valuable thing, contributed by those taking part, shall become property of one of them, depending on the happening of some future event, at present uncertain. *People v. Lomento*, 155 Cal App 2d 740 (1957); *Brown v. Board of Police Comm'rs*, 58 Cal.App.2d 473, 477 (1943); *Western Telcon, Inc. v. Cal. State Lottery*, 13 Cal. 4th 475, 485 (1996) ("Betting may be defined as 'promise[s] to give money or money's worth upon the determination of an uncertain or unascertained event in a particular way, and (unlike a lottery) may involve skill or judgment.")

11. The contests offered by Defendant, on its Derby Wars website are "wagers" under Section 3002(3) of the IHA.

12. "For the purposes of [the IHA] the term… 'interstate off-track wager' means a legal wager placed or accepted in one State with respect to the

outcome of a horserace taking place in another State and includes pari-mutuel wagers." 15 U.S.C. §3002 (3).

13. Defendant accepts "interstate off-track wagers."

14. The IHA is not limited to pari-mutuel wagers, but simply *includes* pari-mutuel wagers.  15 U.S.C. §3002 (3).

15. Under the IHA, "'off-track betting system' means any group which is in the business of accepting wagers on horseraces at locations other than the place where the horserace is run."  15 U.S.C. §3002 (7).

16. Defendant is operating an off track betting system under Section 3002(7) of the IHA.

17. "An interstate off-track wager may be accepted by an off-track betting system *only if consent is obtained from . . . the host racing association.* 15 U.S.C. §3004.

18. "[H]ost racing association" means any person who, pursuant to a license or other permission granted by the host State, conducts the horserace subject to the interstate wager."  15 U.S.C. §3002 (9).

19. Plaintiffs are host racing associations.

20. Defendant is required to obtain the consent of Plaintiffs prior to accepting wagers on Plaintiffs' horseraces.  15 U.S.C. §3003 ("No person may accept an interstate off-track wager except as provided in this Act.")  *New Suffolk Downs Corp. v. Rockingham Venture, Inc.*, 656 F. Supp. 1190, 1192-1193 (D.N.H. 1987) (This is because the IHA "was created for the 'especial benefit' of those groups to insure that states which desire to run off-track betting operations do not pirate the races of the host state without providing adequate compensation therefor."). Federal law preempts any contrary state law.  *Horseman's Benevolent & Protective Ass'n - Ohio Div. v. Dewine*, 666 F.3d 997, 999 (6th Cir. 2012).

21. Defendant is in violation of Section 3004(a) of the IHA, because it is accepting

wagers on Plaintiff horse racing associations' horse races, without the consent of Plaintiffs.

22. Defendant is liable to Plaintiffs for damages under Section 3005 of the IHA. ("Any person accepting any interstate off-track wager in violation of this Act shall be civilly liable for damages to . . . the host racing association.")

23. "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." *Business and Professions Code* Section 17200.

24. "Unlawful business activity" proscribed under section 17200 includes "'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). "In essence, an action based on Business and Professions Code section 17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." *Id.;* See also, *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996).

25. Defendant is in violation of *Business & Professions Code* Section 17200, *et seq.*, because it is violation of the IHA.

DATED: March 20, 2017

CORBETT, STEELMAN & SPECTER
A Professional Law Corporation

By: /s/ *Richard B. Specter*
Richard B. Specter
Attorneys for PLAINTIFFS