MATTHEW P. KANNY (State Bar No. 167118)
E-mail: mkanny@manatt.com
MAURA K. GIERL (State Bar No. 287430)
E-mail: mgierl@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Tel.:  (310) 312-4000; Fax:  (310) 312-4224

ARUNABHA BHOUMIK (*pro hac vice*)
E-mail: abhoumik@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
Tel.:   (212) 790-4500; Fax: (212) 790-7575

*Attorneys for Defendant*
HORSE RACING LABS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES TURF CLUB, INCORPORATED, a California Corporation, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>HORSE RACING LABS, LLC, a Delaware Limited Liability Company (a/k/a IMMERSE, LLC), d/b/a DERBY WARS, and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:15-cv-09332-SJO (JEMx)<br><br>Honorable S. James Otero<br>Courtroom No. 10C<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF DEFENDANT HORSE RACING LABS, LLC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:     April 24, 2017<br>Hearing Time:    10:00 a.m.<br><br>FAC Filed:            May 16, 2016<br>Fact Discovery Cutoff:   March 27, 2017<br>Expert Discovery Cutoff: April 10, 2017<br>Final Pretrial Conf.:      June 19, 2017<br>Trial Date:            June 27, 2017 |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 24, 2017 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom No. 10C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Defendant Horse Racing Labs, LLC, doing business as Derby Wars ("Derby Wars" or "DW"), by and through its undersigned attorneys, will and hereby does move under Rule 56 of the Federal Rules of Civil Procedure for summary judgment in its favor on the First Amended Complaint ("FAC") of Plaintiffs Los Angeles Turf Club, Inc., Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing Inc., Maryland Jockey Club of Baltimore City, Inc., and Laurel Racing Association, Inc.'s (collectively, "Plaintiffs").

Derby Wars is entitled to Summary Judgment for the following reasons:

1.      There are no genuine disputes as to any material facts with regard to Plaintiffs' first claim for relief for violation of the Interstate Horseracing Act (15 U.S.C. § 3001, *et seq.*; the "IHA") as: (a) Plaintiffs' IHA claim is barred by the applicable three-year statute of limitation; (b) the IHA does not apply to DW's fantasy horseracing contests; (c) DW's fantasy horseracing contests are games of skill that fall within the Fantasy Sports exception of the Unlawful Internet Gambling Act of 2006, 31 U.S.C. § 5361 *et seq.* ("UIGEA"); and (d) the IHA does not apply to DW's fantasy horseracing contests based on its plain language.  Therefore, judgment should be entered as a matter of law in DW's favor on this claim;

2.      With respect to Plaintiffs' second claim for relief for violation of California Business & Professions Code sections 17200, *et seq.* ("UCL"), the Court should decline to exercise supplemental jurisdiction over such state law UCL claim after finding that DW is entitled to judgment on Plaintiffs' IHA claim, because Plaintiffs plead only federal question jurisdiction, and there is no basis for diversity jurisdiction;

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

3.      There are no genuine disputes as to any material facts with regard to Plaintiffs' second claim for relief for violation of the Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL") for all of the same reasons as Plaintiffs' IHA claim, and: (i) Plaintiffs do not have standing to assert this claim since Plaintiffs cannot establish injury in fact that was caused by the alleged unfair business practice; (ii) as to the non-California Plaintiffs, the UCL may not be asserted by them against DW, a non-California defendant; and (iii) DW's conduct is not unlawful under any of the statutes pled as support for the UCL claim.  Therefore, judgment should be entered as a matter of law in DW's favor on this claim;

4.      There are no genuine disputes as to any material facts with regard to DW's ninth and tenth affirmative defenses of estoppel and waiver, as Plaintiffs relinquished their rights and delayed for years in bringing their claims against DW, despite their knowledge of DW's fantasy horseracing contests, and because Plaintiffs acted in a manner, by actively negotiating and doing business with DW, which induced DW to rely upon Plaintiffs' inaction to DW's detriment.  Therefore, judgment should be entered as a matter of law in DW's favor on these affirmative defenses and against Plaintiffs on their first and second claims for relief; and

5.      Pursuant to the principle of abstention, the Court should abstain from adjudicated Plaintiffs' claims on the grounds that adjudicating these issues would invade the province of the California and other state legislatures and horseracing boards and commissions, where laws and rules are being debated, and regulations are being and have been adopted, to regulate daily fantasy sports, including daily fantasy horseracing contests.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Statement of Undisputed Material Facts and Conclusions of Law, the concurrently filed Declarations of Matthew P. Kanny, Maura K. Gierl, and Mark Midland, the concurrently lodged [P]roposed Order, all other pleadings and papers on file in this

1   action, and upon such argument and/ or evidence that the Court may consider at or

2   before the hearing on this motion.

3     Pursuant to Local Rule 7-3, this Motion is made following the in-person

4   conference of counsel, which took place on March 9, 2017.  During the conference,

5   counsel for the parties thoroughly discussed the substance of the arguments set forth

6   herein, as well as potential resolution of the disagreements, in an attempt to

7   eliminate the need for this Motion; the parties were unable to reach an agreement,

8   obviating the necessity for this motion.

9   Dated:  March 20, 2017

Respectfully submitted,

10   MANATT, PHELPS & PHILLIPS, LLP
    Matthew P. Kanny
11  Arunabha Bhoumik
    Maura K. Gierl
12

13  By: /s/ Matthew P. Kanny
      Matthew P. Kanny
14    *Attorneys for Defendant*
      HORSE RACING LABS, LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ...................................................................................... 1

4    II.   STATEMENT OF FACTS ......................................................................... 2

     A.   The Parties ...................................................................................... 2

5    B.   Parimutuel Wagering On Horse Races ........................................... 3

6    C.   DW's Contests Have Fixed Entry Fees And Fixed Prizes ............... 3

7    D.   DW's Contests Are Games Of Skill ................................................ 4

     E.   Plaintiffs And Stronach Group Executives Knew Of DW's
8         Conduct Since September 2011 ....................................................... 4

9    F.   Santa Anita Park – Plaintiff Los Angeles Turf Club's Race
          Track – Entered Into A Sponsorship Agreement With DW .............. 5

10   G.   Plaintiffs Concealed Their Intent To Sue DW ................................. 5

11   H.   Plaintiffs Allow Third Parties To Offer Fantasy Horse Racing
          Contests Using Plaintiffs' Tracks, Without Payment To
12        Plaintiffs ......................................................................................... 5

     I.   Some States Have Chosen to Regulate Fantasy Contests ................. 6
13
     III.  LEGAL STANDARD: MOTIONS FOR SUMMARY JUDGMENT .......... 6

14   IV.   PLAINTIFFS' IHA CLAIM FAILS AS A MATTER OF LAW ............... 7

15   A.   The IHA's Statute of Limitation Bars Plaintiffs' IHA Claim ............ 7

     B.   The IHA Claim Fails Because DW's Contests Are Not
16        "Wagers" Subject To The IHA ........................................................ 7

17        1.   DW's Contests Are Not Parimutuel Wagers ........................... 8

18        2.   Even if the IHA Applies to Wagers Other Than Those
               That Are Parimutuel, the IHA Claim Fails as Payment of
19             an Entry Fee Does Not Constitute a Bet or Wager ................... 9

     C.   As DW's Contests Are Games of Skill That Fall Within the
20        Fantasy Sports Exception of UIGEA, The IHA Does Not Apply ...... 11

21   D.   Plaintiffs Cannot Recover Under the IHA Because DW Is Not A
          Licensed Off-Track Betting System and Does Not Operate a
22        Parimutuel Pool .............................................................................. 14

     V.    PLAINTIFFS' UCL CLAIM FAILS AS A MATTER OF LAW .............. 16
23
     A.   Plaintiffs Lack Standing to Assert a UCL Claim .............................. 16
24
     B.   The UCL May Not Be Asserted By Non-California Plaintiffs
25        Against A Non-California Defendant ................................................ 16

     C.   DW's Conduct Is Not "Unlawful" Under Any of the Statutes
26        Pled as Support for the UCL claim ................................................... 17

27   VI.   DW IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON
           ITS AFFIRMATIVE DEFENSES OF ESTOPPEL AND WAIVER .......... 18

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

i

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**
**(continued)**

Page

VII.   THE COURT SHOULD ABSTAIN FROM ADJUDICATING
PLAINTIFFS' CLAIMS, IN DEFERENCE TO LEGISLATIVE
FUNCTION .............................................................................................. 19

VIII.  CONCLUSION ........................................................................................... 20

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

ii

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Anderson v. Liberty Lobby, Inc.*,

5

    477 U.S. 242 (1986) ................................................................................. 7

6

*Arizona v. American Holiday Assoc.*,

    151 Ariz. 312 (1986) .............................................................................. 10

7

*Bell Gardens Bicycle Club v. Dep't of Justice*,

8

    36 Cal. App. 4th 717 (1995)........................................................ 10, 11, 17, 18

9

*Celotex Corp. v. Catrett*,

    477 U.S. 317 (1986) ................................................................................. 6

10

*CPR for Skid Row v. City of Los Angeles*,

11

    779 F.3d 1098 (9th Cir. 2015) .............................................................. 12

12

*Ellsworth v. U.S. Bank, N.A.*,

13

    30 F. Supp. 3d 886 (N.D. Cal. 2014).................................................... 20

14

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,

    238 Cal. App. 4th 124 (2015), *reh'g and review den.* (2015)............... 20

15

*Hankins v. Ottinger*,

16

    115 Cal. 454 (1896).............................................................................. 10

17

*Humphrey v. Viacom, Inc.*,

    No. 06 Civ. 2768, 2007 WL 1797648 (D.N.J. June 20, 2007)............ 9, 10, 11, 14

18

*Kwikset Corp. v. Superior Court*,

19

    51 Cal. 4th 310 (2011)......................................................................... 16

20

*Langone v. Kaiser*,

    No. 12 C 2073, 2013 WL 5567587 (N.D. Ill. Oct. 9, 2013) ............... 10

21

*Las Vegas Hacienda v. Gibson*,

22

    77 Nev. 25 (1961)................................................................................ 10

23

*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*,

24

    475 U.S. 574 (1986) ............................................................................. 7

25

*Norwest Mortg., Inc. v. Superior Court*,

    72 Cal. App. 4th 214 (1999)............................................................ 16, 17

26

*Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc.*,

27

    144 Cal. App. 4th 1175 (2006)........................................................ 18, 19

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

i

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Old Republic Ins. Co. v. FSR Brokerage Inc.*,
   80 Cal. App. 4th 666 (2000) ................................................................. 18

*Phillips Petroleum v. Shutts*,
   472 U.S. 797 (1985) .............................................................................. 17

*Ponce v. Neufeld*,
   No. CV 05-2418, 2005 WL 6168697 (C.D. Cal. Oct. 11, 2005) ......... 14

*Quest Software, Inc. v. DirecTV Operations, LLC*,
   No. SACV 09-1232, 2011 WL 4500922 (C.D. Cal. Sept. 26, 2011) .... 19

*Reudy v. Clear Channel Outdoor, Inc.*,
   428 Fed. App'x 774 (9th Cir. 2011) ..................................................... 20

*Sharnese v. California*,
   547 Fed. App'x 820 (9th Cir. 2013) ..................................................... 16

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) ................................................................... 16, 17

*Toomey v. Penwell*,
   76 Mont. 166 (1926) ............................................................................. 10

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) .............................................................................. 16

*United States v. King Features Entm't, Inc.*,
   843 F.3d 394 (9th Cir. 1988) ................................................................ 19

*Washington Mut. Bank, FA v. Superior Court*,
   24 Cal. 4th 906 (2001) .......................................................................... 17

*Wilson v. Conlin*,
   3 Ill. App. Ct. 517 (1878) ..................................................................... 10

**STATUTES**

15 U.S.C. 3002(3) ...................................................................................... 7

15 U.S.C. 3002(13) .................................................................................. 15

15 U.S.C. § 3001(a)(1) ............................................................................... 8

15 U.S.C. § 3002(3) ................................................................................. 14

15 U.S.C. § 3002(7) ................................................................................. 15

15 U.S.C. § 3002(13) ................................................................................. 8

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

# TABLE OF AUTHORITIES
## (continued)

**Page**

15 U.S.C. § 3005 ............................................................................... 7, 14

15 U.S.C. § 3006(c) ................................................................................. 7

18 U.S.C. § 1955 ................................................................................... 18

28 U.S.C. § 1367(c)(3) ......................................................................... 16

31 U.S.C. § 3701 ................................................................................... 13

31 U.S.C. § 3701 *et seq.* ..................................................................... 13

31 U.S.C. § 5361 *et seq.* ..................................................................... 12

31 U.S.C. § 5362(1)(A) ......................................................................... 12

31 U.S.C. § 5362(1)(a)(ix) ..................................................................... 13

31 U.S.C. § 5362(1)(a)(ix)(III)(aa) ....................................................... 13

31 U.S.C. § 5362(1)(E)(ix) ................................................................... 12

31 U.S.C. § 5362(1)(E)(ix)(III)(bb) ...................................................... 14

31 U.S.C. § 5362(10)(B)(iii)(I) ............................................................. 12

Cal. Bus. & Prof. Code § 17539 *et seq* ............................................. 6, 20

Cal. Bus. & Prof. Code § 17539.3 ........................................................... 8

Cal. Bus. & Prof. Code § 19411 .............................................................. 8

Cal. Bus. & Prof. Code § 19420 ......................................................... 6, 20

Cal. Bus. & Prof. Code § 19590 ......................................................... 8, 17

Cal. Bus. & Prof. Code § 19595 ......................................................... 8, 17

Cal. Bus. & Prof. Code § 19604 ........................................................... 17

Cal. Bus. & Prof. Code § 19604(b)(1)(A) ............................................. 15

Cal. Penal Code § 330 ..................................................................... 17, 18

Cal. Penal Code § 337a ............................................................... 8, 17, 18

## OTHER AUTHORITIES

Assembly Bill 1437 ................................................................................. 6

## RULES

Fed. R. Civ. P. 56 ................................................................................... 6

Fed. R. Civ. P. 56(a) .............................................................................. 6

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Defendant Horse Racing Labs, LLC ("Derby Wars," referred to herein as "DW") is a small, start-up company based in Louisville, Kentucky that operates a horse racing fantasy contest website.  DW launched in October 2011 and, since that time, has had numerous discussions and meetings with Plaintiffs[1] – owners and operators of horse racing tracks – about potentially engaging in cross-promotional and marketing projects with each other that would not only promote horse racing, but also grow each other's business.  DW does not use live or delayed video feeds or other intellectual property of Plaintiffs in its fantasy contests; rather, it relies on publicly available information to score its games.  After building up a customer base, DW was excited about expanding its then-existing marketing arrangement with one of Plaintiffs' tracks, when the rug was pulled out from under them.

Out of the blue, Plaintiffs filed this lawsuit against DW, alleging in effect that by using the publicly available race results of horse races at Plaintiffs' tracks in DW's contests, DW is violating the Interstate Horse Racing Act ("IHA"), a federal statute that has been around since 1978 and which a Plaintiffs' executive concedes regulates parimutuel wagers only, and violations of California's Unfair Competition Law ("UCL") for purportedly engaging in illegal gambling activities.  This lawsuit is fatally defective, as DW's contests are not parimutuel wagers, and indeed, are not bets or wagers at all, but are legal fantasy contests that have been heavily debated and approved by many states over the past several years.  Indeed, California is one of those states that is considering the issue, but has yet to act.

More specifically, Plaintiffs' IHA claim is fatally defective for several reasons.  As a threshold matter, Plaintiffs' IHA claim is barred by the applicable

---

[1]  The named Plaintiffs are Los Angeles Turf Club, Inc., Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing Inc., Maryland Jockey Club of Baltimore City, Inc., and Laurel Racing Association, Inc. ("Plaintiffs").

three-year statute of limitation.  But even if the statute of limitations has not run (which it has), the IHA claim still fails because the statute applies only to "legal wagers;" that is, parimutuel wagering.  Case law is clear that fixed entry fees – like those to play DW's skill-based contests – are not bets or wagers, let alone parimutuel wagers.  The IHA also is inapplicable because, on its face, it applies only to *licensed* "off-track betting systems," which Plaintiffs do not dispute DW is not.  And, the IHA only applies to wagers that are placed in a wagering pool, which DW's contest fees are not and, indeed, cannot be placed, in traditional parimutuel wagering pools.  Plaintiffs' UCL claim fails for similar reasons, but also because Plaintiffs do not have standing to assert such a claim, and there are no substantive violations of applicable laws.  Plaintiffs are also estopped from asserting both their IHA and UCL claims, based on their years long delay and conduct that gave every impression to DW that Plaintiffs did not object to using race results from Plaintiffs' tracks in DW's contests.  And, finally, as the debate about fantasy contests continues to swirl, this Court should abstain from entering the fray, and allow the state Legislatures and Horse Racing Boards to do their jobs of regulating a new area that was not contemplated when the IHA or other gambling statutes were enacted.

For these reasons, as discussed more fully below, DW respectfully requests this Court to grant its motion for summary judgment, and enter a judgment in favor of DW, and against Plaintiffs, on all of Plaintiffs' claims.

## II.     STATEMENT OF FACTS

### A.     The Parties

Plaintiffs operate horse racing meets at six race tracks located in California, Oregon, Maryland and Florida.  (SUMF ¶ 1.)  Plaintiffs are all licensed in these states to offer only parimutuel wagering at their tracks.  (SUMF ¶ 2.)  Plaintiffs' race tracks accounted for about $3 billion out of $10 billion in U.S. "handle" (*i.e.*, amount of parimutuel wagers placed on horse races) in both of 2015 and 2016.  (SUMF ¶ 3.)  Plaintiffs are all wholly owned by TSG Developments Investments,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

Inc. (hereafter, the "Stronach Group").[2]

Defendant HRL was formed in 2009 and, later that year, launched Horse Racing Nation ("HRN"), a free online community for passionate horse racing fans. (SUMF ¶¶ 7-8.)  In October 2011, HRL launched DW, a website that offers free and pay-to-play horse racing fantasy games of skill.  (SUMF ¶ 9.)

### B.    Parimutuel Wagering On Horse Races

Parimutuel wagering is defined by state and federal law and is generally considered an exception to states' general prohibition on gambling.  (*See infra*, Section IV.B.1.)  The amount a person may wager on horse races under a parimutuel wagering system generally is not fixed in advance.  (SUMF ¶ 10.)  Further, the payout on wagers on horse races in a parimutuel wagering system generally is determined by the size of the wagering pool, which can fluctuate depending on the number and amount of parimutuel wagers placed, and the wagering odds, which can change up to the time the race closes.  (SUMF ¶ 11.)  The "host" track (the track where the races are run) in a parimutuel wagering system generally retains a specified fixed percentage of the wagers (called the "take-out") before it pays out money to the winners who wagered on a particular race.  (SUMF ¶ 12.)

### C.    DW's Contests Have Fixed Entry Fees And Fixed Prizes

DW operates fantasy contests, not parimutuel wagering.  Unlike parimutuel wagering, players entering DW's contests pay a fixed entry fee to participate in the contests.  (SUMF ¶ 13.)  The fixed entry fee is set in advance and does not change, and every player pays the same entry fee.[3]  (SUMF ¶ 14.)  In January 2015 (prior to filing this action), Stronach Group executive Scott Daruty (a lawyer) referred to DW's contests as non-parimutuel.  (SUMF ¶ 16.)

---

[2]  The Stronach Group also owns simulcast purchase and sales agent Monarch Content Management ("Monarch"); ADW service provider XpressBet; Elite Turf Club, an ADW that caters to computer assisted parimutuel wagering ("CAW"); and totalizator services provider AmTote.  (SUMF ¶ 6.)

[3]  The entry fee also provides contest participants with access to additional services, such as the online chat feature, access to a leaderboard, access to other participants' selections, and access to graphics that display horse selections.  (SUMF ¶ 15.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

In each contest, players pick horses in running races (usually a minimum of six races in each contest) at various horse racing tracks across the U.S., including at Plaintiffs' tracks.  (SUMF ¶ 17.)  Players entering a contest select one horse for each contest race.  (SUMF ¶ 18.)  DW computes a point score based on the performance of their pick in each contest race.  (SUMF ¶ 19.)  After all races have been run, players with the highest point scores win the predetermined prize.  (SUMF ¶ 21.)[4]

Further, unlike parimutuel wagering, the prizes awarded to the winner of each contest are set in advance and do not change.  (SUMF ¶ 22.)  The prizes are awarded to the player who achieves the highest score in the game and are awarded regardless of the number of points the winner scored.  (SUMF ¶ 23.)  The prize for each contest is not made up of monies collected from entry fees paid by contest participants.  (SUMF ¶ 24.)

### D.   DW's Contests Are Games Of Skill

DW's contests are games of skill; meaning, skill "predominates" over chance.  (SUMF ¶ 31.)  DW's contests involve several distinct types of skills that are not needed in parimutuel wagering, such as (among others): (i) intra-game strategy skills, where players may adjust their selections to take best advantage of the probabilities of winning relative to the scores of their opponents; (ii) skills involved in anticipating the overall slate of races that is likely to yield a high or low scoring game, and to predict the score likely necessary to win; and (iii) skills involved in evaluating opponents to determine their tendencies and relative strengths and weaknesses.  (SUMF ¶¶ 33-37.)

### E.   Plaintiffs And Stronach Group Executives Knew Of DW's Conduct Since September 2011

Beginning as early as September 2011 and continuing through December

---

[4]  There are three general formats of DW's fantasy horse racing contests, each subject to contest rules: (i) Open, (ii) Lockdown, and (iii) Survivor.  In Open contests, players can change their picks up until the race closes; in Lockdown contests, players must make all of their selections before the start of the first race. In the Survivor format, players must pick a horse that finishes first, second or third in each race in order to advance.  (SUMF ¶¶ 25-29.)

2015, when Plaintiffs filed this lawsuit, Stronach Group and Plaintiffs' executives regularly communicated directly with DW about potentially doing business together, including at times an investment in or purchase of DW. (SUMF ¶¶ 44-60.) ***Despite these significant interactions over a period of more than four years, Stronach Group executives and Plaintiffs' officers <u>never</u> <u>once</u> informed DW that they objected to its use of, or demanded that it stop using, the results of races conducted at Plaintiffs' tracks in DW's fantasy horse racing contests.*** (SUMF ¶ 61.)

### F.   <u>Santa Anita Park – Plaintiff Los Angeles Turf Club's Race Track – Entered Into A Sponsorship Agreement With DW</u>

In the fall of 2014, Mr. Midland had several conversation with the marketing director of Santa Anita, about a possible joint sponsorship deal that would promote DW to Santa Anita customers.   (SUMF ¶ 57.)   These discussions led to a sponsorship deal for the 2015 race year; as part of this agreement, Santa Anita delivered tens of thousands of emails to its customers promoting DW, including an email to over 10,000 customers in November 2015.  (SUMF ¶ 58.)[5]

### G.   <u>Plaintiffs Concealed Their Intent To Sue DW</u>

Notwithstanding their years of interactions with DW, Stronach executives claim that the "light bulb" purportedly went off about DW's use of their "content" (*i.e.* race results) in pay-to-play fantasy horse racing contests around October 2014. (SUMF ¶ 62.)  Yet, Plaintiffs filed the instant lawsuit against DW on December 2, 2015 – more than 14 months after they purportedly became concerned that DW was allegedly stealing Plaintiffs' content.  (Docket No. 1.)  No one from the Stronach Group objected to DW's use of, or asked DW to stop using, Plaintiffs' tracks in DW's contests at any time prior to the lawsuit being filed.  (SUMF ¶ 63.)

### H.   <u>Plaintiffs Allow Third Parties To Offer Fantasy Horse Racing Contests Using Plaintiffs' Tracks, Without Payment To Plaintiffs</u>

Several fantasy horse racing contest sites, including Horse Tourneys, use

---

[5]   DW also communicated with the marketing directors at Plaintiffs' other tracks, including Gulfstream Park and Laurel Park, about DW offering handicapping contests.  (SUMF ¶¶ 56, 59.)

Plaintiffs' races in their contests, without any payment to Plaintiffs. (SUMF ¶ 42.) Notably, a few months after the lawsuit was filed, Horse Tourneys became licensed for the first time as an Advanced Deposit Wagering provider ("ADW") in North Dakota, even though it does not operate as an ADW, and even though it has run a contest site for years. (SUMF ¶ 65.)

## I.    Some States Have Chosen to Regulate Fantasy Contests

California already has laws and rules that regulate contests. *See* Cal. Bus. & Prof. Code § 17539 *et seq.* Nine states have already enacted legislation to regulate DFS. (SUMF ¶ 67.) And, at present, there also are ongoing efforts to enact DFS legislation in fifteen states, including Florida and Oregon. (SUMF ¶ 69.)[6] Plaintiffs have undertaken lobbying efforts with respect to proposed DFS legislation to ensure the interests of horse racing tracks are represented and addressed. (SUMF ¶ 66.) In California, the CHRB is vested with licensing and enforcement authority to regulate horse racing and wagering. Cal. Bus. & Prof. Code § 19420. Before Plaintiffs filed this action, there was a "public debate" at a CHRB board meeting regarding the CHRB's treatment DFS and handicapping contests. (SUMF ¶ 71.)

## III.    LEGAL STANDARD: MOTIONS FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is mandated where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's [claim], and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

---

[6] In 2015, California proposed Assembly Bill 1437, "Gambling: Internet Fantasy Sports Game Protection Act"; while this Bill did not leave the Senate, it is clear that California is considering regulation of fantasy contests, but has not yet decided to do so. (SUMF ¶ 70.)

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

6

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

issue for trial.'" *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).  Once the moving party has met this standard, the burden shifts to the party opposing summary judgment to demonstrate a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The opposing party must do so with specific facts.  *Matsushita*, 475 U.S. at 586.

## IV.   PLAINTIFFS' IHA CLAIM FAILS AS A MATTER OF LAW

### A.   The IHA's Statute of Limitation Bars Plaintiffs' IHA Claim

The IHA provides: "A civil action may not be commenced pursuant to this section more than 3 years after the discovery of the alleged violation upon which such civil action is based." 15 U.S.C. § 3006(c).

As discussed below, the IHA does not apply to DW's conduct.  However, even if it did, Plaintiffs' IHA claim is time barred.  It is undisputed that Plaintiffs discovered DW's website promoting fantasy horseracing contests as early as September 2011 and before December 2012.  (SUMF ¶¶ 44-48.)  That conduct has not materially changed – including DW's reliance upon the publicly available results of races run at Plaintiffs' tracks in its fantasy contests – since that time.  (SUMF ¶¶ 17, 48.)  As Plaintiffs cannot dispute that they were aware of the very conduct which they now allege constitutes a violation of the IHA before December 2012, over three years before filing the December 2, 2015 complaint, Plaintiffs' IHA claim is time barred.[7]

### B.   The IHA Claim Fails Because DW's Contests Are Not "Wagers" Subject To The IHA

To establish their IHA claim, Plaintiffs must prove that DW accepted an "interstate off-track wager" in violation of the IHA's provisions.  15 U.S.C. § 3005. This they cannot do.  The IHA defines "interstate off-track wager" as "a legal *wager* placed or accepted in one State with respect to the outcome of a horserace taking place in another State and includes *pari-mutuel wagers*."  15 U.S.C. 3002(3)

---

[7]  No cases were found that discuss or interpret this statute.

(emphasis added).  As the IHA does not define the terms "legal" or "wager," the Court must look outside the IHA to determine whether DW's contests include "wagers" subject to the IHA.[8]  Because DW's contests do not constitute bets or wagers under state or federal law, Plaintiffs' IHA claim fails.

### 1.   DW's Contests Are Not Parimutuel Wagers

As discussed above, application of the IHA is limited to legal wagers.  In California and other states, *parimutuel* wagers are considered legal wagers on horse races, but most other types of bets or wagers are *not* legal.[9]  As Plaintiffs have admitted that the IHA applies only to parimutuel wagers, such as those currently offered at Plaintiffs' tracks (SUMF ¶ 38), if DW's fantasy contests are not parimutuel wagers, Plaintiffs have admitted the IHA does not apply.

The IHA defines parimutuel as "any system whereby wagers with respect to the outcome of a horserace are placed with, or in, a wagering pool conducted by a person licensed or otherwise permitted to do so under State law, and in which the participants are wagering with each other and not against the operator."  15 U.S.C. §3002(13).  Cal. Bus. & Prof. Code Section 19411 defines parimutuel wagering as "a form of wagering in which bettors either purchase tickets of various denominations, or issue wagering instructions leading to the placement of wagers, on the outcome of one or more horse races."  The statute further specifies that in parimutuel wagering, "[t]he association distributes the total wagers comprising each pool, less the amounts retained for purposes specified in this chapter, to winning bettors. . . ."  *Id.*

In contrast, Cal. Bus. & Prof. Code § 17539.3 defines *contests* as:

---

[8]   Indeed, within the IHA itself, Congress specifically noted its finding and policy that "the States should have the primary responsibility for determining what forms of gambling may legally take place within their borders."  15 U.S.C. § 3001(a)(1).

[9]   *Compare* Cal. Bus. & Prof. Code §§ 19590 & 19595 (permitting only parimutuel wagering on horse races) *with* Cal. Penal Code § 337a (prohibiting other types of wagers).

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

> [A]ny game, contest, puzzle, scheme, or plan that holds out or offers to prospective participants the opportunity to receive or compete for gifts, prizes, or gratuities as determined by skill or any combination of chance and skill and that is, or in whole or in part may be, conditioned upon the payment of consideration.

Thus, while parimutuel wagering necessarily includes a wagering pool that is distributed to winning bettors, a contest includes fees paid for the "opportunity to receive or compete" for a prize.

Plaintiffs and DW are in agreement; there is no dispute that DW's contests are not parimutuel wagering, nor do Plaintiffs allege that they are. (SUMF ¶¶ 16, 38.) In addition, it is undisputed that DW's contests have all of the attributes of a *contest*, not a *parimutuel wager*. In particular, all of DW's contests have a fixed entry fee that a participant must pay to play in the contest (unlike parimutuel wagering, where the bettor can wager any amount they want), a predetermined fixed prize (unlike parimutuel wagering, where the wagering pool and payout vary depending on the number and amount of wagers and the payout odds), and a maximum number of participants (unlike parimutuel wagering, where any number of bettors can participate). (SUMF ¶¶ 13-24.) Further, in all of DW's contests, skill predominates over chance. (SUMF ¶ 31.) As DW's contests do not involve parimutuel wagering, the IHA does not apply, and Plaintiffs' IHA claim fails.

2. <u>Even if the IHA Applies to Wagers Other Than Those That Are Parimutuel, the IHA Claim Fails as Payment of an Entry Fee Does Not Constitute a Bet or Wager</u>.

It is well established that entry fees do not constitute bets or wagers, and that contest offerors do not participate in bets or wagers where they do not partake in the elemental risk of gambling. *See Humphrey v. Viacom, Inc.*, No. 06 Civ. 2768, 2007 WL 1797648, at *7-9 (D.N.J. June 20, 2007) (in a *qui tam* action alleging defendants were violating anti-gambling laws by offering pay-for-play online fantasy sport leagues, court held that fantasy sports contests do not constitute bets or

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

9

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

wagers where the entry fee into the contest is paid unconditionally, a predetermined prize is guaranteed to be won, and the contest operator is not competing for the prize); *Langone v. Kaiser*, No. 12 C 2073, 2013 WL 5567587 at *6-7 (N.D. Ill. Oct. 9, 2013) (holding that FanDuel's daily fantasy sports contests were not participating in wagering by charging an entry fee into its contests).  California and other state laws are in accord.  *See Bell Gardens Bicycle Club v. Dep't of Justice*, 36 Cal. App. 4th 717, 747 (1995) (defining "bet" or "wager" as an "agreement between two or more that a sum of money or some valuable thing, in contributing with all agreeing to take part, shall become the property of one or some of them, on the happening in the future of an event at the present uncertain; and the stake is the money or thing thus put upon the chance") (quoting *Hankins v. Ottinger*, 115 Cal. 454, 458 (1896)) (emphasis added).[10]

In both *Humphrey* and *Langone*, the courts evaluated whether fantasy sports programs were accepting bets or wagers by virtue of collecting entry fees into their fantasy sports contests; both courts focused upon the absence of risk in reaching the same conclusion that they were not.  In *Humphrey*, the court noted that "when the entry fees and prizes are unconditional and guaranteed, the element of risk necessary to constitute betting or wagering is missing."  *Humphrey*, 2007 WL 1797648 at *7. In *Langone*, the court found that FanDuel could not be a "winner" in gambling activity as it risked nothing in acting as the conduit for the prize, the prize "is predetermined according to the number of participants in a given league, and never exceeds the total entry fees," and it "does not place any 'wagers' . . . by which it

---

[10] *See also Arizona v. American Holiday Assoc.*, 151 Ariz. 312, 315 (1986) (*en banc*) ("payment of an entrance fee is not an illegal bet or wager"); *Las Vegas Hacienda v. Gibson*, 77 Nev. 25, 27-29 (1961) ("The fact that each contestant is required to pay an entrance fee where the entrance fee does not specifically make up the purse or premium contested for does not convert the contest into a wager"); *Toomey v. Penwell*, 76 Mont. 166, 166 (1926) ("a race run for a purse or premium is not transformed into a gambling transaction merely because every contestant is required to pay an entrance fee"); *Wilson v. Conlin*, 3 Ill. App. Ct. 517, 519 (1878) (charging "a fee in advance for the privilege of being admitted to contest the prize, is no more a gambling process than the offer of a prize to the successful party").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

could lose money based on the happening of a future event." *Langone*, 2013 WL 5567587 at *6.  Similarly, in *Bell Gardens Bicycle Club*, the court distinguished a prize from bets and wagers, as with the latter there is a fundamental aspect of "risk of loss," whereas the former is "ordinarily some valuable thing offered by a person who has no chance of winning the prize offered."  36 Cal. App. 4th at 747.

As the characteristics and rules of the DW contests are highly similar to those found not to constitute bets or wagers in the above cited cases, the IHA does not apply to the DW contests: (1) All of DW's contests have a ***fixed entry fee*** that a participant must pay for the opportunity to play in the contest, *Humphrey*, 2007 WL 1797648 at *7 ("participants pay a set fee for each team they enter in the fantasy sports league") (SUMF ¶¶ 13-14); (2) Payment of the entry fee is a ***condition precedent*** to playing in DW's pay-to-play fantasy horse racing contests and obtaining other site access and services, *id.* (the entry fee "allows the participant to receive related support services") (SUMF ¶ 15); (3) It is undisputed that prizes in DW's contests are ***predetermined*** and communicated to participants before the contest begins, *id.* (defendants "offer set prizes") (SUMF ¶ 22); (4) Once the contest starts, the prize is ***guaranteed*** to be won by one of the participants, *id.* (the "prizes are guaranteed to be awarded") (SUMF ¶ 22); (5) The total amount of the prizes DW offers on its contests are ***not dependent*** upon the total number of entrants in any given contest, *id.* ("the amount of the prize does not depend on the number of entrants") (SUMF ¶ 24); and (6) DW ***does not compete*** in its contests; it stands no chance of winning any prize.  *Id.* (defendants are "neutral parties . . . they do not compete for the prizes and are indifferent as to who wins the prizes")  (SUMF ¶ 23)

Accordingly, DW's contests are not bets or wagers, and the IHA does not, and cannot, apply.

**C.**     **As DW's Contests Are Games of Skill That Fall Within the Fantasy Sports Exception of UIGEA, The IHA Does Not Apply**

Plaintiffs also cannot recover under the IHA because DW's fantasy horse

racing contests are fantasy contests exempted from the definition of "bets" or "wagers" under the Unlawful Internet Gambling Enforcement Act of 2006, 31 U.S.C. § 5361 *et seq.* ("UIGEA").  The structure and language of UIGEA confirm that Congress intended that UIGEA's exemptions to the definition of "bet or wager" also apply to the IHA.[11]  Indeed, Plaintiffs contemplate as much by repeatedly citing to the UIGEA exceptions to "bet or wager" in their First Amended Complaint ("FAC").  (Docket No. 31 at ¶¶ 13-15, 39-42, 46-47.)

Consistent with the case law discussed above, UIGEA's definition of "bet or wager" refers to "the staking or risking by any person of something of value upon the outcome of a contest of others, a sporting event, or a game subject to chance." 31 U.S.C. § 5362(1)(A).  The UIGEA also specifically excludes from that definition "participation in any fantasy or simulation sports game or educational game or contest," where:

> (I) All prizes and awards offered to winning participants are *established and made known to the participants in advance* of the game or contest and their *value is not determined by the number of participants or the amount of any fees paid* by those participants (II) All winning outcomes reflect the relative *knowledge and skill of the participants* and are determined predominantly by accumulated *statistical results of the performance* of individuals (athletes in the case of sports events) in multiple real-world sporting or other events [and] (III) No winning outcome is based – (aa) on the score, point-spread, or any performance or performances of any *single* real-world team or any combination of such teams; or (bb) solely on any *single* performance of an individual athlete in any single real-world sporting or other event.

---

[11]  UIGEA states that even where an act is a "bet" or "wager," it is not considered "unlawful internet gambling" where it "does not violate a provision of the [IHA]." 31 U.S.C. § 5362(10)(B)(iii)(I).  Thus, an act that constitutes a legal "bet or wager" under UIGEA also constitutes a legal "wager" under the IHA.  Congress also expressly exempted "wagers" under the IHA from its definition of "unlawful internet gambling." *See CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098, 1115-15 (9th Cir. 2015).

31 U.S.C. § 5362(1)(E)(ix) (emphasis added) (the "fantasy sports exception").[12]

Under the fantasy sports exception, fantasy sports contests are not "bets or wagers." *First*, as discussed above, DW's contest prizes are established *before* each contest, are made known to the participants in advance, and do not fluctuate based on such number of participants.  (SUMF ¶ 22.)

*Second*, winning outcomes reflect the relative knowledge and skill of the participants, and participants earn points based on accumulated statistical results of the performance of horses in multiple real world horse racing events, subject to proprietary caps.  (SUMF ¶ 36.)  Participating in – and winning – DW's contests involves applying a variety of skills, including knowledge of horse racing, knowledge of the horses in a given race, and the ability to handicap performance of the horse based on a variety of factors such as weather, prior performance, the particular jockey riding the track, and the track.  (SUMF ¶ 37.)  Indeed, a statistical analysis of DW's games confirms that they are games "predominated by skill." (SUMF ¶ 31.)   Randal Heeb, Ph.D., an economist and expert in mathematical economics, industrial organization, and game theory, conducted a detailed analysis of actual DW contests and compared performance of participants of various experience and skill levels across each of DW's contest types.  (SUMF ¶ 31.)  Dr. Heeb also compared participant performance in actual contests against a "simulated" player making random picks in those contests.  (SUMF ¶ 31.)  Based on this analysis, Dr. Heeb concluded that "Derby Wars's contests are games predominated

---

[12] Subsection (III)(aa) does not apply as the winning outcomes of DW's contests are not based on the performance of "any single real-world team or any combination of such teams." *See* 31 U.S.C. § 5362(1)(a)(ix)(III)(aa).  The fantasy sports exception specifically notes that fantasy "teams" cannot be based on "the current membership of an actual team *that is a member of an amateur or professional sports organization*" as those terms are defined by the Professional and Amateur Sports Protection Act (31 U.S.C. § 3701 *et seq.*) ("PASPA").  31 U.S.C. § 5362(1)(a)(ix). According to PASPA, sports organizations deal with sports in which *athletes* (*i.e.*, humans) participate.  31 U.S.C. § 3701.  The definition does not extend to *beasts*, *animals* or *horses*.  Even if PASPA did extend to horses, which it does not, the undisputed evidence demonstrates that horses and jockeys are not "teams" as contemplated by PASPA or the UIGEA.  (SUMF ¶ 39.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

1    by skill," and that "a player possessing superior skill can and consistently does

2    outperform less skillful players."  (SUMF ¶ 31.)

3        *Finally*, as participants must do more than merely select the horse most likely

4    to *win* (or place or show) in a ***single*** horse race (all of DW's contests involve

5    multiple races), and must attempt to accumulate the most contest points over several

6    contest races, no winning outcome in a DW contest is based "solely on any single

7    performance of an individual athlete in any single real-world sporting or other

8    event." 31 U.S.C. § 5362(1)(E)(ix)(III)(bb); (SUMF ¶ 36.)[13]

9        As DW's fantasy contests are not "bets or wagers" and fall squarely within

10   the fantasy sports exception under UIGEA, they "do not constitute gambling as a

11   matter of law"; Plaintiffs' IHA claim thus fails as a matter of law.  *See Humphrey,*

12   2007 WL 1797648 at *11 (noting that UIGEA confirms that fantasy sports do not

13   constitute gambling).

14       **D.**    **Plaintiffs Cannot Recover Under the IHA Because DW Is Not A**
             **Licensed Off-Track Betting System and Does Not Operate a**
15           **Parimutuel Pool**

16       Even if the Court were to conclude, which it should not, that DW's contests

17   are wagers within the meaning of the IHA, the statute still does not apply.  As the

18   plain language of the IHA establishes that it does not apply to the DW contest site,

19   DW is entitled to judgment on the IHA claim as a matter of law.  *See Ponce v.*

20   *Neufeld*, No. CV 05-2418, 2005 WL 6168697, at *4 (C.D. Cal. Oct. 11, 2005)

21   ("[W]hen [f]aced with a question of statutory interpretation, the Court must first ask

22   whether the statute's plain terms directly address the precise question at issue.").

23       *First*, the IHA does not apply as DW is not a licensed off-track betting

24   system.  The IHA provides a private right of action only against persons who

25   "accept[] any *interstate off-track wager* in violation of [the IHA]."  15 U.S.C. §

---

26   [13] In some situations, a player can earn more points by picking a horse that did not
27   win a race, but was a less popular choice among contestants, or a player with a
     significant lead may maximize their chances to win a given contest by picking a
28   safer horse that will earn them fewer points (akin to making a conservative wager in
     Final Jeopardy!). (SUMF ¶ 37.)

3005 (emphasis added).  An "interstate off-track wager" refers to a legal "wager" "*accepted by an off-track betting system*."  15 U.S.C. § 3002(3)(emphasis added).  "Off track betting system" refers to any group that accepts "wagers on horseraces at locations other than the place where the horserace is run, *which business is conducted by the State or licensed or otherwise permitted by State law*."  15 U.S.C. § 3002(7).  Thus, the definition of "interstate off track wager" is limited to wagers taken by businesses **licensed** to take wagers.

DW is not licensed or otherwise permitted by any state to take wagers or off track bets.  (Docket No. 34 at ¶ 27.)  Indeed, while DW could *theoretically* seek to obtain a license as an ADW, as it is undisputed that it is *not* an ADW (as it does not accept parimutuel wagers), any such license would not extend to the DW contests.[14] (SUMF ¶ 43.)  Thus, the IHA does not apply to DW's contests on its face.

*Second*, the IHA does not apply to DW's contests as the IHA limits recovery to the "takeout" from a "parimutuel" pool, which is a system of wagering "whereby wagers . . . *are placed with, or in, a wagering pool* . . . in which the participants are wagering with each other and not against the operator."  15 U.S.C. § 3002(13).

Here, as discussed already, it is undisputed that DW's contests, even if wagering, are not parimutuel wagering.  (SUMF ¶ 38.)  Entry fees for DW's contests are not placed in a "parimutuel pool," or any pool at all.  (SUMF ¶ 24.)  Rather, DW's contests offer fixed prizes to winners, regardless of the number of participants in a given contest.  (SUMF ¶ 22.)  The prize pool is not made up of entry fees.  (SUMF ¶ 24.)  Thus, because DW's contests are not "parimutuel," there is no "takeout" within the meaning of the IHA, and the IHA's damages provisions

---

[14]  ADW service providers, which are businesses that accept parimutuel wagers on horse races via the Internet, are required to be licensed to operate.  *See* Cal. Bus. & Prof. Code § 19604(b)(1)(A) ("Wagers shall be accepted according to the procedures set forth in this subdivision. (1) No ADW provider shall accept wagers or wagering instructions on races conducted in California from a resident of California unless all of the following conditions are met: (A) *The ADW provider is licensed by the board*")(emphasis added). ADW licenses issued by the NDRC do not cover fantasy horse racing contests, as NDRC does not treat contests as parimutuel wagering.  (SUMF ¶ 43.)

1   do not apply to DW's contests on its face.[15]

2  **V.   PLAINTIFFS' UCL CLAIM FAILS AS A MATTER OF LAW**[16]

3      **A.    Plaintiffs Lack Standing to Assert a UCL Claim**

4      Plaintiffs lack standing to pursue their UCL claim because they have not, and

5  cannot, establish the prerequisites for standing under the UCL – a loss or deprivation

6  of money or property sufficient to qualify as injury in fact, *i.e.*, economic injury, and

7  show that that economic injury was caused by the unfair business practice. *Kwikset*

8  *Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011).

9      In the Court's Order on DW's MJOP, the Court found that Plaintiffs

10  sufficiently alleged standing because they alleged that they were not receiving fees

11  that they would otherwise be entitled to under the IHA.  (Docket No. 43.)  But if the

12  IHA claim fails, Plaintiffs have suffered no economic injury.  Further, the Court also

13  has previously held, in the context of DW's Motion to Dismiss, that Plaintiffs have

14  not shown "that [DW's] actions in operating a fantasy . . . website deprive Plaintiffs

15  of customers that would otherwise place bets at tracks."  (Docket No. 30 at 7.)

16      **B.    The UCL May Not Be Asserted By Non-California Plaintiffs Against A Non-California Defendant**

17      The UCL does not regulate conduct unconnected to California.[17]   *See*

18  *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225-27 (1999);

19

---

20  [15]  Notably, Plaintiffs do not require other contest sites to pay for use of published

21  horse race results on Plaintiffs' tracks in their contests, because, according to these executives, there is no established economic model, implicitly acknowledging that

22  contests are not parimutuel and there is no "take-out" in contests.  (SUMF ¶ 64.)

23  [16]  As Plaintiffs only plead federal question jurisdiction and there is no basis for diversity jurisdiction, the Court should decline to exercise supplemental jurisdiction

24  over Plaintiffs' state law UCL claim after finding that DW is entitled to judgment on Plaintiffs' IHA claim as a matter of law.  28 U.S.C. § 1367(c)(3); *see also*

25  *Sharnese v. California*, 547 Fed. App'x 820, 823 (9th Cir. 2013) ("Once all federal actions were dismissed from the action, the district court acted within its discretion in declining to hear remaining state law claims."); *United Mine Workers of Am. v.*

26  *Gibbs*, 383 U.S. 715, 726 (1966) (claims "should" be dismissed if federal claims are dismissed before trial).

27  [17]  The non-California Plaintiffs are Gulfstream Park Racing Association, Inc.,

28  Oregon Racing Inc., Maryland Jockey Club of Baltimore City, Inc., and Laurel Racing Association, Inc.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

16

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206-09 (2011).   In *Norwest* and *Sullivan*, the UCL was held inapplicable to the claims of non-California plaintiffs even though the defendant in *Norwest* was incorporated in California and the defendant in *Sullivan* was located in California.

Summary judgment on the non-California Plaintiffs' UCL claim is appropriate, particularly as DW is neither headquartered nor located in California. To apply the UCL under such circumstances would violate DW's due process rights. *See Phillips Petroleum v. Shutts*, 472 U.S. 797, 821-22 (1985).

### C.   DW's Conduct Is Not "Unlawful" Under Any of the Statutes Pled as Support for the UCL claim.

Because DW's contests do not constitute bets or wagers, as discussed above, they do not violate federal and state gambling laws.[18]   In the FAC, Plaintiffs assert violations of Cal. Bus. & Prof. Code, the IHA and the Illegal Gambling Act of 1970.   *Bell Gardens* establishes that DW's contests are not unlawful under the Cal. Bus. & Prof. Code[19] and the Penal Code,[20] as it holds that contests of skill do not

---

[18] In addition, to the extent that any of the Plaintiffs seeks to rely upon the laws of a state other than California as support for their UCL claim, they may not.   *See Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001).

[19] The Cal. Bus. & Prof. Code sections pled as a basis for Plaintiffs' UCL claim are:

(1) Section 19590: "Parimutuel wagering shall be conducted only by a person or persons licensed under this chapter to conduct a horse racing meeting or authorized by the board to conduct advance deposit wagering." However, Plaintiffs do not allege that DW is engaged in parimutuel wagering; (2) Section 19595: "Any form of wagering or betting on the result of a horse race other than that permitted by this chapter is illegal." However, DW's contests do not involve wagering or betting on the result of a horse race, but rather are fantasy contests; and (3) Section 19604: "The board may authorize any racing association, racing fair, betting system, or multijurisdictional wagering hub to conduct advance deposit wagering in accordance with this section. Racing associations, racing fairs, and their respective horsemen's organizations may form a partnership, joint venture, or any other affiliation in order to further the purposes of this section." However, DW is not engaged in advance deposit wagering, and Plaintiffs do not allege that DW is engaged in parimutuel wagering.

[20] California Penal Code § 337a provides, in pertinent part:

Every . . . person who shall ask for, receive, or collect any money, or other valuable consideration, either for his own or the public use, for and with the

constitute gambling.  *See Bell Gardens*, 36 Cal. App. 4th at 747.  And, fantasy contests are not "bets or wagers" under 18 U.S.C. § 1955,[21] and are otherwise exempted from the definition under the UIGEA, for the reasons discussed above.  Accordingly, none of the statutes urged as the basis for Plaintiffs' UCL is applicable to DW's undisputed conduct in this action.

## VI.  DW IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ITS AFFIRMATIVE DEFENSES OF ESTOPPEL AND WAIVER

Estoppel applies "where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts.'"  *Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1189–90 (2006) (*citing Old Republic Ins. Co. v. FSR Brokerage Inc.*, 80 Cal. App. 4th 666, 678 (2000)).  Summary judgment based on estoppel is appropriate where: (1) the party to be estopped (a) knows the facts and (b) acts in a manner that the party asserting estoppel "has a right to believe" the party to estopped

---

understanding that he will aid, exempt, or otherwise assist any person from arrest or conviction for a violation of Section 330 of the Penal Code; or who shall issue, deliver, or cause to be given or delivered to any person or persons, any license, permit, or other privilege, giving, or pretending to give, any authority or right to any person or persons to carry on, conduct, open, or cause to be opened, any game or games which are forbidden or prohibited by Section 330 of said code . . . is guilty of a felony.

DW's contests are unrelated to California Penal Code section 330:

Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of those prohibited games, is guilty of a misdemeanor, and shall be punishable by a fine …. or by imprisonment …. or by both the fine and imprisonment.

DW's contests plainly fall outside both sections 330 and 337a.

[21]  18 U.S.C. § 1955 provides: "(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.  (b) As used in this section – (4) 'gambling' includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein."  DW's conduct is wholly outside the requisite conduct set forth in this statute.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

18

MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

knew would be relied upon; and (2) the party seeking estoppel is "ignorant of the true facts" and (b) relies on the conduct of the party to be estopped "to his injury." *Quest Software, Inc. v. DirecTV Operations, LLC*, No. SACV 09-1232, 2011 WL 4500922, at *5-6 (C.D. Cal. Sept. 26, 2011) (granting defendant's motion for partial summary judgment on the grounds of equitable estoppel as plaintiff led defendant to believe it did not object to defendant's conduct) (citing *United States v. King Features Entm't, Inc.*, 843 F.3d 394, 399 (9th Cir. 1988)).

Plaintiffs are estopped to assert the present claims against DW.[22]   Plaintiffs knew of DW's fantasy horse racing contests for more than four years prior to filing this action, and during that same time, maintained constant communication and dealings with DW discussing sponsorships, agreements, and even acquisition of DW, and actually engaged in a marketing and sponsorship agreement with DW. (SUMF ¶¶57-58.)  Clearly, Plaintiffs led DW to believe they did not object to its conduct. *See Quest Software, Inc*, 2011 WL 4500922, at *6.  Plaintiffs never one objected to DW's use of publicly available race results at Plaintiffs' tracks during this time.  (SUMF ¶ 61.)  And, DW did not know that Plaintiffs were intending to file suit (which Plaintiffs apparently were secretly planning for well over a year without any notice to DW), and was induced to rely upon Plaintiffs' inaction to its detriment, by investing time and resources to grow the business.

## VII.   THE COURT SHOULD ABSTAIN FROM ADJUDICATING PLAINTIFFS' CLAIMS, IN DEFERENCE TO LEGISLATIVE FUNCTION

Pursuant to the abstention doctrine, courts should abstain from adjudicating claims that would require the court to assume a legislative function where: (1) granting the requested relief would require a trial court to assume or interfere with the functions of an administrative agency; (2) the lawsuit involves determining

---

[22]   For the same reasons, DW is entitled to judgment on its affirmative defense of waiver.  *See Oakland Raiders*, 144 Cal. App. 4th at 1189-90 (waiver is the "intentional relinquishment of a known right after full knowledge of the facts") (internal citations omitted).

complex economic policy, which is best handled by the Legislature or an administrative agency; or (3) granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress. *See Ellsworth v. U.S. Bank, N.A.*, 30 F. Supp. 3d 886, 916 (N.D. Cal. 2014); *see also Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 147-152 (2015), *reh'g and review den.* (2015) (quoting *Reudy v. Clear Channel Outdoor, Inc.*, 428 Fed. App'x 774, 776 (9th Cir. 2011)).

The Court should abstain from adjudicating Plaintiffs' claims for two key reasons. *First*, the Court would invade the province of state legislatures. As discussed in Section IV.B.1. above, California already has laws and rules that regulate contests, and legislation has already been introduced (though not passed) in this state. *See* Cal. Bus. & Prof. Code § 17539 *et seq*. (SUMF ¶ 70.)  Nine states have already enacted legislation to regulate DFS.  (SUMF ¶ 67.)

*Second*, ruling upon Plaintiffs' claims would necessarily assume the functions of the CHRB (which licenses and regulates horse racing and wagering, *see* Cal. Bus. & Prof. Code § 19420) with respect to their treatment of fantasy sports and pay-to-play contests; the CHRB is interested in regulating fantasy horse racing and other contests.  (SUMF ¶ 70.)

## VIII.  **CONCLUSION**

For all of the foregoing reasons, DW respectfully requests that the Court grant its motion in its entirety and enter judgment in its favor.

Dated:  March 20, 2017

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP
Matthew P. Kanny
Arunabha Bhoumik
Maura K. Gierl

By:  /s/ Matthew P. Kanny
      Matthew P. Kanny
      *Attorneys for Defendant*
      HORSE RACING LABS, LLC

318449347