MATTHEW P. KANNY (State Bar No. 167118)
E-mail: mkanny@manatt.com
MAURA K. GIERL (State Bar No. 287430)
E-mail: mgierl@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Tel.:  (310) 312-4000; Fax:  (310) 312-4224

ARUNABHA BHOUMIK (*pro hac vice*)
E-mail: abhoumik@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
Tel.:   (212) 790-4500; Fax: (212) 790-7575

*Attorneys for Defendant*
HORSE RACING LABS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES TURF CLUB, INCORPORATED, a California Corporation, *et al.*,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>HORSE RACING LABS, LLC, a Delaware Limited Liability Company (a/k/a IMMERSE, LLC), d/b/a DERBYWARS, and DOES 1 through 10, inclusive,<br><br>                    Defendants. | No. 2:15-cv-09332-SJO (JEMx)<br><br>Honorable S. James Otero<br>Courtroom No. 10C<br><br>**STATEMENT OF UNDISPUTED MATERIAL FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANT HORSE RACING LABS, LLC'S  MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:          April 24, 2017<br>Hearing Time:          10:00 a.m.<br><br>FAC Filed:                May 16, 2016<br>Fact Discovery Cutoff:   March 27, 2017<br>Expert Discovery Cutoff: April 10, 2017<br>Final Pretrial Conf.:     June 19, 2017<br>Trial Date:               June 27, 2017 |

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

Pursuant to Local Rule 56-1, Defendant Horse Racing Labs, LLC ("HRL"), doing business as Derby Wars ("Derby Wars"), respectfully submits this Statement of Undisputed Material Facts and Conclusions of Law in support of its Motion for Summary Judgment.

| INDEX | |
|---|---|
| **Section** | **Subject Matter** |
| I.A. | Undisputed Facts Demonstrating That Plaintiffs' First Cause Of Action For Alleged Violation Of The Interstate Horseracing Act Fails As A Matter Of Law |
| B. | Undisputed Facts Demonstrating That Plaintiffs' Second Cause Of Action For Alleged Violation Of California Business & & Professions Code Sections 17200, *et, seq.* Fails As A Matter Of Law |
| C. | Undisputed Facts Demonstrating That Plaintiffs' IHA Claim Is Barred By The Statute Of Limitations |
| D. | Undisputed Facts Demonstrating That Plaintiffs' Claims Are Barred By The Equitable Doctrine Of Estoppel |
| E. | Undisputed Facts Demonstrating That The Court Should Abstain From Adjudicating Plaintiffs' Claims, In Deference To Legislative Function |
| II. | Conclusions of Law |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

## I.     UNDISPUTED FACTS

### A.     Undisputed Facts Demonstrating That Plaintiffs' First Cause Of Action For Alleged Violation Of The Interstate Horseracing Act Fails As A Matter Of Law

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1.     Plaintiffs Los Angeles Turf Club, Inc., Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing Inc., Maryland Jockey Club of Baltimore City, Inc., and Laurel Racing Association, Inc. (collectively, "Plaintiffs") operate horse racing meets at six race tracks located in California, Oregon, Maryland and Florida. | Docket No. 31 ("FAC") ¶¶ 3-10; Declaration of Matthew P. Kanny ("Kanny Decl.") ¶ 2, Ex. A ("Daruty Dep.") at 121:9-17; Declaration of Maura K. Gierl ("Gierl Decl.") ¶ 3, Ex. B ("Rogers Dep.") at 35:5-12, 36:5-11. |
| 2.     Plaintiffs are all licensed to offer pari-mutuel wagering on horse races at their tracks. | Kanny Decl. ¶ 4, Ex. C ("Ritvo Dep.") at 52:6-55:23; Rogers Dep. at 59:22-60:23; Daruty Dep. at 375:10-377:16, 382:11-388:4. |
| 3.     Plaintiffs' race tracks accounted for about $3 billion in "handle" in each of 2015 and 2016. | Daruty Dep. at 363:23-364:5, 409:8-24; Gierl Decl. ¶ 2, Ex. A ("Confidential Ritvo Dep.") at 85:12-86:17; Rogers Dep. at 36:12-37:8. |
| 4.     The total handle at all race tracks in the United | Daruty Dep. at |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

2

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| States was about $10 billion in each of 2015 and 2016. | 363:23-364:5, 409:8-24; Confidential Ritvo Dep. at 85:12-86:17; Rogers Dep. at 36:12-37:8. |
| 5.    Plaintiffs are all wholly owned by TSG Developments Investments, Inc. (hereafter, the "Stronach Group"). | Daruty Dep at 121:9-17, 126:6-11; Rogers Dep. at 32:16-36:11. |
| 6.    The Stronach Group owns, directly or indirectly, Monarch Content Management ("Monarch"), a simulcast purchase and sales agent for numerous racetracks and wagering outlets; XpressBet, an Advanced Deposit Wagering ("ADW") service provider that allows customers to place pari-mutuel wagers via internet or telephone; Elite Turf Club, an ADW that caters to high volume, computer assisted pari-mutuel wagering ("CAW"); and AmTote, a provider of totalizator services. | Daruty Dep. at 68:8-12; 71:16-72:23; 121:18-122:16, 127:22-128:18; Rogers Dep. at 32:7-43:17. |
| 7.    Defendant HRL formed in 2009. | Kanny Decl. ¶ 3, Ex. B ("Midland Dep.") at 44:7-10; Declaration of Mark Midland ("Midland Decl.") at ¶ 6. |
| 8.    In 2009, HRL launched Horse Racing Nation ("HRN"), a free online community for horse racing fans. | Midland Dep. at 44:7-46:4; Midland Decl. ¶ 6. |
| 9.    In October 2011, HRL launched Derby Wars, a website that offers free and pay-to-play horse racing | Midland Dep. at 69:14-19, 72:3-74:25; |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| fantasy games of skill. | Midland Decl. ¶ 7. |
| 10. The amount a person may wager on horse races under a pari-mutuel wagering system generally is not fixed in advance and can vary. | Daruty Dep. at 84:15-85:11, 87:7-13; Ritvo Dep. at 60:6-62:11; Midland Decl. ¶ 51. |
| 11. The payout on bets on horse races in a pari-mutuel wagering system generally is determined by the size of the wagering pool, which can fluctuate depending on the number and amount of pari-mutuel wagers placed, and the wagering odds, which can change up to the time the race closes. | Daruty Dep. at 85:12-16, 85:22-86:2, 87:7-13; Ritvo Dep. at 52:6-55:23; Midland Decl. ¶ 51. |
| 12. The "host" track on horse races in a pari-mutuel wagering system generally retains a specified fixed percentage of the wagers (called the "take-out") before it pays out money to the winners of the bets on a particular race. | Daruty Dep. at 87:14-25; Ritvo Dep. at 52:6-55:23, 56:2-57:8; Midland Decl. ¶ 51. |
| 13. Players entering Derby Wars' pay-to-play contests pay a fixed entry fee in exchange for the opportunity to participate in the contests. | Midland Dep. at 192:17-193:14; Midland Decl. ¶ 13. |
| 14. The fixed entry fee is set in advance and does not change, and every player pays the same entry fee in a given contest. | Midland Dep. at 192:17-193:14; Midland Decl. ¶ 14. |
| 15. The entry fee also provides contest participants with access to additional services, such as an online chat feature, a leaderboard, a display of other participants' | Midland Dep. at 76:11-25, 125:2-127:13; Midland Decl. ¶ 15. |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| selections, and a graphic that displays how many people selected each horse. | |
| 16.    In January 2015 (prior to filing this action), Stronach Group executive Scott Daruty (a lawyer) referred to Derby Wars' contests as non-pari-mutuel. | Daruty Dep. at 439:5-441:16. |
| 17.    The contests consist of a number of specified contest races (usually a minimum of six races in each contest) to be run at various horse racing tracks across the United States. | Midland Dep. at 151:25-152:12, 155:18-156:3; Midland Decl. ¶ 10. |
| 18.    Players entering a contest select one horse for each designated race in the contest, along with a backup if that horse scratches. | Midland Decl. ¶ 10. |
| 19.    After the race, Derby Wars computes a point score for each player's pick. | Midland Dep. at 134:6-135:20; Midland Decl. ¶ 12. |
| 20.    The points allocated to each player is based on one point per mythical dollar of payout at the track, subject to maximum caps set according to the contest's rules. | Midland Dep. at 134:6-135:20; Midland Decl. ¶ 11. |
| 21.    After all races have been run, the players with the highest point scores win the prize. | Midland Dep. at 175:11-176:10, 180:12-14; Midland Decl. ¶ 12. |
| 22.    Like the entry fees, the prizes awarded to the winner of each contest are set in advance and do not change. | Midland Dep. at 192:17-193:14; Midland Decl. ¶ 14; Daruty Dep. at 94:15-24. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 23.   The prizes are awarded to the player who achieves the highest score in the game, and the prizes awarded are the same regardless of the number of points scored. | Midland Dep. at 175:11-176:10, 180:12-14, 192:17-193:14; Midland Decl. ¶ 16. |
| 24.   The prize for each contest is not made up of monies collected from entry fees paid by contest participants. | Midland Decl. ¶ 16. |
| 25.   There are three general formats of Derby Wars' fantasy horse racing contests, each subject to contest rules: (i) Open, (ii) Lockdown, and (iii) Survivor. | Midland Decl. ¶ 18. |
| 26.   In Open contests, players can change their picks up until the race closes. | Midland Dep. at 132:12-22; Midland Decl. ¶ 19. |
| 27.   In Lockdown contests, players must make all of their selections before the start of the first race. | Midland Dep. at 132:23-25; Midland Decl. ¶ 20. |
| 28.   Open and Lockdown contests comprise the majority of contests run by Derby Wars. | Midland Decl. ¶¶ 19-20. |
| 29.   In the Survivor format, players must pick a horse that finishes first, second or third in each race in order to advance to the next race. | Midland Decl. ¶ 21. |
| 30.   Predetermined prizes in Survivor contests are awarded to the players who survive to the end of the contest. | Midland Decl. ¶ 21. |
| 31.   Skill predominates over chance in Derby Wars' contests. | Kanny Decl. ¶ 6, Ex. E (Expert Report of |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| | Randal Heeb, Ph.D. ("Heeb Rep.")) ¶¶ 1-22. |
| 32.   Derby Wars designed its contests to maximize the skill required to win. | Midland Dep. at 21:12-22:8, 69:14-19, 130:11-131:4, 136:22-137:4, 138:9-139:20, 141:16- 25, 198:7-199:14; Midland Decl. ¶ 22. |
| 33.   Derby Wars' contests involve intra-game strategy skills, where players may adjust their selections to take best advantage of the relative probabilities of winning relative to the scores of their opponents. | Heeb Rep. ¶¶ 14, 32-33. |
| 34.   Derby Wars' contests also involve the skill of anticipating the overall slate of races that is likely to yield a high or low scoring game, and to predict the score likely necessary to win. | Heeb Rep. ¶¶ 15, 34. |
| 35.   Derby Wars' contests also involve the skill of evaluating opponents to determine their tendencies and relative strengths and weaknesses. | Heeb Rep. ¶¶ 16, 35. |
| 36.   Winning outcomes in Derby Wars' contests reflect the relative knowledge and skill of the participants, and participants earn points based on accumulated statistical results of the performance of horses in multiple real world horse racing events, subject to proprietary caps. | Heeb Report ¶¶ 10-22. |
| 37.   Participating in – and winning – Derby Wars' | Heeb Report ¶ 31. |

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| contests involves applying a variety of skills, including knowledge of horse racing, knowledge of the horses in a given race, and the ability to handicap performance of the horse based on a variety of factors such as weather, prior performance, the particular jockey riding the track, and the track. | |
| 38.    Plaintiffs admit that the Interstate Horse Racing Act applies only to pari-mutuel wagers. | Ritvo Dep. at 52:6-55:23, 66:1-12. |
| 39.    Jockeys typically are engaged by horse trainers to ride in races and work with many different trainers and ride different horses on any given day. | Ritvo Dep. at 18:15-21:9, 22:17-23:9; Daruty Dep. at 91:19-92:7. |
| 40.    Bet America does not pay additional compensation to Plaintiffs for use of their tracks in Bet America's contests, because there is not yet an established business model on contest play. | Daruty Dep. at 42:10-45:22; 201:11-202:6. |
| 41.    Plaintiffs and Bet America currently do not have a compensation model in place for use of Plaintiffs' tracks in Bet America contests. | Daruty Dep. at 354:8-21. |
| 42.    Horse Tourneys, a pure contest site that does not offer ADW pari-mutuel wagering, operates contests using Plaintiffs' tracks without any payment to Plaintiffs. | Daruty Dep. at 38:9-39:3, 248:4-254:6, 262:12-264:11. |
| 43.    ADW licenses issued by the NDRC do not cover fantasy horse racing contests, as NDRC does not treat contests as pari-mutuel wagering. | Midland Decl. ¶ 53. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

**B.** **Undisputed Facts Demonstrating That Plaintiffs' Second Cause Of Action For Alleged Violation Of California Business & & Professions Code Sections 17200, *et, seq.* Fails As A Matter Of Law**[1]

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1.   Plaintiffs Los Angeles Turf Club, Inc., Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing Inc., Maryland Jockey Club of Baltimore City, Inc., and Laurel Racing Association, Inc. (collectively, "Plaintiffs") operate horse racing meets at six race tracks located in California, Oregon, Maryland and Florida. | FAC ¶¶ 3-10; Daruty Dep. at 121:9-17; Rogers Dep. at 35:5-12, 36:5-11. |
| 2.   Plaintiffs are all licensed to offer pari-mutuel wagering on horse races at their tracks. | Ritvo Dep. at 52:6-55:23; Rogers Dep. at 59:22-60:23; Daruty Dep. at 375:10-377:16, 382:11-388:4. |
| 3.   Plaintiffs' race tracks accounted for about $3 billion in "handle" in each of 2015 and 2016. | Daruty Dep. at 363:23-364:5, 409:8-24; Confidential Ritvo Dep. at 85:12-86:17; Rogers Dep. at 36:12-37:8. |
| 4.   The total handle at all race tracks in the United States was about $10 billion in each of 2015 and 2016. | Daruty Dep. at 363:23-364:5, 409:8-24; Confidential Ritvo |

---

[1]  Because Plaintiffs' UCL claim is derivative of their IHA claim, the undisputed facts set forth in Section I.B. are identical to the undisputed facts set forth in Section I.A., *supra*.  Derby Wars restates those undisputed facts, and have maintained their numbering scheme, in Section I.B. for the sake of completeness.

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| | Dep. at 85:12-86:17; Rogers Dep. at 36:12-37:8. |
| 5.    Plaintiffs are all wholly owned by TSG Developments Investments, Inc. (hereafter, the "Stronach Group"). | Daruty Dep at 121:9-17, 126:6-11; Rogers Dep. at 32:16-36:11. |
| 6.    The Stronach Group owns, directly or indirectly, Monarch Content Management ("Monarch"), a simulcast purchase and sales agent for numerous racetracks and wagering outlets; XpressBet, an Advanced Deposit Wagering ("ADW") service provider that allows customers to place pari-mutuel wagers via internet or telephone; Elite Turf Club, an ADW that caters to high volume, computer assisted pari-mutuel wagering ("CAW"); and AmTote, a provider of totalizator services. | Daruty Dep. at 68:8-12; 71:16-72:23; 121:18-122:16, 127:22-128:18; Rogers Dep. at 32:7-43:17. |
| 7.    Defendant HRL formed in 2009. | Midland Dep. at 44:7-10; Midland Decl. at ¶ 6. |
| 8.    In 2009, HRL launched Horse Racing Nation ("HRN"), a free online community for horse racing fans. | Midland Dep. at 44:7-46:4; Midland Decl. ¶ 6. |
| 9.    In October 2011, HRL launched Derby Wars, a website that offers free and pay-to-play horse racing fantasy games of skill. | Midland Dep. at 69:14-19, 72:3-74:25; Midland Decl. ¶ 7. |
| 10.    The amount a person may wager on horse races under a pari-mutuel wagering system generally is not | Daruty Dep. at 84:15-85:11, 87:7-13; Ritvo Dep. at 60:6-62:11; |

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| fixed in advance and can vary. | Midland Decl. ¶ 51. |
| 11.   The payout on bets on horse races in a pari-mutuel wagering system generally is determined by the size of the wagering pool, which can fluctuate depending on the number and amount of pari-mutuel wagers placed, and the wagering odds, which can change up to the time the race closes. | Daruty Dep. at 85:12-16, 85:22-86:2, 87:7-13; Ritvo Dep. at 52:6-55:23; Midland Decl. ¶ 51. |
| 12.   The "host" track on horse races in a pari-mutuel wagering system generally retains a specified fixed percentage of the wagers (called the "take-out") before it pays out money to the winners of the bets on a particular race. | Daruty Dep. at 87:14-25; Ritvo Dep. at 52:6-55:23, 56:2-57:8; Midland Decl. ¶ 51. |
| 13.   Players entering Derby Wars' pay-to-play contests pay a fixed entry fee in exchange for the opportunity to participate in the contests. | Midland Dep. at 192:17-193:14; Midland Decl. ¶ 13. |
| 14.   The fixed entry fee is set in advance and does not change, and every player pays the same entry fee in a given contest. | Midland Dep. at 192:17-193:14; Midland Decl. ¶ 14. |
| 15.   The entry fee also provides contest participants with access to additional services, such as an online chat feature, a leaderboard, a display of other participants' selections, and a graphic that displays how many people selected each horse. | Midland Dep. at 76:11-25, 125:2-127:13; Midland Decl. ¶ 15. |
| 16.   In January 2015 (prior to filing this action), Stronach Group executive Scott Daruty (a lawyer) | Daruty Dep. at 439:5-441:16. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| referred to Derby Wars' contests as non-pari-mutuel. | |
| 17.    The contests consist of a number of specified contest races (usually a minimum of six races in each contest) to be run at various horse racing tracks across the United States. | Midland Dep. at 151:25-152:12, 155:18-156:3; Midland Decl. ¶ 10. |
| 18.    Players entering a contest select one horse for each designated race in the contest, along with a backup if that horse scratches. | Midland Decl. ¶ 10. |
| 19.    After the race, Derby Wars computes a point score for each player's pick. | Midland Dep. at 134:6-135:20; Midland Decl. ¶ 12. |
| 20.    The points allocated to each player is based on one point per mythical dollar of payout at the track, subject to maximum caps set according to the contest's rules. | Midland Dep. at 134:6-135:20; Midland Decl. ¶ 11. |
| 21.    After all races have been run, the players with the highest point scores win the prize. | Midland Dep. at 175:11-176:10, 180:12-14; Midland Decl. ¶ 12. |
| 22.    Like the entry fees, the prizes awarded to the winner of each contest are set in advance and do not change. | Midland Dep. at 192:17-193:14; Midland Decl. ¶ 14; Daruty Dep. at 94:15-24. |
| 23.    The prizes are awarded to the player who achieves the highest score in the game, and the prizes awarded are the same regardless of the number of points scored. | Midland Dep. at 175:11-176:10, 180:12-14, 192:17-193:14; Midland Decl. ¶ 16. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

12

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 24.     The prize for each contest is not made up of monies collected from entry fees paid by contest participants. | Midland Decl. ¶ 16. |
| 25.     There are three general formats of Derby Wars' fantasy horse racing contests, each subject to contest rules: (i) Open, (ii) Lockdown, and (iii) Survivor. | Midland Decl. ¶ 18. |
| 26.     In Open contests, players can change their picks up until the race closes. | Midland Dep. at 132:12-22; Midland Decl. ¶ 19. |
| 27.     In Lockdown contests, players must make all of their selections before the start of the first race. | Midland Dep. at 132:23-25; Midland Decl. ¶ 20. |
| 28.     Open and Lockdown contests comprise the majority of contests run by Derby Wars. | Midland Decl. ¶¶ 19-20. |
| 29.     In the Survivor format, players must pick a horse that finishes first, second or third in each race in order to advance to the next race. | Midland Decl. ¶ 21. |
| 30.     Predetermined prizes in Survivor contests are awarded to the players who survive to the end of the contest. | Midland Decl. ¶ 21. |
| 31.     Skill predominates over chance in Derby Wars' contests. | Heeb Rep. ¶¶ 1-22. |
| 32.     Derby Wars designed its contests to maximize the skill required to win. | Midland Dep. at 21:12-22:8, 69:14-19, 130:11-131:4, 136:22-137:4, 138:9-139:20, 141:16- 25, 198:7- |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| | 199:14; Midland Decl. ¶ 22. |
| 33.    Derby Wars' contests involve intra-game strategy skills, where players may adjust their selections to take best advantage of the relative probabilities of winning relative to the scores of their opponents. | Heeb Rep. ¶¶ 14, 32-33. |
| 34.    Derby Wars' contests also involve the skill of anticipating the overall slate of races that is likely to yield a high or low scoring game, and to predict the score likely necessary to win. | Heeb Rep. ¶¶ 15, 34. |
| 35.    Derby Wars' contests also involve the skill of evaluating opponents to determine their tendencies and relative strengths and weaknesses. | Heeb Rep. ¶¶ 16, 35. |
| 36.    Winning outcomes in Derby Wars' contests reflect the relative knowledge and skill of the participants, and participants earn points based on accumulated statistical results of the performance of horses in multiple real world horse racing events, subject to proprietary caps. | Heeb Report ¶¶ 10-22. |
| 37.    Participating in – and winning – Derby Wars' contests involves applying a variety of skills, including knowledge of horse racing, knowledge of the horses in a given race, and the ability to handicap performance of the horse based on a variety of factors such as weather, prior performance, the particular jockey riding the track, and the track. | Heeb Report ¶ 31. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 38.    Plaintiffs admit that the Interstate Horse Racing Act applies only to pari-mutuel wagers. | Ritvo Dep. at 52:6-55:23, 66:1-12. |
| 39.    Jockeys typically are engaged by horse trainers to ride in races and work with many different trainers and ride different horses on any given day. | Ritvo Dep. at 18:15-21:9, 22:17-23:9; Daruty Dep. at 91:19-92:7. |
| 40.    Bet America does not pay additional compensation to Plaintiffs for use of their tracks in Bet America's contests, because there is not yet an established business model on contest play. | Daruty Dep. at 42:10-45:22; 201:11-202:6. |
| 41.    Plaintiffs and Bet America currently do not have a compensation model in place for use of Plaintiffs' tracks in Bet America contests. | Daruty Dep. at 354:8-21. |
| 42.    Horse Tourneys, a pure contest site that does not offer ADW pari-mutuel wagering, operates contests using Plaintiffs' tracks without any payment to Plaintiffs. | Daruty Dep. at 38:9-39:3, 248:4-254:6, 262:12-264:11. |
| 43.    ADW licenses issued by the NDRC do not cover fantasy horse racing contests, as NDRC does not treat contests as pari-mutuel wagering. | Midland Decl. ¶ 53. |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

15

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

### C. Undisputed Facts Demonstrating That Plaintiffs' IHA Claim Is Barred By The Statute Of Limitations

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 44. Beginning as early as September 2011, Stronach Group executives communicated with HRL's Mark Midland about potentially doing business together. | Daruty Dep. at 141:14-147:22, 148:5-150:19, 152:16-154:16, 155:10-156:17, 156:23-158:15, 159:12-160:5, 160:10-161:24, 164:11-167:10, 168:5-170:7, 171:3-24, 172:4-173:19, 189:21-194:3; Rogers Dep. at 112:12-113:25, 115:17-117:21, 118:8-119:22, 121:8-125:4, 126:8-12, 128:24-134:2, 135:13-23, 138:6-141:9, 144:2-146:16, 147:23-151:5, 152:20-153:1, 162:4-164:19, 164:23-165:17, 166:23-167:7; Midland Decl. ¶¶ 26-27; Gierl Decl. ¶¶ 4-13, 21, Exs. C-O, T. |
| 45. In the fall of 2011, Stronach Group executives communicated with each other and with Mr. Midland regarding the potential of doing business with HRL and Derby Wars. | Daruty Dep. at 141:14-147:22, 148:5-150:19, 152:16-154:16, 155:10-156:17, 156:23-158:15, 159:12-160:5, 160:10-161:24, 164:11-167:10, 168:5- |

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
|  | 170:7, 171:3-24; Rogers Dep. at 112:12-113:25, 115:17-117:21, 118:8-119:22, 121:8-125:4, 126:8-12; Gierl Decl. ¶¶ 4-10, Exs. C-I. |
| 46.     In September 2011, Mike Calderone (the then-Chief Marketing Officer of the Stronach Group) referred to HRL in an e-mail to Stronach Group executives as an up-and-coming website. | Daruty Dep. at 141:14-145:5; Rogers Dep. at 112:12-113:25, 115:17-117:21; Gierl Decl. ¶ 4, Ex. C. |
| 47.     In October 2011, Mr. Calderone wrote an e-mail to Mr. Midland (copying Scott Daruty) inviting Mr. Midland to follow up on a discussion they had regarding using Derby Wars in a joint venture program. | Daruty Dep. at 148:5-150:19; Midland Decl. ¶ 31; Gierl Decl. ¶ 6, Ex. E. |
| 48.     In fall 2011 through November 2012, Mr. Midland had numerous discussions with Mr. Calderone about Derby Wars' pay-to-play contests, the fact that those contests use the results of horse races run at Plaintiffs' tracks, and how Derby Wars could integrate, cross-promote and partner the Stronach Group properties, including Plaintiffs' race tracks. | Midland Decl. ¶¶ 27-37. |
| 49.     In December 2011, in an e-mail to Stronach Group executives, including Mr. Rogers, Mr. Calderone proposed to implement Derby Wars' contests across the Stronach properties, including Plaintiffs' tracks. | Daruty Dep. at 160:20-161:24; Gierl Decl. ¶ 9, Ex. H. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 50.    Mr. Calderone "spoke very highly" of Mr. Midland to Mr. Rogers and was a proponent of Plaintiffs entering into an arrangement with either Horse Racing Nation or Derby Wars. | Rogers Dep. at 115:9-15. |
| 51.    Mr. Calderone and Mr. Rogers had discussed on numerous occasions the possibility of investing in or acquiring Derby Wars. | Rogers Dep. at 121:8-125:4, 135:13-23, 137:17-138:5, 152:13-153:1; Gierl Decl. ¶ 19, Ex. R. |
| 52.    In October 2012, Mr. Calderone sent an e-mail to senior officers of the Stronach Group about a business relationship with HRL, in which Mr. Calderone promoted an investment in HRL if Derby Wars would agree to provide (among other things) free versions of its contests. | Daruty Dep. at 168:5-170:7, 171:3-24, 172:4-11; Rogers Dep. at 138:6-141:4; Gierl Decl. ¶ 11, Ex. J. |
| 53.    In response to Mr. Calderone's October 2012 e-mail, Mr. Rogers and Mr. Calderone discussed the opportunity with Derby Wars. | Daruty Dep. at 172:4-173:19; Rogers Dep. at 138:6-143:13, 146:13-147:22. |
| 54.    Mr. Midland met with Mr. Rogers in person at the Breeders' Cup on or about November 2, 2012. | Midland Decl. ¶ 36; Rogers Dep. at 148:1-150:13. |
| 55.    At the meeting with Mr. Rogers at the Breeder's Cup on or about November 2, 2012, Mr. Midland visually showed Derby Wars' pay-to-play fantasy horse racing contests to Mr. Rogers on Mr. Midland's iPad, which involved races run at Plaintiffs' tracks.  While Mr. Rogers watched, Mr. Midland clicked through the | Midland Decl. ¶ 36; Rogers Dep. at 148:1-150:13. |

STATEMENT OF UNDISPUTED FACTS ISO MOTION FOR SUMMARY JUDGMENT OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| website pages and explained to and showed Mr. Rogers the pay-to-play contests and specifically including contests with races run at Plaintiffs' tracks, including Santa Anita. | |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**D.** **Undisputed Facts Demonstrating That Plaintiffs' Claims Are Barred By The Equitable Doctrines Of Estoppel And Waiver[2]**

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 44.    Beginning as early as September 2011, Stronach Group executives communicated with HRL's Mark Midland about potentially doing business together. | Daruty Dep. at 141:14-147:22, 148:5-150:19, 152:16-154:16, 155:10-156:17, 156:23-158:15, 159:12-160:5, 160:10-161:24, 164:11-167:10, 168:5-170:7, 171:3-24, 172:4-173:19, 189:21-194:3; Rogers Dep. at 112:12-113:25, 115:17-117:21, 118:8-119:22, 121:8-125:4, 126:8-12, 128:24-134:2, 135:13-23, 138:6-141:9, 144:2-146:16, 147:23-151:5, 152:20-153:1, 162:4-164:19, 164:23-165:17, 166:23-167:7; Midland Decl. ¶¶ 26-27; Gierl Decl. ¶¶ 4-13, 21, Exs. C-O, T. |
| 45.    In the fall of 2011, Stronach Group executives communicated with each other and with Mr. Midland regarding the potential of doing business with HRL and | Daruty Dep. at 141:14-147:22, 148:5-150:19, 152:16-154:16, 155:10-156:17, 156:23- |

---

[2]  The undisputed facts set forth in Section I.D. include the undisputed facts set forth in Section I.C., *supra*, as well as additional undisputed facts.  Derby Wars restates the undisputed facts from Section I.C., and have maintained their numbering scheme, in Section I.D. for the sake of completeness.

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| Derby Wars. | 158:15, 159:12-160:5, 160:10-161:24, 164:11-167:10, 168:5-170:7, 171:3-24; Rogers Dep. at 112:12-113:25, 115:17-117:21, 118:8-119:22, 121:8-125:4, 126:8-12; Gierl Decl. ¶¶ 4-10, Exs. C-I. |
| 46.   In September 2011, Mike Calderone (the then-Chief Marketing Officer of the Stronach Group) referred to HRL in an e-mail to Stronach Group executives as an up-and-coming website. | Daruty Dep. at 141:14-145:5; Rogers Dep. at 112:12-113:25, 115:17-117:21; Gierl Decl. ¶ 4, Ex. C. |
| 47.   In October 2011, Mr. Calderone wrote an e-mail to Mr. Midland (copying Scott Daruty) inviting Mr. Midland to follow up on a discussion they had regarding using Derby Wars in a joint venture program. | Daruty Dep. at 148:5-150:19; Midland Decl. ¶ 31; Gierl Decl. ¶ 6, Ex. E. |
| 48.   In fall 2011 through November 2012, Mr. Midland had numerous discussions with Mr. Calderone about Derby Wars' pay-to-play contests, the fact that those contests use the results of horse races run at Plaintiffs' tracks, and how Derby Wars could integrate, cross-promote and partner the Stronach Group properties, including Plaintiffs' race tracks. | Midland Decl. ¶¶ 27-37. |
| 49.   In December 2011, in an e-mail to Stronach Group executives, including Mr. Rogers, Mr. Calderone | Daruty Dep. at 160:20-161:24; Gierl Decl. ¶ 9, Ex. H. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| proposed to implement Derby Wars' contests across the Stronach properties, including Plaintiffs' tracks. | |
| 50.    Mr. Calderone "spoke very highly" of Mr. Midland to Mr. Rogers and was a proponent of Plaintiffs entering into an arrangement with either Horse Racing Nation or Derby Wars. | Rogers Dep. at 115:9-15. |
| 51.    Mr. Calderone and Mr. Rogers had discussed on numerous occasions the possibility of investing in or acquiring Derby Wars. | Rogers Dep. at 121:8-125:4, 135:13-23, 137:17-138:5, 152:13-153:1; Gierl Decl. ¶ 19, Ex. R. |
| 52.    In October 2012, Mr. Calderone sent an e-mail to senior officers of the Stronach Group about a business relationship with HRL, in which Mr. Calderone promoted an investment in HRL if Derby Wars would agree to provide (among other things) free versions of its contests. | Daruty Dep. at 168:5-170:7, 171:3-24, 172:4-11; Rogers Dep. at 138:6-141:4; Gierl Decl. ¶ 11, Ex. J. |
| 53.    In response to Mr. Calderone's October 2012 e-mail, Mr. Rogers and Mr. Calderone discussed the opportunity with Derby Wars. | Daruty Dep. at 172:4-173:19; Rogers Dep. at 138:6-143:13, 146:13-147:22. |
| 54.    Mr. Midland met with Mr. Rogers in person at the Breeders' Cup on or about November 2, 2012. | Midland Decl. ¶ 36; Rogers Dep. at 148:1-150:13. |
| 55.    At the meeting with Mr. Rogers at the Breeder's Cup on or about November 2, 2012, Mr. Midland visually showed Derby Wars' pay-to-play fantasy horse racing contests to Mr. Rogers on Mr. Midland's iPad, | Midland Decl. ¶ 36; Rogers Dep. at 148:1-150:13. |

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| which involved races run at Plaintiffs' tracks. While Mr. Rogers watched, Mr. Midland clicked through the website pages and explained to and showed Mr. Rogers the pay-to-play contests and specifically including contests with races run at Plaintiffs' tracks, including Santa Anita. | |
| 56.     In June 2013, Mr. Midland communicated directly to Michael Nyman, marketing director at Gulfstream Park (one of Plaintiffs' tracks), about running handicapping contests for Gulfstream on the Derby Wars website. | Daruty Dep. at 172:4-173:19; Ritvo Dep. 122:16-124:18; Midland Decl. ¶ 38; Gierl Decl. ¶ 12, Ex. K. |
| 57.     In the fall of 2014, Mr. Midland had several conversation with Nate Newby, marketing director of Santa Anita, about doing a joint sponsorship deal that would promote Derby Wars to Santa Anita customers. | Midland Decl. ¶ 39; Daruty Dep. at 393:11-395:2, 396:4-399:12; Rogers Dep. at 159:25-160:8, 162:2-164:19. |
| 58.     As part of a joint partnership agreement, Santa Anita delivered literally thousands of e-mails to its customers promoting Derby Wars, including an e-mail to over 10,000 customers in November 2015. | Midland Decl. ¶ 43, Exs. E, F; Daruty Dep. at 247:14-248:3; 393:11-395:2, 396:4-399:12. |
| 59.     In November 2015, Mr. Midland communicated with Sal Sinatra, marketing director at Laurel Park (another of Plaintiffs' tracks), about Derby Wars offering handicapping contests. | Midland Decl. ¶ 46; Ritvo Dep. at 135:18-138:19; Gierl Decl. ¶ 20, Ex. S. |
| 60.     In late November 2015, Mr. Midland sent an e- | Midland Decl. ¶ 47, |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| mail to Mr. Rogers, seeking to expand the Santa Anita relationship. | Ex. J; Daruty Dep. at 189:21-194:3; Rogers Dep. at 164:23-165:17, 166:23-167:7; Gierl Decl. ¶¶ 13, 21, Exs. L, T. |
| 61.    Prior to filing the lawsuit, Stronach Group executives never once wrote to, spoke to or met with Derby Wars objecting to the use of, or demanding that Derby Wars stop using, Plaintiffs' tracks in Derby Wars' fantasy horse racing contests. | Midland Decl. ¶ 48; Daruty Dep. at 181:25-183:11, 185:23-186:2, 209:24-210:9; Rogers Dep. at 173:1-174:20, 179:12-180:15, 184:12-25, 198:22-200:25; Gierl Decl. ¶ 14, Ex. M. |
| 62.    Stronach executives claim that the "light bulb" went off about Derby Wars' use of their content in fantasy contests around October 2014, and began to investigate a claim. | Rogers Dep. at 160:6-161:2, 171:5-19. |
| 63.    No one from the Stronach Group asked Derby Wars to stop using Plaintiffs' tracks in Derby Wars' contests at any time prior to the lawsuit being filed. | Daruty Dep. at 181:25-182:21, 183:7-11, 185:23-186:2; Ritvo Dep. at 145:6-14; Rogers Dep. at 173:1-174:17, 179:12-180:15, 184:12-25, 192:12-19, 195:7-19, 198:22-200:16; Gierl Decl. ¶ 14, Ex. M. |
| 64.    Several fantasy horse racing contest sites using Plaintiffs' races in their contests, including Bet America and Horse Tourneys, without payment to Plaintiffs. | Daruty Dep. at 37:12-39:3. |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

24

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 65.    A few months after this lawsuit was filed, Horse Tourneys became licensed for the first time as an ADW in North Dakota, even though it does not operate as an ADW, and even though it has run a contest site for years. | Midland Decl. ¶ 54, Ex. K. |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**E.** **Undisputed Facts Demonstrating That The Court Should Abstain From Adjudicating Plaintiffs' Claims, In Deference To Legislative Function**

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 66. Plaintiffs routinely engage in lobbying activities, including, for example, before state legislatures and Racing Boards and Commissions. | Daruty Dep. at 109:6-113:16; Rogers Dep. at 48:1-12. |
| 67. New York, Massachusetts, Virginia, Tennessee, Mississippi, Indiana, Missouri, Kansas, and Colorado have all successfully enacted legislation to regulate daily fantasy sports ("DFS"). | Midland Decl. ¶ 56; Kanny Decl. ¶ 8; Colo. Rev. Stat. § 12-15.5-105; Kan. Stat. § 21-6403; Miss. Code. § 97-33-305; Tenn. Code § 47-18-1611; Ind. Code § 4-33-24-1; Va. Code § 59.1-569; N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 1411; 940 Mass. Code Regs. 34. |
| 68. New York and Indiana have enacted legislation to regulate DFS with respect to horse racing contests. | Midland Decl. ¶ 56; Kanny Decl. ¶ 8. |
| 69. There are ongoing efforts to enact DFS legislation in at least fifteen states, including in Florida and Oregon. | Kanny Decl. ¶ 8. |
| 70. California has considered whether to regulate fantasy contests, and Plaintiffs have been involved in those efforts. | Daruty Dep. at 108:4-111:6; Midland Decl. ¶ 56. |
| 71. Before Plaintiffs filed this action, there was a "public debate" at a California Horse Racing Board | Daruty Dep. at 187:20-188:15. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| ("CHRB") meeting regarding the CHRB's treatment of DFS and handicapping contests. | |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

## II.   CONCLUSIONS OF LAW

1.      Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

2.      Summary judgment is mandated where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's [claim], and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

3.      "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Electrical Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986) (citations omitted).

4.      Once the moving party has met this burden, the burden shifts to the party opposing summary judgment to demonstrate a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The opposing party must do so with specific facts.  *Matsushita*, 475 U.S. at 586.

5.      The IHA provides: "A civil action may not be commenced pursuant to this section more than 3 years after the discovery of the alleged violation upon which such civil action is based."  15 U.S.C. § 3006(c).

6.      As there are no genuine disputes as to any material facts with regard to DW's statute of limitations affirmative defense, it is entitled to judgment in its favor as a matter of law.  15 U.S.C. § 3006(c).

7.      To establish an IHA claim, the plaintiff must prove that the defendant accepted an "interstate off-track wager" in violation of the IHA's provisions.  15 U.S.C. § 3005.

8.      The IHA defines "interstate off-track wager" as "a legal ***wager*** placed or accepted in one State with respect to the outcome of a horserace taking place in another State and includes ***pari-mutuel wagers***."  15 U.S.C. 3002(3) (emphasis

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

28

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

added).

9.     As the IHA does not define the terms "legal" or "wager," a court must look outside the IHA to determine whether a defendant's conduct constitutes acceptance of "wagers" subject to the IHA.  15 U.S.C. § 3001(a)(1) ("the States should have the primary responsibility for determining what forms of gambling may legally take place within their borders").

10.     In California and other states, parimutuel wagers are considered legal wagers on horse races, but most other types of bets or wagers are not legal. *Compare* Cal. Bus. & Prof. Code §§ 19590 & 19595 (permitting only parimutuel wagering on horse races) *with* Cal. Penal Code § 337a (prohibiting other types of wagers).

11.     The IHA defines parimutuel as "any system whereby wagers with respect to the outcome of a horserace are placed with, or in, a wagering pool conducted by a person licensed or otherwise permitted to do so under State law, and in which the participants are wagering with each other and not against the operator."  15 U.S.C. §3002(13).

12.     Cal. Bus. & Prof. Code Section 19411 defines parimutuel wagering as "a form of wagering in which bettors either purchase tickets of various denominations, or issue wagering instructions leading to the placement of wagers, on the outcome of one or more horse races."

13.     Cal. Bus. & Prof. Code Section 19411 further specifies that in parimutuel wagering, "[t]he association distributes the total wagers comprising each pool, less the amounts retained for purposes specified in this chapter, to winning bettors. . . ."

14.     Cal. Bus. & Prof. Code § 17539.3 defines contests as "any game, contest, puzzle, scheme, or plan that holds out or offers to prospective participants the opportunity to receive or compete for gifts, prizes, or gratuities as determined by skill or any combination of chance and skill and that is, or in whole or in part

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

29

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

1   may be, conditioned upon the payment of consideration."

2       15.    As there are no genuine disputes as to any material facts with regard to

3   whether DW's contests are parimutuel wagers, DW is entitled to judgment in its

4   favor on Plaintiffs' IHA claim as a matter of law.  15 U.S.C. § 3005; 15 U.S.C. §

5   3001(a)(1) ("the States should have the primary responsibility for determining what

6   forms of gambling may legally take place within their borders"); 15 U.S.C.

7   §3002(13); Cal. Bus. & Prof. Code § 19411; Cal. Bus. & Prof. Code § 17539.3.

8       16.    Entry fees do not constitute bets or wagers, and contest offerors do not

9   participate in bets or wagers where they do not partake in the elemental risk of

10  gambling.  *See Humphrey v. Viacom, Inc.*, No. 06 Civ. 2768, 2007 WL 1797648, at

11  *7-9 (D.N.J. June 20, 2007) (in a *qui tam* action alleging defendants were violating

12  anti-gambling laws by offering pay-for-play online fantasy sport leagues, court held

13  that fantasy sports contests do not constitute bets or wagers where the entry fee into

14  the contest is paid unconditionally, a predetermined prize is guaranteed to be won,

15  and the contest operator is not competing for the prize); *Langone v. Kaiser*, No. 12

16  C 2073, 2013 WL 5567587 at *6-7 (N.D. Ill. Oct. 9, 2013) (holding that FanDuel's

17  daily fantasy sports contests were not participating in wagering by charging an

18  entry fee into its contests).

19      17.    California and other state laws also hold that entry fees do not

20  constitute bets or wagers, and contest offerors do not participate in bets or wagers

21  where they do not partake in the elemental risk of gambling.  *See Bell Gardens*

22  *Bicycle Club v. Dep't of Justice*, 36 Cal. App. 4th 717, 747 (1995) (defining "bet"

23  or "wager" as an "agreement between two or more that a sum of money or some

24  valuable thing, in contributing with all agreeing to take part, shall become the

25  property of one or some of them, on the happening in the future of an event at the

26  present uncertain; and the stake is the money or thing thus put upon the chance")

27  (quoting *Hankins v. Ottinger*, 115 Cal. 454, 458 (1896)) (emphasis added); *Arizona*

28  *v. American Holiday Assoc.*, 151 Ariz. 312, 315 (1986) (*en banc*) ("payment of an

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

30

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

1   entrance fee is not an illegal bet or wager"); *Las Vegas Hacienda v. Gibson*, 77

2   Nev. 25, 27-29 (1961) ("The fact that each contestant is required to pay an entrance

3   fee where the entrance fee does not specifically make up the purse or premium

4   contested for does not convert the contest into a wager"); *Toomey v. Penwell*, 76

5   Mont. 166, 166 (1926) ("a race run for a purse or premium is not transformed into a

6   gambling transaction merely because every contestant is required to pay an entrance

7   fee"); *Wilson v. Conlin*, 3 Ill. App. Ct. 517, 519 (1878) (charging "a fee in advance

8   for the privilege of being admitted to contest the prize, is no more a gambling

9   process than the offer of a prize to the successful party").

10       18.   "[W]hen the entry fees and prizes are unconditional and guaranteed,

11   the element of risk necessary to constitute betting or wagering is missing."

12   *Humphrey*, 2007 WL 1797648 at *7.

13       19.   A contest offeror cannot be a "winner" in gambling activity if it risks

14   nothing in acting as the conduit for the prize, the prize "is predetermined according

15   to the number of participants in a given league, and never exceeds the total entry

16   fees," and it "does not place any 'wagers' . . . by which it could lose money based

17   on the happening of a future event." *Langone*, 2013 WL 5567587 at *6.

18       20.   In California, a prize is not the same thing as a bet or wager, as with

19   the latter there is a fundamental aspect of "risk of loss," whereas the former is

20   "ordinarily some valuable thing offered by a person who has no chance of winning

21   the prize offered." *Bell Gardens Bicycle Club*, 36 Cal. App. 4th at 747.

22       21.   As there are no genuine disputes as to any material facts with regard to

23   whether DW's contests are bets or wagers, DW is entitled to judgment in its favor

24   on Plaintiffs' IHA claim as a matter of law. *See Humphrey v. Viacom, Inc.*, No. 06

25   Civ. 2768, 2007 WL 1797648, at *7-9 (D.N.J. June 20, 2007) (in a *qui tam* action

26   alleging defendants were violating anti-gambling laws by offering pay-for-play

27   online fantasy sport leagues, court held that fantasy sports contests do not constitute

28   bets or wagers where the entry fee into the contest is paid unconditionally, a

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

31

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

predetermined prize is guaranteed to be won, and the contest operator is not competing for the prize); *Langone v. Kaiser*, No. 12 C 2073, 2013 WL 5567587 at *6-7 (N.D. Ill. Oct. 9, 2013) (holding that FanDuel's daily fantasy sports contests were not participating in wagering by charging an entry fee into its contests); *Bell Gardens Bicycle Club v. Dep't of Justice*, 36 Cal. App. 4th 717, 747 (1995) (defining "bet" or "wager" as an "agreement between two or more that a sum of money or some valuable thing, in contributing with all agreeing to take part, shall become the property of one or some of them, on the happening in the future of an event at the present uncertain; and the stake is the money or thing thus put upon the chance") (quoting *Hankins v. Ottinger*, 115 Cal. 454, 458 (1896)) (emphasis added); *Arizona v. American Holiday Assoc.*, 151 Ariz. 312, 315 (1986) (*en banc*) ("payment of an entrance fee is not an illegal bet or wager"); *Las Vegas Hacienda v. Gibson*, 77 Nev. 25, 27-29 (1961) ("The fact that each contestant is required to pay an entrance fee where the entrance fee does not specifically make up the purse or premium contested for does not convert the contest into a wager"); *Toomey v. Penwell*, 76 Mont. 166, 166 (1926) ("a race run for a purse or premium is not transformed into a gambling transaction merely because every contestant is required to pay an entrance fee"); *Wilson v. Conlin*, 3 Ill. App. Ct. 517, 519 (1878) (charging "a fee in advance for the privilege of being admitted to contest the prize, is no more a gambling process than the offer of a prize to the successful party")

22.     The structure and language of the Unlawful Internet Gambling Enforcement Act of 2006, 31 U.S.C. § 5361 *et seq*. ("UIGEA"), confirm  Congress intended that UIGEA's exemptions to the definition of "bet or wager" also apply to the IHA.  31 U.S.C. § 5362(10)(B)(iii)(I) (stating that even where an act is a "bet" or "wager," it is not considered "unlawful internet gambling" where it "does not violate a provision of the [IHA].").

23.     An act that constitutes a legal "bet or wager" under UIGEA also constitutes a legal "wager" under the IHA.  Congress also expressly exempted

1    "wagers" under the IHA from its definition of "unlawful internet gambling." *See*

2    *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098, 1115-15 (9th Cir. 2015).

3        24.    UIGEA's definition of "bet or wager" refers to "the staking or risking

4    by any person of something of value upon the outcome of a contest of others, a

5    sporting event, or a game subject to chance."  31 U.S.C. § 5362(1)(A).

6        25.    UIGEA specifically excludes from its definition of "bet or wager"

7    "participation in any fantasy or simulation sports game or educational game or

8    contest," where:  "(I) All prizes and awards offered to winning participants are

9    established and made known to the participants in advance of the game or contest

10   and their value is not determined by the number of participants or the amount of

11   any fees paid by those participants (II) All winning outcomes reflect the relative

12   knowledge and skill of the participants and are determined predominantly by

13   accumulated statistical results of the performance of individuals (athletes in the case

14   of sports events) in multiple real-world sporting or other events [and] (III) No

15   winning outcome is based – (aa) on the score, point-spread, or any performance or

16   performances of any single real-world team or any combination of such teams; or

17   (bb) solely on any single performance of an individual athlete in any single real-

18   world sporting or other event."  31 U.S.C. § 5362(1)(E)(ix) (the "fantasy sports

19   exception").

20       26.    Subsection (III)(aa) of the fantasy sports exception does not apply

21   where the winning outcomes of the contests are not based on the performance of

22   "any single real-world team or any combination of such teams." *See* 31 U.S.C. §

23   5362(1)(a)(ix)(III)(aa) (fantasy "teams" cannot be based on "the current

24   membership of an actual team that is a member of an amateur or professional sports

25   organization" as those terms are defined by the Professional and Amateur Sports

26   Protection Act (31 U.S.C. § 3701 *et seq.*)).

27       27.    As there are no genuine disputes as to any material facts with regard to

28   whether DW's fantasy contests fall within the fantasy sports exception of the

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

33

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

UIGEA, it is entitled to judgment in its favor on Plaintiffs' IHA claim as a matter of law.  31 U.S.C. § 5362(10)(B)(iii)(I) (stating that even where an act is a "bet" or "wager," it is not considered "unlawful internet gambling" where it "does not violate a provision of the [IHA]."); *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098, 1115-15 (9th Cir. 2015); 31 U.S.C. § 5362(1)(A); 31 U.S.C. § 5362(1)(E)(ix); 31 U.S.C. § 5362(1)(a)(ix)(III)(aa) (fantasy "teams" cannot be based on "the current membership of an actual team that is a member of an amateur or professional sports organization" as those terms are defined by the Professional and Amateur Sports Protection Act (31 U.S.C. § 3701 *et seq.*)).

28.  Where a plaintiff asserts that a defendant violated a statute, but the plain language of the statute does not apply to the defendant's conduct, the defendant is entitled to judgment on the claim for relief  arising out of the alleged violation of the statute.  *See Ponce v. Neufeld*, No. CV 05-2418, 2005 WL 6168697, at *4 (C.D. Cal. Oct. 11, 2005) ("[W]hen [f]aced with a question of statutory interpretation, the Court must first ask whether the statute's plain terms directly address the precise question at issue.").

29.  The IHA provides a private right of action only against persons who "accept[] any interstate off-track wager in violation of [the IHA]."  15 U.S.C. § 3005.

30.  The definition of an "interstate off-track wager" in the IHA refers to a legal "wager" "accepted by an off-track betting system."  15 U.S.C. § 3002(3).

31.  The definition of "off track betting system" in the IHA refers to any group that accepts "wagers on horseraces at locations other than the place where the horserace is run, which business is conducted by the State or licensed or otherwise permitted by State law."  15 U.S.C. § 3002(7).

32.  Advanced Deposit Wager service providers, which are businesses that accept parimutuel wagers on horse races via the Internet, are required to be licensed to operate.  *See* Cal. Bus. & Prof. Code § 19604(b)(1)(A) ("Wagers shall be

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

34

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

accepted according to the procedures set forth in this subdivision. (1) No ADW provider shall accept wagers or wagering instructions on races conducted in California from a resident of California unless all of the following conditions are met: (A) The ADW provider is licensed by the board").

33.     The IHA defines "parimutuel" pool as a system of wagering "whereby wagers . . . are placed with, or in, a wagering pool . . . in which the participants are wagering with each other and not against the operator."  15 U.S.C. § 3002(13).

34.     As there are no genuine disputes as to any material facts with regard to whether DW is an off-track betting system or operates parimutuel pools, it is entitled to judgment in its favor on Plaintiffs' IHA claim as a matter of law.  *Ponce v. Neufeld*, No. CV 05-2418, 2005 WL 6168697, at *4 (C.D. Cal. Oct. 11, 2005) ("[W]hen [f]aced with a question of statutory interpretation, the Court must first ask whether the statute's plain terms directly address the precise question at issue."); 15 U.S.C. § 3005; 15 U.S.C. § 3002(7); Cal. Bus. & Prof. Code § 19604(b)(1)(A) ("Wagers shall be accepted according to the procedures set forth in this subdivision. (1) No ADW provider shall accept wagers or wagering instructions on races conducted in California from a resident of California unless all of the following conditions are met: (A) The ADW provider is licensed by the board"); 15 U.S.C. § 3002(13).

35.     A plaintiff has standing under the UCL only where it proves that it suffered a loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e.*, economic injury, and shows that that economic injury was caused by the unfair business practice. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011).

36.     As there are no genuine disputes as to any material facts with regard to Plaintiffs' lack of standing to assert their UCL claim, DW is entitled to judgment in its favor on Plaintiffs' UCL claim as a matter of law. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011).

37.    The UCL does not regulate conduct unconnected to California.  *See Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225-27 (1999); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206-09 (2011).

38.    A plaintiff may not rely upon the laws of a state other than California as support for its UCL claim.  *See Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001).

39.    As there are no genuine disputes as to any material facts with regard to whether Plaintiffs (including non-California Plaintiffs) are entitled to assert a UCL claim against a non-California Defendant, DW is entitled to judgment in its favor on Plaintiffs' UCL claim as a matter of law.  *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225-27 (1999); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206-09 (2011); *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001).

40.    As there are no genuine disputes as to any material facts with regard to whether DW's contests are unlawful under the California Business and Professions Code or the Penal Code, as DW's contests are lawful or otherwise unrelated to those statutes, DW is entitled to judgment in its favor on Plaintiffs' UCL claim as a matter of law.  Cal. Bus. & Prof. Code § 17200.

41.    Estoppel applies "where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts."  *Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1189-90 (2006) (*citing Old Republic Ins. Co. v. FSR Brokerage Inc.,* 80 Cal. App. 4th 666, 678 (2000)).

42.    Summary judgment based on estoppel is appropriate where: (1) the party to be estopped (a) knows the facts and (b) acts in a manner that the party asserting estoppel "has a right to believe" the party to estopped knew would be relied upon; and (2) the party seeking estoppel is "ignorant of the true facts" and (b) relies on the conduct of the party to be estopped "to his injury."  *Quest Software,*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

36

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

1   *Inc. v. DirecTV Operations, LLC*, No. SACV 09-1232, 2011 WL 4500922, at *5-6

2   (C.D. Cal. Sept. 26, 2011) (granting defendant's motion for partial summary

3   judgment on the grounds of equitable estoppel as plaintiff led defendant to believe

4   it did not object to defendant's conduct) (citing *United States v. King Features*

5   *Entm't, Inc.*, 843 F.3d 394, 399 (9th Cir. 1988)).

6       43.    As there are no genuine disputes as to any material facts with regard to

7   DW's estoppel and waiver affirmative defenses, DW is entitled to judgment in its

8   favor as a matter of law.  *Quest Software, Inc. v. DirecTV Operations, LLC*, No.

9   SACV 09-1232, 2011 WL 4500922, at *5-6 (C.D. Cal. Sept. 26, 2011); *see also*

10  *Oakland Raiders v. Oakland-Alameda Cnty. Coliseum, Inc.*, 144 Cal. App. 4th

11  1175, 1189-90 (2006) (citing *Old Republic Ins. Co. v. FSR Brokerage Inc.*, 80 Cal.

12  App. 4th 666, 678 (2000)).

13      44.    There are no genuine disputes as to any material facts with regard to

14  DW's waiver affirmative defense, and it is entitled to judgment in its favor as a

15  matter of law.  *See Oakland Raiders*, 144 Cal. App. 4th at 1189-90 (waiver is the

16  "intentional relinquishment of a known right after full knowledge of the facts").

17      45.    Pursuant to the abstention doctrine, courts should abstain from

18  adjudicating claims that would require the court to assume a legislative

19  function where: (1) granting the requested relief would require a trial court to

20  assume or interfere with the functions of an administrative agency; (2) the lawsuit

21  involves determining complex economic policy, which is best handled by the

22  Legislature or an administrative agency; or (3) granting injunctive relief would be

23  unnecessarily burdensome for the trial court to monitor and enforce given the

24  availability of more effective means of redress.  *See Ellsworth v. U.S. Bank, N.A.*,

25  30 F. Supp. 3d 886, 916 (N.D. Cal. 2014); *see also Hambrick v. Healthcare*

26  *Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 147-152 (2015), *reh'g and review*

27  *den.* (2015) (quoting *Reudy v. Clear Channel Outdoor, Inc.*, 428 Fed. App'x 774,

28  776 (9th Cir. 2011)).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

37

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC

46.     California has laws and rules that regulate contests.  *See* Cal. Bus. & Prof. Code § 17539 *et seq*.

47.     Nine states have enacted legislation to regulate DFS.  Colo. Rev. Stat. § 12-15.5-105; Kan. Stat. § 21-6403; Miss. Code. § 97-33-305; Tenn. Code § 47-18-1611; Ind. Code § 4-33-24-1; Va. Code § 59.1-569; N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 1411; 940 Mass. Code Regs. 34.

48.     In California, the California Horse Racing Board is vested with licensing and enforcement authority to regulate horse racing and wagering.  Cal. Bus. & Prof. Code § 19420.

49.     As there are no genuine disputes as to any material facts with regard to whether the Court should abstain from adjudicating Plaintiffs' claims, DW is entitled to judgment as a matter of law on Plaintiffs' IHA and UCL claims. *Ellsworth v. U.S. Bank, N.A.*, 30 F. Supp. 3d 886, 916 (N.D. Cal. 2014); *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 147-152 (2015), *reh'g and review den.* (2015) (quoting *Reudy v. Clear Channel Outdoor, Inc.*, 428 Fed. App'x 774, 776 (9th Cir. 2011)); Cal. Bus. & Prof. Code § 17539 *et seq.*; Colo. Rev. Stat. § 12-15.5-105; Kan. Stat. § 21-6403; Miss. Code. § 97-33-305; Tenn. Code § 47-18-1611; Ind. Code § 4-33-24-1; Va. Code § 59.1-569; N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 1411; 940 Mass. Code Regs. 34; Cal. Bus. & Prof. Code § 19420.

Dated:  March 20, 2017

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP
Matthew P. Kanny
Arunabha Bhoumik
Maura K. Gierl

By: /s/ Matthew P. Kanny
    Matthew P. Kanny
    *Attorneys for Defendant*
    HORSE RACING LABS, LLC

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

38

STATEMENT OF UNDISPUTED FACTS ISO
MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HORSE RACING LABS, LLC