MATTHEW P. KANNY (State Bar No. 167118)
E-mail: mkanny@manatt.com
MAURA K. GIERL (State Bar No. 287430)
E-mail: mgierl@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Tel.: (310) 312-4000; Fax: (310) 312-4224

ARUNABHA BHOUMIK (*pro hac vice*)
E-mail: abhoumik@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
Tel.: (212) 790-4500; Fax: (212) 790-7575

*Attorneys for Defendant*
HORSE RACING LABS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES TURF CLUB, INCORPORATED, a California Corporation, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>HORSE RACING LABS, LLC, a Delaware Limited Liability Company (a/k/a IMMERSE, LLC), d/b/a DERBY WARS, and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:15-cv-09332-SJO (JEMx)<br><br>Honorable S. James Otero<br>Courtroom No. 10C<br><br>**DEFENDANT HORSE RACING LABS, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:     April 24, 2017<br>Hearing Time:    10:00 a.m.<br><br>FAC Filed:                May 16, 2016<br>Fact Discovery Cutoff:  March 27, 2017<br>Expert Discovery Cutoff: April 10, 2017<br>Final Pretrial Conf.:    June 19, 2017<br>Trial Date:              June 27, 2017 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

318462201.2

DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................. 1

II.  MATERIAL FACTS............................................................................. 2

   A.  The Parties................................................................................. 2

   B.  Parimutuel Wagering On Horse Races ..................................... 2

   C.  DW's Contests Have Fixed Entry Fees And Fixed Prizes ................. 3

   D.  DW's Contests Are Games Of Skill ......................................... 4

   E.  ADW Licenses Do Not Cover Contest Play.............................. 4

   F.  Plaintiffs Have Known of DW's Contests Since September 2011....... 5

   G.  Plaintiffs' Anticompetitive Conduct and Interference with DW's Business................................................................................ 5

   H.  DW is One of Dozens of Fantasy Sport Sites........................... 6

   I.  Some States Have Chosen to Regulate Fantasy Contests........... 6

III.  PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT ON THEIR IHA CLAIM AS IT IS TIME-BARRED AND WHOLLY INAPPLICABLE TO DW'S FANTASY CONTESTS ..................................................................... 7

   A.  The IHA's Statute of Limitation Bars Plaintiffs' IHA Claim ............ 7

   B.  The IHA is Wholly Inapplicable to DW's Fantasy Contests................ 8

      1.  DW is One of Many Fantasy Sports Contest Sites.................... 8

      2.  As DW's Contests Are Games of Skill That Fall Within the Fantasy Sports Exception of UIGEA, The IHA Does Not Apply ...................................... 8

      3.  Plaintiffs Completely Ignore Persuasive Case Law Involving Fantasy Contests ..................................... 11

IV.  PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT IN THEIR FAVOR ON ANY OF THE "ISSUES" THEY HAVE RAISED ..................................................................... 13

   A.  DW's Fantasy Contests Are Not "Wagers on Horseracing" Under The IHA ....................................... 13

      1.  DW's Contests Are Not Parimutuel Wagers Under the IHA ................................................................ 13

      2.  Even if the IHA Applies to Wagers Other Than Those That Are Parimutuel, the IHA Claim Fails as Payment of an Entry Fee Does Not Constitute a Bet or Wager.................. 14

   B.  DW is Not Operating an "Off-Track Betting System" ....................... 15

   C.  DW is Not Required to Obtain Plaintiffs' Consent as it is Not Accepting "Wagers" Under the IHA ................................. 16

   D.  DW is Not Liable to Plaintiffs for Damages Under the IHA ............ 16

   E.  DW is Not in Violation of the UCL.................................................. 17

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2

i

DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1

**TABLE OF CONTENTS**
**(continued)**

2

Page

3    V.        DW'S EQUITABLE DEFENSES SUPPORT DENIAL OF THE
         PSJ...................................................................................................18

4              A.    Plaintiffs Are Guilty of Unclean Hands..............................18

5              B.    Plaintiffs Are Estopped From Asserting Their Claims.....................19

6    VI.       THIS COURT SHOULD ABSTAIN FROM ADJUDICATING
         PLAINTIFFS' CLAIMS...................................................................20

7    VII.      CONCLUSION................................................................................20

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2

ii

DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allstate Ins. Co. v. Countrywide Financial Corp.*,
824 F.Supp.2d 1164 (C.D. Cal. 2011) ....................................................... 7

*Arizona v. American Holiday Assoc.*,
151 Ariz. 312 (1986) ............................................................................... 11

*Aryeh v. Canon Bus. Solutions, Inc.*,
55 Cal. 4th 1185 (2013) ............................................................................ 8

*Bell Gardens Bicycle Club v. Dep't of Justice*,
36 Cal. App. 4th 717 (1995) ................................................................... 11

*Bickoff v. Wells Fargo Bank, N.A.*,
No. 11-CV-02452, 2012 WL 3637381 (S.D. Cal. Aug. 20, 2012) ..................... 17

*Brown v. Bd. of Police Comm'rs of the City of Los Angeles*,
58 Cal. App. 2d 473 (1943) .................................................................... 14

*Burnett v. New York Cent. R. Co.*,
380 U.S. 424 (1965) ................................................................................. 7

*Cellular Accessories for Less, Inc. v. Trinitas LLC*,
65 F. Supp. 3d 909 (C.D.Cal. 2014) ........................................................ 19

*Cohen v. United States*,
378 F.2d 751 (9th Cir. 1967), As DW ....................................................... 18

*Crown, Cork & Seal Co., Inc. v. Parker*,
462 U.S. 345 (1983) ................................................................................. 7

*Ellsworth v. U.S. Bank, N.A.*,
30 F. Supp. 3d 886 (N.D. Cal. 2014) ....................................................... 20

*Finster v. Keller*,
18 Cal. App. 3d 836 (1971) .................................................................... 14

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837 (9th Cir.1987) ................................................................... 18

*Hankins v. Ottinger*,
115 Cal. 454 (1896) ................................................................................ 11

*Horseman's Benevolent & Protective Ass'n – Ohio Div. v. DeWine*,
666 F.3d 997 (6th Cir. 2012) .................................................................. 16

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

318462201.2

iii

DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**
(continued)

Page

*Humphrey v. Viacom, Inc.*,
No. 06-2768 DMC, 2007 WL 1797648 (D.N.J. June 20, 2007)....... 10, 11, 12, 14

*Image Technical Services, Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997) .................................................................... 19

*Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*,
43 F.3d 1491 (D.C. Cir. 1995) .................................................................... 17

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) ....................................................................................... 7

*Kuehnert v. Texstar Corp.*,
412 F.2d 700 (5th Cir. 1969) ....................................................................... 18

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ................................................................................ 17

*Langone v. Kaiser*,
No. 12 C 2073, 2013 WL 5567587 (N.D. Ill. Oct. 9, 2013) ........................ 11, 14

*Las Vegas Hacienda v. Gibson*,
77 Nev. 25 (1961) ........................................................................................ 12

*Misner v. Knapp*,
13 Or. 135 (1885) ........................................................................................ 14

*New Suffold Downs Corp. v. Rockingham Venture, Inc.*,
656 F. Supp. 1190 (D.N.H. 1987) ............................................................... 16

*Northwest Wholesale Stationers v. Pacific Stationery*,
472 U.S. 284 (1985) .................................................................................... 19

*Norwest Mortg., Inc. v. Superior Court*,
72 Cal. App. 4th 214 (1999) ....................................................................... 17

*Old Republic Ins. Co. v. FSR Brokerage Inc.*,
80 Cal. App. 4th 666 (2000) ....................................................................... 19

*Pace Industries, Inc. v. Three Phoenix Co.*,
813 F.2d 234 (9th Cir. 1987)......................................................................... 7

*People v. Lomento*,
155 Cal. App. 2d 740 (1957) ....................................................................... 14

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

318462201.2

iv

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Phillips Petroleum v. Shutts*,
   472 U.S. 797 (1985) ...................................................................................... 18

*POM Wonderful LLC v. Coca Cola Company*,
   166 F.Supp.3d 1085, 1092 (C.D.Cal. 2016)................................................... 19

*Ponce v. Neufeld*,
   No. CV 05-2418, 2005 WL 6168697 (C.D. Cal. Oct. 11, 2005) ....................... 8

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*,
   324 U.S. 806 (1945) ...................................................................................... 18

*Quest Software, Inc. v. DirecTV Operations, LLC*,
   No. SACV 09-1232, 2011 WL 4500922 (C.D. Cal. Sept. 26, 2011).................. 19

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal.4th 553 (1998) ................................................................................... 18

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011)................................................................................ 18

*Toomey v. Penwell*,
   76 Mont. 166 (1926) ..................................................................................... 12

*United States v. King Features Entm't, Inc.*,
   843 F.3d 394 (9th Cir. 1988) ......................................................................... 19

*Western Telecon Inc. v. California State Lottery*,
   13 Cal. 4th 475 (1996) .................................................................................. 14

*Wilson v. Conlin*,
   3 Ill. App. Ct. 517 (1878) .............................................................................. 12

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971) ...................................................................................... 18

**STATUTES**

18 U.S.C.A. § 1961............................................................................................ 7

15 U.S.C. 3002(3) ............................................................................................ 13

15 U.S.C. § 3002(3) .................................................................................. 15, 16

15 U.S.C. § 3002(7) ......................................................................................... 15

15 U.S.C. § 3002(13) ................................................................................ 13, 15

15 U.S.C. § 3004(a)(1)(A) ............................................................................... 16

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

318462201.2                        v                        DEFENDANT HORSE RACING LABS, LLC'S
                                                            OPPOSITION TO PLAINTIFFS' MOTION FOR
                                                            PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
### (continued)

Page

15 U.S.C. § 3005 ............................................................................... 13, 15, 17

15 U.S.C. § 3006(a) ...................................................................................... 17

15 U.S.C. § 3006(b) ...................................................................................... 17

15 U.S.C. § 3006(c) ........................................................................................ 7

28 U.S.C. § 3701 ............................................................................................ 9

28 U.S.C. § 3701 et seq. ................................................................................. 9

31 U.S.C. § 5361 *et seq*. ................................................................................. 9

31 U.S.C. § 5362(1)(A) .................................................................................. 9

31 U.S.C. § 5362(1)(a)(ix) ............................................................................. 9

31 U.S.C. § 5362(1)(a)(ix)(III)(aa) ................................................................ 9

31 U.S.C. § 5362(1)(E)(ix) ............................................................................. 9

31 U.S.C. § 5362(1)(E)(ix)(III)(bb) .............................................................. 10

Cal. Bus. & Prof. Code § 17539 *et seq* ................................................... 6, 20

Cal. Bus. & Prof. Code § 17539.3 ................................................................ 13

Cal. Bus. & Prof. Code § 19411 ................................................................... 13

Cal. Bus. & Prof. Code § 19420 ................................................................... 20

Cal. Bus. & Prof. Code § 19604 ................................................................... 18

Cal. Bus. & Prof. Code § 19604(b)(1)(A) .................................................... 15

## OTHER AUTHORITIES

17 C.F.R. 240.10b-5 ....................................................................................... 7

FanSlam (March 30, 2017), http://www.fanslam.us/faqs.php ................................... 6

Nascar (March 30, 2017), http://fantasygames.nascar.com/ .................................... 6

www.derbywars.com ........................................................................................ 2

## RULES

Fed. R. Civ. Proc. 19 .................................................................................... 17

Fed. R. Civ. Proc. 19(a) ............................................................................... 16

Fed. R. Civ. Proc. 56(g) ............................................................................... 13

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2

vi

DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

## I.    **INTRODUCTION**

Relying upon a small handful of state court cases decided well before the advent of the Internet, and invoking 1920's parlance from the bygone era of Bugsy Siegel and Lucky Luciano, Plaintiffs appear lost in the annals of a Hollywood gangster film, seemingly unaware that a new dawn has ushered in a global phenomenon known as the Internet, and with it fantasy sports contests.  The 1978 Interstate Horseracing Act ("IHA"), which Plaintiffs insist Defendant Horse Racing Labs, LLC ("Derby Wars" or "DW") has violated, was created with the express intent to regulate what was at the time a revolutionary concept – the ability to wager upon and watch via satellite a horse race conducted in a different state.  Nearly forty years later, the Internet has enabled the proliferation of an entirely new form of recreation that was not envisioned at the IHA's enactment – fantasy sports contests.

DW launched its horse racing fantasy contest website in October 2011, and since that time Plaintiffs and DW have had numerous discussions and meetings about cross-promotional and marketing projects.  Perhaps in part because DW does not use video feeds or other intellectual property of Plaintiffs in its fantasy contests, but instead relies solely upon publicly available information of the races to score its games, Plaintiffs never objected to DW's fantasy contests -- ***for more than four years***.  Plaintiffs' claims are thus time-barred, and Plaintiffs are estopped to assert them.

By this action, Plaintiffs allege that DW's use in its contests of the publicly available results of horse races at Plaintiffs' tracksconstitutes a violation of the IHA, which Plaintiffs concede regulates only parimutuel wagers, and violations of California's Unfair Competition Law ("UCL").  But Plaintiffs' claims are substantively defective as DW's contests are not parimutuel wagers; indeed, they are not bets or wagers at all, but legal fantasy contests that are expressly approved by many states.  Indeed, California is one of those states that is considering the issue.

Plaintiffs' claims of illegal "bookmaking" ring particularly hollow given that

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2

DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1   they have expressly endorsed and are benefiting from the very same conduct they

2   now ask this Court to enjoin.  DW's chief competitors – Horse Tourneys and Bet

3   America – are engaged in precisely the same fantasy horse racing contests that DW

4   runs; the only difference is that Plaintiffs have purportedly "consented" to that

5   conduct, while they have filed the present suit to block DW's same contests.  The

6   truth is clear; Plaintiffs have brought this suit not because there is anything illegal or

7   nefarious about DW's contests, but as enforcers in a shakedown, demanding a share

8   of DW's profits from fantasy games wholly outside the purview of the IHA.

9        For these reasons, DW respectfully requests that this Court deny Plaintiffs'

10   Motion for Partial Summary Judgment ("PSJ") in its entirety.

11   **II.   MATERIAL FACTS**

12        **A.   The Parties**

13   Plaintiffs operate horse races at six race tracks in California, Oregon,

14   Maryland and Florida.  (Docket No. 31 (First Amended Complaint ("FAC")), ¶¶ 3-

15   10.)  DW was formed in 2009, and in October 2011 launched www.derbywars.com,

16   a website that offers both free and pay-to-play fantasy horse racing contests.

17   (Statement of Undisputed Material Facts filed in Support of DW's Motion for

18   Summary Judgment, (Docket No. 63-1)  ("SUMF")), ¶¶ 7-8; DW's Additional

19   Material Facts in Support of Opposition to Plaintiffs' Motion for Partial Summary

20   Judgment ("AMF") ¶ 75.)

21        **B.   Parimutuel Wagering On Horse Races**

22   Parimutuel wagering on horse races is defined by state and federal law and is

23   generally considered an exception to states' general prohibitions on gambling.  It is

24   the form of gambling that traditionally occurs at race tracks.  Under the parimutuel

25   system, a person is not limited in the amount he or she may wager on a horse race --

26   he or she could wager $1 or $1 million, or more – and the number of "bettors" on a

27   race is also not limited.  The payout on his or her wager (the winnings) is not known

28   in advance – it depends on the size of the wagering pool, which can fluctuate

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2                                        2                    DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1   depending on the number and amount of wagers placed, and the wagering odds,

2   which can change until the race closes.  (AMF ¶ 73.)  Under the parimutuel system,

3   the "host" track (the track where the races are run) generally retains a statutorily

4   fixed percentage of the wagers (the "take-out") before it pays out money to the

5   winners who wagered on a particular race.  (AMF ¶ 74.)

6   ## C.  DW's Contests Have Fixed Entry Fees And Fixed Prizes

7        DW offers fantasy horse racing contests, which are <u>not</u> parimutuel wagering.[1]

8   Players entering DW's pay-to-play contests pay a fixed entry fee to compete against

9   other players in the contest, which is set in advance, does not change, and is paid by

10  every contestant.[2] (AMF ¶¶ 76, 77, 93.)  In all of DW's contests, there are a

11  maximum number of players that may compete in a given contest.  (AMF ¶ 89.)  In

12  each contest, players pick horses in races (usually between six and fifteen races in

13  each contest) at horse racing tracks across the U.S., and select one horse for each

14  race.  (AMF ¶79, 80.)  The points allocated to each player are based on one point per

15  mythical dollar of payout at the track, subject to proprietary maximum adjustments

16  set according to contest rules.  (AMF ¶ 82.)  After all races have been run, players

17  with the highest point scores win the predetermined prize.  (AMF ¶¶ 81-84.)  The

18  prizes awarded to the winner of each contest are set in advance and do not change.

19  (AMF ¶¶ 85.)  The prize for each contest is ***not*** made up of monies collected from

20  entry fees paid by contest players, and there is no set "take-out" for DW for any

21  given contest.  (AMF ¶¶ 87-91.)  DW can and does lose money on many of its

22  contests. (AMF ¶ 88.)

23       The most common formats of DW's contests are Open and Lockdown.  (AMF

24  ¶ 92.)  These contests constitute approximately 97% of DW's revenue.  (AMF ¶ 92.)

---

25  [1]  Plaintiffs have referred to DW's contests as non-parimutuel.  (AMF ¶ 115.)  In

26  September 2016, the Pennsylvania Horse Racing Commission advised DW that its
    contests are not "parimutuel wagers," and therefore DW was not required to be
    licensed under Pennsylvania law. (AMF ¶ 116.)

27  [2]  The entry fee also provides contest participants with access to additional services,
    such as the online chat feature, access to a leaderboard, access to other participants'

28  selections, and access to graphics that display horse selections.  (AMF ¶ 78.)

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2                    3                    DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

In Open contests, players can change their pick up until each race closes.  (SUMF ¶ 26.)  In Lockdown contests, players must make all selections before the start of the first race.  (SUMF ¶ 27.)  Like other fantasy contest sites (including DW's competitors, Horse Tourneys and Bet America), DW's contests can be head-to-head or multiplayer (from 3 to up to 500 players), but most are multiplayer.  (AMF ¶ 93, 103-107.)  While fixed entry fees and fixed prizes can vary by contest, the attributes of all DW contests remain constant – a fixed entry fee for the opportunity to compete against other players, a predetermined prize that is awarded to the winner, and a maximum number of players.[3]  (AMF ¶¶ 76-87, 93.)

### D.   DW's Contests Are Games Of Skill

All of DW's contests, including its "head-to-head" contests, are games of skill; meaning, skill "predominates" over chance.  (AMF ¶ 94.)  DW's contests are designed to maximize the skill required to win, and involve several distinct types of contest skills that are not needed in parimutuel wagering.  (AMF ¶ 95.)  Further, the outcome of a single race or event is not determinative of the winner of a DW fantasy contest.  (AMF ¶ 99.) While the points awarded for winning picks in individual races depend in part on the payouts to horses in actual races, the points do not translate directly into financial winnings; rather, accumulated points (which are subject to the proprietary adjustments) are compared to points scored by other players.  The player with the most points over the contest races wins the fixed price.[4]  (AMF ¶ 101-102.)

### E.   ADW Licenses Do Not Cover Contest Play

DW has been repeatedly told by regulatory bodies that ADW licenses do not

---

[3]  Plaintiffs make much of DW's head-to-head contests, but fail to tell the Court that Horse Tourneys and Bet America also offer head-to-head and multiplayer contests with various fixed entry fees and prizes.  For example, Horse Tourneys has offered contests with fixed entry fees of up to $795 and cash prizes of up to $1,500 (including a head-to-head contest using Plaintiffs' tracks with an entry fee of $22 and a prize of $40).  (AMF ¶¶ 103-107.)   Bet America offers similar contests.  (AMF ¶¶ 103-107.)  *Neither Horse Tourneys nor Bet America pay anything to Plaintiffs for using the results of their races in their contests and both operate with Plaintiffs' consent.*  (AMF ¶¶ 111-113.)
[4]  Plaintiffs have admitted that the question of the legality of daily fantasy sports has been resolved in favor of the fantasy sports contest operators.  (AMF ¶¶ 118.)

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2                                    4                    DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  cover contest play.  For example, the North Dakota Racing Commission ("NDRC")

2  advised DW that ADW licenses issued by the NDRC do not cover contests, as the

3  NDRC does not treat fantasy horse racing contests as parimutuel wagering.  (AMF ¶

4  114.)  Similarly, the California Horse Racing Board ("CHRB") informed DW that

5  the CHRB does not grant licenses to operate contests.  (AMF ¶ 123; *see also* AMF ¶

6  122.)

7  ### F.   Plaintiffs Have Known of DW's Contests Since September 2011

8  Since September 2011 Plaintiffs' have communicated regularly with DW

9  about potentially doing business with DW.  (AMF ¶¶ 127-143.)  Plaintiffs *never once*

10  informed DW that they objected to its use of, or demanded that it stop using, the

11  results of races conducted at Plaintiffs' tracks in DW's fantasy horse racing contests.

12  (AMF ¶¶ 144, 146.)  In fact, DW and Plaintiff Los Angeles Turf Club ("Santa

13  Anita") entered into a sponsorship agreement in 2014-15, in which Santa Anita

14  delivered tens of thousands of emails to its customers promoting DW.  (AMF ¶141;

15  *see* ¶¶139, 142.)

16  ### G.   Plaintiffs' Anticompetitive Conduct and Interference with DW's Business

17

18  In 2016, DW responded to a request for proposal ("RFP") from the National

19  Thoroughbred Racing Association ("NTRA") and the Breeder's Cup to become their

20  technology partner to "white label" handicapping contests, and were told by the

21  NTRA Breeder's Cup that DW's proposal was by far the best proposal.  (AMF ¶

22  149.)  One of Plaintiffs' executives – who is members of the Board of NTRA and the

23  Breeder's Cup – spoke with NTRA and the Breeder's Cup about their "concerns"

24  regarding how DW operates.  (AMF ¶¶ 150-152.)  Ultimately, the contract went to

25  Horse Tourneys, not DW.  (AMF ¶ 153.)  In addition, DW, for years, has advertised

26  on the Television Games Network ("TVG"), but when Plaintiffs learned of such

27  advertising, Plaintiffs contacted TVG about DW's business.  (AMF ¶¶ 154-155.)

28  Since that time, TVG does not accept DW's ads.  (AMF ¶ 156.)  Further, after DW

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

318462201.2

5

DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

entered into a marketing arrangement with Watch And Wager (operator of the Cal-Expo race track), one of Plaintiffs' executives reached out to them to express his concern with the arrangement. (AMF ¶¶ 157-159.)

### H.   DW is One of Dozens of Fantasy Sport Sites

DW is just one example of dozens of fantasy sports contest sites (also known as Daily Fantasy Sports or "DFS") that exist today, which cover nearly every sport imaginable, including baseball, football, soccer, hockey, golf, tennis, NASCAR, and track and field – both individual and team sports, many at both the professional and collegiate level.  (AMF ¶¶ 103-110.)  The business models of these fantasy sports contest sites closely parallel the contests offered by DW.[5]

### I.   Some States Have Chosen to Regulate Fantasy Contests

California already has laws and rules that regulate contests.  *See* Cal. Bus. & Prof. Code § 17539 *et seq*.  Nine states have already enacted legislation to regulate DFS.  (AMF ¶ 163.)  And, at present, there are ongoing efforts to enact DFS legislation in fifteen states, including Florida and Oregon. (AMF ¶ 165.)[6]

---

[5]  For example, the website "FanSlam" offers both free and pay-to-play fantasy contests in which participants build a team of individual tennis players, and accumulate points based on how these tennis players perform based upon the outcome of real tennis tournaments.  *See Frequently Asked Questions,* FanSlam (March 30, 2017), http://www.fanslam.us/faqs.php.  In FanSlam's pay-to-play contests, participants pay an entry fee by adding funds to their FanSlam account using either a Paypal account or credit card, just as in DW's contests.  Once the tennis tournament begins, participants can no longer make adjustments to their "team," just as in DW's contests.  At the conclusion, the participant with the greatest amount of points receives a pre-determined cash prize deposited into their FanSlam account, just as in DW's contests.  Similarly, NASCAR offers online fantasy contests in which participants build a team of drivers, and accumulate points based on the performance of their drivers in future races.  *See Nascar Fantasy Games*, Nascar (March 30, 2017), http://fantasygames.nascar.com/.  Participants win cash prizes created from participant entry fees that are paid to accounts created with the contest site.

[6]  In 2015, California proposed Assembly Bill 1437, "Gambling: Internet Fantasy Sports Game Protection Act"; while this Bill did not leave the Senate, it is clear that California is considering regulation of fantasy contests, but has not yet decided to do so.  (AMF ¶ 166.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

318462201.2                          6                          DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

**III.    PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT ON THEIR IHA CLAIM AS IT IS TIME-BARRED AND WHOLLY INAPPLICABLE TO DW'S FANTASY CONTESTS**

**A.    The IHA's Statute of Limitation Bars Plaintiffs' IHA Claim**

The IHA provides: "A civil action may not be commenced pursuant to this section more than 3 years after the discovery of the alleged violation upon which such civil action is based." 15 U.S.C. § 3006(c). As discussed below, the IHA does not apply to DW's conduct. However, even if it did, Plaintiffs' IHA claim is time barred. **It is undisputed that Plaintiffs discovered DW's website promoting fantasy horseracing contests as early as September 2011, and before December 2012**. (AMF ¶¶ 127-138; *see* Section II.F.)  That conduct has not materially changed – including DW's reliance upon the publicly available results of races run at Plaintiffs' tracks in its fantasy contests – since that time. (AMF ¶¶ 75-102.)  As Plaintiffs cannot dispute that they were aware of the very conduct which they now allege constitutes a violation of the IHA before December 2012, nearly four years before filing their complaint in December, 2015, Plaintiffs' IHA claim is time barred, and DW is entitled to judgment in its favor as a matter of law.[7]

_____

[7]  "Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352 (1983); *see also Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 428-29 (1965).  Equitable tolling doctrines can apply in narrow instances, but only operate to prevent injustice to a plaintiff *who did not sleep on his rights.  See Burnett v. New York Cent. R. Co.*, 380 U.S. at 428-29.  While no cases were found specifically interpreting the IHA's statute of limitations, Courts have held in analogous contexts that the statutes of limitation begin to run anew only when the defendant commits a *new* overt act that injures the plaintiff, or upon the discovery of *new* facts not previously known.  For example: (i) antitrust actions under the Sherman Act (*see Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987) (to restart the statute of limitations "a new and independent act that is not merely a reaffirmation of a previous act" is required, which "inflict[s] new and accumulating injury on the plaintiff")); (ii) actions for securities fraud under 17 C.F.R. 240.10b-5 (*see Allstate Ins. Co. v. Countrywide Financial Corp.*, 824 F.Supp.2d 1164, 1180 (C.D. Cal. 2011) (the analysis would have to generate *new* facts not previously known (emphasis added)); and (iii) RICO actions under 18 U.S.C.A. §§ 1961 (*see Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 186-87 (1997) ("last predicate act rule" does not apply, as it would "create[] a limitations period that is longer than Congress could have contemplated")).  Here, Plaintiffs slept on their rights and can point to no *new* facts or overt acts that would restart the statute.  The continuing violation doctrine under California law does not provide a basis for tolling the IHA statute, as it is inapplicable to these facts and limited to serial or

**B.     The IHA is Wholly Inapplicable to DW's Fantasy Contests**[8]

1.     DW is One of Many Fantasy Sports Contest Sites

"[W]hen [f]aced with a question of statutory interpretation, the Court must first ask whether the statute's plain terms directly address the precise question at issue." *Ponce v. Neufeld*, No. CV 05-2418, 2005 WL 6168697, at *4 (C.D. Cal. Oct. 11, 2005) (internal quotations omitted).  As the plain language of the IHA establishes that it does not apply to the DW fantasy contests, DW is entitled to judgment on the IHA claim as a matter of law.  *See id.*

Plaintiffs' attempt to shoehorn DW into the IHA, and insistence that DW's contest entry fees are "wagers" under the statute, ignores that the IHA was enacted in 1978, years before the advent of the Internet, and the proliferation of fantasy sports sites, and that DW is one of many fantasy sports sites that exist today, all of which operate (legally) *using essentially the same contest rules*. (AMF ¶¶ 109-110; *see supra* Section II.H.)[9]  The only significant difference that exists between DW's contests and those offered by other existing sites is that the subject of DW's contests is horse racing.  As set forth below, this conduct has already been determined to constitute lawful contests, rather than illegal "wagers" or gambling.

2.     As DW's Contests Are Games of Skill That Fall Within the Fantasy Sports Exception of UIGEA, The IHA Does Not Apply

Though they expressly rely upon it in their FAC, Plaintiffs ignore the

---

episodic misconduct, such as in hostile work environment. *See Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1199-1200 (2013).

[8]  Plaintiffs have moved on piecemeal "issues," which are actually legal conclusions, and focused upon isolated words in the IHA statute rather than upon its intent and purpose.  For example, Plaintiffs pick at words like "wagers," "off-track" and "consent" in the hope of convincing this Court that bits and parts of DW's conduct look and feel as though it should be covered by the statute, while they sidestep the reality that the statute itself has no application to DW's contests.

[9]  Other contest sites, including Draft Kings, offer contests similar to DW in other sports.  For example, Draft Kings offers NASCAR and golf fantasy contests, where contestants pick drivers and golfers and earn points based on the performances of the drivers and golfers in real world events.  (AMF ¶ 108.)  Draft Kings advertises fantasy baseball, NASCAR and golf contests with entry fees of up to $3,500 and cash prizes totaling $3,500,00.  (AMF ¶ 108.)

Unlawful Internet Gambling Enforcement Act of 2006, 31 U.S.C. § 5361 *et seq*. ("UIGEA"), which expressly exempts fantasy contests from its definition of "bets" or "wagers." Plaintiffs' decision to rely upon a forty year old statute governing parimutuel wagers on horseraces (IHA), rather than a statute enacted ten years ago to address the precise fantasy sports contests at issue (UIGEA), is misleading at best.

UIGEA's definition of "bet or wager" refers to "the staking or risking by any person of something of value upon the outcome of a contest of others, a sporting event, or a game subject to chance." 31 U.S.C. § 5362(1)(A). Expressly excluded from that definition is "participation in any fantasy or simulation sports game or educational game or contest," where:

> (I) All prizes and awards offered to winning participants are ***established and made known to the participants in advance*** of the game or contest and their ***value is not determined by the number of participants or the amount of any fees paid*** by those participants (II) All winning outcomes reflect the relative ***knowledge and skill of the participants*** and are determined predominantly by accumulated statistical results of the performance of individuals (athletes in the case of sports events) in multiple real-world sporting or other events [and] (III) No winning outcome is based – (aa) on the score, point-spread, or any performance or performances of any ***single*** real-world team or any combination of such teams; or (bb) solely on any ***single*** performance of an individual athlete in any single real-world sporting or other event.

31 U.S.C. § 5362(1)(E)(ix) (emphasis added) (the "fantasy exception").[10]

---

[10] Subsection (III)(aa) does not apply as the winning outcomes of DW's contests are not based on the performance of "any single real-world team or any combination of such teams." *See* 31 U.S.C. § 5362(1)(a)(ix)(III)(aa). The fantasy sports exception specifically notes that fantasy "teams" cannot be based on "the current membership of an actual team ***that is a member of an amateur or professional sports organization***" as those terms are defined by the Professional and Amateur Sports Protection Act (28 U.S.C. § 3701 et seq.) ("PASPA") (emphasis added). 31 U.S.C. § 5362(1)(a)(ix). According to PASPA, sports organizations deal with sports in which athletes (*i.e.*, humans) participate. 28 U.S.C. § 3701. The definition does not extend to animals. Even if PASPA did extend to horses, the undisputed evidence demonstrates that horses and jockeys are not "teams" as contemplated by PASPA or the UIGEA. (SUMF ¶ 39.) Merriam-Webster defines "team" as "a number of persons associated together in work or activity such as a group on one side (as in football or a debate)." In no way can the horses in a given race be considered "a group on the same side" like a football team. Rather, it is every horse for itself. Nor is there any camaraderie or "team spirit" amongst the jockeys. (AMF ¶ 119.) Even if it were somehow a team sport, contest entrants are not following any real-world team, but rather creating their own fantasy teams by hand-picking a unique group of individual horses from 6-15 races across multiple racetracks.

1       Under the fantasy exception, DW's fantasy contests are not "bets or wagers."

2   *First*, as discussed above, DW's contest prizes are established *before* each contest,

3   are made known to the participants in advance, and do not fluctuate based on the

4   number of participants.  (AMF ¶ 85-86; *see supra* Section II.C.)  *Second*, winning

5   outcomes reflect the relative knowledge and skill of the participants, and participants

6   earn points based on accumulated statistical results of the performance of horses in

7   multiple real world horse racing events, subject to proprietary adjustments.  (AMF ¶¶

8   94-95, 99.)[11]  *Finally*, as participants must do more than merely select the horse most

9   likely to *win* (or place or show) in a ***single*** horse race (all of DW's contests involve

10  multiple races), and must attempt to accumulate the most contest points over several

11  contest races, no winning outcome in a DW contest is based "solely on any single

12  performance of an individual athlete in any single real-world sporting or other

13  event." 31 U.S.C. § 5362(1)(E)(ix)(III)(bb); (AMF ¶¶ 96-102.)[12]

14      As DW's fantasy contests are not "bets or wagers" and fall squarely within the

15  fantasy sports exception under UIGEA, they "do not constitute gambling as a matter

16  of law"; Plaintiffs' IHA claim thus fails as a matter of law.  *See Humphrey v.*

17  *Viacom, Inc.*, No. 06-2768 DMC, 2007 WL 1797648, at *11 (D.N.J. June 20, 2007)

18  _____

19  [11] Participating in – and winning – DW's contests involves applying a variety of
    contest skills, including knowledge of horse racing, knowledge of the horses in a
20  given race, and the ability to handicap performance of the horse based on a variety of
    factors such as weather, prior performance, the particular jockey riding the track, and
21  the track.  (AMF ¶ 96-102.)  Indeed, a statistical analysis of DW's games confirms
    that they are games "predominated by skill."  (AMF ¶ 94.)  Randal Heeb, Ph.D., an
22  economist and expert in mathematical economics, industrial organization, and game
    theory, conducted a detailed analysis of actual DW contests and compared
23  performance of participants of various experience and skill levels across each of
    DW's contest types.  (AMF ¶ 94-102.)  Dr. Heeb also compared participant
24  performance in actual contests against a "simulated" player making random picks in
    those contests.  (AMF ¶ 94-102.)  Based on this analysis, Dr. Heeb concluded that
25  "Derby Wars's contests are games predominated by skill," and that "a player
    possessing superior skill can and consistently does outperform less skillful players."
26  (AMF ¶ 94, 100.)
    [12] In some situations, a player can earn more points by picking a horse that did not
27  win a race, but was a less popular choice among contestants, or a player with a
    significant lead may maximize their chances to win a given contest by picking a
28  safer horse that will earn them fewer points (akin to making a conservative wager in
    Final Jeopardy!).  (AMF ¶ 96.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES                          318462201.2                          10                          DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  (noting that UIGEA confirms that fantasy sports do not constitute gambling).

2      3.      Plaintiffs Completely Ignore Persuasive Case Law Involving
            Fantasy Contests

3

4      It is well established that contest entry fees do not constitute bets or wagers,

5  and that contest offerors do not participate in bets or wagers *where they do not*

6  *partake in the elemental risk of gambling. See Humphrey*, 2007 WL 1797648, at *7-

7  9 (in a *qui tam* action alleging defendants were violating anti-gambling laws by

8  offering pay-for-play online fantasy sport leagues, court held that fantasy sports

9  contests do not constitute bets or wagers where the entry fee into the contest is paid

10  unconditionally, a predetermined prize is guaranteed to be won, and the contest

11  operator is not competing for the prize); *Langone v. Kaiser*, No. 12 C 2073, 2013

12  WL 5567587 at *6-7 (N.D. Ill. Oct. 9, 2013) (holding that FanDuel's daily fantasy

13  sports contests were not participating in wagering by charging an entry fee into its

14  contests).  California and other state laws are in accord.  *See Bell Gardens Bicycle*

15  *Club v. Dep't of Justice*, 36 Cal. App. 4th 717, 747 (1995) (defining "bet" or "wager"

16  as an "agreement between two or more that a sum of money or some valuable thing,

17  in contributing with all agreeing to take part, shall become the property of one or

18  some of them, on the happening in the future of an event at the present uncertain; and

19  the stake is the money or thing thus put upon the chance") (quoting *Hankins v.*

20  *Ottinger*, 115 Cal. 454, 458 (1896)) (emphasis added).[13]

21  ─────────────
[13] In both *Humphrey* and *Langone*, the courts evaluated whether the entry fees

22  collected by the fantasy contests were bets or wagers.  Both courts focused upon the
   absence of risk in reaching the conclusion they are not. In *Humphrey*, the court noted

23  that "when the entry fees and prizes are unconditional and guaranteed, the element of
   risk necessary to constitute betting or wagering is missing."  *Humphrey*, 2007 WL

24  1797648 at *8.  In *Langone*, the court found that FanDuel could not be a "winner" in
   gambling activity as it risked nothing in acting as the conduit for the prize, the prize

25  "is predetermined according to the number of participants in a given league, and
   never exceeds the total entry fees," and it "does not place any 'wagers' . . . by which

26  it could lose money based on the happening of a future event."  *Langone*, 2013 WL
   5567587 at *6.  Similarly, in *Bell Gardens Bicycle Club*, the court distinguished a

27  prize from bets and wagers, as with the latter there is a fundamental aspect of "risk of
   loss," whereas the former is "ordinarily some valuable thing offered by a person"

28  who has no chance of winning the prize offered. 36 Cal. App. 4th at 747.  *See also*
   *Arizona v. Am. Holiday Ass'n*, 151 Ariz. 312, 315 (1986) (*en banc*) ("payment of an

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2                                    11
                          DEFENDANT HORSE RACING LABS, LLC'S
                          OPPOSITION TO PLAINTIFFS' MOTION FOR
                          PARTIAL SUMMARY JUDGMENT

As the characteristics and rules of the DW contests are highly similar to those found not to constitute bets or wagers in the above cited cases, the IHA does not apply to the DW contests: (1) All of DW's contests have a ***fixed entry fee*** that a participant must pay for the opportunity to play in the contest, *Humphrey*, 2007 WL 1797648 at *7 ("participants pay a set fee for each team they enter in a fantasy sports league") (SUMF ¶¶ 13-14); (2) Payment of the entry fee is a ***condition precedent*** to playing in DW's pay-to-play fantasy horse racing contests and obtaining other site access and services, *id.* (the entry fee "allows the participant to receive related support services") (SUMF ¶ 15); (3) It is undisputed that prizes in DW's contests are ***predetermined*** and communicated to participants before the contest begins, *id.* (defendants "offer set prizes") (SUMF ¶ 22); (4) Once the contest starts, the prize is ***guaranteed*** to be won by one of the participants, *id.* (the "prizes are guaranteed to be awarded") (SUMF ¶ 22); (5) The total amount of the prizes DW offers on its contests are ***not dependent*** upon the total number of entrants in any given contest, *id.* ("the amount of the prize does not depend on the number of entrants") (SUMF ¶ 24); and (6) DW ***does not compete*** in its contests; it stands no chance of winning any prize. *Id.* (defendants are "neutral parties . . . they do not compete for the prizes and are indifferent as to who wins the prizes.")  (SUMF ¶ 23).  Accordingly, these factually analogous cases are highly persuasive, and confirm that Plaintiffs are not entitled to judgment on their IHA claim.

---

entrance fee is not an illegal bet or wager"); *Las Vegas Hacienda v. Gibson*, 77 Nev. 25, 29 (1961) ("The fact that each contestant is required to pay an entrance fee where the entrance fee does not specifically make up the purse or premium contested for does not convert the contest into a wager"); *Toomey v. Penwell*, 76 Mont. 166, 171-72 (1926) ("a race run for a purse or premium is not transformed into a gambling transaction merely because every contestant is required to pay an entrance fee"); *Wilson v. Conlin*, 3 Ill. App. Ct. 517, 519 (1878) (charging "a fee in advance for the privilege of being admitted to contest the prize, is no more a gambling process than the offer of a prize to the successful party.").

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2                                12                    DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

**IV.   PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT IN THEIR FAVOR ON ANY OF THE "ISSUES" THEY HAVE RAISED**[14]

   **A.   DW's Fantasy Contests Are Not "Wagers on Horseracing" Under The IHA**

      **1.   DW's Contests Are Not Parimutuel Wagers Under the IHA**[15]

To establish their IHA claim, Plaintiffs must prove that DW accepted an "interstate off-track wager" in violation of the IHA's provisions.  15 U.S.C. § 3005. The IHA defines "interstate off-track wager" as "a legal ***wager*** placed or accepted in one State with respect to the outcome of a horserace taking place in another State and includes ***pari-mutuel wagers***."  15 U.S.C. 3002(3) (emphasis added).  The IHA defines parimutuel as "any system whereby wagers with respect to the outcome of a horserace are placed with, or in, a wagering pool conducted by a person licensed or otherwise permitted to do so under State law, and in which the participants are wagering with each other and not against the operator."  15 U.S.C. §3002(13).[16]

Plaintiffs and DW are in agreement; there is no dispute that DW's contests are not parimutuel wagering.  (SUMF ¶¶ 16, 38; AMF ¶ 115.)  As discussed above, DW's contests have all of the attributes of a *contest*, not a *parimutuel wager*, including a fixed entry fee (unlike parimutuel wagering, where the bettor can wager any amount they want), a predetermined fixed prize (unlike parimutuel wagering, where the wagering pool and payout vary depending on the number and amount of wagers and the payout odds), and a maximum number of participants (unlike

---

[14] Plaintiffs fail to mention Rule 56(g) in their Notice of Motion, and are not entitled to avail themselves of this Rule as each of the six "issues" Plaintiffs ask the Court to "adjudicate" are questions of law, not fact.

[15] Plaintiffs barely discuss parimutuel wagering, even though one of their executives admits that the IHA only applies to parimutuel wagers. (AMF ¶ 117.)

[16] *Compare* Cal. Bus. & Prof. Code Section 19411 (defining parimutuel wagering as "a form of wagering in which bettors either purchase tickets of various denominations, or issue wagering instructions leading to the placement of wagers, on the outcome of one or more horse races") *with* Cal. Bus. & Prof. Code § 17539.3 (defining contests as: "any game, contest, puzzle, scheme, or plan that holds out or offers to prospective participants the opportunity to receive or compete for gifts, prizes, or gratuities as determined by skill or any combination of chance and skill and that is, or in whole or in part may be, conditioned upon the payment of consideration.").

1    parimutuel wagering, where any number of bettors can participate).  (SUMF ¶¶ 13-

2    24.)  Further, in all of DW's contests, skill predominates over chance.  (SUMF ¶ 31.)

3    *See Humphrey*, 2007 WL 1797648 at \*8; *Langone*, 2013 WL 5567587 at \*6.  As

4    DW's contests do not involve parimutuel wagering, the IHA does not apply, and

5    Plaintiffs' IHA claim fails.

            2.     Even if the IHA Applies to Wagers Other Than Those That Are
                  Parimutuel, the IHA Claim Fails as Payment of an Entry Fee
                  Does Not Constitute a Bet or Wager

8          Plaintiffs acknowledge that DW's conduct does not neatly fit within the

9    definition of parimutuel wagering under the IHA, but insist that the IHA nevertheless

10   applies to *all* forms of wagers.  (PSJ fn. 4).  In support, Plaintiffs' rely solely upon

11   antiquated gambling cases that bear no factual relation to DW's contests.  In *People*

12   *v. Lomento*, 155 Cal. App. 2d 740 (1957), *Misner v. Knapp*, 13 Or. 135 (1885),

13   *Brown v. Bd. of Police Comm'rs of the City of Los Angeles*, 58 Cal. App. 2d 473

14   (1943), and *Finster v. Keller*, 18 Cal. App. 3d 836 (1971), Plaintiffs cherry pick

15   quotes from factually distinguishable cases to support the refuted premise that

16   contests must be wagers if they depend upon the happening of a future event at

17   present uncertain.[17]  *See* PSJ at 13:1-20.  *Western Telecon Inc. v. California State*

18   *Lottery,* 13 Cal. 4th 475 (1996), the only case decided since the advent of the

19   Internet, merely holds that the game of Keno offered by the California State Lottery

20   constitutes gambling as it is a game wholly of chance, and thus constitutes illegal

21   gambling.[18]

22          As these cases are factually distinguishable, do not establish that the entry fees

---

[17]  *See Lomento*, 155 Cal. App. 2d at 740 (an illegal bookmaking involving an individual who accepted in-person cash wagers on the outcome of a single race on a "scratch sheet"); *Misner*, 13 Or. at 135 (a fraud action to recover a purse offered to the owner of a horse should the horse run the best time)*; Brown*, 58 Cal. App. 2d at 473 (an action appealing the Board of Police Commissioners' denial of a permit to appellant to operate his game in a public place); *Finster*, 18 Cal. App. 3d at 836 (remanding in part on the issue of whether a liquor store's distribution of a horse-racing publication violates a state statute regulating horse-racing paraphernalia).

[18]  The Court found the game involves a computer that "randomly 'draws' twenty numbers from the integers 1 through 80. . . [and i]t is these 20 numbers that the bettor hopes match the selection on the[ir] ticket." *Id.* at 480.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

318462201.2        14        DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  for DW's fantasy contests are "wagers," and contravene more recent and relevant

2  case law and the UIGEA, Plaintiffs have failed to establish that DW's contests are

3  "wagers on horseracing," and the IHA does not apply.

### B.  DW is Not Operating an "Off-Track Betting System"

5  Even if the Court were to conclude that DW's contests are wagers within the

6  meaning of the IHA (which it should not), the statute still does not apply as DW is

7  not a licensed off-track betting system.  Plaintiffs cite no authority to the contrary.

8  The IHA provides a private right of action only against persons who "accept[]

9  any *interstate off-track wager* in violation of [the IHA]."  15 U.S.C. § 3005

10  (emphasis added).  An "interstate off-track wager" refers to a legal "wager"

11  "*accepted by an off-track betting system*."  15 U.S.C. § 3002(3).  On "off-track

12  betting system" refers to any group that accepts "wagers on horseraces at locations

13  other than the place where the horserace is run, *which business is conducted by the*

14  *State or licensed or otherwise permitted by State law*."  15 U.S.C. § 3002(7).  Thus,

15  the IHA is limited to wagers taken by businesses ***licensed*** to take wagers.

16  DW is not licensed or otherwise permitted by any state to take wagers or off-

17  track bets.  Indeed, while DW could *theoretically* seek to obtain a license as an

18  ADW, as it is undisputed that it is *not* an ADW (as it does not accept parimutuel

19  wagers), any such license would not extend to the DW contests.[19]  (AMF ¶¶ 120-

20  123.) Thus, the IHA does not apply to DW's contests.[20]

21

22

---

23  [19] ADW service providers, which are businesses that accept parimutuel wagers on
24  horse races via the Internet, are required to be licensed to operate.  *See* Cal. Bus. &
    Prof. Code § 19604(b)(1)(A). ADW licenses issued by the NDRC do not cover
25  fantasy horse racing contests, as NDRC does not treat contests as parimutuel
    wagering. (AMF ¶ 114.)
26  [20]  The IHA does not apply for the additional reason that the IHA limits recovery to
    the "takeout" from a "parimutuel" pool, which is a system of wagering in which
27  wagers "are placed with, or in, a wagering pool . . . in which the participants are
    wagering with each other and not against the operator." 15 U.S.C. § 3002(13).  As
28  discussed, it is undisputed that DW's contests are not parimutuel wagering.  (AMF ¶
    115.)

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2                                    15                    DEFENDANT HORSE RACING LABS, LLC'S
                                                                     OPPOSITION TO PLAINTIFFS' MOTION FOR
                                                                     PARTIAL SUMMARY JUDGMENT

## C.   DW is Not Required to Obtain Plaintiffs' Consent as it is Not Accepting "Wagers" Under the IHA[21]

The "consent" requirement of Section 3004 applies only to an "interstate off-track wager" which, as explained above, is a legal "wager" "accepted by an off-track betting system." *See* 15 U.S.C. § 3002(3).  For the reasons discussed above, DW is not an "off-track betting system" and, once again, the IHA simply does not apply.

DW does not dispute that multiple consents would be required from a number of entities[22] if it was an "off-track betting system" accepting "interstate off-track wagers"; however, as it is not, no such consents are, or can be required.  The two cases cited by Plaintiffs regarding consent are wholly inapposite.  *See Horseman's Benevolent & Protective Ass'n – Ohio Div. v. DeWine,* 666 F.3d 997 (6th Cir. 2012) (holding that an Ohio statute that did not require the consent of the horseman's groups was preempted by the IHA); *New Suffold Downs Corp. v. Rockingham Venture, Inc.,* 656 F. Supp. 1190, 1194 (D.N.H. 1987) (holding that consent was not required from the operator of a nearby horse racing track).  This provision, like *all* provisions of the IHA, is thus wholly inapplicable to DW's contests.[23]

## D.   DW is Not Liable to Plaintiffs for Damages Under the IHA

Plaintiffs have failed to sustain their burden of proving that the IHA applies to DW in any respect, let alone that they may recover damages from DW for non-existent violations of the statute, and once again fail to cite any authority in support.  However, even if Plaintiffs had established a right to damages under the IHA (which they have not), the plain language of the statute highlights another important defect; Plaintiffs have failed to join necessary parties under Rule 19(a) of the Fed. R. Civ.

---

[21]  Both of Plaintiffs' "issues to be decided" 3 and 4 (Sections E and F of the PSJ) are addressed in this section; it is unclear why Plaintiffs chose to separate them.

[22]  Plaintiffs excise with ellipsis the portion of Section 3004 which states that consents must also be obtained from the "host  racing commission" and the "off-track racing commission."

[23]  Plaintiffs' PSJ should also be denied because Plaintiffs have not shown – and cannot show – that Horsemen's Groups gave *Plaintiffs* their consent – which is a prerequisite element to stating a claim under the IHA.  *See* 15 U.S.C. Sec. 3004(a)(1)(A); AMF ¶¶ 124-126.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

318462201.2                                    16                          DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1   Proc., as not only Plaintiffs, but multiple groups – including the host State and the

2   horsemen's groups – may seek damages from the same alleged statutory violations of

3   the IHA.[24]

4          Rule 19 of the Fed. R. Civ. Proc. provides that a party must be joined if

5   "disposing of the action in the person's absence may leave an existing party subject

6   to a substantial risk of incurring double, multiple, or otherwise inconsistent

7   obligations because of the interest."  Rule 19 Fed. R. Civ. Proc.; *see also Bickoff v.*

8   *Wells Fargo Bank, N.A.*, No. 11-CV-02452, 2012 WL 3637381, at *3 (S.D. Cal.

9   Aug. 20, 2012); *Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v.*

10  *Babbitt*, 43 F.3d 1491 (D.C. Cir. 1995).  As awarding damages to Plaintiffs would

11  subject DW to "a substantial risk of incurring multiple or otherwise inconsistent

12  obligations," the PSJ should be denied.

13         **E.    DW is Not in Violation of the UCL**

14         Plaintiffs concede that its UCL claim must share the same fate as its IHA

15  claim.  (PSJ 18:5-7).  Plaintiffs' UCL claim fails for the following additional reasons.

16         *First*, Plaintiffs have not and cannot establish the prerequisites for standing

17  under the UCL, as they have not sustained a loss or deprivation of money or property

18  sufficient to qualify as injury in fact (*i.e.*, economic injury), which was caused by

19  DW's contests.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011).[25]

20         *Second*, the UCL does not regulate conduct unconnected to California.  *See*

21  *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225-27 (1999);

---

22  [24] The IHA provides that "[a]ny person accepting any interstate off-track wager in
    violation of this chapter shall be civilly liable for damages *to the host State, the host*

23  *racing association and the horsemen's group*."  15 U.S.C. § 3005 (emphasis
    added).  Section 3006(a) provides that *"[t]he host State, the host racing association,*

24  *or the horsemen's group*" may commence a civil action against any person alleged to
    be in violation of this chapter. . . ,"  and Section 3006(b) provides that "*the host*

25  *State, the host racing association and horsemen's group*… shall be permitted to
    intervene as a matter of right."  15 U.S.C. § 3006(a),(b) (emphasis added).

26  [25] The Court has already found that Plaintiffs have not shown "that [DW's] actions in
    operating a fantasy . . . website deprive Plaintiffs of customers that would otherwise

27  place bets at tracks" (Docket No. 30 at 7), and that Plaintiffs sufficiently *pled*
    standing because they alleged they were not receiving fees they would otherwise be

28  entitled to receive under the IHA.  (Docket No. 43.)

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2                                    17                          DEFENDANT HORSE RACING LABS, LLC'S
                                                                          OPPOSITION TO PLAINTIFFS' MOTION FOR
                                                                          PARTIAL SUMMARY JUDGMENT

1  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206-09 (2011).  Plaintiffs' UCL claim

2  must fail as DW is neither headquartered nor located in California, and as to the non-

3  California Plaintiffs.  *See Phillips Petroleum v. Shutts*, 472 U.S. 797, 821-22 (1985).

4       *Third*, DW's conduct is not unlawful under Cal. Bus. & Prof. Code §19604

5  which, like the IHA, is facially inapplicable as DW is not engaged in advance deposit

6  wagering, and Plaintiffs agree DW is not engaged in parimutuel wagering.

7       *Finally*, DW's contests do not violate the Federal Wire Act ("FWA") as entry

8  fees for fantasy sports contests are not "bets" or "wagers" (*see supra* Section III.B),

9  and DW did not knowingly violate the statute; to the contrary, it has never received

10  any indication that its contests are illegal.  *See Cohen v. United States,* 378 F.2d 751,

11  757 (9th Cir. 1967).[26]  Moreover, as Plaintiffs did not plead the FWA as a predicate

12  for their UCL claim, it would be highly prejudicial to permit Plaintiffs to pursue a

13  new theory of liability now.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401

14  U.S. 321, 330-31 (1971).

15       Plaintiffs' UCL claim thus fails as a matter of law.

16  **V.    DW'S EQUITABLE DEFENSES SUPPORT DENIAL OF THE PSJ**

17       **A.    Plaintiffs Are Guilty of Unclean Hands**

18       The unclean hands defense "closes the doors of a court of equity to one tainted

19  with inequitableness or bad faith relative to the matter in which he seeks relief."

20  *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,* 324 U.S. 806, 814

21  (1945).  The doctrine is equally applicable to actions at equity and at law. *See e.g.,*

22  *Kuehnert v. Texstar Corp.,* 412 F.2d 700 (5th Cir. 1969)(applied to violation of

23  securities laws); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9th

24  Cir.1987) (applied to Lanham Act action).  To prevail, defendant must showing that:

25  (1) plaintiff's conduct is inequitable; and (2) the conduct relates to the subject matter

26

27  [26] As DW has not been accused or convicted of any crimes, predicating the UCL claim on a criminal statute raises due process concerns.  Moreover, enforcement of the penal code "lies exclusively within the powers allocated to the executive branch."

28  *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal.4th 553, 592 (1998).

1  of plaintiff's claims.  *See POM Wonderful LLC v. Coca Cola Company,* 166
2  F.Supp.3d 1085, 1092 (C.D. Cal. 2016).  The defense may be predicated upon a wide
3  array of alleged wrongs.  *See, e.g., Cellular Accessories for Less, Inc. v. Trinitas*
4  *LLC,* 65 F. Supp. 3d 909 (C.D. Cal. 2014) (attempt to monopolize a market).

5          Plaintiffs' efforts to block DW from operating on the same terms as its
6  competitors, BetAmerica and HorseTourney, is potentially monopoly conduct in
7  violation of Section 2 of the Sherman Act.  *See Image Technical Services, Inc. v.*
8  *Eastman Kodak Co.,* 125 F.3d 1195 (9th Cir. 1997); (AMF ¶¶ 111-113).  Further,
9  Plaintiffs' actions in seeking to exclude DW in a manner that will damage
10  competition is potentially an illegal group boycott in violation of Section 1 of the
11  Sherman Act.  *See Northwest Wholesale Stationers v. Pacific Stationery,* 472 U.S.
12  284 (1985).  (AMF ¶¶ 111-113; *see also supra* Section II.H.)  At the very least, such
13  conduct raises genuine issues of material fact that prevent summary judgment for
14  Plaintiffs.  *See Cellular Accessories for Less, Inc. v. Trinitas LLC,* 65 F. Supp. 3d
15  909 (C.D.Cal. 2014).

16          **B.    Plaintiffs Are Estopped From Asserting Their Claims**

17          Estoppel applies "where the conduct of one side has induced the other to take
18  such a position that it would be injured if the first should be permitted to repudiate its
19  acts."  *Old Republic Ins. Co. v. FSR Brokerage Inc.*, 80 Cal. App. 4th 666, 678
20  (2000).  Summary judgment based on estoppel is appropriate where a plaintiff acts in
21  a manner that the defendant "has a right to believe" the plaintiff knew defendant
22  would rely upon, and defendant relies on plaintiff's conduct "to his injury."  *Quest*
23  *Software, Inc. v. DirecTV Operations, LLC*, No. SACV 09-1232, 2011 WL 4500922,
24  at *5-6 (C.D. Cal. Sept. 26, 2011) (granting summary judgment based on estoppel as
25  plaintiff led defendant to believe it did not object to the conduct) (citing *United*
26  *States v. King Features Entm't, Inc.*, 843 F.3d 394, 399 (9th Cir. 1988)).

27          Plaintiffs are estopped to assert their claims against DW as they knew of DW's
28  fantasy horse racing contests for more than four years prior to filing this action,

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

318462201.2                    19                    DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

during which time they maintained constant communication and business dealings with DW.  (AMF ¶¶ 127-148.)  Plaintiffs led DW to believe they did not object to its conduct as they never objected to DW's contests prior to filing suit.  DW relied upon Plaintiffs' inaction to its detriment, by investing time and resources to grow the business. (AMF ¶¶ 114, 146.)  Plaintiffs are thus estopped to assert their claims.

## VI.   THIS COURT SHOULD ABSTAIN FROM ADJUDICATING PLAINTIFFS' CLAIMS

Pursuant to the abstention doctrine, courts should abstain from adjudicating claims where granting the requested relief would: (1) require a trial court to assume or interfere with the functions of an administrative agency; or (2) determine complex economic policy best left to the Legislature or an administrative agency.  *See Ellsworth v. U.S. Bank, N.A.*, 30 F. Supp. 3d 886, 916 (N.D. Cal. 2014).

The Court should abstain from adjudicating Plaintiffs' claims as California already has laws and rules that regulate contests, legislation has already been introduced (though not passed) in this state, and nine states have already enacted legislation to regulate DFS..  *See* Cal. Bus. & Prof. Code § 17539 *et seq*. (AMF ¶ 163, 163; *see also supra* Section II.I.)[27]

## VII.   CONCLUSION

For all of the foregoing reasons, DW respectfully requests that the Court deny Plaintiffs' motion for partial summary judgment in its entirety.

Dated:  April 3, 2017

Respectfully submitted,
MANATT, PHELPS & PHILLIPS, LLP
Matthew P. Kanny
Arunabha Bhoumik
Maura K. Gierl

By: /s/ Matthew P. Kanny
Matthew P. Kanny
*Attorneys for Defendant*
HORSE RACING LABS, LLC

---

[27] Moreover, ruling upon Plaintiffs' claims would necessarily assume the functions of the CHRB (which licenses and regulates horse racing and wagering, *see* Cal. Bus. & Prof. Code § 19420); the CHRB has expressed interest in regulating fantasy horse racing and other contests.  (AMF ¶ 167.)

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

318462201.2

20

DEFENDANT HORSE RACING LABS, LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT