MATTHEW P. KANNY (State Bar No. 167118)
E-mail: mkanny@manatt.com
MAURA K. GIERL (State Bar No. 287430)
E-mail: mgierl@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Tel.:  (310) 312-4000; Fax:  (310) 312-4224

ARUNABHA BHOUMIK (*pro hac vice*)
E-mail: abhoumik@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
Tel.:  (212) 790-4500; Fax: (212) 790-7575

*Attorneys for Defendant*
HORSE RACING LABS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES TURF CLUB, INCORPORATED, a California Corporation, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>HORSE RACING LABS, LLC, a Delaware Limited Liability Company (a/k/a IMMERSE, LLC), d/b/a DERBYWARS, and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:15-cv-09332-SJO (JEMx)<br><br>Honorable S. James Otero<br>Courtroom No. 10C<br><br>**DEFENDANT HORSE RACING LABS, LLC'S ADDITIONAL MATERIAL FACTS IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:        April 24, 2017<br>Hearing Time:        10:00 a.m.<br><br>FAC Filed:                May 16, 2016<br>Fact Discovery Cutoff:   March 27, 2017<br>Expert Discovery Cutoff: April 10, 2017<br>Final Pretrial Conf.:     June 19, 2017<br>Trial Date:               June 27, 2017 |

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

1    Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-2,

2  Defendant Horse Racing Labs, LLC ("Derby Wars") respectfully submits the

3  following Additional Material Facts in Opposition to Plaintiffs Los Angeles Turf

4  Club, Inc., Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific

5  Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing

6  Inc., Maryland Jockey Club of Baltimore City, Inc., and Laurel Racing Association,

7  Inc.'s ("Plaintiffs") Separate Statement of Uncontroverted Material Facts and

8  Conclusions of Law in support of their Motion for Partial Summary Judgment.

9  **I.    ADDITIONAL MATERIAL FACTS IN OPPOSITION TO
       PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**[1]

10

11  **"ISSUE 1:  The contests offered by Defendant Horse Racing Labs, LLC, on its**

12  **Derby Wars website are wagers under the Interstate Horseracing Act of 1978,**

13  **15 U.S.C. §§ 3001, et seq. (the "IHA")."**[2]

14

15     **A.    Plaintiffs**

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 71.    Plaintiffs are all licensed to offer parimutuel wagering on horse races at their tracks. | Declaration of Matthew P. Kanny in Support of DW's Motion for Summary Judgment ("Kanny Decl.") ¶ 4, Ex. C ("Ritvo Dep.") at 52:6-55:23; Amended |

---

[1]  Section II of Derby Wars' Additional Material Facts In Opposition addresses Derby Wars' affirmative defenses which also preclude partial summary judgment being entered in favor of Plaintiffs on any of the issues raised herein.

[2]  Derby Wars incorporates the "Issue" heading scheme implemented by Plaintiffs. However, in restating Plaintiffs' language in quotation marks, DW in no way admits the substance of Plaintiffs' contentions and, in fact, directly objects to and denies them.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
| --- | --- |
| | Declaration of Maura K. Gierl in Support of Defendant Horse Racing Labs, LLC's Motion for Summary Judgment ("Gierl Decl.")[3] ¶ 3, Ex. B ("Rogers Dep.") at 59:22-60:23; Kanny Decl. § 2, Ex. A ("Daruty Dep.") at 375:10-377:16, 382:11-388:4. |

### B.    Parimutuel Wagering

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
| --- | --- |
| 72.    The amount a person may wager on horse races under a parimutuel wagering system generally is not fixed in advance and can vary. | Daruty Dep. at 84:15-85:11, 87:7-13; Ritvo Dep. at 60:6-62:11; Declaration of Mark Midland in Support of DW's Motion for Summary Judgment ("Midland Decl.") ¶ 51. |
| 73.    The payout on bets on horse races in a parimutuel | Daruty Dep. at 85:12-16, 85:22-86:2, 87:7- |

---

[3] Due to Plaintiffs' extensive de-designations of previously designated "confidential" information, and agreements between the parties relating to the public filing of other testimony and documents in support of DW's Opposition, DW has filed an Amended Declaration of Maura K. Gierl, which supersedes its March 20, 2017 Declaration of Maura K. Gierl, and attaches for filing on the public record the evidence, upon which DW relies in its Motion and Opposition, that is no longer "confidential." (*See* Notice of Withdrawal, filed concurrently herewith).

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| wagering system generally is determined by the size of the wagering pool, which can fluctuate depending on the number and amount of pari-mutuel wagers placed, and the wagering odds, which can change up to the time the race closes. | 13; Ritvo Dep. at 52:6-55:23; Midland Decl. ¶ 51. |
| 74.    The "host" track on horse races in a parimutuel wagering system generally retains a specified fixed percentage of the wagers (called the "take-out") before it pays out money to the winners of the bets on a particular race. | Daruty Dep. at 87:14-25; Ritvo Dep. at 52:6-55:23, 56:2-57:8; Midland Decl. ¶ 51. |

## C.    Derby Wars and Derby Wars' Fantasy Contests

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 75.    In October 2011, Horse Racing Labs, LLC ("HRL") launched Derby Wars, a website that offers free and pay-to-play horse racing fantasy contests. | Kanny Decl. ¶3, Ex. B ("Midland Dep.") at 69:14-19, 72:3-74:25; Midland Decl. ¶ 7. |
| 76.    Players entering Derby Wars' pay-to-play contests pay a fixed entry fee in exchange for the opportunity to participate in the contests. | Midland Dep. at 192:17-193:14; Midland Decl. ¶ 13. |
| 77.    The fixed entry fee is set in advance and does not change, and every player pays the same entry fee in a given contest. | Midland Dep. at 192:17-193:14; Midland Decl. ¶ 14. |
| 78.    The entry fee also provides contest participants | Midland Dep. at |

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| with access to additional services, such as an online chat feature, a leaderboard, a display of other participants' selections, and a graphic that displays how many people selected each horse. | 76:11-25, 125:2-127:13; Midland Decl. ¶ 15. |
| 79.   All of Derby Wars' fantasy horse racing contests consists of a number of specified contest races (usually a minimum of six races and up to fifteen races in each contest) to be run at various horse racing tracks across the United States. | Midland Dep. at 151:25-152:12, 155:18-156:3; Midland Decl. ¶ 10; Declaration of Mark Midland in Support of DW's Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Opp. Midland Decl.") ¶ 23. |
| 80.   Players entering a contest select one horse for each designated race in the contest, along with a backup if that horse scratches. | Midland Decl. ¶ 10. |
| 81.   After the race, Derby Wars computes a point score for each player's pick. | Midland Dep. at 134:6-135:20; Midland Decl. ¶ 12. |
| 82.   The points allocated to each player are based on one point per mythical dollar of payout at the track, subject to proprietary adjustments according to the contest's rules. | Midland Dep. at 134:6-135:20; Midland Decl. ¶ 11. |
| 83.   The proprietary adjustments were designed by Derby Wars to increase the skill required to win the contest and to lessen the impact of any "luck" in | Midland Decl. ¶ 11. |

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

4

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| selecting a long shot winner of a particular race. | |
| 84.    After all races have been run, the players with the highest point scores win the prizes. | Midland Dep. at 175:11-176:10, 180:12-14; Midland Decl. ¶ 12. |
| 85.    Like the entry fees, the prizes awarded to the winner of each contest are set in advance and do not change. | Midland Dep. at 192:17-193:14; Midland Decl. ¶ 14; Daruty Dep. at 94:15-24. |
| 86.    The prizes are awarded to the player who achieves the highest score in the game, and the prizes awarded are the same regardless of the number of points scored. | Midland Dep. at 175:11-176:10, 180:12-14, 192:17-193:14; Midland Decl. ¶ 16. |
| 87.    The prizes for each contest are not made up of monies collected from entry fees paid by contest participants. | Midland Decl. ¶ 16. |
| 88.    Derby Wars can and does lose money on some of its contests. | Midland Decl. ¶ 17. |
| 89.    Derby Wars can lose money on a contest if the contest does not "fill" (that is, the number of players in the contest is lower than the maximum number of players allowed to play). | Midland Decl. ¶ 17; Opp. Midland Decl. ¶ 20; Daruty Dep. at 94:8-95:8; Opp. Midland Decl. ¶ 20. |
| 90.    For example, Derby Wars is currently advertising a fantasy contest with a predetermined prize of $1,000, a fixed entry fee of $25, and a minimum number of 20 players; thus, Derby Wars could lose up to $500 on this | Opp. Midland Decl. ¶ 20. |

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| contest. | |
| 91.    In some games, including head-to-head contests, Derby Wars could lose money if the credit card does not go through or a customer has a customer service issue that results in the entry fee being refunded. | Opp. Midland Decl. ¶ 20. |
| 92.    Open and Lockdown contests comprise the majority of contests run by Derby Wars (approximately 97% of the contest revenue). | Midland Decl. ¶¶ 19-20; Opp. Midland Decl. ¶ 21. |
| 93.    Derby Wars' offers head-to-head contests (where two players compete against each other for the prize) and multi-player contests (where between three and 500 players compete against each other for the prize).  The majority of the contests offered by Derby Wars are multi-player contests. | Opp. Midland Decl. ¶ 22. |
| 94.    Skill predominates over chance in all of Derby Wars' contests – including in head-to-head contests. | Kanny Decl. ¶ 6, Ex. E (Expert Report of Randal Heeb, Ph.D. ("Heeb Rep.")) ¶¶ 1-22; Declaration of Matthew P. Kanny in Support of DW's Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Opp. Kanny Decl.") ¶ 3, Ex. A ("Opp. Excerpts of Heeb Rep.") Fig. 5, ¶ 97. |

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

6

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 95.     Derby Wars designed its contests to maximize the skill required to win. | Midland Dep. at 21:12-22:8, 69:14-19, 130:11-131:4, 136:22-137:4, 138:9-139:20, 141:16- 25, 198:7-199:14; Midland Decl. ¶ 22. |
| 96.     Derby Wars' contests involve intra-game strategy skills, where players may adjust their selections to take best advantage of the relative probabilities of winning relative to the scores of their opponents.  Thus, the best choice in a Derby Wars contest is not necessarily the horse most likely to win, or even the horse with the most favorable odds; rather, it is the horse most likely to improve the players' score relative to other players, given the strategies available and the choices likely to be made by the opponents. | Heeb Rep. ¶¶ 14, 32-33. |
| 97.     Derby Wars' contests also involve the skill of anticipating the overall slate of races that is likely to yield a high or low scoring game, and to predict the score likely necessary to win. | Heeb Rep. ¶¶ 15, 34. |
| 98.     Derby Wars' contests also involve the skill of evaluating opponents to determine their tendencies and relative strengths and weaknesses. | Heeb Rep. ¶¶ 16, 35. |
| 99.     Winning outcomes in Derby Wars' contests reflect the relative knowledge and skill of the participants, and | Heeb Report ¶¶ 10-22; Opp. Midland Decl. ¶ 17. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

| **ADDITIONAL MATERIAL FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| participants earn points based on accumulated statistical results of the performance of horses in multiple real world horse racing events, subject to proprietary adjustments.  The outcome of a single race is not determinative of the winner of a Derby Wars' fantasy contest. | |
| 100.   Success in Derby Wars, just as in many other games involving elements of both skill and chance, both requires and demonstrates superior skill.  Although the outcome of any given race or contest may be affected in part by chance, a player possessing superior skill can and consistently does outperform less skillful players. | Heeb Report ¶ 17. |
| 101.   The scoring system and unique rules of the Derby Wars contests form a game that is fundamentally different from the underlying activity, horse racing, and from other derivative activities, like wagering on horseraces.  While the points awarded for winning picks in individual races depend in part on the payouts to horses in the actual races, the points do not translate directly into financial winnings. | Heeb Report ¶¶ 18-19. |
| 102.   The accumulated points (which differ from payouts because of the proprietary adjustment imposed on points scored for different finishing orders) are compared to the points scored by other players, and the player with the most points wins the fixed prize, or a | Heeb Report ¶¶ 18-19. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| share of a fixed prize distribution.   Among the many distinctions between track betting and Derby Wars competitions is the fact that winning in Derby Wars involves outperforming the competitors in the Derby Wars contest, not maximizing profits from wagers. | |

### D.   Other Fantasy Contest Sites

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 103.   Other contest sites – including Horse Tourneys and Bet America – also offer head-to-head contests as part of their fantasy games. | Opp. Midland Decl. ¶ 27. |
| 104.   On March 31, 2017, Horse Tourneys advertised numerous head-to-head tournaments, including head-to-head contests using Plaintiffs' tracks, with fixed entry fees of up to $795 for a cash prizes of up to $1,500. | Opp. Midland Decl. ¶ 28. |
| 105.   On March 31, 2017, Horse Tourneys advertised several head-to-head contests using Plaintiffs' tracks with entry fees of $22 and prizes of $40. | Opp. Midland Decl. ¶ 28. |
| 106.   On March 31, 2017, Bet America advertised numerous head-to-head contests, including head-to-head contest using Plaintiffs' tracks, with a fixed entry fee of up to $215 for cash prizes of up to $400. | Opp. Midland Decl. ¶ 31. |
| 107.   On March 31, 2017, Bet America advertised | Opp. Midland Decl. ¶ |

| | |
|---|---|
| several head-to-head contests using Plaintiffs' tracks with entry fees of $22 and prizes of $40. | 31. |
| 108.   On April 1, 2017, Draft Kings advertised fantasy baseball, NASCAR, baseball and golf contests with entry fees up to $5,300 and cash prizes totaling $3,500,000, including a first place price of $1,000,000. | Opp. Midland Decl. ¶ 34. |
| 109.   Draft Kings fantasy NASCAR contests involve picking six drivers who compete in real world auto races. The fantasy player who earns the most points based on the drivers' performances wins the contest. | Opp. Midland Decl. ¶ 33, Ex. F. |
| 110.   Draft Kings fantasy golf contests involve picking six golfers who compete in real world golfing events. The fantasy player who earns the most points based on the golfers' performances wins the contests. | Opp. Midland Decl. ¶ 34, Ex. G. |
| 111.   Bet America does not pay additional compensation to Plaintiffs for use of their tracks in Bet America's contests, because there is not yet an established business model on contest play. | Daruty Dep. at 42:10-45:22; 201:11-202:6. |
| 112.   Plaintiffs and Bet America currently do not have a compensation model in place for use of Plaintiffs' tracks in Bet America contests. | Daruty Dep. at 354:8-21. |
| 113.   Horse Tourneys, a pure contest site that does not offer ADW pari-mutuel wagering, operates contests using Plaintiffs' tracks without any payment to Plaintiffs. | Daruty Dep. at 38:9-39:3, 248:4-254:6, 262:12-264:11. |
| 114.   ADW licenses issued by the North Dakota Racing Commission ("NDRC") do not cover fantasy horse racing contests, as NDRC does not treat contests as | Midland Decl. ¶ 53. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ADDITIONAL MATERIAL FACTS ISO OPPOSITION TO PLAINTIFFS MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| parimutuel wagering. | |

### E.    The IHA and ADW Do Not Apply To Derby Wars' Contests

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 115.   In January 2015 (prior to filing this action), Stronach Group executive Scott Daruty (a lawyer) referred to Derby Wars' contests as non-parimutuel. | Daruty Dep. at 439:5-441:16. |
| 116.   In September 2016, the Pennsylvania Horse Racing Commission advised Derby Wars that Derby Wars' fantasy horse racing contests are not parimutuel wagers, and, therefore, Derby Wars was not required to be licensed under Pennsylvania law. | Opp. Midland Decl. ¶ 11, Ex. A. |
| 117.   Plaintiffs admit that the Interstate Horse Racing Act applies only to parimutuel wagers. | Ritvo Dep. at 52:6-55:23, 66:1-12. |
| 118.   Plaintiffs admit that daily fantasy sports legal question has been resolved in favor of the fantasy sports operators. | Daruty Dep. at 423:6-15. |
| 119.   Jockeys typically are engaged by horse trainers to ride in races and work with many different trainers and ride different horses on any given day. | Ritvo Dep. at 18:15-21:9, 22:17-23:9; Daruty Dep. at 91:19-92:7. |

///

**"ISSUE 2:  Defendant is operating an off-track betting system under Section 3002(7) of the IHA."**

Derby Wars hereby incorporates its Additional Material Facts in Opposition to Plaintiffs Partial Summary Judgment Nos. 71-119.

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 120.   A licensed ADW operator may only accept pari-mutuel wagers under its ADW license. | Midland Decl. ¶ 53. |
| 121.    ADW licenses issued by the NDRC do not cover fantasy horse racing contests, as NDRC does not treat fantasy horse racing contests as pari-mutuel wagering. | Midland Decl. ¶ 53. |
| 122.   Bet America does not report fantasy contest revenue to the NDRC, though it is a licensed ADW, notwithstanding the requirement to report pari-mutuel wagering numbers, as fantasy contest revenue is not generated pursuant to its ADW license. | Kanny Decl. ¶ 5, Ex. D ("Ford Dep.") at 73:7-74:20, 207:24-209:20, 212:20-213:9. |
| 123.   Derby Wars was told by the California Horse Racing Board ("CHRB") that the CHRB does not grant licenses to operate contests. | Midland Decl. ¶ 53. |

///
///
///

**"ISSUE 3:  That Defendant is required to obtain the consent of Plaintiffs prior to accepting wagers on Plaintiffs' horseraces."**

Derby Wars hereby incorporates its Additional Material Facts in Opposition to Plaintiffs Partial Summary Judgment Nos. 71-123.

| <u>ADDITIONAL MATERIAL FACTS</u> | <u>SUPPORTING EVIDENCE</u> |
|---|---|
| 124.   The Horseman's Group contracts produced in this case do not specifically cover fantasy contests, and Mr. Daruty has testified that it is the Horsemen's Groups that ultimately have the approval rights over arrangements with fantasy contest sites. | Ritvo Dep. at 200:6-204:24; Declaration of Olivia M. Hardinge in Support of DW's Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Hardinge Decl.") ¶ 2, Ex. A; Daruty Dep. at 48:1-12. |
| 125.   The Horsemen's Groups have veto rights over Plaintiffs' simulcast agreements, which currently prohibit ADWs from using races at Plaintiffs' tracks in contests. | Ritvo Dep. at 200:6-204:24, Hardinge Decl. ¶ 2, Ex. A at § 9.4; and Gierl Decl. ¶ 24, Ex. W (at § 2.a) and ¶ 25, Ex. X (at § 1.d). |
| 126.   Plaintiffs never requested the Horsemen's Groups to join the lawsuit. | Daruty Dep. at 197:21-23; 199:6-13. |

///
///
///

**"ISSUE 4:  That Defendant is in violation of Section 3004(a) of the IHA, because it is accepting wagers on Plaintiff host racing associations' horseraces, without the consent of Plaintiffs."**

Derby Wars hereby incorporates its Additional Material Facts in Opposition to Plaintiffs Partial Summary Judgment Nos. 71-126.

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 127.   Beginning as early as September 2011, Stronach Group executives communicated with HRL's Mark Midland about potentially doing business together. | Daruty Dep. at 141:14-147:22, 148:5-150:19, 152:16-154:16, 155:10-156:17, 156:23-158:15, 159:12-160:5, 160:10-161:24, 164:11-167:10, 168:5-170:7, 171:3-24, 172:4-173:19, 189:21-194:3; Rogers Dep. at 112:12-113:25, 115:17-117:21, 118:8-119:22, 121:8-125:4, 126:8-12, 128:24-134:2, 135:13-23, 138:6-141:9, 144:2-146:16, 147:23-151:5, 152:20-153:1, 162:4-164:19, 164:23-165:17, 166:23-167:7; Midland Decl. ¶¶ 26-27; Gierl Decl. ¶¶ 4-13, 21, Exs. C-O, T. |
| 128.   In the fall of 2011, Stronach Group executives communicated with each other and with Mr. Midland | Daruty Dep. at 141:14-147:22, 148:5-150:19, 152:16- |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

14

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

| **ADDITIONAL MATERIAL FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| regarding the potential of doing business with HRL and Derby Wars. | 154:16, 155:10-156:17, 156:23-158:15, 159:12-160:5, 160:10-161:24, 164:11-167:10, 168:5-170:7, 171:3-24; Rogers Dep. at 112:12-113:25, 115:17-117:21, 118:8-119:22, 121:8-125:4, 126:8-12; Gierl Decl. ¶¶ 4-10, Exs. C-I. |
| 129.   In September 2011, Mike Calderone (the then-Chief Marketing Officer of the Stronach Group) referred to HRL in an e-mail to Stronach Group executives as an up-and-coming website. | Daruty Dep. at 141:14-145:5; Rogers Dep. at 112:12-113:25, 115:17-117:21; Gierl Decl. ¶ 4, Ex. C. |
| 130.   In October 2011, Mr. Calderone wrote an e-mail to Mr. Midland (copying Scott Daruty) inviting Mr. Midland to follow up on a discussion they had regarding using Derby Wars in a joint venture program. | Daruty Dep. at 148:5-150:19; Midland Decl. ¶ 31; Gierl Decl. ¶ 6, Ex. E. |
| 131.   In fall 2011 through November 2012, Mr. Midland had numerous discussions with Mr. Calderone about Derby Wars' pay-to-play contests, the fact that those contests use the results of horse races run at Plaintiffs' tracks, and how Derby Wars could integrate, cross-promote and partner the Stronach Group properties, including Plaintiffs' race tracks. | Midland Decl. ¶¶ 27-37. |
| 132.   In December 2011, in an e-mail to Stronach Group | Daruty Dep. at |

| **ADDITIONAL MATERIAL FACTS** | **SUPPORTING EVIDENCE** |
|---|---|
| executives, including Mr. Rogers, Mr. Calderone proposed to implement Derby Wars' contests across the Stronach properties, including Plaintiffs' tracks. | 160:20-161:24; Gierl Decl. ¶ 9, Ex. H. |
| 133.   Mr. Calderone "spoke very highly" of Mr. Midland to Mr. Rogers and was a proponent of Plaintiffs entering into an arrangement with either Horse Racing Nation or Derby Wars. | Rogers Dep. at 115:9-15. |
| 134.   Mr. Calderone and Mr. Rogers had discussed on numerous occasions the possibility of investing in or acquiring Derby Wars. | Rogers Dep. at 121:8-125:4, 135:13-23, 137:17-138:5, 152:13-153:1; Gierl Decl. ¶ 19, Ex. R. |
| 135.   In October 2012, Mr. Calderone sent an e-mail to senior officers of the Stronach Group about a business relationship with HRL, in which Mr. Calderone promoted an investment in HRL if Derby Wars would agree to provide (among other things) free versions of its contests. | Daruty Dep. at 168:5-170:7, 171:3-24, 172:4-11; Rogers Dep. at 138:6-141:4; Gierl Decl. ¶ 11, Ex. J. |
| 136.   In response to Mr. Calderone's October 2012 e-mail, Mr. Rogers and Mr. Calderone discussed the opportunity with Derby Wars. | Daruty Dep. at 172:4-173:19; Rogers Dep. at 138:6-143:13, 146:13-147:22. |
| 137.   Mr. Midland met with Mr. Rogers in person at the Breeders' Cup on or about November 2, 2012. | Midland Decl. ¶ 36; Rogers Dep. at 148:1-150:13. |
| 138.   At the meeting with Mr. Rogers at the Breeder's Cup on or about November 2, 2012, Mr. Midland visually showed Derby Wars' pay-to-play fantasy horse | Midland Decl. ¶ 36; Rogers Dep. at 148:1-150:13. |

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| racing contests to Mr. Rogers on Mr. Midland's iPad, which involved races run at Plaintiffs' tracks.  While Mr. Rogers watched, Mr. Midland clicked through the website pages and explained to and showed Mr. Rogers the pay-to-play contests and specifically including contests with races run at Plaintiffs' tracks, including Santa Anita. | |
| 139.   In June 2013, Mr. Midland communicated directly to Michael Nyman, marketing director at Gulfstream Park (one of Plaintiffs' tracks), about running handicapping contests for Gulfstream on the Derby Wars website. | Daruty Dep. at 172:4-173:19; Ritvo Dep. 122:16-124:18; Midland Decl. ¶ 38; Gierl Decl. ¶ 12, Ex. K. |
| 140.   In the fall of 2014, Mr. Midland had several conversation with Nate Newby, marketing director of Santa Anita, about doing a joint sponsorship deal that would promote Derby Wars to Santa Anita customers. | Midland Decl. ¶ 39; Daruty Dep. at 393:11-395:2, 396:4-399:12; Rogers Dep. at 159:25-160:8, 162:2-164:19. |
| 141.   As part of a joint partnership agreement, Santa Anita delivered literally thousands of e-mails to its customers promoting Derby Wars, including an e-mail to over 10,000 customers in November 2015. | Midland Decl., ¶ 43, Ex. E, F; Daruty Dep. at 247:14-248:3, 393:11-395:2, 396:4-399:12. |
| 142.   In November 2015, Mr. Midland communicated with Sal Sinatra, marketing director at Laurel Park (another of Plaintiffs' tracks), about Derby Wars offering handicapping contests. | Midland Decl. ¶ 46; Ritvo Dep. at 135:18-138:19; Gierl Decl. ¶ 20, Ex. S. |

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 143.   In late November 2015, Mr. Midland sent an e-mail to Mr. Rogers, seeking to expand the Santa Anita relationship. | Midland Decl. ¶ 47, Ex. J; Daruty Dep. at 189:21-194:3; Rogers Dep. at 164:23-165:17, 166:23-167:7; Gierl Decl. ¶¶ 13, 21, Exs. L, T. |
| 144.   Prior to filing the lawsuit, Stronach Group executives never once wrote to, spoke to or met with Derby Wars objecting to the use of, or demanding that Derby Wars stop using, Plaintiffs' tracks in Derby Wars' fantasy horse racing contests. | Midland Decl. ¶ 48; Daruty Dep. at 181:25-183:11, 185:23-186:2, 209:24-210:9; Rogers Dep. at 173:1-174:20, 179:12-180:15, 184:12-25, 198:22-200:25; Gierl Decl. ¶ 14, Ex. M. |
| 145.   Stronach executives claim that the "light bulb" went off about Derby Wars' use of their content in fantasy contests around October 2014, and began to investigate a claim. | Rogers Dep. at 160:6-161:2, 171:5-19. |
| 146.   No one from the Stronach Group asked Derby Wars to stop using Plaintiffs' tracks in Derby Wars' contests at any time prior to the lawsuit being filed. | Daruty Dep. at 181:25-182:21, 183:7-11, 185:23-186:2; Ritvo Dep. at 145:6-14; Rogers Dep. at 173:1-174:17, 179:12-180:15, 184:12-25, 192:12-19, 195:7-19, 198:22-200:16; Gierl Decl. ¶ 14, Ex. M. |
| 147.   Derby Wars has entered into four separate revenue sharing and marketing agreements with race tracks, | Midland Decl. ¶ 55. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

18

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| whereby Derby Wars received certain content rights, and while the agreements are not predicated on the tracks giving Derby Wars' consent to run the contests using the results of races at those tracks, none of those race tracks ever objected to Derby Wars' contests. | |
| 148.   Derby Wars has contacted the NDRC and CHRB and asked whether Derby Wars was required to be licensed, and was told by each that the licenses that they issue do not cover contests. | Midland Decl., ¶ 53. |

///
///
///
///

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

19

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

**"ISSUE 5:  That Defendant is liable to Plaintiffs for damages under Section 3005 of the IHA."**

Derby Wars hereby incorporates its Additional Material Facts in Opposition to Plaintiffs Partial Summary Judgment Nos. 71-148.

///
///
///
///

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

20

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

**"ISSUE 6:  Defendant is in violation of California *Business & Professions Code* Section 17200, *et seq*."**

Derby Wars hereby incorporates its Additional Material Facts in Opposition to Plaintiffs Partial Summary Judgment Nos. 71-148.

///

///

///

///

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

## II. ADDITIONAL MATERIAL FACTS IN SUPPORT OF STATUTES OF LIMITATION, AFFIRMATIVE DEFENSES AND OTHER ARGUMENTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Partial Summary Judgment Should Not Be Granted On Issues 1-5 Because Because The Facts Demonstrate That Plaintiffs' IHA Claim Is Barred By The Statute Of Limitations

Derby Wars hereby incorporates its Additional Material Facts in Opposition to Plaintiffs Partial Summary Judgment Nos. 127-138.

///

///

///

**B.**   **Partial Summary Judgment Should Not Be Granted On Issues 1-6 Because The Facts Demonstrate That Plaintiffs' Claims Are Barred By The Equitable Doctrines Of Estoppel And Waiver**

Derby Wars hereby incorporates its Additional Material Facts in Opposition to Plaintiffs Partial Summary Judgment Nos. 127-148.

///

///

///

///

///

C.  **Partial Summary Judgment Should Not Be Granted on Issues 1-6 Because The Facts Demonstrate That Plaintiffs' Claims Are Barred By The Doctrine of Unclean Hands**

Derby Wars hereby incorporates its Additional Material Facts in Opposition to Plaintiffs Partial Summary Judgment Nos. 111-118, 120-123, 127-148.

| ADDITIONAL MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 149.   Derby Wars responded to an RFP from the National Thoroughbred Racing Association ("NTRA") and the Breeders' Cup to become their technology partner to white label handicapping contests.  Derby Wars was told by the NTRA and the Breeder's Cup that Derby Wars' proposal was by far the best proposal. | Opp. Midland Decl. ¶ 38. |
| 150.   Mike Rogers, CEO of the Stronach Group, is a member of the NTRA. | Rogers Dep. at 89:6-24. |
| 151.   Mike Rogers is also on the Board of the Breeder's Cup. | Rogers Dep. at 86:21-25. |
| 152.   After the lawsuit was filed but before the winner of the RFP was announced, Mike Rogers spoke with representatives of the NTRA and the Breeder's Cup about concerns Plaintiffs have regarding how Derby Wars' operates. | Rogers Dep. at 208:16-210:22, 211:6-10, 212:2-14, 219:11 -221:8, 223:8-224:8 |
| 153.   Horse Tourneys was ultimately awarded the RFP to be the technology partner for the NTRA and the Breeder's Cup. | Rogers Dep. at 212:19-213:8. |
| 154.   Over the years, Derby Wars has advertised on | Opp. Midland Decl. ¶ |

| ADDITIONAL MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| Television Games Network ("TVG"), a sports-oriented digital cable and satellite television network owned by Betfair Group plc. | 39. |
| 155.   In October 2015, Scott Daruty, a Stronach Group executive, contacted executives of TVG to express his concerns about Derby Wars' advertising on TVG. | Opp. Kanny Decl. ¶5, Ex. D ("Opp. Daruty Dep.") at 416:10-418:8. |
| 156.   In or about early 2016, Derby Wars was told that TVG could no longer take advertisements from Derby Wars, and, since then, Derby Wars has been unable to advertise, and has not advertised, on TVG. | Opp. Midland Decl. ¶ 39. |
| 157.   In or about August 2016, Derby Wars executed a marketing agreement with Watch And Wager, operator of Cal-Expo race track. | Opp. Midland Decl. ¶ 40. |
| 158.   Plaintiffs' affiliate, Monarch Content Management, does business with Watch And Wager. | Opp. Daruty Dep. at 431:24-432:4. |
| 159.   Mr. Daruty contacted Watch And Wager shortly after the deal was done and expressed his "surprise" that Watch And Wager would do business with Derby Wars. | Opp. Daruty Dep. at 433:12-15. |
| 160.   Plaintiffs permit Horse Tourneys and Bet America to offer fantasy contests using race results from Plaintiffs' tracks without any payment to Plaintiffs or any of the Horseman's Groups. | Daruty Dep. at 42:10-43:25; Opp. Kanny Decl. ¶ 7, Ex. F ("Opp. Rogers Dep.") at 213:5-19; Opp. Midland Decl. ¶¶ 28-31, Exs. A, D. |
| 161.   A Stronach executive told a horse owner and | Opp. Midland Decl. ¶ |

| ADDITIONAL MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| breeder that Plaintiffs were using the law suit to "croak" Derby Wars. | 41. |

**D.** **Partial Summary Judgment Should Not Be Granted On Issues 1-6 Because The Facts Demonstrate That The Court Should Abstain From Adjudicating Plaintiffs' Claims, In Deference To Legislative Function**

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 162.   Plaintiffs routinely engage in lobbying activities, including, for example, before state legislatures and Racing Boards and Commissions. | Daruty Dep. at 109:6-113:16; Rogers Dep. at 48:1-12. |
| 163.   New York, Massachusetts, Virginia, Tennessee, Mississippi, Indiana, Missouri, Kansas, and Colorado have all successfully enacted legislation to regulate daily fantasy sports ("DFS"). | Midland Decl. ¶ 56; Kanny Decl. ¶ 8; Colo. Rev. Stat. § 12-15.5-105; Kan. Stat. § 21-6403; Miss. Code § 97-33-305; Tenn. Code § 47-18-1611; Ind. Code § 4-33-24-1; Va. Code § 59.1-569; N.Y. Rac. Pari-Mut. Wag. & Breed. Law § 1411; 940 Mass. Code Regs. 34. |
| 164.   New York and Indiana have enacted legislation to regulate DFS with respect to horse racing contests. | Midland Decl. ¶ 56; Kanny Decl. ¶ 8. |
| 165.   There are ongoing efforts to enact DFS legislation in at least fifteen states, including in Florida and Oregon. | Kanny Decl. ¶ 8. |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

26

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT

| ADDITIONAL MATERIAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| 166.   California has considered  whether to regulate fantasy contests, and Plaintiffs have been involved in those efforts. | Daruty Dep. at 108:4-111:6; Midland Decl. ¶ 56. |
| 167.   Before Plaintiffs filed this action, there was a "public debate" at a California Horse Racing Board ("CHRB") meeting regarding the CHRB's treatment of DFS and handicapping contests. | Daruty Dep. at 187:20-188:15. |

Dated:  April 3, 2017

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP
Matthew P. Kanny
Arunabha Bhoumik
Maura K. Gierl

By: _/s/ Matthew P. Kanny_____
       Matthew P. Kanny
       *Attorneys for Defendant*
       HORSE RACING LABS, LLC

318485222.1

ADDITIONAL MATERIAL FACTS ISO
OPPOSITION TO PLAINTIFFS MOTION FOR
PARTIAL SUMMARY JUDGMENT