1 | Richard B. Specter, SBN 114090
2 | Diane L. Ellis, SBN 130628
CORBETT, STEELMAN & SPECTER
3 | A Professional Law Corporation
18200 Von Karman Avenue, Suite 900
4 | Irvine, California 92612-1023
Telephone:  (949) 553-9266
5 | Facsimile:  (949) 553-8454
rspecter@corbsteel.com
6 |
7 | Attorneys for Plaintiffs
LOS ANGELES TURF CLUB, INCORPORATED,
8 | LOS ANGELES TURF CLUB II, INC.,
PACIFIC RACING ASSOCIATION, PACIFIC RACING
9 | ASSOCIATION II, GULFSTREAM PARK RACING
ASSOCIATION, INC., OREGON RACING, INC.,
10 | MARYLAND JOCKEY CLUB OF BALTIMORE CITY, INC.,
11 | and LAUREL RACING ASSOCIATION, INC.

12 |

13 |                        UNITED STATES DISTRICT COURT

14 |                        CENTRAL DISTRICT OF CALIFORNIA

15 | LOS ANGELES TURF CLUB,              ) Case No.: 2:15-cv-9332 SJO (JEMx)
INCORPORATED, a  California         )
16 | Corporation, LOS ANGELES TURF       )
Corporation, LOS ANGELES TURF       ) Hon. S. James Otero
17 | CLUB II, INC., a California Corporation, ) Courtroom No. 10C
PACIFIC RACING ASSOCIATION, a       )
18 | California Corporation, PACIFIC     )
RACING ASSOCIATION II, a California ) **PLAINTIFFS' REPLY IN SUPPORT**
19 | Corporation, GULFSTREAM PARK        ) **OF MOTION FOR PARTIAL**
RACING ASSOCIATION, INC., a         ) **SUMMARY JUDGMENT**
20 | Florida Corporation, OREGON RACING,)
21 | INC., a Delaware Corporation,       )
MARYLAND JOCKEY CLUB OF             )
22 | BALTIMORE CITY, INC., a Maryland    ) Date Filed: December 3, 2015
Corporation, LAUREL RACING          ) Discovery Cutoff: March 27, 2017
23 | ASSOCIATION, INC., a Maryland       ) Final Pretrial Conf.: June 19, 2017
Corporation, and DOES 1 through 10, ) Trial Date: June 27, 2017
24 | inclusive,                          )
25 |                                     ) **DATE: April 24, 2017**
            Plaintiffs,                 ) **TIME: 10:00 a.m.**
26 |                                     ) **CTRM: 10C**
            vs.                         )
27 |                                     )
                                        )
28 | HORSE RACING LABS, LLC, a          )
Delaware Limited Liability Company, )

also known as, IMMERSE, LLC, doing          )
business as DERBY WARS, and Does 1          )
through 10,                                 )
                                            )
          Defendants.                       )
_____)

Plaintiffs Los Angeles Turf Club, Incorporated, Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing, Inc., Maryland Jockey Club Of Baltimore City, Inc., and Laurel Racing Association, Inc. (collectively, "Plaintiffs"), hereby submit their Reply to Defendant Horse Racing Labs, LLC's ("Defendant" or "DW") Opposition to Plaintiffs' Motion for Partial Summary Judgment.

DATED:  April 10, 2017                  Respectfully submitted,

                                        CORBETT, STEELMAN & SPECTER
                                        A Professional Law Corporation


                                        By:    /s/ Richard B. Specter
                                               Richard B. Specter
                                               Attorneys for PLAINTIFFS

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

I.    **<u>INTRODUCTION.</u>**

     The parties have filed cross-motions: Plaintiffs for Partial Summary Judgment (the "MPSJ"), and DW for Summary Judgment (the "MSJ"). And while the parties seek different results, and DW raises smokescreens irrelevant to the Motions, the parties do not dispute the material facts of how DW's contests operate. Both the MPSJ and MSJ simply require the Court to apply the applicable law, *The Interstate Horseracing Act of 1978* (the "IHA"), to these undisputed facts, and adjudicate whether the contests are interstate wagering on horseracing subject to the IHA.

     Plaintiffs submit that real money internet contests based upon the actual outcome of horseraces – in real time – are interstate wagering on horseracing, governed by the IHA, which requires that DW have the consent of Plaintiffs. That the results of races are publicly available is irrelevant; the IHA requires DW to contribute to the industry stakeholders.

     DW's Opposition to the MPSJ is simple and wrong: that the Court should ignore that Federal statute which expressly governs horseracing (the IHA) - and instead apply that Federal statute which expressly exempts horseracing from being subject to its terms - *The Unlawful Internet Gambling Enforcement Act of 2006* (the "UIGEA"). DW's equitable defenses are not only unsupported, but irrelevant to the issues sought to be determined by the MPSJ. The application of the law (the IHA) to the undisputed material facts (the operation of DW's contests) is a clearly judicial function from which this Court should not abstain. The Court should grant the MPSJ.

II.    **<u>THE CONTESTS ARE WAGERING ON HORSERACING UNDER THE IHA.</u>**

     **A. The IHA Is Alive And Well, And Applies To DW's Contests.**

     First, DW asserts that the IHA is no longer relevant in this age of the internet. This is preposterous; the statute has not expired. The IHA was amended in 2001 to recognize its applicability to interstate wagering on horseracing being conducted over the internet, by adding the words: "or other electronic media." Moreover, the IHA is still relied upon by Courts across the United States. See, e.g., *New Eng. Horsemen's*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

1  *Benevolent & Protective Ass'n v. Mass. Thoroughbred Horsemen's Ass'n,* 2016 U.S.

2  Dist. LEXIS 133558, at *2-3 (D. Mass. Sep. 28, 2016). Second, the IHA is expressly

3  not limited to parimutuel wagers, but DW's contests are parimutuel as defined by both

4  the IHA and California law.  Indeed, DW's contests are most similar to exchange

5  wagering. In exchange wagering, the licensee (the organizer, like DW) matches two

6  players to bet directly against each other on a horserace (like the contest entrants), for

7  fixed odds.  *B&P Code* §19604.5(a)(16) uses the exact same definition of parimutuel

8  as the IHA, at 15 USC §3002(13), and "Exchange wagering is a form of parimutuel

9  wagering…"  *B&P Code* §19604.5(a)(7).

## 1. The UIGEA Has Not Superseded the IHA.

10    The plain and unambiguous language of the UIGEA preserves any federal or

11  state prohibition against gambling on horse races that existed at the time of the

12  UIGEA's enactment, including the IHA. At Section 5361(b), the UIGEA states that it

13  is not to be construed to alter any existing gambling law.  At Section 5362(10)(D), the

14  UIGEA specifically addresses horse racing, and states that it is not the intent of the

15  UIGEA to legalize betting on horse racing that would otherwise be illegal under the

16  IHA: "[i]t is the sense of Congress that this subchapter shall not change which

17  activities related to horse racing may or may not be allowed under **Federal** law." 31

18  USC §5362 (10)(D)(iii).  "Nothing in this subchapter may be construed to preempt any

19  **State** law prohibiting gambling." 31 U.S.C. §5362(10)(D)(ii).  And 31 USC §5362

20  (10)(B)(iii) and (10)(C)(iv) provide that the wager cannot violate any provision of the

21  IHA. *The UIGEA cannot more clearly exclude horseracing, and preserve the IHA.*

22    And even if the UIGEA applied to horseracing, DW's contests would not

23  qualify.  Fantasy contests under the UIGEA must be based upon "accumulated

24  statistical results," not the outcome of events.  DW's contests are not based upon any

25  accumulated statistical results (home runs or passing yards); they are based upon the

26  outcomes of real horse races (the event), which is not permitted under the UIGEA. 31

27  U.S.C. §5362 (1)(E)(ix)(III). Certainly, a fantasy contest where the player picks the

-2-

actual winners of six football games would not pass muster under the UIGEA, yet that is exactly DW's contest on horseracing. The UIGEA does not provide a safe haven for DW; it prohibits any wager in violation of the IHA. 31 U.S.C. §5362 (10)(C)(iv)(I).

### B. The Entry Fees Are Wagers, and The Presence Of Skill Is Irrelevant.

While DW asserts that its contests are not wagers under the IHA because skill is required to win a contest, whether something is a bet or wager is not dependent upon whether it takes skill to win. *Western Telcon, Inc. v. Cal. State Lottery,* 13 Cal. 4th 475, 485 (1996). DW does not dispute this definition. <u>MSJ</u>, at 10:6-11, <u>Docket</u> No. 63.

DW's reliance on *Humphrey v. Viacom, Inc*., No. 06-2768 (DMC), 2007 U.S. Dist. LEXIS 44679, at *1-6 (D.N.J. June 19, 2007), a suit based upon the New Jersey state *qui tam* gambling loss-recovery statutes, is sorely misplaced. Plaintiff claimed entitlement to the individual gambling losses of participants in the defendants' season-long fantasy sports leagues, because he claimed the single fee paid for the entire season (that covered support services), is a wager or bet. *Id,* at *3-5. *Id,* at *3. The prizes were nominal – "T-shirts or bobble-head dolls." *Id,* at *4. Under these circumstances, the court found that plaintiff could not recover under the *qui tam* statutes, and granted the Motion to Dismiss. *Id.,* at *31.

*Humphrey* is easily distinguished in the daily fantasy sports context, and in another unreported decision, a New York court stated:

> "Contrary to *Humphrey v. Viacom, I*nc., the facts in this action involve DFS, the participants pay a fee every time they play, potentially multiple times daily instead of one seasonal entry fee, with a percentage of every entry fee being paid to Fanduel, Inc. and Draftkings, Inc.. Furthermore the New York State Penal Law does not refer to 'wagering' or 'betting,' rather it states that a person, 'risks something of value.' The payment of an 'entry fee' as high as $10,600.00 on one or more contests daily could certainly be deemed risking 'something of value.'"

*People v. Fanduel, Inc*., 2015 NY Slip Op 32332(U), ¶7 (Sup. Ct.). The cases cited by DW do not support the bold assertion of DW that "it is well established that entry fees

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

do not constitute bets or wagers." Opp to MPSJ, 9:23.[1]  Rather. as DW acknowledges, (*Id.,* at 11:14-19), a "bet" or "wager" as defined by the California Court in *Bell Gardens Bicycle Club v. Dep't of Justice*, 36 Cal. App. 4th 717, 747 (1995) is:

> "an 'agreement between two or more that a sum of money or some valuable thing, in contributing with all agreeing to take part, shall become the property of one or more of them, on the happening in the future of an event at the present uncertain; and the stake is the money or thing thus put upon the chance.'"

And betting on a horse race is uncertain, because the actual outcome of any race "depends upon elements *wholly beyond the control of the player*." *Finster v. Keller*, 18 Cal. App. 3d 836, 844 (1971).

## III.    PLAINTIFFS ARE ENTITLED TO RELIEF UNDER THE UCL.

Plaintiffs are entitled to relief under the UCL if the Court finds that DW is in violation of the IHA, *B&P Code* Sections 19590, 19595, or 19604, *the Federal Wire Act*, 18 U.S.C. §1084, *Fla. Stat. Chapter* 550 *Pari-Mutuel Wagering*, *Md. BUSINESS REGULATION Code Ann.* § 11-801, 804, and *ORS* § 462.140, or *the Illegal Gambling Business Act of 1970*, 18 U.S.C. § 1955.  These are the statutes that Plaintiffs' claim DW violates.  Ellis Dec., ¶¶ 3, 4, Exh. 1; Docket No. 31, ¶¶ 23, 24, 61, 64.

## IV.    DEFENDANTS' AFFIRMATIVE DEFENSES DO NOT PRECLUDE PARTIAL SUMMARY JUDGMENT.

### A.    Plaintiffs' Claims Are Not Barred By The Statute Of Limitations.

"When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period. Because each new breach of such an obligation provides all the elements of a claim — wrongdoing, harm, and causation — each may be treated as an independently

---

[1] Docket No. 70. Also of no avail is *Langone v. Patrick Kaiser & Fanduel, Inc.*, No. 12 C 2073, 2013 U.S. Dist. LEXIS 145941, at *21 (N.D. Ill. Oct. 9, 2013), in which, in *dicta* (the case was dismissed for lack of subject matter jurisdiction), the Court noted that an online fantasy sports website is not a "winner" *for the purposes of the Illinois Loss Recovery Act* since the website does not participate in the risk associated with its fantasy sports games.

1 actionable wrong with its own time limit for recovery." *Aryeh v. Canon Bus. Sols.,*
2 *Inc.*, 55 Cal. 4th 1185, 1199 (2013). Thus, each time that DW uses Plaintiffs' races in
3 its contests without Plaintiffs' consent, a new cause of action is created.

**B.    The Claims Are Not Barred By Unclean Hands Or Estoppel.**

5 DW claims for the first time that Plaintiffs are in violation of anti-trust laws,
6 because Plaintiffs are allegedly "[blocking] DW from operating on the same terms as
7 its competitors, BetAmerica and HorseTourney." Opp to MPSJ, 19:5-7. Yet Plaintiffs'
8 complaint is that DW is operating its contests with neither licensing nor consent from
9 Plaintiffs. Its competitors, BetAmerica and Horse Tourneys, have both licenses and
10 Plaintiffs' consent.[2]  And Defendant's allusion to "potentially monopoly conduct" is
11 another smokescreen - Plaintiffs' races make up only 20% of the races in DW's
12 contests, hardly monopoly power. Ellis Dec., ¶5.   Similarly, DW has failed to allege
13 facts for estoppel, and in particular, has failed to allege any facts to establish that it
14 suffered injury.[3]  DW claims that it suffered: "by investing time and resources to grow
15 the business. (AMF ¶¶ 114, 146.)" Opp to MPSJ, 20:3-5. Yet neither AMF 114 nor
16 146 supports this assertion, and DW would not lose its growing business by this
17 lawsuit; it would only lose the 20% of the races that it uses from Plaintiffs without
18 their consent.

**V.    CONCLUSION.**

20 For all of the foregoing reasons, Plaintiffs request that their Motion for Partial
21 Summary Judgment be granted.

---

[2] BetAmerica is a licensed ADW. Docket, No. 70-3, ¶122. BetAmerica "operates with Plaintiffs' consent." Docket, No. 70, p. 4, fn. 3; Docket, No. 63-2, ¶54. HorseTourneys is a licensed ADW (Docket No. 63, 6:2-5 and DW SUMF ¶65). HorseTourneys "operates with Plaintiffs' consent." (Docket, No. 70, p. 4, fn 3; Docket, No. 63-2, ¶54).

[3] See, *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.* (1994) 30 Cal. App. 4th 54, 59; *Spray, Gould & Bowers v. Associated Internat. Ins. Co.*, 71 Cal. App. 4th 1260, 1268 (1999).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

DATED: April 10, 2017

Respectfully submitted,

CORBETT, STEELMAN & SPECTER
A Professional Law Corporation


By:     */s/ Richard B. Specter*
        Richard B. Specter
        Attorneys for PLAINTIFFS

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT