UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** CV 15-09332 SJO (JEMx)         **DATE:** May 15, 2017

**TITLE:** Los Angeles Turf Club, et al. v. Horse Racing Labs, LLC

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                                  Not Present
Courtroom Clerk                                             Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**        **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                                      Not Present

========================================================================
**PROCEEDINGS (in chambers):** ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [Docket No. 62]; **DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 63]

These matters came before the Court on cross-motions for summary (or partial summary) judgment filed by Plaintiffs Los Angeles Turf Club, Inc., Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific Racing Association II, Gulfstream Park Racing Association, Inc., Oregon Racing, Inc., Maryland Jockey Club of Baltimore City, Inc., and Laurel Racing Association, Inc. (collectively, "Plaintiffs") ("Plaintiffs' MPSJ") and Defendant Horse Racing Labs, LLC d/b/a Derby Wars ("Derby Wars" or "Defendant") ("Defendant's MSJ") on March 20, 2017. On April 3, 2017, Plaintiffs opposed the Derby Wars Motion ("Plaintiff's Opposition") and Derby Wars opposed Plaintiffs' Motion ("Defendant's Opposition"). On April 10, 2017, Plaintiffs replied to the Derby Wars Opposition ("Plaintiffs' Reply") and Derby Wars replied to Plaintiffs' Opposition ("Defendant's Reply"). The Court found these matters suitable for disposition without oral argument and vacated the hearings set for April 24, 2017. *See* Fed. R. Civ. P. 78(b). For the reasons stated below, the Court **GRANTS IN PART** Plaintiffs' Motion for Partial Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

I.     PROCEDURAL AND FACTUAL BACKGROUND

    A.     Procedural Background

Plaintiffs, a collective of racing associations that operate horse racing events in California, Florida, Oregon, and Maryland, initiated the lawsuit on December 2, 2015, alleging four causes of action: (1) violation of the Interstate Horseracing Act ("IHA"), 15 U.S.C. § 3001 *et seq.*; (2) violation of the Racketeering Influence and Corruption Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*; (3) violation of California's Unfair Competition Law ("the UCL"), California Business & Professions Code § 17200 *et seq.*; and (4) Intentional Interference with Prospective Economic Advantage. (*See generally* Compl., ECF No. 1.) Defendant filed a motion to dismiss or alternatively strike the second and fourth causes of action in Plaintiffs' Complaint. (Mot. to Dismiss, ECF No. 23.) The Court granted the motion, finding that Plaintiffs had not alleged sufficient facts to establish causation under RICO

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 15-09332 SJO (JEMx)</u>　　　　DATE: <u>May 15, 2017</u>

or that Defendant intentionally interfered with Plaintiffs' prospective business advantage. (*See generally* Order Granting Def.'s Mot. to Dismiss, ECF No. 30.)

On May 16, 2016, Plaintiffs filed the operative First Amended Complaint ("FAC") alleging two causes of action: (1) violation of the IHA, 15 U.S.C. § 3001 *et seq.* and (2) violation of the UCL, California Business & Professions Code § 17200 *et seq.* On May 31, 2016, Defendant filed an Answer. (ECF No. 34.) Defendant filed a motion for judgment on the pleadings, which the Court granted with respect to disgorgement of damages claimed by Plaintiffs and denied with respect to the IHA and UCL claims. (*See generally* Order Granting In Part and Denying In Part Def.'s Mot. for J. on the Pleadings, ECF No. 43.) On August 22, 2016, the Court held a scheduling conference in which it set a trial date for June 27, 2017 and a motion hearing cutoff date of March 27, 2017. (*See* Min. of Scheduling Conference, ECF No. 45.) The parties filed their respective motions for summary judgment on or about March 20, 2017. (Pls.' MPSJ, ECF No. 62; Def.'s MSJ, ECF No. 63.)

  B. <u>Factual Background</u>

The Court finds the following facts to be undisputed.[1]

    1. <u>The Parties</u>

Plaintiffs operate horse racing meets at six race tracks located in California, Oregon, Maryland, and Florida. (Def.'s Statement of Undisputed Mat. Facts and Conclusions of Law in Supp. of Def.'s MSJ ("Def.'s Facts") ¶ 1, ECF No. 63-1.) Plaintiffs are all licensed to offer parimutuel wagering on horse races at their tracks. (Def.'s Facts ¶ 2.) Plaintiffs' race tracks accounted for about $3 billion, out of the total $10 billion handled at all race tracks in the United States, in 2015 and 2016. (Def.'s Facts ¶¶ 3-4.)

Defendant Horse Racing Labs, LLC ("HRL") is a Delaware limited liability company, doing business in Louisville, Kentucky. (Pls.' Sep. Statement of Uncontroverted Mat.Facts and Contentions of Law in Supp. of Pls.' MPSJ ("Pls.' Facts") ¶ 1; Pls.' Sep. Statement of Add'l

---

[1] Defendant and Plaintiffs each submitted multiple evidentiary objections. (*See, e.g.,* Pls.' Objs. to Evid. Proffered in Supp. of Def.'s MSJ, ECF No. 68-3; Def.'s Evid. Objs. to the Decl. of Scott J. Daruty and Diane L. Ellis Submitted in Supp. of Pls.' MPSJ, ECF No. 70-2; and Def.'s Evid. Objs. to the Decl. of Mike Rogers and Diane L.Ellis Submitted in Supp. of Pls.' Opp. to Defs.' MSJ, ECF No. 79-1. In ruling on the cross motions for summary judgment, the Court only considered admissible evidence. *See, e.g., Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988); Fed. R. Civ. P. 56(e).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 15-09332 SJO (JEMx)</u> | **DATE:** <u>May 15, 2017</u> |

Undisputed Mat. Facts in Opp'n to Def.'s MSJ ("Pls.' Add'l Facts") ¶ 72, ECF No. 68-1.)  In 2009, HRL launched Horse Racing Nation ("HRN"), a free online community for horse racing fans. (Def.'s Facts ¶ 8.)  In October 2011, HRL launched Derby Wars, a website that offers free and pay-to-play contests related to horse races run on race tracks, including those operated by Plaintiffs.  (Pls.' Add'l Facts ¶ 74; Def.'s Add'l Mat. Facts in Supp. of Opp'n to Pls.' MPSJ ("Def.'s Add'l Facts") ¶ 75, ECF No. 70-3.)

      2.      <u>Parimutuel Wagering on Horse Races</u>

Parimutuel wagering on horse races is defined by state and federal law and is generally considered an exception to states' general prohibition on gambling.  The Interstate Horse Racing Act ("IHA") defines  parimutuel wagering as "any system whereby wagers with respect to the outcome of a race are placed with, or in, a wagering pool conducted by a person licensed or otherwise permitted to do so under State law, and in which the participants are wagering with each other and not against the operator."[2]  15 U.S.C. § 3002(13).  California Business and Professions Code Section 19411 defines parimutuel wagering as "a form of wagering in which bettors either purchase tickets of various denominations, or issue wagering instructions leading to the placement of wagers, on the outcome of one or more horse races."  Cal. Bus. & Prof. Code § 19604.5 (West 2014).  The amount a person may wager under a parimutuel wagering system generally is not fixed in advance.  (Def.'s Facts ¶ 10.)  Further, the payout on bets in a parimutuel wagering system generally is determined by the size of the wagering pool, which can fluctuate depending on the number and amount of wagers placed, and the wagering odds, which can change up to the time the race closes.  (Def.'s Facts ¶ 11.)[3]  The "host" track in a parimutuel wagering system generally retains a specified fixed percentage of the wagers (called the "take-out" or "vigorish") before it pays out money to the winners of the bets on a particular race.  (Def.'s Facts ¶ 12.)

      3.      <u>Derby Wars Contests</u>

Players entering Derby Wars' pay-to-play contests pay a fixed entry fee in exchange for the opportunity to participate in contests.  (Def.'s Facts ¶ 13.)  Derby Wars offers about 150 such contests per day on average.  (Pls.' Facts ¶ 25.)  The fixed entry fee is set in advance and does not change, and every player pays the same entry fee in a given contest.  (Def.'s Facts ¶ 14.)  As an example, for a $40 prize, two players each pay a $22 entry fee to compete with each other.

---

  [2]  It is undisputed that Defendant does not hold a license to conduct wagering on horse racing in California, Florida, Maryland or Oregon.  (Pls.' Add'l Facts ¶ 79.)

  [3]  Plaintiffs contend that "exchange wagering" is a form of parimutuel wagering with none of these characteristics.  (Pl.'s Statement of Genuine Disputes of Mat. Facts ¶ 11, ECF No. 68-2.)  California Business and Professions Code Section 19604.5 defines "exchange wagering" as "a form of parimutuel wagering in which two or more persons place identically opposing wagers in a given market."  (Cal. Bus. & Prof. Code § 19604.5.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 15-09332 SJO (JEMx)</u>            DATE: <u>May 15, 2017</u>

(Pls.' Facts ¶ 15.)  Derby Wars offers head-to-head contests with a prize up to $1,500, with $799 entry fees.  (Pls.' Facts ¶ 17.)  The contests consist of a number of specified contest races (usually a minimum of six races in each contest) to be run at various horse racing tracks across the United States, including those operated by Plaintiffs.  (Def.'s Facts ¶ 17.)  Players entering a contest select one horse for each designated race in the contest, along with a backup if that horse scratches.[4]  (Def.'s Facts ¶ 18.)  After the race, Derby Wars computes a point score for each player's pick.  (Def.'s Facts ¶ 19.)  The points allocated to each player is based on the actual payoff amounts at racetracks for real races, subject to maximum caps set according to the contest's rules.  (Decl. of Diane L. Ellis in Supp. of Pls.' Opp'n to Def.'s Mot. for Summary J. ("Ellis Decl."), Ex. A, Dep. of Mark Midland ("Midland Dep.") 180:16-22, ECF No. 68-6.)  After all races have been run, players with the highest point scores win the prize.  (Def.'s Facts ¶ 21.)  Like the entry fees, the prizes awarded to the winner of each contest are set in advance and do not change.  (Def.'s Facts ¶ 22.)  The prizes are awarded to the player who achieves the highest score in the game, and the prizes are the same regardless of the number of points scored.  (Def.'s Facts ¶ 23.)  Derby Wars pays the prizes and Derby Wars' source of revenue is the entry fees into its contests.  (Ellis Decl., Ex. B, Dep. of Michael R. Shutty ("Shutty Dep.") 21:17-22, ECF No. 68-7.) Derby Wars can and does lose money on some of its contests, particularly if a contest does not "fill," that is, the number of players in the contest is lower than the maximum number of players allowed to play.  (Def.'s Add'l Facts ¶¶ 88-89.)

There are three general formats of Derby Wars fantasy horse racing contests, each subject to contest rules: (i) Open; (ii) Lockdown, and (iii) Survivor.  (Def.'s Facts ¶ 25.)  In Open contests, players can change their picks up until the race closes.  (Def.'s Facts ¶ 26.)  In Lockdown contests, players must make all of their selections before the start of the first race.  (Def.'s Facts ¶ 27.) Open and Lockdown contests comprise the majority of contests run by Derby Wars.  (Def.'s Facts ¶ 28.)  In the Survivor format, players must pick a horse that finishes first, second or third in each race in order to advance to the next race.  (Def.'s Facts ¶ 29.)  Predetermined prizes in Survivor contests are awarded to the players who survive to the end of the contest.  (Def.'s Facts ¶ 30.)

    4. <u>Plaintiffs' and Stronach Group Executives' Awareness of Derby Wars' Conduct</u>

Beginning as early as September 2011, Stronach Group executives communicated with HRL's Chief Executive Officer Mark Midland about doing business together.  (Def.'s Facts ¶ 44.)  The Stronach Group  owns, directly or indirectly, Monarch Content Management ("Monarch"), a simulcast purchase and sales agent for numerous race tracks and wagering outlets; XpressBet, an Advanced Deposit Wagering ("ADW") service provider that allows customers to place

---

[4] "Scratch" means to remove a horse from a race before it is run.  Scratch - Wikipedia, WIKIPEDIA.ORG, https://en.wikipedia.org/wiki/Scratch (last visited April 24, 2017).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 15-09332 SJO (JEMx)</u> | **DATE:** <u>May 15, 2017</u> |

parimutuel wagers via internet or telephone; Elite Turf Club, an ADW that caters to high volume, computer assisted parimutuel wagering ("CAW"); and AmTote, a provider of totalizator services. (Def.'s Facts ¶ 6.) In the fall of 2011, Stronach Group executives communicated with each other and with Mr. Midland regarding the potential of doing business with HRN. (Def.'s Facts ¶ 45; Ellis Decl., Ex. C, Dep. of Scott Daruty ("Daruty Dep.") 395:13-21.) In September 2011, Mike Calderone (the then-Chief Marketing Officer of the Stronach Group) referred to HRL in an email to Stronach Group executives as an "up-and-coming website." (Def.'s Facts ¶ 46.) Mr. Midland met with Stonach Group Executive Mike Rogers in person at the Breeders' Cup on or about November 2, 2012. (Def.'s Facts ¶ 54.) In June 2013, Mr. Midland communicated directly to Michael Nyman, marketing director at Gulfstream Park (one of Plaintiffs' tracks), about running handicapping contests for Gulfstream on the Derby Wars website. (Def.'s Facts ¶ 56.) In November 2015, Mr. Midland communicated with Sal Sinatra, marketing director at Laurel Park (another of Plaintiff's tracks), about Derby Wars offering handicapping contests. (Def.'s Facts ¶ 59.) Derby Wars also hosted a handicapping contest at Santa Anita Park. (Daruty Dep. 247:14-248:3.) In late November 2015, Mr. Midland sent an e-mail to Mr. Rogers, seeking to expand the Santa Anita relationship. (Def.'s Facts ¶ 60.) Prior to filing the lawsuit, Stronach Group executives never wrote to, spoke to, or met with Derby Wars objecting to the use of, or demanding that Derby Wars stop using Plaintiffs' tracks in Derby Wars' horse racing contests. (Def.'s Facts ¶¶ 61, 63.)

II.     DISCUSSION

Defendant posits that the central question presented in this case is whether Derby Wars' contests constitute parimutuel wagers and are thus subject to the Interstate Hoseracing Act ("IHA"). (*See* Def.'s MSJ. 1 ["This lawsuit is fatally defective, as [Derby Wars'] contests are not parimutuel wagers, and indeed are not bets or wagers at all, but are legal fantasy contests . . . ."]; Def.'s Reply 2 ["Plaintiffs failed to establish [Derby Wars'] contests are wagers under the IHA."].) Derby Wars asserts the question must be answered in the negative, taking the position that because Derby Wars' contests have a fixed entry fee that a participant must pay to play in the contest, a predetermined fixed prize, and a maximum number of participants, Derby Wars' contests are not parimutuel wagers. (Def.'s MSJ 9.) Furthermore, Derby Wars contends that in its contests, skill predominates chance. (Def.'s MSJ 9.) Defendant reasons that since Derby Wars' contests do not involve parimutuel wagering, the IHA does not apply, and Plaintiffs' IHA claim fails. (Def.'s MSJ 9.)

Plaintiffs respond as follows: (1) Defendant's "contests" are indeed wagering on horseracing and are thus subject to the requirements of the IHA; (2) Defendant's "contests" are not saved by the Unlawful Internet Gambling Enforcement Act (the "UIGEA"), 31 U.S.C. §§ 5361, *et seq.*; and (3) under the clear language of the IHA, Defendant is operating an "off-track betting system," and the IHA applies. (*See generally* Pls.' Mot., Pls.' Opp'n, and Pls.' Reply.)

Having summarized the parties' positions, the Court first sets forth the applicable legal standard.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 15-09332 SJO (JEMx)</u>     **DATE:** <u>May 15, 2017</u>

    A.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(a) mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 325. Rather, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Once the moving party meets its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by [the] depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radios Corp.*, 475 U.S. 574, 586 (1986). "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587.

///
///
///
///
///

    B.    <u>Analysis</u>

        1.    <u>Preliminary Matters</u>

a.  Statute of Limitations Under the IHA

Defendant argues that the IHA does not apply to Derby Wars' conduct, but that if it did, Plaintiffs' IHA claim is barred by the IHA statute of limitations. (Def.'s MSJ 7.) The IHA provides: "A civil action may not be commenced pursuant to this section more than 3 years after the discovery of the alleged violation upon which such civil action is based." 15 U.S.C. § 3006(c). Defendant contends that "[i]t is undisputed that Plaintiffs discovered Derby Wars website promoting fantasy horseracing contests as early as September 2011 and before December 2012." (Def.'s MSJ 7.) Defendant cites to excerpts from the Daruty and Rogers deposition transcripts in support of the purported undisputed fact. (*See* Def.'s Facts ¶¶ 44-48.) However, Plaintiffs dispute the claim. (Pls.' Statement of Genuine Disputes of Def.'s Mat. Facts ("Pls.' Disputes of Def.'s Facts") ¶¶ 45, 47-48, ECF No. 68-2.) In support, Plaintiffs submit that for purposes of the depositions cited by Defendant, counsel for the Defendant defined the term "Derby Wars" as "Horse Racing Labs." (Pls.' Disputes of Def.'s Facts ¶¶ 45, 47-48, ECF No. 68-2.) Plaintiff notes that HRL actually comprises two separate companies, HRN and Derby Wars, and that Defendant "provides no evidence of any communications specifically regarding doing business with Derby Wars." (*See* Pls.' Disputes of Def.'s Facts ¶¶ 45, 47-48.) The Court agrees. Review of the deposition excerpts immediately preceding or following Defendant's cited excerpts, support Plaintiffs' claim that Plaintiffs were unaware of the Derby Wars website. (*See, e.g.,* Decl. of Matthew P. Kanny in Supp. of Def.'s MSJ ("Kanny MSJ Decl."), Ex. A, Dep. of Scott Daruty ("Daruty Dep.") 150:20-25, ECF No. 63-3 ("Q. What was your understanding of Derby Wars at this time? A. I don't believe I had one at that time. Q. Did you have any conversations with Mr. Calderone at this time about Derby Wars? A. Not that I'm aware of."); Daruty Dep. 152:3-8 ("Q. And you don't recall actually going to the Derby Wars website around this time? A. I don't even know if there was a Derby Wars website around this time. I do know that I went to the Horse Racing Nation. I'm not sure I knew what Derby Wars was back then."); Daruty Dep. 155:6-9 ("Q. Do you recall having any discussions with Mr. Calderone around this time regarding Derby Wars, generally speaking. A. I don't, no."); Second Am. Decl. of Maura K. Gierl in Supp. of Def.'s MSJ ("Gierl MSJ Decl."), Ex. B, Dep. of Mike Rogers ("Rogers Decl.") 123:3-6, ECF No. 76. (Q.: Were you aware at this time that DerbyWars.com was offering pay-to-play fantasy contests? A. I would not have been aware of that.")) Furthermore, upon inspection of the emails exchanged between Stronach Group Executives and HRL CEO Mark Midland the Court observes that the subject line for each of the emails received prior to December 2, 2012, save for one, only mentions HRN and not Derby Wars. (*See* Gierl MSJ Decl., Exs. C-H, J, ECF No. 76.) In the sole email not bearing HRN in the subject line, instead captioned "New Engaging Content for Our Websites," the body of the email mentions Derby Wars but only in the context of play-for-free handicapping contests. (Gierl Decl., Ex. I.) Because disputed issues of material fact exist with regard to Plaintiffs awareness of Derby Wars' website promoting pay-to-play fantasy horse racing contests prior to December 2012, Defendant has not carried its burden. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment on this issue.

b.  Equitable Estoppel

Defendant also argues that Plaintiffs are estopped from making, or in the alternative have waived, their claims against Derby Wars.  (Def.'s MSJ 19.)  To prevail on the defense of equitable estoppel, Defendant must prove four elements: (1) that Plaintiffs knew of Derby Wars pay-to-play fantasy horse racing contests; (2) that Plaintiffs actions or omissions led Defendant to believe that they did not object to its conduct; (3) that Derby Wars was unaware that Plaintiffs objected to the use of its races on its Derby Wars website; and (4) that Derby Wars detrimentally relied on Plaintiffs actions or omissions.  *See Quest Software, Inc. v. DirecTV Operations, LLC*, No. SA CV 09-1232 AG (Anx), 2011 WL 4500922, at *5 (C.D. Cal. Sept. 26, 2011).  Having determined that Defendant failed to establish that Plaintiffs were aware of Derby Wars pay-to-play contests, the Court similarly finds that Defendant has not carried its burden with respect to its equitable estoppel claim and **DENIES** Defendant's Motion for Summary Judgment on this issue.

        c.    Abstention Doctrine

Finally, Defendant argues that the Court should abstain from adjudicating Plaintiffs' claims under the abstention doctrine.  (Def.'s MSJ 19-20.)  In so requesting, Defendant contends that deciding the instant case would require the Court to "assume a legislative function" that would require it to "assume or interfere with the functions of an administrative agency," where "the lawsuit involves determining complex economic policy, which is best handled by the Legislature or an administrative agency," or, alternatively, where "granting injunctive relief would be unnecessarily burdensome for [the Court] to monitor and enforce given the availability of more effective means of redress."  (Def.'s MSJ 19-20 citing *Ellsworth v. U.S. Bank, N.A.*, 30 F. Supp. 3d 886, 916 (N.D. Cal. 2014).)  As its twin bases for support, Defendant submits that legislation has been introduced, though admittedly not passed, in the California legislature to regulate Daily Fantasy Sports ("DFS") and that by deciding the case the Court would assume the function of the California Horse Racing Board.  (Def.'s MSJ 20.)  Suffice it to say, Defendant's argument does not persuade.  Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment on this issue.

    2.    IHA Claim

        a.    Whether Derby Wars Contests are Parimutuel Wagers Under the IHA

To prevail on their IHA claim, Plaintiffs must prove that Derby Wars accepted an "interstate off-track wager" in violation of the IHA's provisions.  15 U.S.C. § 3005.  The IHA defines interstate off-track wager as "a legal wager placed or accepted in one State with respect to the outcome of a horserace taking place in another State and includes pari-mutuel wagers, where lawful in each State involved, placed or transmitted by an individual in one State via telephone or other electronic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 15-09332 SJO (JEMx)</u>  DATE: <u>May 15, 2017</u>

media and accepted by an off-track betting system[5] in the same or another State, as well as the combination of any pari-mutuel wagering pools." 15 U.S.C. § 3002(3). The IHA defines parimutuel as "any system whereby wagers with respect to the outcome of a horserace are placed with, or in, a wagering pool conducted by a person licensed or otherwise permitted to do so under State law, and in which the participants are wagering with each other and not against the operator.[6] 15 U.S.C. § 3002(13). In California, parimutuel wagering is defined as "a form of wagering in which bettors either purchase tickets of various denominations, or issue wagering instructions leading to the placement of wagers, on the outcome of one or more horse races." Cal. Bus. & Prof. Code § 19411.

The parties dispute whether Derby Wars contests constitute parimutuel wagering under the IHA. Defendant contends that Derby Wars contests are not parimutuel wagering, but rather contests in which skill predominates over chance, and the IHA does not apply. (Def.'s MSJ 9.) Plaintiffs contend that whether something is a bet or wager is not dependent upon whether it takes skill to actually win that bet or wager. (Pls.' Opp'n 8.) Defendant further argues that "Plaintiffs have admitted that the IHA only applies to parimutuel wagers" and that "Plaintiffs and DW are in agreement; there is no dispute that [Derby Wars'] contests are not parimutuel wagering, nor do Plaintiffs allege that they are." (Def.'s MSJ 8.) Plaintiffs reject Defendant's claims, arguing that "Defendant's contests are parimutuel as defined by both the IHA and California law." (Pls.' Opp'n 12.)

Although Defendant acknowledges the IHA and California definitions of parimutuel wagering, it maintains that Derby Wars contests are not wagers, but rather contests, defined by the California Business and Professions Code Section 17539.3 as:

> [A]ny game, contest . . . or plan that holds out or offers to prospective participants the opportunity to receive or compete for gifts, prizes, or gratuities as determined by skill or any combination of chance and skill and that is, or in whole or in part may be, conditioned upon the payment of consideration.

(Def.'s MSJ 8-9.)

---

[5] The IHA defines off-track betting system as "any group which is in the business of accepting wagers on horseraces at locations other than the place where the race is run, which business is conducted by the State or licensed or otherwise permitted by State law. 15 U.S.C. § 3002(7).

[6] California Business and Professions Code Section 19604.5 similarly defines parimutuel as "any system whereby wagers with respect to the outcome of a horse race are placed with, or in, a wagering pool conducted by an authorized person, and in which the participants are wagering with each other and not against the person conducting the wagering pool. Cal. Bus. & Prof. Code § 19604.5(16).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 15-09332 SJO (JEMx)           **DATE:** May 15, 2017

Defendant points to several features of Derby Wars' contests, which it contends distinguishes Derby Wars from parimutuel wagering, including the payment of fixed entry fees, for a predetermined fixed prize, in contests limited by a maximum number of participants. (Def.'s MSJ 9.) Based upon these attributes, along with Defendant's contention that skill predominates chance in its contests, Defendant submits that the Derby Wars contests do not involve parimutuel wagering and the IHA does not apply. (Def.'s MSJ 9.)

Plaintiffs reject Defendant's contention arguing that because Derby Wars contestants pay entry fees into a wagering pool, and play against each other for the right to claim the cash prize, the contests are most similar to exchange wagering. (Pls.' Opp'n 12.) California Business and Professions Code Section 19604.5(a)(7) defines exchange wagering as "a form of parimutuel wagering in which two or more persons place identically opposing wagers in a given market." Cal. Bus. & Prof. Code § 19604.5(a)(7).

Whether or not the Derby Wars contests are parimutuel wagering is a sufficient but not necessary condition for the applicability of the IHA. *See* 15 U.S.C. § 3002(3) (defining interstate off-track wager as "a legal wager placed or accepted in one State with respect to the outcome of a horserace taking place in another State *and includes* pari-mutuel wagers . . . .") (emphasis added). Because a wager placed or accepted in one State with respect to the outcome of a horserace taking place in another State, placed or transmitted by an individual in one State via telephone or other electronic media and accepted by an off-track betting system in the same or another State, need not be a pari-mutuel wager, the Court finds that the proper focus of the inquiry rests on whether payment of the entry fee for Derby Wars contests is a wager.[7]

        b.        Whether Payment of Derby Wars Entry Fee Constitutes Bet or Wager

---

[7] Defendant also contends that Plaintiffs cannot recover under the IHA because Derby Wars contests are fantasy contests exempted from the definition of "bets" or "wagers" under the Unlawful Internet Gambling Act of 2006 ("UIGEA"), 31 U.S.C. § 5361 *et seq.*. (Def.'s MSJ 11-14.) Plaintiffs point out that the UIEGA preserves any federal or state prohibition against gambling on horse races that existed at the time of the UIGEA's enactment. (Pl.'s Opp'n 12-13.) The Court agrees that the UIEGA specifically excepted activities related to horse racing. *See* 31 U.S.C. § 5362(10)(D)(iii) ("[i]t is the sense of Congress that this subchapter shall not change which activities related to horse racing may or may not be allowed under Federal law. This subparagraph is intended to address concerns that this subchapter could have the effect of changing the existing relationship between the Interstate Horseracing Act and other Federal statutes in effect on the date of the enactment of this subchapter. This subchapter is not intended to resolve any disagreements over how to interpret the relationship between the Interstate Horseracing Act and other Federal statutes.")

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 15-09332 SJO (JEMx)</u>          DATE: <u>May 15, 2017</u>

Defendant claims that it is "well established that entry fees do not constitute bets or wagers, and the elemental risk of gambling." (Def.'s MSJ 9.) In support, Defendant principally relies on two, unpublished, out-of-Circuit cases: *Humphrey v. Viacom, Inc.*, No. 06-CV-2768, 2007 WL 1797648 (D.N.J. June 20, 2007) and *Langone v. Kaiser*, No. 12 C 2073, 2013 WL 5567587 (N.D. Ill. Oct. 9, 2013). (Def.'s MSJ 9-11.)

In *Humphrey*, the court found that the entry fees for defendants' fantasy sports leagues were not "bets" or "wagers" because (1) the entry fees were paid unconditionally; (2) the prizes offered to fantasy sports contestants were for amounts certain and were guaranteed to be awarded; and (3) defendants did not compete for the prizes. 2007 WL 1797648, at *9. As Plaintiffs point out, the prizes at issue in *Humphrey*, were nominal and awarded at the end of an entire fantasy season. (Pls.' Opp'n 10; *see also Humphrey*, 2007 WL 1797648, at *2 ("The team with the best performance based on the statistics of the players chosen by the participant-is declared the winner at the season's end. Nominal prizes, such as T-shirts or bobble-head dolls, are awarded to each participant whose team wins its league. Managers of the best teams in each sport across all leagues are awarded larger prizes, such as flat-screen TVs or gift certificates.")

In *Langone*, the court, in dicta, noted that FanDuel, an online fantasy sports website, was not a winner for purposes of the Illinois Loss Recovery Act since the website does not participate in the risk associated with its fantasy sports games.[8] 2013 WL 5567587, at *6-7. While far from "well established," the court in *Humphrey* did acknowledge the reasoning articulated by two state courts within the Ninth Circuit–*Las Vegas Hacienda, Inc. v. Gibson*, 359 P.2d 85 (Nev. 1961), and *Arizona v. American Holiday Association, Inc.*, 727 P.2d 807 (Ariz. 1986) (*en banc*)–before concluding that "where the entry fees are unconditional and the prizes are guaranteed, 'reasonable entrance fees charged by the sponsor of a contest to participants competing for prizes are not bets or wagers'." *See Humphrey*, 2007 WL 1797648, at *8 (quoting *Am. Holiday Ass'n*, 727 P.2d at 811).

Plaintiffs also argue that the definition of wager is "well established." (Pls.' MPSJ 13.) However, they conclude that a wager "clearly includes what Defendant calls its entry fees." (Pls.' MPSJ 13.) In support, Plaintiffs cite several California state cases emphasizing the dependance on the happening of a future event, at the present uncertain. (*See* Pls.' MPSJ 13 (citing *People v. Lomento*, 155 Cal. App. 2d 740 (1957); *Brown v. Board of Police Comm'rs*, 58 Cal. App. 2d 473,

---

[8] While the Court does not give much weight to the findings made by the *Langone* court, the Court notes that Derby Wars differs from Fan Duel in that Derby Wars does risk money in producing its prizes. *Compare Langone*, 2013 WL 5567587, at *7 ("FanDuel acts as the conduit for transmission of the prize to the winner, but FanDuel does not risk and of its money in producing the prize money . . . ."), *with* Decl. of Mark Midland in Supp. of Def.'s MSJ ("Midland MSJ Decl.") ¶ 17, ECF No. 63-2 ("There are instances in which Derby Wars can take a business loss related to the offering of a contest.").

477 (1943); *Western Telecon, Inc. v. Cal. State Lottery*, 13 Cal. 4th 475 (1996)).) Paramount among these, Plaintiffs encourage the Court to adopt the definition provided for in *Western Telecon*: "Betting may be defined as 'promise[s] to give money or money's worth upon the determination of an uncertain or unascertained event in a particular way, and (unlike a lottery) may involve skill or judgment." (*See* Pls.' Opp'n 9 quoting *Western Telcon*, 13 Cal. 4th at 485.)

Defendant and Plaintiffs claim that *Bell Gardens Bicycle Club v. Department of Justice*, 36 Cal. App. 4th 717 (1995), a case involving a jackpot poker game wherein the California Court of Appeals held that the component elements of the jackpot award demonstrated that the game was an illegal lottery under California Penal Code Section 319, supports their respective positions regarding Derby Wars' entry fees. (Def.'s MSJ 11; Pls.' Opp'n 11.) In *Bell Gardens*, the prize designated as the jackpot was an independent sum of money separate from the common "poker" pot. *Bell Gardens*, 36 Cal. App. 4th at 723. The common poker "pot" was distributed at the end of each game to the winner of that game and was composed of the wagers or bets made with the game itself. *Id.* Conversely, the prize was money set aside by the club for the jackpot award and was a sum beyond that contributed by the players at the table, which accumulated over time until it was won. *Id.* There the court defined a bet or wager as "ordinarily an agreement between two or more that a sum of money or some valuable thing, in contributing which all agreeing to take part, shall become the property of one or some of them, on the happening in the future of an event at the present uncertain; and the stake is the money or thing thus put upon the chance." *Id.* at 747 (citation omitted). The court further distinguished a prize as "ordinarily some valuable thing offered by a person . . . who has not a chance of gaining the thing offered; and . . . that he must lose it, and give it over to some of those contending for it, is reasonably certain." *Id.* (citation omitted). Finally, the court concluded that while "[t]he wagers which form the 'pot' in poker do not constitute a 'prize' as defined by California law," the jackpot prize did by virtue that "the distribution of the [jackpot] prize by the lottery operator depend[ed] *solely* upon the fortuity or random event of one person having the second best hand and another person having the game's best hand at the same time." *Id.* (citation omitted).

Relying on *Humphrey*, Defendant concludes that the characteristics and rules of the Derby Wars contests are similar to those found not to constitute bets or wagers. (*See* Def.'s MSJ 11.) First, Defendant submits that all of Derby Wars' contests have a fixed entry fee that a participant must pay for the opportunity to play in the contest. (*See* Def.'s MSJ 11 quoting *Humphrey*, 2007 WL 1797648, at *8 ("participants pay a set fee for each team they enter in the fantasy sports league.")). Next, Defendant points out that the payment of the entry fee is a condition precedent to playing in Derby Wars' contests and obtaining other site access and services. *Id.* (the entry fee "allows the participant to receive related support services"). Third, the prizes in Derby Wars' contests are predetermined and communicated to participants before the contest begins. *Id.* (defendants "offer set prizes"). Fourth, once the contest starts, the prize is guaranteed to be won by one of the participants. *Id.* (the "prizes are guaranteed to be awarded"). Fifth, Defendant contends that the total amount of prizes Derby Wars offers on its contests are not dependent upon the total number of entrants in any given contest. *Id.* ("the amount of the prize does not depend on the number of

entrants"). Finally, Defendant does not compete in its contests and stands no chance of winning any prize. *Id.* (defendants are "neutral parties . . . they do not compete for the prizes and are indifferent as to who wins the prizes").

Plaintiffs respond that the definition of wager provided for in *Bell Gardens* perfectly describes a Derby Wars' contest: two players pay an entry fee, which becomes the property of the player whose picks return the most dollars in a series of races, the outcome of which is unknown at the time. (Pls.' Opp'n 11.)

Against this backdrop, the Court agrees with Plaintiffs that Derby Wars entry fees are more akin to the wagers which form the "pot" in poker. (*See Bell Gardens*, 36 Cal. App. 4th at 723.) Although there may be instances where the number of players in the contest is lower than the maximum number of players allowed to play, where the race "fills" the contestants' payment of entry fees subsidizes the "pot" that Defendant calls its fixed prize.[9] (*See* Def.'s Add'l Facts ¶ 89; Shutty Dep. 21:17-22.) This prize does not accumulate over time, and its distribution does not depend solely upon the fortuity of a random event,[10] but rather is fixed and guaranteed to contest participants upon submission of their wager (Derby Wars' entry fee) and earning more points than the other contestants earned by virtue of their superior selection of horses. (*See* Def.'s Facts ¶ 23.)

Having determined that Derby Wars entry fees constitute a wager, where such wagers are placed with Derby Wars in Kentucky, with respect to the outcome of a horserace, or series of up to six individual horseraces, as the case may be, taking place in California, Oregon, Maryland, and/or Florida, and where such wagers are received over the internet, the Court concludes that Defendants are operating an off-track betting system subject to the Interstate Horseracing Act. *See* 15 U.S.C. § 3002(7).

As such, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment as to their IHA claim.

///

    3.  UCL Claim

The Court next turns to Defendant's argument that Plaintiffs' UCL claim must fail insofar as it is predicated on Plaintiffs' IHA claim. (Def.'s Mot. 16.) In California, any "unlawful, unfair or fraudulent business act or practice" is prohibited. Cal. Bus. & Prof. Code § 17200. "Violation of

---

[9] If fewer than the minimum enter, the contest is cancelled and no entry fees are collected. (Kanny Decl., Ex. E, Corrected Expert Report of Randal Heeb, Ph.D. ("Heeb Report") ¶ 99).

[10] Defendant insomuch concedes this point by virtue of its claim that "skill predominates over chance in all of Derby Wars' contests–including head-to-head contests. (Def.'s Add'l Facts ¶ 94.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 15-09332 SJO (JEMx)</u> | **DATE:** <u>May 15, 2017</u> |

almost any federal, state or local law may serve as the basis for a UCL claim." *Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15 CV 01267 SC, 2015 WL 4128484, at *5 (N.D. Cal. Jul. 8, 2015).

        a.    IHA Violation as Basis for UCL Claim

The FAC alleges that "Derby Wars' wrongful acts . . . constitute unfair business practices both under the common law of the State of California, within which these acts have occurred, and statutory law, of which Derby Wars is in violation, including the IHA, California Business & Professions Code §§ 19595 and 19604 and the Illegal Gambling Business Act of 1970, 18 U.S.C. § 1955, as well as California Business & Professions Code §§ 17200, *et seq.*, making its actions unlawful." (FAC ¶ 64.) Having determined that entry fees paid in Derby Wars' contests constitute bets or wagers as defined by the IHA, as discussed in Section II.B.1(c) *supra*, the Court concludes that the IHA can serve as the predicate for a California Business & Professions Code § 1700 claim.

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' Motion for Partial Summary Judgment and **DENIES** Defendant Horse Racing Labs, Inc.'s Motion for Summary Judgment. In particular, the Court finds: the entry fees paid in contests offered by Defendant on its Derby Wars website are wagers under the Interstate Horseracing Act of 1978; Defendant is operating an off-track betting system as defined in Section 3002(7) of the IHA; and the IHA can serve as a predicate for a California Business and Professions Code Section 17200 claim.

IT IS SO ORDERED.