MATTHEW P. KANNY (State Bar No. 167118)
E-mail: mkanny@manatt.com
MAURA K. GIERL (State Bar No. 287430)
E-mail: mgierl@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064-1614
Tel.:  (310) 312-4000; Fax:  (310) 312-4224

ARUNABHA BHOUMIK (*pro hac vice*)
E-mail: abhoumik@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
Tel.:   (212) 790-4500; Fax: (212) 790-7575

*Attorneys for Defendant*
HORSE RACING LABS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES TURF CLUB, INCORPORATED, a California Corporation, *et al.*,<br><br>        Plaintiffs,<br><br>        vs.<br><br>HORSE RACING LABS, LLC, a Delaware Limited Liability Company (a/k/a IMMERSE, LLC), d/b/a DERBYWARS, and DOES 1 through 10, inclusive,<br><br>        Defendants. | No. 2:15-cv-09332-SJO (JEMx)<br><br>Honorable S. James Otero<br>Courtroom No. 10C<br><br>**DEFENDANT HORSE RACING LABS, LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>FAC Filed:         May 16, 2016<br>Fact Discovery Cutoff:  March 27, 2017<br>Expert Discovery Cutoff: April 10, 2017<br>Final Pretrial Conf.:    June 19, 2017<br>Trial Date:         June 27, 2017 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................. 1

II.  CLAIMS AND DEFENSES RE: PLAINTIFFS' FIRST AMENDED
     COMPLAINT .................................................................................... 3

     A.   Plaintiffs' Claim for Violation of the IHA ................................... 3
          a.   Summary Statement of Plaintiffs' Claim ........................... 3
          b.   Elements Required to Establish Claim .............................. 3
          c.   Key Evidence in Opposition to Plaintiffs' Claim .............. 4

     B.   Plaintiffs' Claim for Violation of the UCL ................................. 6
          a.   Summary Statement of Plaintiffs' Claim ........................... 6
          b.   Elements Required to Establish Claim .............................. 6
          c.   Key Evidence in Opposition to Plaintiffs' Claim .............. 7

     C.   Derby Wars' Third Affirmative Defense – Statute of Limitations ..... 10
          a.   Summary Statement of Defense ...................................... 10
          b.   Elements Required to Establish Defense ......................... 10
          c.   Key Evidence in Support of Defense .............................. 12

     D.   Derby Wars' Fifth Affirmative Defense  - No Standing Under
          the IHA .................................................................................. 13
          a.   Summary Statement of Defense ...................................... 13
          b.   Elements Required to Establish Defense ......................... 14
          c.   Key Evidence in Support of Defense .............................. 14

     E.   Derby Wars' Seventh Affirmative Defense – Failure to Mitigate ..... 16
          a.   Summary Statement of Defense ...................................... 16
          b.   Elements Required to Establish Defense ......................... 17
          c.   Key Evidence in Support of Defense .............................. 17

     F.   Derby Wars' Ninth Affirmative Defense – Waiver ..................... 18
          a.   Summary Statement of Defense ...................................... 18
          b.   Elements Required to Establish Defense ......................... 19
          c.   Key Evidence in Support of Defense .............................. 19

     G.   Derby Wars' Tenth Affirmative Defense – Estoppel .................. 22
          a.   Summary Statement of Defense ...................................... 22
          b.   Elements Required to Establish Defense ......................... 22
          c.   Key Evidence in Support of Defense .............................. 22

     H.   Derby Wars' Eleventh Affirmative Defense – Unclean Hands .......... 25
          a.   Summary Statement of Defense ...................................... 25
          b.   Elements Required to Establish Defense ......................... 26

**TABLE OF CONTENTS**
(continued)

Page

c.      Key Evidence in Support of Defense ...................................... 26

I.   Derby Wars' Twelfth Affirmative Defense – Proximate Cause ......... 29

a.      Summary Statement of Defense ............................................. 29

b.      Elements Required to Establish Defense ............................... 29

c.      Key Evidence in Support of Defense ...................................... 29

J.   Derby Wars' Thirteenth Affirmative Defense – No Attorneys' Fees .............................................................................................. 30

a.      Summary Statement of Defense ............................................. 30

K.   Derby Wars' Fourteenth Affirmative Defense – No Restitution or Disgorgement ............................................................................ 30

a.      Summary Statement of Defense ............................................. 30

b.      Elements Required to Establish Defense ............................... 30

c.      Key Evidence in Support of Defense ...................................... 31

L.   Derby Wars' Fifteenth Affirmative Defense – No Standing Under the UCL ............................................................................... 33

a.      Summary Statement of Defense ............................................. 33

b.      Elements Required to Establish Defense ............................... 33

c.      Key Evidence in Support of Defense ...................................... 34

M.   Derby Wars' Sixteenth Affirmative Defense – Justified Fair Competition ....................................................................................... 36

a.      Summary Statement of Defense ............................................. 36

b.      Elements Required to Establish Defense ............................... 36

c.      Key Evidence in Support of Defense ...................................... 37

N.   Derby Wars' Seventeenth / Eighteenth Affirmative Defenses – Lawful Conduct / Conduct Not Unlawful .......................................... 39

a.      Summary Statement of Defense ............................................. 39

b.      Elements Required to Establish Defense ............................... 39

c.      Key Evidence in Support of Defense ...................................... 39

O.   Derby Wars' Nineteenth Affirmative Defense – Injunctive Relief is Discretionary ....................................................................... 41

III.   IDENTIFICATION OF ANTICIPATED EVIDENTIARY ISSUES ........... 45

IV.   IDENTIFICATION OF ANTICIPATED LEGAL ISSUES ........................ 47

V.   BIFURCATION OF ISSUES ................................................................... 47

VI.   JURY TRIAL ........................................................................................... 47

VII.   ATTORNEYS' FEES ............................................................................... 48

VIII.   ABANDONMENT OF ISSUES ............................................................... 48

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

### CASES

4

*adidas-Am., Inc. v. Payless Shoesource, Inc.*,

5

  546 F.Supp.2d 1029 (D. Or. 2008) ...................................................................17

6

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
  No. SACV071316 JVS ......................................................................passim

7

*Clayworth v. Pfizer, Inc.*,

8

  49 Cal. 4th 758 (2010) ......................................................................................32

9

*Cortez v. Puralator Air Filtration Prods. Co.*,
  23 Cal. 4th 163 (2000) ......................................................................................46

10

*Gibson Brands, Inc. v. John Hornby Skewes & Co. Ltd.*,

11

  No. CV 14-00609 DDP SSX, 2014 WL 5419512 (C.D. Cal. Oct.

12

  23, 2014) ...........................................................................................................17

13

*Groves v. Prickett*,
  420 F.2d 1119 (9th Cir. 1970) ..........................................................................17

14

*Int'l News Serv. v. Associated Press*,

15

  248 U.S. 215 (1919) ..........................................................................................24

16

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ............................................................................24

17

*Korea Supply v. Lockheed Martin*,

18

  29 Cal. 4th 1134 (2003) ....................................................................................29

19

*Kwikset Corp. v. Superior Court*,

20

  51 Cal. 4th 310 (2011) ............................................................................7, 27, 32

21

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
  762 F.3d 867 (9th Cir. 2014) .....................................................................passim

22

*Lectrodryer v. SeoulBank*,

23

  77 Cal. App. 4th 723 (2000) .............................................................................29

24

*Levi Strauss & Co. v. Shilon*,
  121 F.3d 1309 (9th Cir. 1997) ..........................................................................24

25

*Manhattan Medicine Co. v. Wood*,

26

  108 U.S. 218 (1883) ..........................................................................................24

27

*Morton Salt Co. v. G. S. Sippiger Co.*,

28

  314 U.S. 488 (1942) ..........................................................................................24

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Norwest Mortg., Inc. v. Superior Court,*
   72 Cal. App. 4th 214 (1999) ........................................................................ 7, 32

*Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc.,*
   144 Cal. App. 4th 1175 (2006) ................................................................. 17, 20

*Old Republic Ins. Co. v. FSR Brokerage Inc.,*
   80 Cal. App. 4th 666 (2000) .............................................................................. 20

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
   134 S.Ct. 1962 (2014) ...................................................................................... 46

*Quest Software, Inc. v. DirecTV Operations, LLC,*
   No. SACV 09-1232, 2011 WL 4500922 (C.D. Cal. Sept. 26, 2011) .................. 20

*Sprint Commc'ns Co. v. APCC Servs., Inc.,*
   554 U.S. 269 (2008) .................................................................................... 12, 13

*Sullivan v. Oracle Corp.,*
   51 Cal. 4th 1191 (2011) ............................................................................... 7, 32

*United States v. Amwest Surety Ins. Co.,*
   54 F.3d 601 (9th Cir. 1995) .............................................................................. 17

*United States v. King Features Entm't, Inc.,*
   843 F.3d 394 (9th Cir. 1988) ............................................................................ 20

*Warth v. Seldin,*
   422 U.S. 490 (1975) ......................................................................................... 12

*Washington Mut. Bank, FA v. Superior Court,*
   24 Cal. 4th 906 (2001) ................................................................................. 7, 32

### STATUTES

15 U.S.C. § 3002(3) ........................................................................................... 12

15 U.S.C. § 3002(7) ........................................................................................... 12

15 U.S.C. § 3004 .................................................................................................. 3

15 U.S.C. § 3005 ........................................................................................... 4, 12

15 U.S.C. § 3006(a) ............................................................................................. 4

15 U.S.C. § 3006(c) ........................................................................................... 10

18 U.S.C. § 1084 ............................................................................................... 45

18 U.S.C. § 1955 ............................................................................................... 45

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

1
2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3 | Cal. Bus. & Prof. Code Division 7, part 3 .................................................................37
4 | Cal. Bus. & Prof. Code § 17200 ................................................................. 1, 6, 34, 37
5 | Cal. Bus. & Prof. Code § 17204 ........................................................................ 7, 32
6 | Cal. Bus. & Prof. Code § 17500 .............................................................................37
7 | California Penal Code § 337a .................................................................................45
8 | Interstate Horse Racing Act of 1978 ....................................................................... 1
9 | Racketeering Influence and Corruption Act, 18 U.S.C. § 1961 *et seq.*.......................2
10 | Unlawful Internet Gambling Act of 2006, 31 U.S.C. § 5361 *et seq.* ........................ 1

## OTHER AUTHORITIES

Restatement (3d) of Unfair Competition § 1 (1995) ................................................35

## RULES

Local Rule 16-2 .....................................................................................................44
Local Rule 16-4 ...................................................................................................... 1
Local Rule 16-6.1 ..................................................................................................44
Local Rule 16.3......................................................................................................44

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Pursuant to Local Rule 16-4, Defendant Horse Racing Labs, LLC ("Derby

2    Wars") submits the following Memorandum of Contentions of Fact and Law in

3    advance of the Final Pretrial Conference.  Derby Wars expressly reserves its right

4    to submit an Amended Memorandum of Contentions of Fact and Law in advance of

5    trial, or otherwise supplement, amend, modify, and/or withdraw any of the

6    defenses, authorities, and/or legal positions asserted herein.

7    **I.    INTRODUCTION**

8    This litigation relates to a dispute between Derby Wars, a horse racing

9    fantasy contest site launched in October 2011, and Plaintiffs Los Angeles Turf

10   Club, Inc., Los Angeles Turf Club II, Inc., Pacific Racing Association, Pacific

11   Racing Association, II, Gulfstream Park Racing Association, Inc., Oregon Racing,

12   Inc., Maryland Jockey Club of Baltimore City, Inc., and Laurel Racing Association,

13   Inc. (collectively, "Plaintiffs"), a collective of horse racing tracks that operate horse

14   racing events in California, Florida, Oregon, and Maryland.  In their First Amended

15   Complaint ("FAC"), Plaintiffs allege that Derby Wars' fantasy contests, in using

16   the publicly available race results of horse races at Plaintiffs' tracks in Derby Wars'

17   contests, violate the Interstate Horse Racing Act of 1978 ("IHA").  Additionally,

18   Plaintiffs allege that Derby Wars' conduct constitutes unfair competition in

19   violation of California Business & Professions Code sections 17200, *et seq.,*

20   ("UCL").

21   In its Answer to the FAC, Derby Wars contends that Plaintiffs' IHA claim is

22   barred by the IHA's three-year statute of limitation.  Additionally, Derby Wars

23   respectfully maintains that the IHA does not apply to Derby Wars' fantasy

24   horseracing contests because the contests do not constitute bets or wagers (and

25   instead constitute contests), and that such contests are games of skill that fall within

26   the Fantasy Sports exception of the Unlawful Internet Gambling Act of 2006, 31

27   U.S.C. § 5361 *et seq.* ("UIGEA").[1]  Derby Wars further contends that Plaintiffs do

28   
[1] Derby Wars respectfully disagrees with the Court's determination of whether its

not have standing to assert their UCL claim.  Derby Wars asserts that Plaintiffs'
claims fail and they are not entitled damages based on Derby Wars' waiver,
estoppel, unclean hands, and statute of limitations affirmative defenses, among
other defenses.

Plaintiffs initiated this lawsuit on December 2, 2015, alleging four causes of
action:  (1) violation of the IHA; (2) violation of the Racketeering Influence and
Corruption Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; (3) violation of the UCL; and
(4) Intentional Interference with Prospective Economic Advantage.  (Docket No. 1)
Derby Wars filed a motion to dismiss, or in the alternative, to strike the second and
forth causes of action in Plaintiffs' Complaint.  (Docket No. 23.)  The Court
granted the motion in part, finding that Plaintiffs had not alleged sufficient facts to
establish causation under RICO or that Derby Wars intentionally interfered with
Plaintiffs' prospective business advantage. (Docket  No. 30.)

Plaintiffs filed their First Amended Complaint ("FAC") on May 16, 2016,
alleging two causes of action: (1) violation of the IHA and (2) violation of the UCL.
(Docket No. 31.)  Derby Wars filed a motion for judgment on the pleadings, which
the Court granted with respect to disgorgement of Plaintiffs' alleged damages and
denied with respect to Plaintiffs' IHA and UCL Claims.  (Docket No. 43.) ("MJOP
Order").  In the MJOP Order, the Court found that Plaintiffs are not entitled to seek
restitution under the UCL.

The parties filed their respective cross-motions for summary judgment and
partial summary judgment on March 20, 2017.  (Docket Nos. 62, 63.)  On May 15,
2017, the Court issued its ruling on the cross-motions (the "MSJ Order"), granting
in part Plaintiffs' Motion for Partial Summary Judgment, and denying Derby Wars'

---

contests and/or entry fees constitute wagers, and that it operates an off-track betting
system, and expressly reserves its rights to challenge such determinations and offer
contrary evidence in subsequent proceedings, including, without limitation, on
appeal.  However, given the Court's ruling on the parties' motions for summary
judgment, Derby Wars recognizes that the Court will not permit it to relitigate these
issues at trial.

Motion for Summary Judgment. (Docket No. 88.)

Derby Wars' contentions regarding Plaintiffs' remaining claims and Derby Wars' affirmative defenses are detailed below.

## II.   CLAIMS AND DEFENSES RE: PLAINTIFFS' FIRST AMENDED COMPLAINT

### A.   Plaintiffs' Claim for Violation of the IHA

#### a.   Summary Statement of Plaintiffs' Claim

Plaintiffs claim that Derby Wars' fantasy horse racing contests constitute "wagers" within the meaning of the IHA, and that Derby Wars is operating an off-track betting system subject to the IHA. Plaintiffs claim that Derby Wars accepts interstate off-track wagers in violation of the IHA. (Docket No. 31, ¶¶ 53-61.)

#### b.   Elements Required to Establish Claim

To establish a right to recovery under the IHA, Plaintiffs must establish by a preponderance of evidence that Defendant accepted an interstate off-track wager without consent from the host racing association, the host racing commission, and the off-track racing commission. 15 U.S.C. § 3004. Although the Court has already ruled that Derby Wars' conduct violates the IHA, Plaintiffs must demonstrate that they are entitled to damages and a permanent injunction.

The IHA provides: "Any person accepting any interstate off-track wager in violation of this chapter shall be civilly liable for damages to the host State, the host racing association and the horsemen's group. Damages for each violation shall be based on the total of off-track wagers as follows: (1) If the interstate off-track wager was of a type accepted at the host racing association, damages shall be in an amount equal to that portion of the takeout which would have been distributed to the host State, host racing association and the horsemen's group, as if each such interstate off-track wager had been placed at the host racing association. (2) If such interstate off-track wager was of a type not accepted at the host racing association, the amount of damages shall be determined at the rate of takeout prevailing at the

off-track betting system for that type of wager and shall be distributed according to the same formulas as in paragraph (1) above." 15 U.S.C. § 3005.

The IHA also provides that Plaintiffs may seek injunctive relief: "The host State, the host racing association, or the horsemen's group may commence a civil action against any person alleged to be in violation of this chapter, for injunctive relief to restrain violations and for damages in accordance with section 3005 of this title." 15 U.S.C. § 3006(a). The elements Plaintiffs must establish to obtain permanent injunctive relief for this claim are: (1) that Plaintiffs have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between Plaintiffs and Derby Wars, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014); *Allergan, Inc. v. Athena Cosmetics, Inc.*, No. SACV071316 JVS RNBX, 2013 WL 12142655, at *2 (C.D. Cal. Mar. 6, 2013).

c.    <u>Key Evidence in Opposition to Plaintiffs' Claim</u>

The following is a representative (not an exhaustive list) of key evidence that Derby Wars will use to demonstrate that Plaintiffs are not entitled to damages or injunctive relief based upon their IHA claim at trial.

- Testimony of Mark Midland;
- Testimony of Michael Shutty;
- Testimony of Scott Daruty;
- Testimony of Timothy Ritvo;
- Testimony of Michael Rogers;
- Testimony of John Ford;
- Testimony of Joe Morris;
- Testimony of Nate Newby;
- Testimony of Andrew Arthur;

1    •     Testimony of Eric Sindler;

2    •     Testimony of Michael Calderone;

3    •     Testimony of Gregory Avioli;

4    •     Testimony of Ed Comins;

5    •     Testimony of Chris Schick;

6    •     Testimony of Rick Baedeker;

7    •     Plaintiffs' responses to interrogatories;

8    •     Documents and communications between Plaintiffs' and the Stronach
9    Group's representatives and agents, on the one hand, and Derby Wars'
10   representatives and agents, on the other hand, regarding business
11   dealings and relationships with Plaintiffs and the Stronach Group;

12   •     Documents and communications between Plaintiffs' and the Stronach
13   Group's representatives and agents, on the one hand, and Derby Wars'
14   representatives and agents, on the other hand, regarding cross
15   marketing efforts between Plaintiffs and Derby Wars;

16   •     Documents and communications between Plaintiffs, on the one hand,
17   and Derby Wars and/or the Stronach Group and/or third parties, on the
18   other hand, and internally amongst Plaintiffs, evidencing that despite
19   their awareness of Derby Wars' fantasy horse racing contests as early
20   as September 2011, Plaintiffs never objected to Derby Wars' conduct
21   prior to the filing of this action;

22   •     Documents regarding the financial aspects of Derby Wars' contests
23   and revenues;

24   •     Documents regarding wagering on horse racing and operation of
25   Plaintiffs' racetracks;

26   •     Plaintiffs' licenses to operate race tracks and accept wagers on horse
27   races;

28   •     Plaintiffs' agreements with the horsemen's groups and host race states;

- Agreements between Plaintiffs and third parties, including simulcasting and Advanced Deposit Wagering ("ADW") agreements, regarding horse wagering;

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;

- Documents regarding the financial aspects of Plaintiffs' and/or the Stronach Group's business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;

- Documents and communications regarding Plaintiffs' interactions with state horse racing boards and commissions and state legislatures, including specifically the California Horse Racing Board ("CHRB");

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action;

- Documents and communications regarding Plaintiffs' decision to file this lawsuit.

**B.** **Plaintiffs' Claim for Violation of the UCL**

a. **Summary Statement of Plaintiffs' Claim**

Plaintiffs claim that Derby Wars' fantasy horse racing contests violate California Business & Professions Code sections 17200, *et seq.* (Docket No. 31 ¶¶ 62-67.)

b. **Elements Required to Establish Claim**

To establish a right to recovery under their UCL claim, Plaintiffs must prove by a preponderance of the evidence that:

(a) Defendant has engaged in one of the following "wrongs": (1) An unlawful business act or practice; (2) An unfair business act or practice; (3) A fraudulent business act or practice; (4) An unfair, deceptive, untrue or misleading advertising; *or* (5) Another act specifically prohibited by the UCL; *and*

(b)     Plaintiffs have lost money or property sufficient to cause an injury in fact (i.e., an economic injury); *and*

(c)     Plaintiffs' economic injury was caused by the unfair competition.

Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317-20 (2011).

The UCL does not regulate parties or conduct unconnected to California, and cannot be based on laws from any state other than California. *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225-27 (1999); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206-09 (2011); *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001).

Plaintiffs may seek only injunctive relief under this claim.  (MJOP Order at 5.)  To establish that they are entitled to a permanent injunction, Plaintiffs must establish the following: The elements Plaintiffs must establish to obtain permanent injunctive relief for this claim are: (1) that Plaintiffs have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between Plaintiffs and Derby Wars, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014); *Allergan, Inc. v. Athena Cosmetics, Inc.*, No. SACV071316 JVS RNBX, 2013 WL 12142655, at *2 (C.D. Cal. Mar. 6, 2013).

c.     Key Evidence in Opposition to Plaintiffs' Claim

The following is a representative (not an exhaustive) list of key evidence that Derby Wars will use to demonstrate that Plaintiffs are not entitled to an injunction on their UCL claim, and to prove its affirmative defenses at trial.

• Testimony of Mark Midland;

• Testimony of Michael Shutty;

1 • Testimony of Scott Daruty;

2 • Testimony of Timothy Ritvo;

3 • Testimony of Michael Rogers;

4 • Testimony of John Ford;

5 • Testimony of Joe Morris;

6 • Testimony of Nate Newby;

7 • Testimony of Andrew Arthur;

8 • Testimony of Eric Sindler;

9 • Testimony of Michael Calderone;

10 • Testimony of Gregory Avioli;

11 • Testimony of Ed Comins;

12 • Testimony of Chris Schick;

13 • Testimony of Rick Baedeker;

14 • Testimony of Randal Heeb, Ph.D.;

15 • The Corrected Expert Report of Randal Heeb, Ph.D.;

16 • Plaintiffs' responses to interrogatories;

17 • Documents and communications between Plaintiffs' and the Stronach

18 Group's representatives and agents, on the one hand, and Derby Wars'

19 representatives and agents, on the other hand, regarding business

20 dealings and relationships with Plaintiffs and the Stronach Group;

21 • Documents and communications between Plaintiffs' and the Stronach

22 Group's representatives and agents, on the one hand, and Derby Wars'

23 representatives and agents, on the other hand, regarding cross

24 marketing efforts between Plaintiffs and Derby Wars;

25 • Documents and communications between Plaintiffs, on the one hand,

26 and Derby Wars and/or the Stronach Group and/or third parties, on the

27 other hand, and internally amongst Plaintiffs, evidencing that despite

28 their awareness of Derby Wars' fantasy horse racing contests as early

1   as September 2011, Plaintiffs never objected to Derby Wars' conduct

2   prior to the filing of this action;

3   • Documents regarding the financial aspects of Derby Wars' contests

4   and revenues;

5   • Documents regarding wagering on horse racing and operation of

6   Plaintiffs' racetracks;

7   • Plaintiffs' licenses to operate race tracks and accept wagers on horse

8   races;

9   • Plaintiffs' agreements with the horsemen's groups and host race states;

10   • Agreements between Plaintiffs and third parties, including

11   simulcasting and ADW agreements, regarding horse wagering;

12   • Documents and communications regarding Plaintiffs' and/or the

13   Stronach Group's business dealings and agreements with other fantasy

14   horse racing and/or handicapping contest sites;

15   • Documents regarding the financial aspects of Plaintiffs' and/or the

16   Stronach Groups' business dealings and agreements with other fantasy

17   horse racing and/or handicapping contest sites;

18   • Documents and communications regarding Plaintiffs' interactions with

19   state horse racing boards and commissions and state legislatures,

20   including specifically the CHRB;

21   • Documents and communications regarding Plaintiffs' and/or the

22   Stronach Group's purported damages in this action; and

23   • Documents and communications regarding Plaintiffs' decision to file

24   this lawsuit.

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

9

## C.    Derby Wars' Third Affirmative Defense – Statute of Limitations[2]

### a.    Summary Statement of Defense

Plaintiffs are barred from bringing their IHA claim by the IHA's three-year statute of limitations.  Plaintiffs were aware of Derby Wars' fantasy horse racing contests as early as September 2011.  As Plaintiffs were aware of Derby Wars' conduct before December 2012, over three years before filing the December 2, 2015 complaint, Plaintiffs' IHA claim is time barred and they are not entitled to damages.

### b.    Elements Required to Establish Defense

The IHA provides: "A civil action may not be commenced pursuant to this section more than 3 years after the discovery of the alleged violation upon which such civil action is based."  15 U.S.C. § 3006(c).

The IHA, is a statute based on *accrual* rather than discovery.  *Compare* Copyright Act 17 U.S.C. §507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced ***within three years after the claim accrued***"), with the IHA 15 U.S.C. §3006(c) ("A civil action may not be commenced pursuant to this section ***more than 3 years after the discovery of the alleged violation upon which such civil action is based***").  Courts have held in analogous contexts that the statutes of limitation begin to run anew only when the defendant commits a ***new*** overt act that injures the plaintiff, or upon the discovery of ***new*** facts not previously known.  For example: (i) antitrust actions under the Sherman Act (*see Pace Industries, Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987) (to restart the statute of limitations "a new and independent act that is not merely a reaffirmation of a previous act" is required, which "inflict[s] new and accumulating injury on the plaintiff")); (ii) actions for securities fraud under 17 C.F.R. 240.10b-5 (*see Allstate Ins. Co. v. Countrywide Financial Corp.*, 824

---

[2] As set forth below, Derby Wars does not intend to proceed with its First, Second, Fourth, Sixth, and Eighth Affirmative Defenses, as they are subsumed by other defenses or legal positions.  *See* Section VIII below.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

F.Supp.2d 1164, 1180 (C.D. Cal. 2011) (the analysis would have to generate new facts not previously known (emphasis added)); and (iii) RICO actions under 18 U.S.C.A. §§ 1961 (*see Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 186-87 (1997) ("last predicate act rule" does not apply, as it would "create[] a limitations period that is longer than Congress could have contemplated")).  Accordingly, if Plaintiffs discovered the alleged violation of the IHA on or before December 1, 2012, their claims are time-barred.

Moreover, adding a "look back" period to a statute of limitation that already includes tolling based on discovery contravenes the principle that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied." *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (citation omitted) ("Congress implicitly excluded a general discovery rule by explicitly including a more limited one").  Plaintiffs' reliance on *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962 (2014) is misplaced. *Petrella* did not hold, as Plaintiffs imply, that all statutes of limitation for all claims for relief would thereafter have a "look-back" period.  Courts since *Petrella* have confirmed its narrow application to "accrual" statutes.  *See, e.g., Consumer Health Info. Corp. v. Amylin Pharm., Inc.*, 819 F.3d 992, 996 (7th Cir. 2016) (declining to apply look-back to copyright ownership dispute); *CSL Silicones Inc. v. Midsun Grp, Inc.*, 170 F. Supp. 3d 304, 314 (D. Conn. 2016) (declining to apply look-back to trademark infringement).  Any broader application would contravene the principle that limitations period are intended "to prevent plaintiffs from "sleeping on their rights." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352 (1983).

Finally, the continuing violation doctrine under California law does not provide a basis for tolling the IHA statute, as it is inapplicable to these facts and limited to serial or episodic misconduct, such as in hostile work environment.  *See Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1199-1200 (2013).  Equitable tolling doctrines only operate to prevent injustice to a plaintiff who did

not sleep on his rights.  *See Burnett v. New York Cent. R. Co.*, 380 U.S. at 428-29.

"Limitations periods are intended to put defendants on notice of adverse claims and

to prevent plaintiffs from sleeping on their rights."  *Crown, Cork & Seal Co., Inc. v.*

*Parker*, 462 U.S. 345, 352 (1983); *see also Burnett v. New York Cent. R. Co.*, 380

U.S. 424, 428-29 (1965).  Here, Plaintiffs slept on their rights and can point to no

new facts or overt acts that would restart the statute.

c. <u>Key Evidence in Support of Defense</u>

The following is a representative (not an exhaustive) list of key evidence that

Derby Wars will use to prove its affirmative defense at trial:[3]

- Testimony of Mark Midland;
- Testimony of Michael Shutty;
- Testimony of Scott Daruty;
- Testimony of Timothy Ritvo;
- Testimony of Michael Rogers;
- Testimony of John Ford;
- Testimony of Joe Morris;
- Testimony of Nate Newby;
- Testimony of Andrew Arthur;
- Testimony of Gregory Avioli;
- Testimony of Eric Sindler;
- Testimony of Michael Calderone;
- Testimony of Gregory Avioli;
- Testimony of Rick Baedeker;
- Documents and communications between Plaintiffs, on the one hand, and Derby Wars and/or the Stronach Group and/or third parties, and

---

[3] With respect to all of Derby Wars' affirmative defenses, Derby Wars anticipates introducing testimony (live witnesses and, for unavailable witnesses, deposition testimony) to substantiate their claims and defenses.

internally amongst Plaintiffs, establishing that Plaintiffs were aware of Derby Wars' fantasy horse racing contests as early as September 2011, well before December 2012;

• Documents and communications between Plaintiffs, on the one hand, and Derby Wars and/or the Stronach Group and/or third parties, on the other hand, and internally amongst Plaintiffs, evidencing that despite their awareness of Derby Wars' fantasy horse racing contests as early as September 2011, Plaintiffs never objected to Derby Wars' conduct prior to the filing of this action;

• Agreements between Plaintiffs and third parties, including simulcasting and ADW agreements, regarding horse wagering;

• Documents and communications establishing that licenses to conduct ADW and simulcasting do not cover fantasy horse racing contests, and do not treat fantasy contests as pari-mutuel wagering;

• Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding business dealings and relationships with Plaintiffs and the Stronach Group;

• Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding cross marketing efforts between Plaintiffs and Derby Wars; and

• Documents and communications regarding Plaintiffs' decision to file this lawsuit.

**D.   Derby Wars' Fifth Affirmative Defense - No Standing Under the IHA**

a.   Summary Statement of Defense

Plaintiffs lack standing to assert a claim under the IHA because Derby Wars

is not a licensed off-track betting system.  Derby Wars respectfully disagrees with the Court's determination that Derby Wars constitutes a licensed off-track betting system.  Derby Wars also contends that if Plaintiffs are entitled to damages under the IHA, Plaintiffs produced no evidence that either the horsemen's groups or host states have assigned to Plaintiffs their legal rights to pursue and collect any purported damages on their behalf for violations of the IHA.

> b.    Elements Required to Establish Defense

The IHA provides a private right of action only against persons who "accept[] any interstate off-track wager in violation of [the IHA]."  15 U.S.C. § 3005.  An "interstate off-track wager" refers to a legal "wager" "accepted by an off-track betting system."  15 U.S.C. § 3002(3).  "Off track betting system" refers to any group that accepts "wagers on horseraces at locations other than the place where the horserace is run, which business is conducted by the State or licensed or otherwise permitted by State law."  15 U.S.C. § 3002(7).   Accordingly, the definition of "interstate off track wager" is limited to wagers taken by businesses *licensed* to do so.

Article III standing requires (1) an injury in fact; (2) causation; and (3) redressability.  *See Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008).  A plaintiff does not have standing to claim relief "on the legal rights or interests of third parties."  *Id.* at 290; *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Only a legal assignee of another's legal interest may have standing to sue on behalf of the assignor.  *Sprint Commc'ns Co.*, 544 U.S. at 285.

> c.    Key Evidence in Support of Defense

The following is a representative (not an exhaustive list) of key evidence that Derby Wars will use to prove its affirmative defense at trial.

- Testimony of Mark Midland;

- Testimony of Michael Shutty;

- Testimony of Scott Daruty;

1   •     Testimony of Timothy Ritvo;

2   •     Testimony of Michael Rogers;

3   •     Testimony of John Ford;

4   •     Testimony of Joe Morris;

5   •     Testimony of Nate Newby;

6   •     Testimony of Andrew Arthur;

7   •     Testimony of Eric Sindler;

8   •     Testimony of Michael Calderone;

9   •     Testimony of Gregory Avioli;

10   •     Testimony of Ed Comins;

11   •     Testimony of Chris Schick;

12   •     Testimony of Randal Heeb, Ph.D.;

13   •     Testimony of Rick Baedeker;

14   •     Plaintiffs' responses to interrogatories;

15   •     Documents and communications between Plaintiffs' and the Stronach
16   Group's representatives and agents, on the one hand, and Derby Wars'
17   representatives and agents, on the other hand, regarding business
18   dealings and relationships with Plaintiffs and the Stronach Group;

19   •     Documents and communications between Plaintiffs' and the Stronach
20   Group's representatives and agents, on the one hand, and Derby Wars'
21   representatives and agents, on the other hand, regarding cross
22   marketing efforts between Plaintiffs and Derby Wars;

23   •     Documents and communications between Plaintiffs, on the one hand,
24   and Derby Wars and/or the Stronach Group and/or third parties, on the
25   other hand, and internally amongst Plaintiffs, evidencing that despite
26   their awareness of Derby Wars' fantasy horse racing contests as early
27   as September 2011, Plaintiffs never objected to Derby Wars' conduct
28   prior to the filing of this action;

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

- Documents regarding the financial aspects of Derby Wars' contests and revenues;
- Documents regarding wagering on horse racing and operation of Plaintiffs' racetracks;
- Plaintiffs' licenses to operate racetracks and accept wagers on horse races;
- Plaintiffs' agreements with the horsemen's groups and host race states;
- Agreements between Plaintiffs and third parties, including simulcasting and ADW agreements, regarding horse wagering;
- Documents and communications regarding Plaintiffs' and/or the Stronach Group's business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;
- Documents regarding the financial aspects of Plaintiffs' and/or the Stronach Groups' business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;
- Documents and communications regarding Plaintiffs' interactions with state horse racing boards and commissions and state legislatures, including specifically the CHRB;
- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action;
- Documents and communications regarding Plaintiffs' decision to file this lawsuit.

### E.   Derby Wars' Seventh Affirmative Defense – Failure to Mitigate

#### a.   Summary Statement of Defense

Derby Wars contends that Plaintiffs, in the exercise of reasonable diligence, could have mitigated their alleged damages, but failed to do so.  Indeed, by sitting

1   on their rights for years. Plaintiffs acted to increase their purported damages, to

2   Derby Wars' detriment.

3               b.      <u>Elements Required to Establish Defense</u>

4         Each party has a duty to use reasonable efforts to mitigate damages.  To

5   mitigate means to avoid or reduce damages.  Where a party wins on a cause of

6   action, the losing party has the burden of proving by a preponderance of the

7   evidence:

8               (a) That the winning party failed to use reasonable efforts to mitigate

9   damages; *and*

10              (b) the amount by which damages would have been mitigated.

11              *See* Ninth Circuit Model Civil Jury Instructions No. 5.3 (2007).

12              c.      <u>Key Evidence in Support of Defense</u>

13        The following is a representative (not an exhaustive) list of key evidence that

14  Derby Wars will use to prove its affirmative defense at trial:

15        •      Testimony of Mark Midland;

16        •      Testimony of Mike Shutty;

17        •      Testimony of Scott Daruty;

18        •      Testimony of Mike Rogers;

19        •      Testimony of Timothy Ritvo;

20        •      Testimony of Michael Calderone;

21        •      Documents and communications between Plaintiffs, on the one hand,

22              and Derby Wars and/or the Stronach Group and/or third parties, and

23              internally amongst Plaintiffs, establishing that Plaintiffs were aware of

24              Derby Wars' fantasy horse racing contests as early as September 2011,

25              well before December 2012;

26        •      Documents and communications between Plaintiffs, on the one hand,

27              and Derby Wars and/or the Stronach Group and/or third parties, and

28              internally amongst Plaintiffs, evidencing that despite their awareness

of Derby Wars' fantasy horse racing contests as early as September 2011, Plaintiffs never objected to Derby Wars' conduct prior to the filing of this action;

- Documents and communications between Plaintiffs and Derby Wars evidencing Plaintiffs' efforts to engage Derby Wars in sponsorship arrangements, joint venture agreements, and/or a potential acquisition;

- Documents and communications between Plaintiffs and Derby Wars establishing that Derby Wars detrimentally relied on Plaintiffs' failure to object to Derby Wars' conduct prior to filing this action (*e.g.*, documents and communications evidencing time and resources invested to grow Derby Wars' fantasy contest business model);

- Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding business dealings and relationships with Plaintiffs and the Stronach Group;

- Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding cross marketing efforts between Plaintiffs and Derby Wars;

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action; and

- Documents and communications regarding Plaintiffs' decision to file this lawsuit.

### F.   Derby Wars' Ninth Affirmative Defense – Waiver

a.   Summary Statement of Defense

Plaintiffs' claims are barred in whole or in part by the doctrine of waiver. Plaintiffs were aware of Derby Wars' fantasy horse racing contests as early as

September 2011, and intentionally sat on their rights in order for, among other things, damages against Derby Wars to accumulate.  Derby Wars relied on Plaintiffs' inaction to its detriment.

### b.    Elements Required to Establish Defense

Waiver is "the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it."  *Gibson Brands, Inc. v. John Hornby Skewes & Co. Ltd.*, No. CV 14-00609 DDP SSX, 2014 WL 5419512, at *3 (C.D. Cal. Oct. 23, 2014) (citing *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F.Supp.2d 1029, 1074 (D. Or. 2008); s*ee also Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1189-90 (2006) (internal citations omitted)).  "An implied waiver of rights will be found where there is 'clear, decisive and unequivocal' conduct which indicates a purpose to waive the legal rights involved."  *United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 602-03 (9th Cir. 1995) (quoting *Groves v. Prickett*, 420 F.2d 1119, 1125 (9th Cir. 1970)).

### c.    Key Evidence in Support of Defense

The following is a representative (not an exhaustive) list of key evidence that Derby Wars will use to prove its affirmative defense at trial:

- Testimony of Mark Midland;
- Testimony of Michael Shutty;
- Testimony of Scott Daruty;
- Testimony of Timothy Ritvo;
- Testimony of Michael Rogers;
- Testimony of John Ford;
- Testimony of Joe Morris;
- Testimony of Nate Newby;
- Testimony of Andrew Arthur;
- Testimony of Gregory Avioli;

1        •        Testimony of Eric Sindler;

2        •        Testimony of Michael Calderone;

3        •        Testimony of Gregory Avioli;

4        •        Testimony of Rick Baedeker;

5        •        Documents and communications between Plaintiffs, on the one hand,

6                 and Derby Wars and/or the Stronach Group and/or third parties, and

7                 internally amongst Plaintiffs, establishing that Plaintiffs were aware of

8                 Derby Wars' fantasy horse racing contests as early as September 2011,

9                 well before December 2012;

10       •        Documents and communications between Plaintiffs, on the one hand,

11                and Derby Wars and/or the Stronach Group and/or third parties, on the

12                other hand, and internally amongst Plaintiffs, evidencing that despite

13                their awareness of Derby Wars' fantasy horse racing contests as early

14                as September 2011, Plaintiffs never objected to Derby Wars' conduct

15                prior to the filing of this action;

16       •        Documents and communications between Plaintiffs and Derby Wars

17                evidencing Plaintiffs' efforts to engage Derby Wars in sponsorship

18                arrangements, joint venture agreements, and/or a potential acquisition;

19       •        Documents and communications between Plaintiffs and Derby Wars

20                establishing that Derby Wars detrimentally relied on Plaintiffs' failure

21                to object to Derby Wars' conduct prior to filing this action (i.e.

22                documents and communications evidencing time and resources

23                invested to grow Derby Wars' fantasy contest business model);

24       •        Documents and communications between Los Angeles Turf Club, Inc.

25                ("LATC") and Derby Wars establishing that LATC engaged in a

26                marketing and sponsorship agreement with Derby Wars relating to the

27                Santa Anita Showvivor contest (*e.g.*, Santa Anita's email "blasts" to its

28                many thousands of customers promoting Derby Wars fantasy

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

20

contests);

- Documents and data establishing the positive impact of fantasy horse racing contests on tracks' pari-mutuel handle (*e.g.*, BetAmerica's assessment of data regarding the effect of BetAmerica's contests on Gulfstream and Santa Anita Pari-Mutuel Results);

- Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding business dealings and relationships with Plaintiffs and the Stronach Group;

- Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding cross marketing efforts between Plaintiffs and Derby Wars;

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;

- Documents regarding the financial aspects of Plaintiffs' and/or the Stronach Groups' business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;

- Documents and communications regarding Plaintiffs' interactions with state horse racing boards and commissions and state legislatures, including specifically the CHRB;

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action;

- Documents and communications regarding Plaintiffs' decision to file this lawsuit.

### G.   Derby Wars' Tenth Affirmative Defense – Estoppel

#### a.   Summary Statement of Defense

Derby Wars contends that Plaintiffs claims are barred in whole or in part by the doctrine of estoppel.  Plaintiffs were aware of Derby Wars' fantasy horse racing contests as early as September 2011.  Derby Wars reasonably relied on Plaintiffs' inaction to its detriment.

#### b.   Elements Required to Establish Defense

Estoppel applies "where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts. *Oakland Raiders v. Oakland-Alameda Cty. Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1189-90 (2006) (citing *Old Republic Ins. Co. v. FSR Brokerage Inc.*, 80 Cal. App. 4th 666, 678 (2000)).

To prevail on an affirmative defense of estoppel, Derby Wars must establish:

(a)   The party to be estopped must know the facts;

(b)   He must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;

(c)   The latter must be ignorant of the true facts; *and*

(d)   He must rely on the former's conduct to his injury.

*Quest Software, Inc. v. DirecTV Operations, LLC*, No. SACV 09-1232, 2011 WL 4500922, at *5-6 (C.D. Cal. Sept. 26, 2011) (citing *United States v. King Features Entm't, Inc.*, 843 F.3d 394, 399 (9th Cir. 1988)).

#### c.   Key Evidence in Support of Defense

The following is a representative (not an exhaustive) list of key evidence that Derby Wars will use to prove its affirmative defense at trial:

- Testimony of Mark Midland;
- Testimony of Michael Shutty;
- Testimony of Scott Daruty;
- Testimony of Timothy Ritvo;

1       •    Testimony of Michael Rogers;

2       •    Testimony of John Ford;

3       •    Testimony of Joe Morris;

4       •    Testimony of Nate Newby;

5       •    Testimony of Andrew Arthur;

6       •    Testimony of Gregory Avioli;

7       •    Testimony of Eric Sindler;

8       •    Testimony of Michael Calderone;

9       •    Testimony of Gregory Avioli;

10     •    Testimony of Rick Baedeker;

11     •    Documents and communications between Plaintiffs, on the one hand, and Derby Wars and/or the Stronach Group and/or third parties, and internally amongst Plaintiffs, establishing that Plaintiffs were aware of Derby Wars' fantasy horse racing contests as early as September 2011, well before December 2012;

16     •    Documents and communications between Plaintiffs, on the one hand, and Derby Wars and/or the Stronach Group and/or third parties, on the other hand, and internally amongst Plaintiffs, evidencing that despite their awareness of Derby Wars' fantasy horse racing contests as early as September 2011, Plaintiffs never objected to Derby Wars' conduct prior to the filing of this action;

22     •    Documents and communications between Plaintiffs and Derby Wars evidencing Plaintiffs' efforts to engage Derby Wars in sponsorship arrangements, joint venture agreements, and/or a potential acquisition;

25     •    Documents and communications between Plaintiffs and Derby Wars establishing that Derby Wars detrimentally relied on Plaintiffs' failure to object to Derby Wars' conduct prior to filing this action (i.e. documents and communications evidencing time and resources

1                invested to grow Derby Wars' fantasy contest business model);

2       •      Agreements between Plaintiffs and third parties, including

3                simulcasting and ADW agreements, regarding horse wagering;

4       •      Documents and communications between Los Angeles Turf Club, Inc.

5                ("LATC") and Derby Wars establishing that LATC engaged in a

6                marketing and sponsorship agreement with Derby Wars relating to the

7                Santa Anita Showvivor contest (*e.g.*, Santa Anita's email "blasts" to its

8                many thousands of customers promoting Derby Wars fantasy

9                contests);

10     •      Documents and data establishing the positive impact of fantasy horse

11              racing contests on tracks' pari-mutuel handle (*e.g.*, BetAmerica's

12              assessment of data regarding the effect of BetAmerica's contests on

13              Gulfstream and Santa Anita Pari-Mutuel Results);

14     •      Documents and communications between Plaintiffs' and the Stronach

15              Group's representatives and agents, on the one hand, and Derby Wars'

16              representatives and agents, on the other hand, regarding business

17              dealings and relationships with Plaintiffs and the Stronach Group;

18     •      Documents and communications between Plaintiffs' and the Stronach

19              Group's representatives and agents, on the one hand, and Derby Wars'

20              representatives and agents, on the other hand, regarding cross

21              marketing efforts between Plaintiffs and Derby Wars;

22     •      Documents and communications regarding Plaintiffs' and/or the

23              Stronach Group's business dealings and agreements with other fantasy

24              horse racing and/or handicapping contest sites;

25     •      Documents regarding the financial aspects of Plaintiffs' and/or the

26              Stronach Groups' business dealings and agreements with other fantasy

27              horse racing and/or handicapping contest sites;

28     •      Documents and communications regarding Plaintiffs' interactions with

state horse racing boards and commissions and state legislatures, including specifically the CHRB;

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action; and

- Documents and communications regarding Plaintiffs' decision to file this lawsuit.

**H.      Derby Wars' Eleventh Affirmative Defense – Unclean Hands**

      a.      Summary Statement of Defense

Plaintiffs' conduct is inequitable and they have come to court with unclean hands, for the many reasons set forth below.  Plaintiffs have entered into agreements with third parties, allowing them to conduct online fantasy contests substantially similar to that of Derby Wars, without payment to Plaintiffs.  Plaintiffs have given consent to these third parties to use Plaintiffs' content for their fantasy contests, while depriving  Derby Wars of the same.  Additionally, Plaintiffs have intentionally interfered with Derby Wars' existing and prospective business agreements with third parties. For example, Plaintiffs contacted the National Thoroughbred Racing Association ("NTRA") and interfered with a request for proposal for which Derby Wars was the lead contender.  Derby Wars would have won the request for proposal, but for Plaintiffs' interference, and consequently Derby Wars' competitor was awarded the proposal.  Plaintiffs also contacted the Television Games Network ("TVG") and expressed its disapproval of TVG's marketing arrangements with Derby Wars, after which TVG discontinued these marketing arrangements.  Plaintiffs have attempted to interfere with Derby Wars' negotiations with Watch and Wager, the operator of the Cal-Expo racetrack. Further, Plaintiffs were aware of Derby Wars' fantasy horse racing contests as early as September 2011, and intentionally sat on their rights in order for, among other things, damages against Derby Wars to accumulate.  Derby Wars relied on Plaintiffs' inaction to its detriment.  Plaintiffs have communicated internally and

with third parties, expressing that they intended this litigation to cripple Derby

Wars' business.  Further, Plaintiffs have engaged in and are currently engaging in

other business practices that are unfair, misleading, and improper.

                         **b.**    <u>Elements Required to Establish Defense</u>

      The doctrine of unclean hands may bar relief to a party whose conduct is

tainted with fraud, deceit, or bad faith.  In order to find that the defense of unclean

hands applies, the jury must find by a preponderance of the evidence that:

                    a.      Plaintiffs engaged in misconduct;

                    b.      Plaintiffs misconduct was egregious and nontrivial;

                    c.      Plaintiffs misconduct is immediately and necessarily related to

the subject of the claims that Plaintiffs now assert; and

                    d.      Derby Wars was injured as a result of Plaintiffs' misconduct.

                *See Morton Salt Co. v. G. S. Sippiger Co.*, 314 U.S. 488 (1942); *Int'l

News Serv. v. Associated Press*, 248 U.S. 215 (1919); *Manhattan Medicine Co. v.

Wood*, 108 U.S. 218 (1883); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th

Cir. 1997); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th

Cir. 2002).

                   **c.**    <u>Key Evidence in Support of Defense</u>

      The following is a representative (not an exhaustive) list of key evidence that

Derby Wars will use to prove its affirmative defense at trial.

- Testimony of Mark Midland;
- Testimony of Michael Shutty;
- Testimony of Scott Daruty;
- Testimony of Timothy Ritvo;
- Testimony of Michael Rogers;
- Testimony of John Ford;
- Testimony of Joe Morris;
- Testimony of Nate Newby;

- Testimony of Andrew Arthur;

- Testimony of Eric Sindler;

- Testimony of Michael Calderone;

- Testimony of Gregory Avioli;

- Testimony of Ed Comins;

- Testimony of Chris Schick;

- Testimony of Rick Baedeker;

- Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding business dealings and relationships with Plaintiffs and the Stronach Group;

- Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding cross marketing efforts between Plaintiffs and Derby Wars;

- Documents and communications regarding Plaintiffs' decision to file this lawsuit;

- Documents and communications between Plaintiffs and third parties establishing that Plaintiffs have entered into agreements with third parties permitting third party contest sites to conduct fantasy horse racing contests substantially similar to Derby Wars' contests, without payment to Plaintiffs;

- Documents and communications between Plaintiffs and third parties establishing that Plaintiffs have given consent to substantially similar third party contest sites to use Plaintiffs' content, while depriving Derby Wars of such consent;

- Documents and communications establishing that licenses to conduct ADW and simulcasting do not cover fantasy horse racing contests, and

do not treat fantasy contests as pari-mutuel wagering;

- Documents and communications between Plaintiffs and the NTRA and/or the Breeders' Cup, LLC, between Plaintiffs and the Stronach Group, and between Derby Wars and the NTRA and/or Breeders' Cup, LLC, establishing that Plaintiffs interfered with a request for proposal that Derby Wars bid for, and otherwise would have won, but for Plaintiffs direct interference;

- Documents and communications between Plaintiffs and/or Derby Wars and TVG establishing that Plaintiffs directly interfered with marketing negotiations, arrangements, and agreements between Derby Wars and TVG, with the intention of harming Derby Wars' business (*e.g.*, an October 2015 email from Scott Daruty to TVG executives expressing concern about TVG's advertisement of Derby Wars' contests);

- Documents and communications between Plaintiffs and Watch and Wager, operator of Cal-Expo race track, evidencing Plaintiffs' attempts to interfere with negotiations, arrangements, and agreements between Derby Wars and Watch and Wager;

- Documents and communications internally amongst Plaintiffs, and between executives of the Stronach Group and third parties, establishing Plaintiffs' intention to use this litigation to cripple Derby Wars' business;

- Documents and communications establishing that Plaintiffs are engaging in improper business practices;

- Documents and communications establishing Plaintiffs' use of unfair and misleading business practices without adequate disclosure to consumers and bettors at Plaintiffs' tracks.

## I.    **Derby Wars' Twelfth Affirmative Defense – Proximate Cause**

### a.    Summary Statement of Defense

Derby Wars contends that Plaintiffs cannot prove any facts showing that Derby Wars' conduct was the proximate cause of the losses incurred and the damages sought, if any.

### b.    Elements Required to Establish Defense

To succeed on its California UCL claim, Plaintiffs must establish by a preponderance of the evidence that their economic injury came as a result of the unfair competition. The phrase "as a result of" in its plain and ordinary sense means "caused by" and requires a showing of a causal connection or reliance on the unfair business practice. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011). The Court has already ruled that Plaintiffs may not seek restitution for their UCL claim. (MJOP Order at 5.)

### c.    Key Evidence in Support of Defense

The following is a representative (not an exhaustive) list of key evidence that Derby Wars will use to prove its affirmative defense at trial:

- Testimony of Mark Midland;
- Testimony of Michael Shutty;
- Testimony of Scott Daruty;
- Testimony of Timothy Ritvo;
- Testimony of Michael Rogers;
- Testimony of John Ford;
- Testimony of Michael Calderone;
- Testimony of Rick Baedeker;
- Documents and data establishing the positive impact of fantasy horse racing contests on tracks' pari-mutuel handle (*e.g.*, BetAmerica's assessment of data regarding the effect of BetAmerica's contests on Gulfstream and Santa Anita Pari-Mutuel Results);

1     •     Documents and communications between Plaintiffs and third parties

2         establishing that Plaintiffs have entered into agreements with third

3         parties permitting third party contest sites to conduct fantasy horse

4         racing contests substantially similar to Derby Wars' contests, without

5         payment to Plaintiffs;

6     •     Documents and communications between Plaintiffs and third parties

7         establishing that Plaintiffs have given consent to substantially similar

8         third party contest sites to use Plaintiffs' content, while depriving

9         Derby Wars of such consent; and

10     •     Documents and communications establishing that licenses to conduct

11         ADW and simulcasting do not cover fantasy horse racing contests, and

12         do not treat fantasy contests as pari-mutuel wagering.

### J.   Derby Wars' Thirteenth Affirmative Defense – No Attorneys' Fees

#### a.   Summary Statement of Defense

To the extent Plaintiffs seek an award of attorneys' fees or costs, Plaintiffs have failed to prove their entitlement to such an award.  Further, there is no provision for the awarding of attorneys' fees under either the IHA or UCL.

### K.   Derby Wars' Fourteenth Affirmative Defense – No Restitution or Disgorgement

#### a.   Summary Statement of Defense

To the extent Plaintiffs seek an award of restitution or disgorgement of profits under the UCL, such awards are unavailable as a matter of law.

#### b.   Elements Required to Establish Defense

The UCL does not provide for non-restitutionary disgorgement.  *Korea Supply v. Lockheed Martin*, 29 Cal. 4th 1134, 1144, 1148 (2003).  Therefore to prove entitlement to restitution, Plaintiffs must show that Derby Wars received and unjustly retained a benefit at Plaintiffs' expense.  *Lectrodryer v. SeoulBank*, 77 Cal.

App. 4th 723, 726 (2000).  The Court has already ruled that Plaintiffs are not entitled to seek restitution under the UCL in this action.  (MJOP Order at 5.)

        c.     <u>Key Evidence in Support of Defense</u>

The following is a representative (not an exhaustive) list of key evidence that Derby Wars will use to prove its affirmative defense at trial:

- Testimony of Mark Midland;
- Testimony of Mike Shutty;
- Testimony of Scott Daruty;
- Testimony of Mike Rogers;
- Testimony of Timothy Ritvo;
- Testimony of Michael Calderone;
- Testimony of Joe Morris;
- Testimony of Nate Newby;
- Testimony of Andrew Arthur;
- Testimony of John Ford;
- Testimony of Rick Baedeker;
- Testimony of Randal Heeb, Ph.D.;
- Plaintiffs' responses to interrogatories;
- The Corrected Expert Report of Randal Heeb, Ph.D.;
- Documents and communications between Plaintiffs, on the one hand, and Derby Wars and/or the Stronach Group and/or third parties, and internally amongst Plaintiffs, establishing that Plaintiffs were aware of Derby Wars' fantasy horse racing contests as early as September 2011, well before December 2012;
- Documents and communications between Plaintiffs, on the one hand, and Derby Wars and/or the Stronach Group and/or third parties, on the other hand, and internally amongst Plaintiffs, evidencing that despite their awareness of Derby Wars' fantasy horse racing contests as early

as September 2011, Plaintiffs never objected to Derby Wars' conduct prior to the filing of this action;

- Documents and communications between Plaintiffs and Derby Wars evidencing Plaintiffs' efforts to engage Derby Wars in sponsorship arrangements, joint venture agreements, and/or a potential acquisition;

- Documents and communications between Plaintiffs and Derby Wars establishing that Derby Wars detrimentally relied on Plaintiffs' failure to object to Derby Wars' conduct prior to filing this action (*e.g.*, documents and communications evidencing time and resources invested to grow Derby Wars' fantasy contest business model);

- Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding business dealings and relationships with Plaintiffs and the Stronach Group;

- Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding cross marketing efforts between Plaintiffs and Derby Wars;

- Documents and data establishing the positive impact of fantasy horse racing contests on tracks' pari-mutuel handle (*e.g.*, BetAmerica's assessment of data regarding the effect of BetAmerica's contests on Gulfstream and Santa Anita Pari-Mutuel Results).

- Documents regarding the financial aspects of Derby Wars' contests and revenues;

- Documents regarding wagering on horse racing and operation of Plaintiffs' racetracks;

- Plaintiffs' licenses to operate race tracks and accept wagers on horse races;

- Plaintiffs' agreements with the horsemen's groups and host race states;
- Documents and communications regarding Plaintiffs' and/or the Stronach Group's business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;
- Documents regarding the financial aspects of Plaintiffs' and/or the Stronach Groups' business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;
- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action; and
- Documents and communications regarding Plaintiffs' decision to file this lawsuit.

## L. **Derby Wars' Fifteenth Affirmative Defense – No Standing Under the UCL**

### a. Summary Statement of Defense

Plaintiffs lack standing to seek injunctive relief under the UCL because (1) they have no relationship with Derby Wars and (2) the UCL does not regulate parties or conduct unconnected to California, and UCL claims cannot be based on laws from any state other than California.

### b. Elements Required to Establish Defense

Under the heightened standing requirement for claims under the UCL following the passage of Proposition 64 in California, a private party must (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic was the result of, i.e. caused by, the unfair business practice." Cal. Bus. & Prof. Code § 17204; *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788 (2010).

Economic injury may be shown where, among other things, plaintiffs: (i) surrender more or acquire less in a transaction than they otherwise would have; (ii) "have a present or future property interest diminished"; are "deprived of money or

1   property to which [they have] cognizable claim"; or (iv) are "required to enter into

2   a transaction, costing money or property, that would otherwise have been

3   unnecessary." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2011).

4       This Court has already ruled that Plaintiffs may not seek restitution under

5   their UCL claim.  (MJOP Order at 5.)

6       The UCL does not regulate parties or conduct unconnected to California, and

7   cannot be based on laws from any state other than California.  *Norwest Mortg., Inc.*

8   *v. Superior Court*, 72 Cal. App. 4th 214, 225-27 (1999); *Sullivan v. Oracle Corp.*,

9   51 Cal. 4th 1191, 1206-09 (2011); *Washington Mut. Bank, FA v. Superior Court*, 24

10  Cal. 4th 906, 919-20 (2001).

11      The elements Plaintiffs must establish to obtain permanent injunctive relief

12  for this claim are: (1) that Plaintiffs have suffered an irreparable injury; (2) that

13  remedies available at law, such as monetary damages, are inadequate to compensate

14  for that injury; (3) that, considering the balance of the hardships between Plaintiffs

15  and Derby Wars, a remedy in equity is warranted; and (4) that the public interest

16  would not be disserved by a permanent injunction.  *La Quinta Worldwide LLC v.*

17  *Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014); *Allergan, Inc. v. Athena*

18  *Cosmetics, Inc.*, No. SACV071316 JVS RNBX, 2013 WL 12142655, at *2 (C.D.

19  Cal. Mar. 6, 2013).

20          c.      Key Evidence in Support of Defense

21      The following is a representative (not an exhaustive) list of key evidence that

22  Derby Wars will use to prove its affirmative defense at trial.

23      •    Testimony of Mark Midland;

24      •    Testimony of Michael Shutty;

25      •    Testimony of Scott Daruty;

26      •    Testimony of Timothy Ritvo;

27      •    Testimony of Michael Rogers;

28      •    Testimony of John Ford;

1    • Testimony of Joe Morris;

2    • Testimony of Nate Newby;

3    • Testimony of Andrew Arthur;

4    • Testimony of Eric Sindler;

5    • Testimony of Michael Calderone;

6    • Testimony of Gregory Avioli;

7    • Testimony of Ed Comins;

8    • Testimony of Chris Schick;

9    • Testimony of Rick Baedeker;

10   • Testimony of Randal Heeb, Ph.D.;

11   • The Corrected Expert Report of Randal Heeb, Ph.D.;

12   • Plaintiffs' responses to interrogatories;

13   • Documents and communications between Plaintiffs' and the Stronach
14   Group's representatives and agents, on the one hand, and Derby Wars'
15   representatives and agents, on the other hand, regarding business
16   dealings and relationships with Plaintiffs and the Stronach Group;

17   • Documents and communications between Plaintiffs' and the Stronach
18   Group's representatives and agents, on the one hand, and Derby Wars'
19   representatives and agents, on the other hand, regarding cross
20   marketing efforts between Plaintiffs and Derby Wars;

21   • Documents regarding the financial aspects of Derby Wars' contests
22   and revenues;

23   • Documents regarding wagering on horse racing and the operation of
24   Plaintiffs' racetracks;

25   • Plaintiffs' licenses to operate race tracks and accept wagers on horse
26   races;

27   • Plaintiffs' agreements with the horsemen's groups and host race states;

28   • Agreements between Plaintiffs and third parties, including

simulcasting and ADW agreements, regarding horse wagering;

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;

- Documents regarding the financial aspects of Plaintiffs' and/or the Stronach Groups' business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;

- Documents and communications regarding Plaintiffs' interactions with state horse racing boards and commissions and state legislatures, including specifically the CHRB; and

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action.

**M.** **Derby Wars' Sixteenth Affirmative Defense – Justified Fair Competition**

    a.   Summary Statement of Defense

Derby Wars contends that its conduct was not and is not unfair within the meaning of California Business & Professions Code sections 17200 *et seq.*, and is justified by legitimate business and competitive reasons.

    b.   Elements Required to Establish Defense

If a defendant claims that he/she is not responsible for a plaintiff's harm because defendant's conduct was permissible, to succeed the defendant must prove all of the following:

    (a)   That the defendant was exercising his/her legal right to engaged in that conduct or protect his / her economic interests;

    (b)   That the defendant's conduct was lawful and consistent with community standards; and

    (c)   That the defendant had a good-faith belief that he/she had a legal right to engage in the conduct.

1    If you find all of the above, then the defendant's conduct was permissible.

2    *See* CACI No. 1605, VF-1601 (privilege to protect economic interests);

3    Restatement (3d) of Unfair Competition § 1 (1995) (freedom to compete).

4              c.      <u>Key Evidence in Support of Defense</u>

5        The following is a representative (not an exhaustive) list of key evidence that

6    Derby Wars will use to prove its affirmative defense at trial:

7        •    Testimony of Mark Midland;

8        •    Testimony of Michael Shutty;

9        •    Testimony of John Ford;

10       •    Testimony of Joe Morris;

11       •    Testimony of Nate Newby;

12       •    Testimony of Andrew Arthur;

13       •    Testimony of Rick Baedeker;

14       •    Testimony of Michael Calderone;

15       •    Documents and communications between Plaintiffs' and the Stronach

16            Group's representatives and agents, on the one hand, and Derby Wars'

17            representatives and agents, on the other hand, regarding business

18            dealings and relationships with Plaintiffs and the Stronach Group;

19       •    Documents and communications between Plaintiffs' and the Stronach

20            Group's representatives and agents, on the one hand, and Derby Wars'

21            representatives and agents, on the other hand, regarding cross

22            marketing efforts between Plaintiffs and Derby Wars;

23       •    Documents regarding the financial aspects of Derby Wars' contests

24            and revenues;

25       •    Documents regarding wagering on horse racing and operation of

26            Plaintiffs' racetracks;

27       •    Plaintiffs' licenses to operate race tracks and accept wagers on horse

28            races;

- Plaintiffs' agreements with the horsemen's groups and host race states;
- Agreements between Plaintiffs and third parties, including simulcasting and ADW agreements, regarding horse wagering;
- Documents and communications regarding Plaintiffs' and/or the Stronach Group's business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;
- Documents regarding the financial aspects of Plaintiffs' and/or the Stronach Groups' business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;
- Documents and communications between Plaintiffs and third parties establishing that Plaintiffs have entered into agreements with third parties permitting third party contest sites to conduct fantasy horse racing contests substantially similar to Derby Wars' contests, without payment to Plaintiffs;
- Documents and communications between Plaintiffs and third parties establishing that Plaintiffs have given consent to substantially similar third party contest sites to use Plaintiffs' content, while depriving Derby Wars of such consent;
- Documents and communications establishing that licenses to conduct ADW and simulcasting do not cover fantasy horse racing contests, and do not treat fantasy contests as pari-mutuel wagering;
- Documents and communications regarding Plaintiffs' interactions with state horse racing boards and commissions and state legislatures, including specifically the CHRB;
- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action; and
- Documents and communications regarding Plaintiffs' decision to file this lawsuit.

### N.   **Derby Wars' Seventeenth / Eighteenth Affirmative Defenses – Lawful Conduct / Conduct Not Unlawful**

a.   Summary Statement of Defense

Plaintiffs' claim under the UCL is barred as Derby Wars' conduct is not "unlawful" within the meaning of California Business & Professions Code Sections 17200 and/or 17500.

b.   Elements Required to Establish Defense

"[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200.

c.   Key Evidence in Support of Defense

- Testimony of Mark Midland;
- Testimony of Michael Shutty;
- Testimony of John Ford;
- Testimony of Joe Morris;
- Testimony of Nate Newby;
- Testimony of Andrew Arthur;
- Testimony of Rick Baedeker;
- Testimony of Michael Calderone;
- Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding business dealings and relationships with Plaintiffs and the Stronach Group;
- Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding cross

marketing efforts between Plaintiffs and Derby Wars;

- Documents regarding the financial aspects of Derby Wars' contests and revenues;

- Documents regarding wagering on horse racing and operation of Plaintiffs' racetracks;

- Plaintiffs' licenses to operate race tracks and accept wagers on horse races;

- Plaintiffs' agreements with the horsemen's groups and host race states;

- Agreements between Plaintiffs and third parties, including simulcasting and ADW agreements, regarding horse wagering;

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;

- Documents regarding the financial aspects of Plaintiffs' and/or the Stronach Groups' business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;

- Documents and communications regarding Plaintiffs' interactions with state horse racing boards and commissions and state legislatures, including specifically the CHRB;

- Documents and data establishing the positive impact of fantasy horse racing contests on tracks' pari-mutuel handle (*e.g.*, BetAmerica's assessment of data regarding the effect of BetAmerica's contests on Gulfstream and Santa Anita Pari-Mutuel Results);

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action; and

- Documents and communications regarding Plaintiffs' decision to file this lawsuit.

### O.   Derby Wars' Nineteenth Affirmative Defense – Injunctive Relief is Discretionary

#### 1.   IHA

##### a.   Summary Statement of Defense

Even if Plaintiff could establish the elements of the violation of the UCL, in light of all the relevant considerations, the Court can and should exercise its discretion and decline to award injunctive relief.

##### b.   Elements Required to Establish Defense

The elements Plaintiffs must establish to obtain permanent injunctive relief for this claim are: (1) that Plaintiffs have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between Plaintiffs and Derby Wars, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014); *Allergan, Inc. v. Athena Cosmetics, Inc.*, No. SACV071316 JVS RNBX, 2013 WL 12142655, at *2 (C.D. Cal. Mar. 6, 2013).

##### c.   Key Evidence in Support of Defense

The following is a representative (not an exhaustive) list of key evidence that Derby Wars will use to prove its affirmative defense at trial:

- Testimony of Mark Midland;
- Testimony of Michael Shutty;
- Testimony of Scott Daruty;
- Testimony of Timothy Ritvo;
- Testimony of Michael Rogers;
- Testimony of John Ford;
- Testimony of Michael Calderone;
- Testimony of Rick Baedeker;

1        •    Testimony of Randal Heeb, Ph.D.;

2        •    The Corrected Expert Report of Randal Heeb, Ph.D.;

3        •    Plaintiffs' responses to interrogatories;

4        •    Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding business dealings and relationships with Plaintiffs and the Stronach Group;

8        •    Documents and communications between Plaintiffs' and the Stronach Group's representatives and agents, on the one hand, and Derby Wars' representatives and agents, on the other hand, regarding cross marketing efforts between Plaintiffs and Derby Wars;

12        •    Documents and communications between Plaintiffs and Derby Wars, internally amongst Plaintiffs, between Plaintiffs and the Stronach Group, and between Plaintiffs and third parties, evidencing that despite their awareness of Derby Wars' fantasy horse racing contests as early as September 2011, Plaintiffs never objected to Derby Wars' conduct prior to the filing of this action;

18        •    Documents and data establishing the positive impact of fantasy horse racing contests on tracks' pari-mutuel handle (*e.g.*, BetAmerica's assessment of data regarding the effect of BetAmerica's contests on Gulfstream and Santa Anita Pari-Mutuel Results).

22        •    Documents regarding the financial aspects of Derby Wars' contests and revenues;

24        •    Documents regarding wagering on horse racing and operation of Plaintiffs' racetracks;

26        •    Plaintiffs' licenses to operate race tracks and accept wagers on horse races;

28        •    Plaintiffs' agreements with the horsemen's groups and host race states;

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;

- Documents regarding the financial aspects of Plaintiffs' and/or the Stronach Groups' business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;

- Documents and communications regarding Plaintiffs' interactions with state horse racing boards and commissions and state legislatures, including specifically the CHRB;

- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action; and

- Documents and communications regarding Plaintiffs' decision to file this lawsuit.

## 2. UCL

### a. Summary Statement of Defense

Even if Plaintiff could establish the elements of the violation of the UCL, in light of all the relevant considerations, the Court can and should exercise its discretion and decline to award injunctive relief.

### b. Elements Required to Establish Defense

The elements Plaintiffs must establish to obtain permanent injunctive relief for this claim are: (1) that Plaintiffs have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between Plaintiffs and Derby Wars, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014); *Allergan, Inc. v. Athena Cosmetics, Inc.*, No. SACV071316 JVS RNBX, 2013 WL 12142655, at *2 (C.D. Cal. Mar. 6, 2013).

1                                    c.     <u>Key Evidence in Support of Defense</u>

2           The following is a representative (not an exhaustive) list of key evidence that

3    Derby Wars will use to prove its affirmative defense at trial:

4        •    Testimony of Mark Midland;

5        •    Testimony of Michael Shutty;

6        •    Testimony of Scott Daruty;

7        •    Testimony of Timothy Ritvo;

8        •    Testimony of Michael Rogers;

9        •    Testimony of John Ford;

10       •    Testimony of Michael Calderone;

11       •    Testimony of Rick Baedeker;

12       •    Testimony of Randal Heeb, Ph.D.;

13       •    The Corrected Expert Report of Randal Heeb, Ph.D.;

14       •    Plaintiffs' responses to interrogatories;

15       •    Documents and communications between Plaintiffs' and the Stronach

16             Group's representatives and agents, on the one hand, and Derby Wars'

17             representatives and agents, on the other hand, regarding business

18             dealings and relationships with Plaintiffs and the Stronach Group;

19       •    Documents and communications between Plaintiffs' and the Stronach

20             Group's representatives and agents, on the one hand, and Derby Wars'

21             representatives and agents, on the other hand, regarding cross

22             marketing efforts between Plaintiffs and Derby Wars;

23       •    Documents and communications between Plaintiffs and Derby Wars,

24             internally amongst Plaintiffs, between Plaintiffs and the Stronach

25             Group, and between Plaintiffs and third parties, evidencing that despite

26             their awareness of Derby Wars' fantasy horse racing contests as early

27             as September 2011, Plaintiffs never objected to Derby Wars' conduct

28             prior to the filing of this action;

- Documents and data establishing the positive impact of fantasy horse racing contests on tracks' pari-mutuel handle (*e.g.*, BetAmerica's assessment of data regarding the effect of BetAmerica's contests on Gulfstream and Santa Anita Pari-Mutuel Results).
- Documents regarding the financial aspects of Derby Wars' contests and revenues;
- Documents regarding wagering on horse racing and operation of Plaintiffs' racetracks;
- Plaintiffs' licenses to operate race tracks and accept wagers on horse races;
- Plaintiffs' agreements with the horsemen's groups and host race states;
- Documents and communications regarding Plaintiffs' and/or the Stronach Group's business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;
- Documents regarding the financial aspects of Plaintiffs' and/or the Stronach Groups' business dealings and agreements with other fantasy horse racing and/or handicapping contest sites;
- Documents and communications regarding Plaintiffs' interactions with state horse racing boards and commissions and state legislatures, including specifically the CHRB;
- Documents and communications regarding Plaintiffs' and/or the Stronach Group's purported damages in this action; and
- Documents and communications regarding Plaintiffs' decision to file this lawsuit.

## III.   IDENTIFICATION OF ANTICIPATED EVIDENTIARY ISSUES

The parties exchanged draft exhibit lists on May 12, 2017.  The parties exchanged updated and amended exhibit lists on May 19, 2017.  The parties have prepared a draft Joint Exhibit List as required by Local Rule 16-6.1, which they will

1    submit to the Court on May 26, 2017.  The parties agreed to meet and confer further

2    to discuss objections to proposed exhibits, as well as stipulations to authenticity and

3    admissibility of proposed exhibits, by the deadlines set forth by the Court.

4         During the parties' Local Rule 16-2 meeting of counsel, the parties agreed

5    that Plaintiffs will provide Derby Wars with a list of proposed facts about which

6    Plaintiffs believe there is no dispute.  Derby Wars will review this list and inform

7    Plaintiffs of any facts to which it will stipulate.  Additionally, Derby Wars will set

8    forth any additional facts for proposed stipulation.  Derby Wars has proposed that

9    the parties stipulate to alter the timing of the Local Rule 16.3 requirement regarding

10   demonstrative exhibits and illustrative material.  Plaintiffs have not agreed to alter

11   the timing of Local Rule 16.3 at this time.

12        Derby Wars filed four motions *in limine*, which relate to the following

13   evidentiary issues:

14        (a) A *Daubert* motion challenging the expert testimony of Plaintiffs'

15   purported damages expert, David Tantlinger.  For the reasons set forth in the

16   pending motion, Mr. Tantlinger's testimony should be excluded from trial.  (Docket

17   No. 92.)

18        (b) A motion seeking to prohibit Plaintiffs from presenting any evidence,

19   eliciting any testimony, or making any arguments or comments regarding monetary

20   damages.  For the reasons set forth in the pending motion, all evidence regarding

21   monetary damages should be excluded from trial. (Docket No. 93.)

22        (c) A motion seeking to prohibit Plaintiffs from presenting any evidence,

23   eliciting any testimony, or making any arguments or comments regarding any

24   criminal law or statute, including, without limitation, 18 U.S.C. § 1084, 18 U.S.C. §

25   1955, California Penal Code § 337a, or any other federal or state criminal law or

26   statute.  (Docket No. 94.)

27        (d) A motion seeking to prohibit Plaintiffs from presenting any evidence,

28   eliciting any testimony, or making any argument or comment regarding third party

1  legal opinions, including, without limitation, legal opinions by counsel; opinions,

2  statements or communications of Derby Wars' employees or representative or non-

3  parties regarding the legality of Derby Wars' contests; state attorney's general

4  opinions regarding the legality of daily fantasy sports; and state regulations

5  regarding the legality of daily fantasy sports.  (Docket No. 95.)

6       Plaintiffs also filed three motions *in limine*.  (*See* Docket Nos. 89, 90, 91.)

7  For the reasons set forth in the forthcoming opposition briefs that will be filed by

8  Derby Wars, Plaintiffs' motions should be denied in their entirety.  Plaintiffs

9  improperly seek to use those motions *in limine* to exclude evidence that is highly

10  relevant to the affirmative defenses and issues to be tried.

11       Derby Wars reserves the right to seek to exclude evidence based on

12  evidentiary issues that may arise at trial, as well as evidentiary issues that may arise

13  from the parties' further meet and confer efforts and after Derby Wars' review of

14  Plaintiffs' Memorandum of Contentions of Fact and Law.

15  **IV.   IDENTIFICATION OF ANTICIPATED LEGAL ISSUES**

16       As set forth above, the Court should decide the legal issues raised by the

17  parties' respective motions *in limine*.  Derby Wars reserves the right to address

18  additional legal issues as they arise, including based on further meet and confer

19  efforts and after Derby Wars reviews Plaintiffs' Memorandum of Contentions of

20  Fact and Law.  Derby Wars further expressly reserves its right to move for

21  judgment as a matter of law.

22  **V.   BIFURCATION OF ISSUES**

23       Neither party has moved to bifurcate any of the issues in this matter.  Derby

24  Wars has no objection to trying all issues of the case together.

25  **VI.   JURY TRIAL**

26       Plaintiffs and Derby Wars each timely demanded a jury trial.  With the

27  exception set forth below, it is Derby Wars' position that all remaining issues in

28  this litigation are triable to a jury, including Derby Wars' affirmative defenses.  *See*

1    *Cortez v. Puralator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179-181 (2000)

2    (holding that equitable defenses may be asserted as a defense to a UCL remedy);

3    *see also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 1977 (2014)

4    (holding that equitable defenses may be brought against actions at law).  However,

5    Derby Wars maintains that the scope and entitlement to injunctive relief should be

6    expressly reserved for the Court, and should not be decided by a jury.

7    **VII.   ATTORNEYS' FEES**

8         It is Derby Wars' position that Plaintiffs are not entitled to attorneys' fees.

9    There is no provision for the awarding of attorneys' fees under either the IHA or

10    UCL.

11    **VIII.  ABANDONMENT OF ISSUES**

12         As set forth in Derby Wars' motion *in limine* regarding the Criminal Statutes,

13    Plaintiffs should be judicially estopped from asserting any issues or claims

14    regarding such statutes.  Further, Derby Wars will not pursue its First, Second,

15    Fourth, Sixth, or Eighth Affirmative Defenses[4] as stand-alone "affirmative

16    defenses" *per se* at trial, as such defenses are subsumed within other defenses or

17    otherwise highlight elements of Plaintiffs' claims for which they will not be able to

18    sustain their burden of proof.  Derby Wars will present evidence in support of its

19    remaining defenses and to establish that Plaintiffs have failed to prove the elements

20    of their claims and carry their burdens of proof; even if they have done so, they

21    have not proven the damages they seek.  If necessary, Derby Wars will also brief

22    any issues relating to costs after trial.

23    //

24    //

25    //

26    //

27    _____

[4] Derby Wars' First, Second, Fourth, Sixth, and Eighth Affirmative Defenses are

28    for failure to state a claim, failure to plead claims with required specificity, laches, no damages, and good faith, respectively.  (Docket No. 34.)

1   Further, based on the parties' discussions at the meeting of counsel, the

2   parties intend to continue discussions leading up to trial regarding any claims,

3   defenses, or issues that either side is willing to abandon and/or as to which they

4   may stipulate prior to trial.

5

6   Dated:  May 26, 2017                          Respectfully submitted,

7                                                 MANATT, PHELPS & PHILLIPS, LLP
                                                  Matthew P. Kanny
8                                                 Arunabha Bhoumik
                                                  Maura K. Gierl
9
                                                  By:  /s/ Matthew P. Kanny
10                                                     Matthew P. Kanny
                                                       *Attorneys for Defendant*
11                                                     HORSE RACING LABS, LLC

12

13  318830041.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28